**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 95-829C<br>(Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENT TO THE RECORD**
**<u>OF ITS MOTION FOR RECONSIDERATION DATED MARCH 3, 2005</u>**

Pursuant to leave of Court granted at the August 7, 2005 telephonic conference held in this case, defendant, the United States, respectfully submits the following, attached documents for inclusion in the record of its Motion for Reconsideration of the Court's September 12, 2005 Liability Decision:

(1) Voting and Disposition Rights/Dividend Agreement referenced in the decision of the United States Court of Appeals for the Federal Circuit in <u>Franklin Federal Savings Bank v. United States</u>, 431 F.3d 1360 (Fed. Cir. 2005); and

(2) Regulatory Capital Maintenance/Dividend Agreement referenced in the decision of the Federal Circuit in <u>Hometown Financial, Inc. v. United States</u>, 409 F.3d 1360 (Fed. Cir. 2005).

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

DAVID M. COHEN
Director

JEANNE E. DAVIDSON
Deputy Director

s/ William F. Ryan

WILLIAM F. RYAN
Assistant Director

s/ Elizabeth M. Hosford

ELIZABETH M. HOSFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0332
Fax (202) 305-7643

OF COUNSEL:
MELINDA HART
DELISA SANCHEZ
TAREK SAWI

August 8, 2006

Attorneys for Defendant

# APPENDIX

# INDEX TO APPENDIX

Voting and Disposition Rights/Dividend Agreement referenced in the decision of the United States Court of Appeals for the Federal Circuit in Franklin Federal Savings Bank v. United States, 431 F.3d 1360 (Fed. Cir. 2005). . . . . . . . . . . . 1

Regulatory Capital Maintenance/Dividend Agreement referenced in the decision of the Federal Circuit in Hometown Financial, Inc. v. United States, 409 F.3d 1360 (Fed. Cir. 2005). . . . . . . . . . . . . . . .12

EXHIBIT 1

# VOTING AND DISPOSITION RIGHTS/DIVIDEND

# AGREEMENT

This Agreement is made this 12 day of JANUARY, 1989, by and between Franklin Financial Group, Inc.(the "Acquiror") and the Federal Savings and Loan Insurance Corporation (the "FSLIC"), a corporate instrumentality and agency of the United States, which is under the operating direction of the Federal Home Loan Bank Board (the "Board").

**WHEREAS,** the Acquiror has filed with the FSLIC the appropriate application (the "Application") under the Savings and Loan Holding Company Act (the "Holding Company Act"), or notice (the "Notice") under the Change in Savings and Loan Control Act (the "Control Act") for approval of its proposed acquisition of control of Morristown Federal Savings and Loan Association, Morristown, Tennessee, to be renamed as Franklin Federal Savings Bank, (the "Institution"); and

**WHEREAS,** in reviewing the Application under the Holding Company Act, the FSLIC must make a determination under the standards of 12 U.S.C. 1730a(e), and in determining whether to disapprove a Notice under the Control Act, the FSLIC must consider the standards set forth in 12 U.S.C. 1730(q)(7) (and in some cases also 1730(q)(8)); and

**WHEREAS,** in order to make a determination to approve the subject Application or not disapprove the Notice, pursuant to the applicable standards, the FSLIC requires that the Acquiror enter into this Agreement; and

**WHEREAS,** the Acquiror is willing to enter into this Agreement in order that the FSLIC will act favorably upon the Acquiror's Application or Notice;

**NOW, THEREFORE,** in consideration of the FSLIC acting favorably on the Application or Notice, the Acquiror agrees as follows:

## I. DEFINITIONS

The following terms used in this Agreement shall have the following meanings:

A. "Control" means conclusive control or rebuttable control as set forth in 12 C.F.R. §§ 574.4(a) and (b).

B. "Date of Acquisition" means the effective date on which the Acquiror acquired control of the

Institution.

C. "Default" means the failure of the Acquiror to comply with its obligations under this Agreement or the breach of any representation, warranty, or covenant set forth in Section V. of this Agreement.

D. "Dividend" means (a) any dividend paid or other distribution (including, but not limited to, a liquidation distribution) made on or with respect to any shares of capital stock of the Institution, but not including a stock dividend of stock of the Institution, or (b) any payment on account of the purchase, redemption or other acquisition or retirement of any such shares or any warrants or option thereon, whether made by the Institution or any direct or indirect subsidiary thereof.

E. "Extraordinary Transaction" means any merger of the Institution with and into another entity or merger of another entity with and into the Institution, any consolidation of the Institution, any disposition of all or substantially all of the assets of the Institution, or any similar extraordinary transaction involving the Institution.

F. "Fully Phased-In Capital Requirement" means the Institution's fully phased-in regulatory capital requirement as defined in 12 C.F.R. § 563.13 or any successor regulation.

G. "Institution" means the Institution as defined in the preamble to this Agreement, provided that if the Acquiror merges the institution being acquired into another insured institution (as defined in Section 408(a)(1)(A) of the National Housing Act), as part of the transaction being acted upon by the FSLIC in connection with this Agreement, then the term "Institution" for purposes of all sections of this Agreement other than Section I.B. and V.A. shall mean the resulting institution in such merger.

H. "Net Assets" means total assets minus FSLIC-guaranteed assets. FSLIC-guaranteed assets include FSLIC notes and assets subject to full capital loss and yield maintenance coverage agreements.

I. "Net Capital" means Regulatory Capital excluding Regulatory Capital resulting from granted forbearances or FSLIC assistance that otherwise serves to increase the Institution's Regulatory Capital.



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

J. "Regulatory Capital" means regulatory capital defined in accordance with 12 C.F.R. § 561.13 or any successor regulation thereto.

K. "Regulatory Capital Requirement" means the Institution's regulatory capital requirement at a given time computed in accordance with 12 C.F.R. § 563.13, or any successor regulation thereto.

L. "Regulatory Capital Trigger" means 2 percent (2%) of the Institution's Net Assets as calculated by the FSLIC or the Principal Supervisory Agent each quarter.

M. "Shares" means all shares of the stock of the Institution that have been acquired directly or indirectly by the Acquiror; any securities convertible into any such shares; any options, warrants or other rights for the acquisition of any such shares; and all such shares, securities, options, warrants or rights that may otherwise be issued to or acquired by the Acquiror, whether before or after the Date of Acquisition, together with the certificates or other instruments or agreements evidencing those shares, securities, options, warrants, or rights.

N. "Principal Supervisory Agent" means the Principal Supervisory Agent at the Federal Home Loan Bank of Cincinnati.

O. "Total Assets" means total assets as represented on the Institution's Quarterly Report.

P. "Total Liabilities" means total liabilities as defined in 12 C.F.R. § 563.13(b)(1)(i), or any successor regulation.

## II. IRREVOCABLE PROXY AND DELIVERY OF STOCK CERTIFICATE

Concurrently with the execution of this Agreement, the Acquiror shall execute an irrevocable proxy in the form attached hereto as Exhibit A ("Irrevocable Proxy"), and deliver the Irrevocable Proxy to the Principal Supervisory Agent or other designated official of the Board, along with the certificate representing all of the Shares, properly endorsed for transfer or accompanied by fully endorsed stock powers. Such delivery is for the purpose of effecting the terms of this agreement, in particular Section III. hereof. The Principal Supervisory Agent or other designated official shall hold the Irrevocable Proxy and such certificate on behalf of the FSLIC. If additional Shares are issued to the Acquiror after the execution of this Agreement, the Acquiror promptly shall deliver to the Principal Supervisory Agent or other designated official the certificate(s) representing such Shares, properly endorsed for



CONFID... ...T TO PROTECTIVE ORDER

transfer or accompanied by fully endorsed stock powers. Until such time as the FSLIC invokes its rights under Section III., subject to the other provisions of this Agreement, all rights related to the Shares shall be retained by the Acquiror.

III. VOTING AND DISPOSITION RIGHTS

If the Institution's Regulatory Capital, at the end of any quarter falls below the Regulatory Capital Trigger, and such deficiency has not been eliminated within 30 days of the date of the end of such quarter, the FSLIC, acting through the Principal Supervisory Agent, or the Executive Director of the Office of Regulatory Activities (the "ORA Director"), shall have the right to send a notice (the "Notice") to the Acquiror that the Board is invoking the provisions of this section. The Acquiror shall have 10 business days from the date of receipt of the Notice in which to restore the Institution's Regulatory Capital to the Regulatory Capital Trigger. If the Institution's Regulatory Capital is not restored to the Regulatory Capital Trigger within such 10 business day period, the PSA or the ORA Director, in either case with the concurrence of the General Counsel or his delegate, shall have the absolute right, in their sole discretion, to:

A. Vote, pursuant to the Irrevocable Proxy, all of the Shares, including, without limitation, the exercise of such voting power:

1. in favor of, and causing the taking of such steps as may be necessary to consummate, an Extraordinary Transaction or the sale of any or all of the Shares, even if no value is received in respect to the Shares or net assets of the Institution; and/or

2. to cause the removal of the board of directors of the Institution; and/or

3. to cause the Institution to issue to the FSLIC or another party or parties designated by the FSLIC, in the FSLIC's sole discretion, for nominal or no consideration, voting securities representing a majority of the voting power of the Institution after such issuance or such greater amount as may be required to take the actions described in subsections 1. and 2., above; and/or

B. Dispose of any or all of the Shares, even if no value is received in respect to such securities. In the event of any such transaction or disposition, the Acquiror shall be entitled to the consideration paid to the FSLIC in such transaction or disposition in respect to the Shares less the FSLIC's costs associated with the transaction or disposition



SUBJECT TO PROTECTIVE ORDER

including, without limitation, any financial assistance provided by the FSLIC in connection with such transaction or disposition, and less the cost of any financial assistance provided by the FSLIC in connection with such acquisition that has not been repaid to the FSLIC.

IV. **DIVIDENDS**

A. The Acquiror may not accept from the Institution, nor cause the Institution to pay, any Dividend that would cause the Institution's Regulatory Capital to fall below its Regulatory Capital Requirement.

B. At any time the Institution's Net Capital exceeds the Fully Phased-In Requirement, the Acquiror may not accept from the Institution, nor cause the Institution to pay, Dividends in an amount exceeding 100 percent of the Institution's cumulative net income for the prior eight (8) quarters as reflected on the Institution's quarterly report to the Board, less cumulative dividends paid for such prior eight (8) quarters, without the prior written approval of the Supervisory Agent. Provided, however, that if a Dividend would cause the Institution's Net Capital to fall below its Fully Phased-In Capital Requirement, such Dividend may not cause the Institution's Net Capital to fall below the Institution's Fully Phased-In Capital Requirement by an amount exceeding 50 percent of the Institution's cumulative net income for the prior eight (8) quarters as reflected on the Institution's quarterly reports to the Board, less cumulative dividends paid for such prior eight (8) quarters, without the prior written approval of the Supervisory Agent.

C. At any time the Institution's Net Capital exceeds the Regulatory Capital Requirement, but is less than the Fully Phased-In Capital Requirement, the Acquiror may not accept from the Institution, nor cause the Institution to pay, Dividends in an amount exceeding 50 percent of the Institution's cumulative net income for the prior eight (8) quarters as reflected on the Institution's quarterly report to the Board, less cumulative dividends paid for such prior eight (8) quarters, without the prior written approval of the Supervisory Agent.

D. The Acquiror may not accept from the Institution, nor cause the Institution to pay, any Dividend that is prohibited by any statute or regulation, including but not limited to 12 C.F.R. § 563b.3(g), or by any agreement entered into by the Institution with the FSLIC or its delegates.



SUBJECT TO PROTECTIVE ORDER

E. Prior to the occurrence of a Default and after any Default that may have occurred and has been expressly cured or waived in writing, the Acquiror shall be entitled to receive all cash dividends and other cash distributions made in connection with the Shares, provided that receipt of such dividends is permissible under Sections IV.A. through D. of this Agreement.

## V. REPRESENTATIONS, COVENANTS AND WARRANTIES OF THE ACQUIROR

Acquiror represents, covenants and warrants to FSLIC that:

A. The information given to the FSLIC by the Acquiror and relied on thereby in connection with the acquisition of control of the Institution is true, accurate, complete, and current in all material respects.

B. As of the date of this Agreement, the Shares are free and clear of all liens, security interests, and charges.

C. Each of the Shares shall be stamped or imprinted with a legend in the following form:

> The securities represented by this certificate (a) may not be sold, transferred, pledged, assigned or otherwise disposed of or encumbered except in compliance with the restrictions contained in a Voting and Disposition Rights/Dividend Agreement dated as of ________________ between [the Acquiror] and the Federal Savings and Loan Insurance Corporation (a copy of which Agreement is available for inspection at the principal offices of [the Institution]), (b) are subject to an irrevocable proxy as set forth in such Agreement, and (c) are subject to certain other terms, provisions, options and rights, including a prohibition on pledges and other restrictions on transfer included in such Agreement and the possibility of forfeiture.

D. The Acquiror shall not pledge, sell, assign, give, transfer, exchange or otherwise encumber the Shares and shall not cause or permit any Extraordinary Transaction, unless the transferee agrees to be subject to the Acquiror's obligations under this Agreement.

## VI. DEFAULTS

A. If the FSLIC shall determine that a Default has occurred, it shall give notice of the Default to the Acquiror and to the Institution in the manner provided

herein.

B. If such Default is not cured within ninety (90) days or such other time period as provided in Section III, or waived or forborne in the manner provided herein, the FSLIC may exercise any right, or exercise or seek any remedy that is available in law or equity, or by statute or regulation, including but not limited to specific performance and administrative or judicial enforcement proceedings. No failure or delay on the part of the FSLIC in the exercise of any right or remedy shall operate as a waiver or forbearance thereof, nor shall any partial exercise of any right or remedy preclude other or further exercise of any other right or remedy. The Acquiror shall pay any attorneys fees and other reasonable expenses incurred by the FSLIC in exercising its rights or seeking any remedies hereunder.

C. The FSLIC, in its sole discretion, may waive or forbear any past Default hereunder and its consequences, before or after the giving of the notice of Default in the manner provided above, by delivering notice of such waiver or forbearance in writing to the Acquiror, but no such waiver or forbearance shall extend to any Default that occurs subsequent to the date of such waiver or forbearance, and no waiver or forbearance or purported waiver or purported forbearance that is not in writing shall be effective. Any waiver or forbearance of any right, power, or remedy shall not preclude its further exercise.

D. The Acquiror hereby agrees to execute and deliver any documents and to take such other actions as the FSLIC may request in order for the FSLIC to exercise its rights under this Agreement. The foregoing will in no way limit the Acquiror's right to seek judicial relief in connection with a matter related to, or arising under, this Agreement.

## VII. SPECIFIC PERFORMANCE

The Acquiror acknowledges and agrees that the rights reserved to the FSLIC and its representatives under this Agreement are of a special, unique, unusual, and extraordinary character, which gives them a peculiar value, the loss of which cannot be adequately or reasonably compensated for in damages in an action at law, and the breach by the Acquiror of such sections will cause the FSLIC irreparable injury and damage. In the event of such breach, the FSLIC shall be entitled, subject to the procedures and time periods set forth in Sections III, IV, V, and VI of this Agreement, as a matter of right, to require of the defaulting party specific performance of all of the acts and undertakings required hereunder of such party,

including the obtaining of all requisite authorizations to execute or perform this Agreement and to obtain injunctive and other equitable relief in any court of competent jurisdiction (including, without limitation, the United States District Court of Columbia) to prevent the violation or threatened violation of any of the provisions hereof.

## VIII. MISCELLANEOUS PROVISIONS

A. Any notice hereunder shall be in writing and shall be delivered by hand or sent by United States express mail or commercial express mail, postage prepaid, and addressed as follows:

| | |
|---|---|
| If to the Acquiror: | Franklin Financial Group, Inc.<br>622 West First North<br>Morristown, Tennessee 37814 |
| If to the FSLIC: | Principal Supervisory Agent<br>Federal Home Loan Bank<br>of Cincinnati<br>P.O. Box 598<br>Cincinnati, Ohio 45201 |
| If to the Institution: | President and Chief Executive Officer<br>Franklin Federal Savings Bank<br>622 West First North<br>P.O. Box 1839<br>Morristown, Tennessee 37814 |

B. This Agreement shall be deemed a contract made under and governed by Federal law.

C. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective transferees, successors, assigns, heirs, administrators, executors, and trustees.

D. All references to regulations of the Board or the FSLIC used in this Agreement shall include any successor regulation thereto, it being expressly understood that subsequent amendments to such regulations may be made and that such amendments may increase or decrease the Acquiror's obligation under this Agreement.

E. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both of the parties.

F. This Agreement has been duly authorized, executed, and delivered, and constitutes, in accordance with its terms, a valid and binding obligation of the Acquiror

and the FSLIC. It is understood and agreed that this Agreement is a "written agreement entered into with the Corporation" as that phrase is used in Section 407(e) of the National Housing Act (the "NHA"), 12 U.S.C. § 1730(e) (1982).

G. Any rights, powers, and remedies given to the parties by this Agreement shall be in addition to all rights, powers, and remedies given by any applicable statute, regulation, or rule of law.

H. The Supervisory Agent has the authority to act on behalf of the FSLIC in granting approvals, waivers or forbearances, giving notices of default, or taking any other action provided for in this Agreement.

I. This Agreement shall be effective as of the Date of Acquisition.

J. If any provision of this Agreement is invalid or unenforceable, all of the remaining provisions of this Agreement shall nevertheless remain in full force and effect and shall be binding on the Acquirors and the FSLIC.

K. This Agreement, together with any understanding agreed to in writing by the parties, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings of the parties in connection with the subject matter hereof.

L. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute the same instrument, and any party may execute this Agreement by signing any such counterpart.

XI. <u>TERMINATION OF AGREEMENT</u>

The Acquiror's obligations under this Agreement, including the obligations of any subsequent acquiror of the Institution's stock who is subject to the Acquiror's obligations under this Agreement pursuant to Sections D. of this Agreement, shall terminate as follows:

A. The Acquiror's obligations under Sections IV.A., IV.B., IV.C., and IV.D. of this Agreement shall terminate ten years after the Date of Acquisition.

B. The Irrevocable Proxy under Section II of this Agreement and the FSLIC's rights under Section III of this Agreement shall terminate only upon the mutual consent and written agreement of the parties hereto.

Termination of this Agreement shall not preclude the exercise by the FSLIC of any right or remedy hereunder which arose out of a Default that occurred or existed prior to such termination and in respect to which notice of such Default has been given pursuant to Section VII. hereof on or before one year following such termination. In addition, termination of this Agreement shall not terminate any of the Acquiror's obligations arising from any other source including, but not limited to, any other agreement with the FSLIC, or any statute or regulation.

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officer or designated agent on this 12th day of January, 1989.

FRANKLIN FINANCIAL GROUP, INC.

By: ______________________

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION

By: ______________________
Supervisory Agent
Federal Home Loan Bank of Cincinnati



CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER

EXHIBIT à
To Voting and Disposition
Rights/Dividend Agreement

**IRREVOCABLE PROXY**

The undersigned agrees to and does hereby grant to the Executive Director of the Federal Savings and Loan Insurance Corporation ("FSLIC Director") who may designate another person to exercise the FSLIC Director's rights under this proxy, an irrevocable proxy to vote, or to execute and deliver written consents or otherwise act with respect to, all voting securities ("Stock") of Franklin Federal Savings Bank (the "Institution") now owned or hereafter acquired by the undersigned as fully, and to the same extent and with the same effect, as the undersigned might or could do under any applicable laws or regulations governing the rights and powers of stockholders of a savings and loan association, in accordance with, and as provided in, a certain Voting and Disposition Rights/Dividend Agreement, dated January 12, 198_, among the undersigned, and the Federal Savings and Loan Insurance Corporation. The undersigned hereby affirms that this proxy is given as a condition of said Voting and Disposition Rights/Dividend Agreement and in connection with the acquisition of the Institution by the undersigned and as such is coupled with an interest and is, therefore, irrevocable. This proxy may be exercised by the FSLIC Director, with the concurrence of the Office of the General Counsel of the Federal Home Loan Bank Board, at any meeting of the stockholders of the Institution or in any action of such stockholders without a meeting.

Dated this 13th day of January, 1987.

FRANKLIN FINANCIAL GROUP, INC.

By: [signature]

Its: President

REGULATORY CAPITAL MAINTENANCE/DIVIDEND

AGREEMENT

This Agreement is made this 30th day of June, 1988, by and between Hometown Financial, Inc. (the "Acquiror") and the Federal Savings and Loan Insurance Corporation ("FSLIC"), a corporate instrumentality and agency of the United States, which is under the operating direction of the Federal Home Loan Bank Board (the "Board").

WHEREAS, the Acquiror has filed the appropriate applications ("Applications") with the FSLIC for approval of its acquisition of Hometown Federal Savings Bank (the "Institution");

WHEREAS, in reviewing the Applications, the FSLIC must make a determination that the financial and managerial resources and future prospects of the Acquiror and the Institution are not detrimental to the Institution or the insurance risk of the FSLIC;

WHEREAS, in order to assure that the financial and managerial resources and future prospects of the Acquiror and the Institution are such that the acquisition would not be detrimental to the Institution or the insurance risk of the FSLIC and in order to assure that the Acquiror would serve as a source of financial strength to the Institution, the FSLIC requires that the Acquiror agree to maintain the Institution's regulatory capital at regulatorily required levels; and

WHEREAS, the Acquiror is willing to make such commitment in order that the FSLIC will approve the acquisition;

NOW, THEREFORE, in consideration of the FSLIC approving the acquisition of control of the Institution by the Acquiror, the Acquiror agrees as follows:

I. Definitions

The following terms used in this Agreement shall have the following meanings:

A. "Control" means conclusive control or rebuttable control as set forth in 12 C.F.R. § 574.4(a) and (b).

B. "Date of Acquisition" means the effective date on which the Acquiror acquired control of the Institution.

C. "Default" means the failure of the Acquiror to comply with its obligations under Section II. or III. of this Agreement or the breach of any representation or warranty set forth in Section III. of this Agreement.



WOR727 0023 CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

D. "Regulatory Capital" means regulatory capital defined in accordance with 12 C.F.R. § 561.13 or any successor regulation thereto.

E. "Regulatory Capital Requirement" means the Institution's regulatory capital requirement at a given time computed in accordance with 12 C.F.R. § 563.13(b), or any successor regulation thereto, except that during the five-year period following consummation of the acquisition of the Institution, the Regulatory Capital Requirement of the Institution shall take into account forbearances granted by the FHLBB by letter dated December 22, 1987 and those granted by the Principal Supervisory Agent of the Federal Home Loan Bank of Indianapolis by letter dated April 1, 1988.

F. "Regulatory Capital Deficiency" means the amount by which the regulatory capital of the Institution, computed in accordance with 12 C.F.R. § 563.13, is less than the Institution's Regulatory Capital Requirement.

G. "Shares" means all shares of the stock of the Institution that have been acquired by the Acquiror; any securities convertible into any such shares; any options, warrants or other rights for the acquisition of any such shares; and all such shares, securities, options, warrants or rights that may otherwise be issued to or acquired by the Acquiror, whether before or after the Date of Acquisition, together with the certificates or other instruments or agreements evidencing those shares, securities, options, warrants or rights.

H. "Supervisory Agent" means the Supervisory Agent at the Federal Home Loan Bank of Indianapolis.

II. OBLIGATIONS OF ACQUIROR

The Acquiror shall maintain the Institution's Regulatory Capital in compliance with the Regulatory Capital Requirement and the limitations imposed by Section IV. of this Agreement, as follows:

A. During the five (5) year period beginning on the Date of Acquisition, or until such time as the Acquiror completes a public offering of its securities, the Acquiror will cause the Regulatory Capital of the Institution to be maintained at a level at or above the Regulatory Capital Requirement and as necessary, will infuse sufficient additional permanent and non-refundable capital, in a form satisfactory to the Supervisory Agent, to effect compliance with such requirement and cure a Regulatory Capital Deficiency during the first quarter after which the Institution fails to meet its Regulatory Capital Requirement; provided, however, that the Supervisory



WOR727 0024 CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

Agent may, at any time, release the Acquiror from this obligation, in whole or in part, for the Institution's second year of operations following the effective date of the voluntary supervisory conversion if the Supervisory Agent determines that the regulatory capital shortfall was justified given the Institution's business plan and initial capitalization and that such shortfall would not seriously endanger the Institution.

B. Unless written approval has been obtained from the Supervisory Agent, the Institution shall not pay, and the Acquiror shall not accept from the Institution, dividends that exceed 50 percent of the Institution's net income for the fiscal year as reflected in the Institution's quarterly reports to the Board, provided that any dividends permitted under this limitation may be deferred and paid in a subsequent year, but in no event may dividends be paid or stock be repurchased by the Institution that would reduce the Regulatory Capital of the Institution below the Institution's Regulatory Capital Requirement.

## III. REPRESENTATIONS, COVENANTS AND WARRANTIES OF THE ACQUIROR

Acquiror represents, covenants and warrants to the FSLIC that:

A. The information given to the FSLIC by the Acquiror and relied on thereby in connection with the acquisition of control of the Institution is true, accurate, complete and current in all material respects;

B. Without the prior written approval of the Supervisory Agent, the Acquiror shall not convey by gift, sale, exchange or otherwise or take any action to effect a transfer of any of the Shares subsequent to receipt of a notice of default as provided under Section V. of this Agreement or after the Acquiror knows or should have known of the existence of an imminent occurrence of a Default.

C. As of the date of this Agreement, the Shares are free and clear of all liens, security interests and charges.

## IV. DIVIDENDS

Prior to the occurrence of a Default and after any Default that may have occurred and has been expressly cured or waived in writing, the Acquiror shall be entitled to receive all cash dividends and other cash distributions made in connection with the Shares, provided that such payment or distribution is not prohibited or otherwise limited by statute or regulation, including 12 C.F.R. § 563b.3(g)(2) and (3), or by any agreement entered into by the Institution with the FSLIC or its delegates, and



WOR727 0025 CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

provided further that receipt of such dividends is permissible under Section II.B. of this Agreement.

V. DEFAULTS

A. If the FSLIC shall determine that a Default has occurred, it shall give notice of such Default to the Acquiror and to the Institution and afford the Acquiror an opportunity to cure such Default as follows:

1. If the Default arises under Section II.A. of this Agreement, the Acquiror shall infuse into the Institution additional capital in a form satisfactory to the Supervisory Agent, in an amount equal to 100 percent of the Regulatory Capital Deficiency.

2. If the Default arises under Section II.B. or III. of this Agreement, the Acquiror shall correct the situation giving rise to the Default.

B. If such Default is not cured within ninety (90) days or waived in the manner provided herein, the FSLIC may exercise any right, or exercise or seek any remedy that is available in law or equity, or by statute or regulation, including but not limited to specific performance and administrative or judicial enforcement proceedings. No failure or delay on the part of the FSLIC in the exercise of any right or remedy shall operate as a waiver thereof, nor shall any partial exercise of any right or remedy preclude other or further exercise of any other right or remedy. The Acquiror shall pay any attorney fees and other reasonable expenses incurred by the FSLIC in exercising its rights or seeking any remedies hereunder.

C. The FSLIC, in its sole discretion, may waive any past Default hereunder and its consequences, before or after the giving of the notice of Default in the manner provided above, by delivering notice of such waiver in writing to the Acquiror, but no such waiver shall extend to any Default that occurs subsequent to the date of such waiver, and no waiver or purported waiver that is not in writing shall be effective.

D. The Acquiror hereby agrees to execute and deliver any documents and to take such other actions as the FSLIC may request in order for the FSLIC to exercise its rights under this Agreement.

VI. MISCELLANEOUS PROVISIONS

A. Any notice hereunder shall be in writing and shall be delivered by hand or sent by United States mail or

commercial express mail, postage prepaid, and addressed as follows:

If to the Acquiror:

Hometown Financial, Inc.
215 East Main Street
Delphi, Indiana 46923-0218
Attention: Theo R. Webb

If to the FSLIC:

Principal Supervisory Agent
Federal Home Loan Bank
of Indianapolis
115 West Washington Street
Suite 1290
Indianapolis, Indiana 46204

If to the Institution:

Hometown Federal Savings Bank
215 East Main Street
Delphi, Indiana 46923-0218
Attention: Theo R. Webb

B. This Agreement shall be deemed a contract made under and governed by Federal law.

C. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

D. All references to regulations of the Board or the FSLIC used in this Agreement shall include any successor regulation thereto, it being expressly understood that subsequent amendments to such regulations may be made and that such amendments may increase or decrease the Acquiror's obligation under this Agreement.

E. This Agreement has been duly authorized, executed, and delivered, and constitutes, in accordance with its terms, a valid and binding obligation of the Acquiror, the Institution and the FSLIC. It is understood and agreed that this Agreement is a "written Agreement entered into with the Corporation" as that phrase is used in Section 407(e) of the National Housing Act ("NHA"), 12 U.S.C. § 1730(e) (1982).

F. The Supervisory Agent has the authority to act on behalf of the FSLIC in granting approvals or waivers, giving notices of default, or taking any other action provided for in this Agreement.



WOR727 0027 CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

G. This Agreement shall be effective as of the Date of Acquisition.

VII. TERMINATION OF AGREEMENT

Unless otherwise terminated or extended by the mutual consent of the parties hereto, the Acquiror's obligations under this Agreement shall terminate: (1) as a result of a transfer of all of the Acquiror's Shares, or, (2) upon a finding by the FSLIC that the Acquiror's control of the Institution has been terminated; provided that the Acquiror furnishes written notice of such transfer specifically indicating that the Acquiror assents that this Agreement is terminated thereby, at the time the Acquiror transfers the Shares and provided further that the FSLIC agrees that such transfer terminates the Acquiror's control of the Institution within the meaning of Section 408(e) of the NHA, 12 U.S.C. § 1730a(e), and 12 C.F.R. Part 574. Termination of this Agreement shall not preclude the exercise by the FSLIC of any right or remedy hereunder which arose out of a Default that occurred or existed prior to such termination and in respect to which notice of such Default has been given pursuant to Section V. hereof on or before the ninetieth (90th) day following such termination.

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officer or designated agent on this 30th day of June, 1988.

HOMETOWN FINANCIAL, INC.

By: Theo R. Webb
Theo R. Webb, President

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION

By: David L. Hostetler
Supervisory Agent
Federal Home Loan Bank of Indianapolis

LMI:lay:003
/HOMETOWN/CAPMAINT.AGR



WOR727 0028 CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER

CERTIFICATE OF FILING

I hereby certify that on August 8, 2006, a copy of foregoing "DEFENDANT'S SUPPLEMENT TO THE RECORD OF ITS MOTION FOR RECONSIDERATION DATED MARCH 3, 2005," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Elizabeth M. Hosford