# Consolidated Balance Sheets

*June 30, 1992 and 1991 (dollar amounts in thousands)*

| ASSETS | 1992 | 1991 |
|---|---|---|
| Cash and cash equivalents: | | |
| Interest bearing | $ 12,998 | $ 1,087 |
| Non-interest bearing and vault | 8,818 | 5,821 |
| Restricted | 275 | 25 |
| Investments (market value $19,092 and $15,311) | 19,096 | 15,270 |
| Loans receivable (net of allowance for losses of $4,745 and $4,087) | 447,554 | 374,926 |
| Loans and mortgage-backed securities held for sale | 24,724 | 26,767 |
| Mortgage-backed securities (market value $89,665 and $139,356) | 88,015 | 139,119 |
| Accrued interest receivable | | |
| (including $224 and $181 on investments) | 4,067 | 5,120 |
| Office properties and equipment | 9,795 | 10,602 |
| Real estate owned | 6,877 | 8,358 |
| Intangibles | 10,649 | 14,573 |
| Prepaid expenses and other assets | 8,029 | 6,652 |
| Total assets | $640,097 | $608,320 |

| LIABILITIES AND STOCKHOLDERS' EQUITY | 1992 | 1991 |
|---|---|---|
| Deposits | $505,730 | $488,464 |
| Advances from Federal Home Loan Bank | 86,233 | 78,971 |
| Securities sold subject to repurchase agreements | 0 | 19,213 |
| Cashier's checks issued and payable | 4,550 | 4,139 |
| Borrowers' reserves for taxes and insurance | 1,922 | 1,209 |
| Accrued interest payable | 1,261 | 1,426 |
| Accrued expenses and other liabilities | 2,178 | 2,277 |
| Total liabilities | 601,874 | 595,699 |
| Commitments and contingent liabilities | | |
| Preferred stock, $1 par value; 1,000,000 shares authorized; | | |
| 0 and 89,968 shares issued and outstanding | 0 | 90 |
| Common stock, $1 par value; 8,000,000 shares authorized; | | |
| 3,591,743 and 518,819 shares issued and outstanding | 3,592 | 519 |
| Additional paid-in capital | 25,683 | 7,714 |
| Retained earnings | 8,948 | 4,298 |
| Total stockholders' equity | 38,223 | 12,621 |
| Total liabilities and stockholders' equity | $640,097 | $608,320 |

"Confidential Material-Subject to Protective Order" SG 0063102



The accompanying notes are an integral part of the consolidated financial statements.



CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0499

# Consolidated Statements of Income

*For the years ended June 30, 1992, 1991 and 1990 (dollar amounts in thousands, except per share amounts)*

| | 1992 | 1991 | 1990 |
|---|---|---|---|
| Interest income: | | | |
| Loans and mortgage-backed securities | $ 51,155 | $57,049 | $63,684 |
| Investments and cash equivalents | 1,666 | 3,475 | 3,362 |
| FDIC yield maintenance subsidy | 0 | 159 | 483 |
| Total interest income | **52,821** | 60,683 | 67,529 |
| Interest expense: | | | |
| Deposits | 29,396 | 35,057 | 38,941 |
| Short-term borrowings | 2,126 | 7,891 | 11,692 |
| Long-term borrowings | 4,551 | 4,940 | 3,548 |
| Total interest expense | **36,073** | 47,888 | 54,181 |
| Net interest income | **16,748** | 12,795 | 13,348 |
| Provision for loan losses | 1,650 | 150 | 1,100 |
| Net interest income after provision for loan losses | **15,098** | 12,645 | 12,248 |
| Other income: | | | |
| Mortgage banking operations | 5,310 | 4,372 | 3,425 |
| Fees and service charges | 2,916 | 2,466 | 2,011 |
| Loan commitment and origination fees | 0 | 0 | 55 |
| Loan servicing fees | 381 | 651 | 864 |
| Net gain on sales of securities | 3,625 | 255 | 241 |
| Net loss on sale and operation of real estate owned | (476) | (532) | (176) |
| FDIC indemnification for loss on sale of real estate owned | (23) | 155 | (97) |
| Total other income | **11,733** | 7,367 | 6,323 |
| Operating expenses: | | | |
| Employee compensation and benefits | 7,185 | 6,391 | 6,404 |
| Occupancy and equipment | 2,878 | 2,693 | 2,809 |
| Depreciation | 1,200 | 1,142 | 1,029 |
| Amortization of intangibles | 2,333 | 2,710 | 2,881 |
| Other | 4,650 | 4,765 | 4,974 |
| Total operating expenses | 18,246 | 17,701 | 18,097 |
| Income before income taxes and other items | **8,585** | 2,311 | 474 |
| Income tax provision (benefit): | | | |
| Current | 3,222 | 1,899 | 1,424 |
| Deferred | 173 | (1,309) | (1,588) |
| | **3,395** | 590 | (164) |
| Income before extraordinary item and cumulative effect of change in accounting principle | **5,190** | 1,721 | 638 |
| Extraordinary item, early extinguishment of FHLB advances, net of income taxes of $423 | (822) | 0 | 0 |
| Income before cumulative effect of change in accounting principle | **4,368** | 1,721 | 638 |
| Cumulative effect at July 1, 1991 of change in accounting principle | 375 | 0 | 0 |
| Net income | **4,743** | 1,721 | 638 |
| Less preferred stock dividends earned | 93 | 225 | 225 |
| Net income applicable to common shares | **$ 4,650** | $ 1,496 | $ 413 |
| Earnings per common share before extraordinary item and cumulative effect of change in accounting principle | $ 2.20 | $ 2.89 | $ .80 |
| Extraordinary item, net of income taxes | (.35) | .00 | .00 |
| Cumulative effect of change in accounting principle | .16 | .00 | .00 |
| Earnings per common share | **$ 2.01** | $ 2.89 | $ .80 |
| Weighted average shares outstanding | 2,311,941 | 518,453 | 518,298 |



The accompanying notes are an integral part of the consolidated financial statements.

0063103

SG

*Confidential

App. 353

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0500

# Consolidated Statement of Changes in Stockholders' Equity

*For the years ended June 30, 1992, 1991 and 1990 (dollar amounts in thousands, except per share amounts)*

| | Preferred Stock | | Common Stock | | Additional Paid-in | Retained |
|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | Capital | Earnings |
| Balance, June 30, 1989 | 90,168 | $90 | 517,228 | $ 517 | $ 7,708 | $2,389 |
| Cash dividends on preferred stock ($.63 per share) | | | | | | (56) |
| Common shares issued upon exercise of stock options | | | 2,500 | 2 | 17 | |
| Common shares acquired and retired upon exercise of stock options | | | (1,341) | (1) | (10) | |
| Net income | | | | | | 638 |
| Balance, June 30, 1990 | 90,168 | 90 | 518,387 | 518 | 7,715 | 2,971 |
| Conversion of Series B preferred stock to common stock | (200) | | 432 | 1 | (1) | |
| Dividends declared on preferred stock ($4.38 per share) | | | | | | (394) |
| Net income | | | | | | 1,721 |
| **Balance, June 30, 1991** | **89,968** | **90** | **518,819** | **519** | **7,714** | **4,298** |
| **Shares sold to public, net of offering costs** | | | **2,875,000** | **2,875** | **18,077** | |
| **Dividend declared on preferred stock ($1.04 per share)** | | | | | | **(93)** |
| **Conversion of Series B preferred stock into common stock** | **(89,968)** | **(90)** | **197,924** | **198** | **(108)** | |
| **Net income** | | | | | | **4,743** |
| **Balance, June 30, 1992** | **0** | **$ 0** | **3,591,743** | **$3,592** | **$25,683** | **$8,948** |

"Confidential Material-Subject to Protective Order" SG 0063104



The accompanying notes are an integral part of the consolidated financial statements.



CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0501

# Consolidated Statements of Cash Flows

*For the years ended June 30, 1992, 1991 and 1990 (Dollar Amounts in Thousands)*

| | 1992 | 1991 | 1990 |
|---|---|---|---|
| Cash flows from operating activities: | | | |
| Net income | $ 4,743 | $ 1,721 | $ 638 |
| Adjustments to reconcile net income to net cash provided by (used in) operating activities: | | | |
| Provisions for loan and real estate owned losses | 2,041 | 569 | 1,550 |
| Stock dividends on Federal Home Loan Bank stock | (726) | (651) | (633) |
| Net gain on sales of loans and securities | (6,331) | (2,642) | (3,328) |
| Net gain on sales of office properties and equipment | (23) | 0 | 0 |
| Depreciation and amortization | 3,513 | 3,466 | 3,514 |
| Deferred income taxes | (173) | (1,309) | (1,588) |
| Change in: | | | |
| Accrued interest receivable | 1,053 | 1,163 | 261 |
| Accrued interest payable | (165) | (677) | (920) |
| Cashier's checks issued and payable | 410 | (529) | (326) |
| Prepaid expenses and other assets | (835) | 1,802 | (2,712) |
| Accrued expenses and other liabilities | 297 | 1,001 | (5,797) |
| Loans held for sale | 11,888 | (11,517) | 3,091 |
| Purchased loan servicing rights | 38 | 864 | 1,472 |
| Cumulative effect of change in accounting principle | (375) | 0 | 0 |
| Other, net | (579) | 1,061 | 1,352 |
| Net cash provided by (used in) operating activities | 13,976 | (5,678) | (3,426) |
| Cash flows from investing activities: | | | |
| Loans disbursed | (160,054) | (71,760) | (116,464) |
| Loan principal payments | 90,111 | 137,049 | 151,663 |
| Purchase of loans receivable | (6,257) | 0 | 0 |
| Purchase of mortgage-backed securities | (45,343) | (47,645) | (28,379) |
| Mortgage-backed securities principal payments | 18,343 | 10,009 | 9,127 |
| Proceeds from sales of mortgage-backed securities | 72,630 | 12,223 | 19,837 |
| Purchase of investments | (22,324) | (367) | (313) |
| Proceeds from maturities of investments | 19,196 | 3,000 | 2,000 |
| Proceeds from sales of investments | 0 | 10,040 | 3,314 |
| Purchase of office properties and equipment | (392) | (611) | (1,435) |
| Proceeds from sale of office properties and equipment | 917 | 0 | 0 |
| Proceeds from sales of real estate owned | 4,692 | 5,665 | 9,874 |
| Effect on deferred taxes from adoption of SFAS 109 | 2,423 | 0 | 0 |
| Net cash provided by (used in) investing activities | (26,058) | 57,603 | 49,224 |
| Cash flows from financing activities: | | | |
| Net change in NOW, passbook and money market deposits | 10,949 | (6,892) | (9,440) |
| Proceeds from sales of certificates of deposit | 176,025 | 184,856 | 360,265 |
| Payments for maturing certificates of deposit | (196,233) | (200,712) | (425,919) |
| Interest credited to deposits | 26,535 | 32,146 | 34,492 |
| Advances from the Federal Home Loan Bank | 88,800 | 62,000 | 97,000 |
| Repayment of Federal Home Loan Bank advances | (76,000) | (85,600) | (96,000) |
| Net change in overnight Federal Home Loan Bank advances | (4,800) | (10,500) | 15,300 |
| Net change in securities sold subject to repurchase agreements | (19,213) | (56,688) | (11,444) |
| Net change in borrowers' reserves | 713 | (286) | 1,024 |
| Proceeds from sale of common stock | 29,952 | 0 | 0 |
| Cash dividends on preferred stock | (488) | 0 | (56) |
| Net cash provided by (used in) financing activities | 26,440 | (81,676) | (34,778) |
| Net increase (decrease) in cash and cash equivalents | 14,358 | (29,751) | 11,020 |
| Cash and cash equivalents at beginning of year | 6,933 | 36,684 | 25,664 |
| Cash and cash equivalents at end of year | $ 21,291 | $ 6,933 | $ 36,684 |
| Supplemental disclosures: | | | |
| Cash paid during the year for: | | | |
| Interest | $ 36,238 | $ 48,565 | $ 55,155 |
| Income taxes | $ 2,033 | $ 7 | $ 52 |
| Noncash investing activities: | | | |
| Loans converted into real estate owned | $ 3,329 | $ 4,211 | $ 4,427 |



The accompanying notes are an integral part of the consolidated financial statements.

SG 0063105

"Confi ... e Order"

App. 355

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0502

# Notes to Consolidated Financial Statements

*(Dollar amounts in thousands, except per share amounts)*

## 1. SIGNIFICANT ACCOUNTING POLICIES

The accounting and financial reporting policies of Sterling Savings Association and its subsidiaries ("Sterling") conform to generally accepted accounting principles and to general practice within the savings and loan industry. The following is a description of Sterling's significant accounting policies.

### Principles of Consolidation

The accompanying consolidated financial statements include the accounts of Sterling and all of its wholly and majority-owned subsidiaries.

The purchase price of acquired companies has been allocated to the assets and liabilities acquired based upon their estimated fair values at the date of acquisition. All significant intercompany accounts and transactions have been eliminated in consolidation.

### Cash Equivalents

Sterling considers a cash equivalent to be any highly liquid debt instrument purchased with an original maturity of three months or less.

### Loans and Mortgage-Backed Securities Held for Sale

Mortgage loans and mortgage-backed securities held for sale are carried at the lower of amortized cost or market value as determined on an aggregate basis. Any loan that management determines will not be held for the foreseeable future is classified as held for sale at the time of origination. Market value is determined for loan pools of common interest rates using published quotes as of the close of business. Unrealized losses on mortgage loans and mortgage-backed securities held for sale are included in the consolidated statements of operations and retained earnings.

### Investments and Mortgage-Backed Securities

Investments are carried at cost, adjusted for amortization of premiums or accretion of discounts. Mortgage-backed securities are carried at their remaining unpaid principal balance, net of unamortized premium or unaccreted discount. Management has the ability and it is their intent to hold these securities until maturity. However, these securities are occasionally sold prior to their maturity in response to unforeseen market conditions in order to limit interest rate risk. If management determines to sell a security, it is classified as held for sale and carried at the lower of cost or market until it is sold. Premiums are amortized and discounts are accreted using the level interest yield method over the estimated remaining term of the underlying security. Gains and losses on sales of investments and mortgage-backed securities are recognized based on specific identification.

### Provision for Loan Losses

A provision for loan losses, when determined necessary, is charged to income based on management's evaluation of the potential losses that may occur in its loan portfolio. Such evaluation, which includes a review of all loans which may not be fully collectible, considers, among other matters, the estimated net realizable value of the underlying collateral.

### Real Estate Owned

Property acquired by foreclosure or deed in lieu of foreclosure is recorded at the lower of estimated fair value, based on appraisal of such property, or the principal balance of the defaulted loan. Development, improvement and direct holding costs relating to the property are capitalized. The carrying value of such property is continuously evaluated and, if necessary, allowances are established to reduce the carrying value to fair value less estimated direct holding costs and selling expenses.

### Office Properties and Equipment

Office properties and equipment are carried at cost less accumulated depreciation. Depreciation is computed using the straight-line method over the estimated useful lives of the assets. Expenditures for new properties and equipment and major renewals or betterments are capitalized. Expenditures for repairs and maintenance are charged to expense as incurred. When property or equipment is sold or retired, the cost and related accumulated depreciation are removed from the respective accounts, and the resulting gains or losses are reflected in income.

### Loan Origination and Commitment Fees

Loan origination fees, net of certain specifically defined direct loan origination costs, are deferred and recognized as interest income using the level interest yield method over the contractual term of each loan adjusted for actual loan prepayment experience. If the related loan is sold, the remaining net amount deferred, which is part of the basis of the loan, is considered in determining the gain or loss on sale.



SG063106

App. 356

"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0503

Loan commitment fees are deferred until the expiration of the commitment period unless management believes there is a remote likelihood that the underlying commitment will be exercised, in which case the fees are amortized to fee income using the straight-line method over the commitment period. If a loan commitment is exercised, the deferred commitment fee is accounted for in the same manner as a loan origination fee. Deferred commitment fees associated with expired commitments are recognized as fee income.

## Intangibles

Identified intangibles, which represent separately identifiable intangible assets attributable to depositor relationships that existed at the date of an acquisition, are amortized on a straight-line basis over the estimated life of the depositor relationships acquired (eight years). Accumulated amortization of identified intangibles was $2,984 and $2,140 at June 30, 1992 and 1991, respectively.

Unidentified intangibles are amortized using the level interest yield method over the estimated remaining life (assuming prepayments) of the long-term interest-bearing assets (loans receivable and mortgage-backed securities) acquired (generally twelve years). Accumulated amortization of unidentified intangibles was $7,911 and $6,362 at June 30, 1992 and 1991, respectively.

## Mortgage Banking Operations

Sterling originates or purchases and sells loans and participating interests in loans, generally with the servicing rights retained, to provide additional funds for general corporate purposes and to generate servicing income. Loans and participating interests therein committed or held for sale are carried at the lower of cost or market value.

Sterling recognizes a gain or loss on these loan sale transactions which includes a component reflecting the differential between the contractual interest rate of the loan and the interest rate which will be received by the investor. The present value of the estimated future profit for servicing the loans, together with the normal servicing fee rate ("deferred premium"), is taken into account in determining the amount of gain or loss on the sale of loans. At June 30, 1992 and 1991, net deferred premiums on loans sold and purchased servicing of $741 and $564, respectively, were included in prepaid expenses and other assets.

Deferred premiums on loan sales and the capitalized costs of purchased servicing rights are both amortized to expense in proportion to the estimated future stream of net servicing income, assuming loan prepayments.

Premiums paid in connection with option transactions, entered into as an anticipatory hedge of movement in interest rates in connection with mortgage-banking operations, are deferred and amortized to expense over the option period. At June 30, 1992 and 1991, net deferred premiums of $193 and $173, respectively, associated with the purchase of put options on $45,000 and $31,000 of unspecified mortgage-backed securities, were included in prepaid expenses and other assets.

## Income Taxes

Sterling and its subsidiaries file a consolidated income tax return. In February 1992, the Financial Accounting Standards Board ("FASB") issued Statement of Financial Accounting Standards ("SFAS") 109, "Accounting for Income Taxes," which requires an asset and liability approach for financial accounting and reporting for income taxes. One requirement of SFAS 109 is that the tax benefit related to acquired deductible temporary differences and pre-acquisition net operating loss carryforwards shall first be applied to reduce goodwill related to that acquisition to zero. Accordingly, goodwill has been reduced as a result of the tax benefits related to these items.

Sterling elected to adopt SFAS 109 effective July 1, 1991. The effect of initially applying the new standard was reported as the effect of a change in accounting principle. The cumulative effect of this change is reported separately in the June 30, 1992 consolidated statement of income. As required, first, second and third quarters of fiscal 1992 were restated for the effect of this change. Restatement of prior fiscal years' financial statements is not required as a result of this change.

## Earnings Per Share

Net earnings per share is equal to net income, reduced by dividends earned on preferred stock during the year, divided by the weighted average number of shares of common stock and common stock equivalents (stock options and warrants) outstanding during each year.

## Reclassifications

Certain prior year balances have been reclassified to conform with the fiscal year 1992 presentation. These reclassifications had no effect on retained earnings or net income as previously reported.







"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0504

## 2. REGULATORY MATTERS

Sterling has previously reported on a legal proceeding against the Office of Thrift Supervision ("OTS") and the Federal Depository Insurance Corporation ("FDIC") regarding the treatment of capital and accounting forbearances granted as an inducement to acquire insolvent thrift institutions (Note 18). On April 14, 1992, the United States Court of Appeals for the Ninth Circuit vacated the preliminary injunction issued in May 1990 by the United States District Court and remanded the case to the District Court for further proceedings.

As a result of Sterling's capital enhancement measures during the quarter ended December 31, 1991, Sterling exceeds all FIRREA capital requirements (Note 17) and its primary regulator, the OTS, has rescinded all "troubled thrift" restrictions which were imposed in the past. Therefore, the pending legal proceeding against the OTS and the FDIC is not expected to have a material adverse effect on Sterling regardless of the ultimate outcome of the case.

## 3. EXTRAORDINARY CHARGE

In January 1992, Sterling repaid $25 million of advances from the Federal Home Loan Bank of Seattle ("FHLB") prior to the scheduled maturity dates. The repayment was made using proceeds from new advances, at lower interest rates, from the FHLB. In accordance with the advance agreement, Sterling paid $1.2 million in prepayment penalties. The related tax benefit of $423 has been deducted from the charge for financial statement presentation.

## 4. INVESTMENTS AND MORTGAGE-BACKED SECURITIES

A summary of carrying and market values of investments follows:

| | **June 30, 1992** | | June 30, 1991 | |
|---|---|---|---|---|
| | **Carrying Value** | **Market Value** | Carrying Value | Market Value |
| U.S. Government and agency obligations | **$11,444** | **$11,440** | $ 8,344 | $ 8,385 |
| Federal Home Loan Bank stock, at cost | **7,622** | **7,622** | 6,896 | 6,896 |
| Other | **30** | **30** | 30 | 30 |
| | **$19,096** | **$19,092** | $15,270 | $15,311 |

At June 30, 1992 and 1991, the investment portfolio includes unrealized gains of $48 and $41, respectively, and unrealized losses of $52 and $0, respectively. The U.S. Government and agency obligations mature in 1 to 5 years. FHLB stock can only be sold back at par to the FHLB or to another member institution. At June 30, 1992, U.S. Government and agency obligations with an aggregate carrying value and market value of $1,128 and $1,137, respectively, were pledged as collateral for the treasury tax and loan account in accordance with Federal Reserve Board regulations.

At June 30, 1992 and 1991, the mortgage-backed securities portfolio, all of which are issued by U.S. Government agencies, includes unrealized gains of $2,037 and $1,396, respectively, and unrealized losses of $387 and $1,159, respectively. The maturity of mortgage-backed securities is dependent on the payments on the underlying mortgages. At June 30, 1992, $10,754 of the mortgage-backed securities have balloon maturities of 1 to 5 years and $19,560 have balloon maturities of approximately 7 years. The remainder of the mortgage-backed securities amortize to the maturity of the security. Proceeds from sales of mortgage-backed securities during 1992 were $72,630. Gross gains of $3,643 and gross losses of $18 were realized on those sales. At June 30, 1992, mortgage-backed securities with an aggregate carrying value and market value of $6,613 and $6,954, respectively, were pledged as collateral for wholesale public funds deposits in accordance with Washington Public Deposit Protection Commission regulations. Additionally, Sterling periodically utilizes MBS as security for other borrowing transactions (see Notes 10 and 11).





SG 0063108

"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0505

## 5. LOANS RECEIVABLE

The components of loans receivable are as follows:

| | June 30, 1992 | June 30, 1991 |
|---|---|---|
| Real estate loans: | | |
| Variable rate: | | |
| 1-4 unit residential | $134,131 | $122,382 |
| 5 or more unit residential | 24,193 | 21,705 |
| Commercial | 57,086 | 68,876 |
| Land and other | 839 | 1,291 |
| Fixed rate: | | |
| Conventional 1-4 unit residential | 132,113 | 59,280 |
| 1-4 unit insured by FHA/VA | 10,246 | 9,411 |
| 5 or more unit residential | 12,998 | 11,737 |
| Commercial | 22,327 | 21,078 |
| Land and other | 5,174 | 6,291 |
| Construction: | | |
| 1-4 unit residential | 5,058 | 6,865 |
| 5 or more unit residential | 4,315 | 5,684 |
| Commercial | 4,424 | 7,579 |
| Other real estate loans and contracts | 2,261 | 3,661 |
| | 415,165 | 345,840 |
| Other loans: | | |
| Commercial loans | 14,485 | 14,353 |
| Commercial and personal lines of credit | 7,780 | 7,320 |
| Consumer loans | 19,273 | 14,774 |
| Loans secured by deposits | 2,007 | 2,323 |
| | 43,545 | 38,770 |
| Total loans receivable | 458,710 | 384,610 |
| Undisbursed portion of loans in process | (3,699) | (2,986) |
| Deferred loan fees, net of direct loan origination costs | (288) | (753) |
| Discount on loans acquired pursuant to purchase transactions (see Note 12) | (2,424) | (1,858) |
| Allowance for losses | (4,745) | (4,087) |
| Loans receivable | $447,554 | $374,926 |

At June 30, 1992, 1991 and 1990, Sterling serviced loans for the benefit of others amounting to $302,720, $123,792 and $175,973, respectively. These amounts are not included in loans receivable. During the years ended June 30, 1992, 1991 and 1990, Sterling sold the rights to service approximately $172,800, $285,000 and $312,100, respectively, of loans serviced for others and the gains on such sales are included in mortgage banking operations.

Included in loans receivable are loans to directors and executive officers. Following is an analysis of the activity in loans to directors and executive officers:

| | Year Ended June 30, 1992 | 1991 | 1990 |
|---|---|---|---|
| Balance, beginning of year | $782 | $815 | $869 |
| Additions | 6 | 63 | 104 |
| Repayments | (196) | (96) | (158) |
| Balance, end of year | $592 | $782 | $815 |

Sterling grants residential, commercial real estate, consumer and commercial loans throughout Washington and bordering areas, primarily northwestern Oregon. Loans originated outside this area are primarily for immediate sale into the secondary market.







CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0506

## 6. REAL ESTATE OWNED

The components of real estate owned are as follows:

| | June 30, 1992 | June 30, 1991 |
|---|---|---|
| Residential real estate, acquired through foreclosure | $ 73 | $ 513 |
| Commercial real estate, acquired through foreclosure | 6,858 | 7,529 |
| Former branch buildings held for sale | 739 | 569 |
| Other | 208 | 231 |
| | 7,878 | 8,842 |
| Allowance for losses | (1,001) | (1,011) |
| FDIC assistance | 0 | 527 |
| | $6,877 | $8,358 |

Costs incurred to acquire and improve real estate of $587 and $404 had been capitalized as of June 30, 1992 and 1991, respectively.

## 7. ALLOWANCES FOR LOAN AND REAL ESTATE OWNED LOSSES

The following is an analysis of the changes in the allowances for loan and real estate owned losses:

| | Loan | Real Estate Owned | Total |
|---|---|---|---|
| Balance, June 30, 1989 | $ 6,450 | $ 819 | $ 7,269 |
| Provision for 1990 | 1,100 | 450 | 1,550 |
| Amounts written off | (910) | (458) | (1,368) |
| Recoveries | 9 | 169 | 178 |
| Balance, June 30, 1990 | 6,649 | 980 | 7,629 |
| Provision for 1991 | 150 | 419 | 569 |
| Amounts written off | (2,722) | (388) | (3,110) |
| Recoveries | 10 | 0 | 10 |
| **Balance, June 30, 1991** | **4,087** | **1,011** | **5,098** |
| **Provision for 1992** | **1,650** | **391** | **2,041** |
| **Amounts written off** | **(1,028)** | **(401)** | **(1,429)** |
| **Recoveries** | **36** | **0** | **36** |
| **Balance, June 30, 1992** | **$4,745** | **$1,001** | **$5,746** |



SG 0063110

"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0507

The following is a summary of loans that are not performing in accordance with their original contractual terms:

| | June 30, 1992 | 1991 | 1990 |
|---|---|---|---|
| Nonaccrual loans (1) | **$ 6,703** | $ 8,280 | $10,771 |
| Accruing loans which are past due 90 days or more | **31** | 50 | 1,104 |
| Restructured loans (2) | **337** | 2,452 | 1,299 |
| Total nonperforming loans | **$ 7,071** | $10,782 | $13,174 |

(1) The accrual of interest is stopped on any loan when either principal or interest becomes 90 days past due, unless it meets specific criteria. Any accrued and uncollected interest is eliminated from income at that time. A loan may be put in nonaccrual status sooner than this standard would dictate if, in management's judgment, that loan may be uncollectible. Such interest is then recognized as income only if it is ultimately collected.

At June 30, 1992 and 1991, nonaccrual loans included $4,499 and $5,214, respectively, relating to acquired institutions (see Note 18).

(2) Restructured loans occur when Sterling has compromised the contractual loan terms to provide a reduction in the rate of interest and, in most instances, an extension of payments of principal or interest, or both, because of a deterioration in the financial position of the borrower. Restructured loans performing in accordance with their new terms are not included in nonaccrual loans unless concern exists as to the ultimate collection of principal or interest.

Additional gross interest income of $640 would have been recorded during the year ended June 30, 1992, if nonaccrual and restructured loans had been current in accordance with their original contractual terms. Interest income of $271 was recorded during the year ended June 30, 1992 in connection with these loans.

## 8. OFFICE PROPERTIES AND EQUIPMENT

The components of office properties and equipment are as follows:

| | June 30, 1992 | 1991 | Estimated Useful Life |
|---|---|---|---|
| Buildings and improvements | **$6,854** | $ 7,329 | 20-40 years |
| Furniture, fixtures and equipment | **5,846** | 5,489 | 3-10 years |
| Automobiles | **63** | 55 | 3-5 years |
| Leasehold improvements | **1,088** | 1,040 | 5-10 years |
| Equipment under capital lease | **0** | 82 | 5 years |
| | **13,851** | 13,995 | |
| Less accumulated depreciation and amortization | **5,683** | 5,168 | |
| | **8,168** | 8,827 | |
| Land | **1,627** | 1,775 | |
| | **$9,795** | $10,602 | |





"Confidential Material-Subject to Protective Order" SG 0063111

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0508

## 9. DEPOSITS

The components of deposits are as follows:

| | June 30, 1992 | 1991 |
|---|---|---|
| Commercial NOW accounts (non-interest bearing) | $ 7,936 | $ 3,973 |
| NOW accounts, 3.75% and 5.00%, respectively | 45,848 | 36,119 |
| Passbook accounts, 4.00% and 5.25%, respectively | 54,941 | 40,993 |
| Money market demand accounts, 3.50% to 3.80%; and 5.25% to 5.35%, respectively | 31,168 | 26,793 |
| | 139,093 | 107,878 |
| Certificate accounts: | | |
| 3.00 to 5.99% | 193,382 | 8,671 |
| 6.00 to 6.99% | 101,112 | 90,855 |
| 7.00 to 7.99% | 31,736 | 95,682 |
| 8.00 to 8.99% | 29,439 | 173,900 |
| 9.00 to 9.99% | 2,977 | 3,738 |
| 10.00 to 10.99% | 2,515 | 2,360 |
| 11.00 to 11.99% | 3,229 | 3,215 |
| 12.00% and over | 1,956 | 1,783 |
| | 366,266 | 380,204 |
| Net premium on deposits assumed pursuant to purchase transactions (Note 12) | 371 | 382 |
| | $505,730 | $488,464 |

The weighted average rate paid on deposit accounts is 5.28% and 7.05% at June 30, 1992 and 1991, respectively.

At June 30, 1992, the amounts of scheduled maturities of certificate accounts were as follows:

| Year Ending June 30, | Weighted Average Interest Rate | Amount |
|---|---|---|
| 1993 | 5.96% | $ 285,212 |
| 1994 | 6.96 | 34,550 |
| 1995 | 7.80 | 12,934 |
| 1996 | 8.28 | 9,421 |
| 1997 | 7.28 | 10,757 |
| Thereafter | 7.93 | 13,392 |
| | 6.29% | $366,266 |

At June 30, 1992 and 1991, certificate accounts included accounts with a minimum balance of $100 ("Jumbos") of $36,417 and $22,405, respectively.

The components of interest expense on deposits are as follows:

| | Year Ended June 30, 1992 | 1991 | 1990 |
|---|---|---|---|
| NOW accounts | $ 1,509 | $ 1,527 | $ 1,633 |
| Passbook accounts | 2,106 | 2,190 | 2,471 |
| Money market demand accounts | 1,345 | 1,604 | 2,024 |
| Certificate accounts | 24,436 | 29,736 | 32,813 |
| | $29,396 | $35,057 | $38,941 |

App. 362



"Confidential Material Subject to Protective Order" S G 0063112

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0509

## 10. ADVANCES FROM FEDERAL HOME LOAN BANK

The advances from the Federal Home Loan Bank at June 30, 1992 are repayable as follows:

| Year Ending June 30, | Weighted Average Interest Rate | Amount |
|---|---|---|
| 1993 | 9.00% | $ 12,000 |
| 1994 | 6.52 | 48,933 |
| 1995 | 6.01 | 21,000 |
| 1996 | 8.20 | 3,000 |
| 1997 | 8.40 | 1,300 |
| | 6.83% | $86,233 |

The weighted average interest rate at June 30, 1991 was 8.75%.

The advances are collateralized by eligible assets with a market value equal to a specified percentage of the amount outstanding. Assets eligible for collateral are qualifying real estate loans, mortgage-backed securities and U.S. Government obligations. At June 30, 1992, Sterling was part of a credit program under which it is required to specifically pledge collateral with a market value equal to a range between 100% and 125% of outstanding advances. At June 30, 1992, Sterling had excess collateral available to support an additional $38 million of advances. Eligible assets that are pledged for collateral at June 30, 1992 are as follows:

| | |
|---|---|
| Qualifying real estate loans | $ 88,698 |
| Mortgage-backed securities (market value $59,510) | 58,084 |
| | $146,782 |

## 11. SECURITIES SOLD SUBJECT TO REPURCHASE AGREEMENTS

Sterling enters into sales of securities under agreements to repurchase (reverse repurchase agreements). Fixed-coupon reverse repurchase agreements are treated as financings, and the obligations to repurchase securities sold are reflected as a liability in the balance sheet. The dollar amount of securities underlying the agreements remains in the applicable asset accounts. There were no outstanding reverse repurchase agreements at June 30, 1992. At June 30, 1991, securities sold subject to repurchase agreements (all of which call for repurchasing the same security) included investments and mortgage-backed securities with an aggregate carrying value of $20,874 (aggregate market value of $20,359). These agreements had a weighted-average interest rate of 6.15%. Substantially all of Sterling's reverse repurchase agreements at June 30, 1991 were transacted with the Federal Home Loan Mortgage Corporation ("FHLMC"). The mortgage-backed securities underlying these agreements were held by FHLMC. The average balance of securities sold subject to repurchase agreements was $2,437, $48,902 and $73,402 during the years ended June 30, 1992, 1991 and 1990, respectively. The maximum amount outstanding at any month-end during the years ended June 30, 1992, 1991 and 1990 was $19,250, $71,997 and $92,128, respectively.

## 12. INCOME TAXES

As discussed in Note 1, Sterling adopted SFAS 109 as of July 1, 1991. SFAS 109 establishes financial accounting and reporting standards for the effects of income taxes that result from an enterprise's activities during the current and preceding years. It requires an asset and liability approach for financial accounting and reporting for income taxes. Sterling has implemented SFAS 109 for the fiscal year ended June 30, 1992. In accordance with this implementation, Sterling has recorded $7.7 million in deferred tax assets and $2.9 million in deferred tax liabilities at June 30, 1992, as well as recording the cumulative effect of $375 in income for fiscal 1992. Sterling recorded an additional $514 in income during fiscal 1992 due to the implementation of SFAS 109. No valuation allowance has been established to reduce the deferred tax assets, since it is more likely than not these assets will be realized. Also in accordance with the implementation of SFAS 109, Sterling has applied $1.6 million to reduce the balance of its goodwill. The cumulative effect of this change is reported separately in the fiscal 1992 consolidated statement of income and prior years' financial statements have not been restated.

In accordance with SFAS 109, deferred income taxes for fiscal 1992 reflect the impact of temporary differences between values recorded as assets and liabilities for financial reporting purposes and values utilized for remeasurement in accordance with tax laws. These temporary differences include purchase valuation amounts and other items not previously utilized in the determination of deferred income taxes under previously applicable generally accepted accounting principles. Accordingly, certain purchase valuation amounts have been modified as a result of the implementation of SFAS 109.





SG 0063113

"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0510

## 12. INCOME TAXES (CON'T)

A reconciliation of the statutory income tax rate to the consolidated effective income tax rate and a reconciliation of income tax expense and the amount of income taxes computed by applying the statutory federal corporate tax rate to income before income taxes and extraordinary items follow:

| | Year Ended June 30, | | | | | |
|---|---|---|---|---|---|---|
| | 1992 | | 1991 | | 1990 | |
| | Amount | % | Amount | % | Amount | % |
| Income tax provision at federal statutory rate | $2,919 | 34.0% | $785 | 34.0% | $ 161 | 34.0% |
| Tax effect of: | | | | | | |
| Bad debt deduction | 0 | | (1,104) | (47.8) | (1,453) | (306.5) |
| Amortization of fair market value adjustments and intangibles arising from purchase acquisitions | 506 | 5.9 | 827 | 35.8 | 946 | 199.5 |
| Premium (discount) attributed to acquired assets sold | 0 | | 117 | 5.1 | 340 | 71.7 |
| Tax-exempt yield subsidy payments received | 0 | | (54) | (2.3) | (164) | (34.6) |
| Other, net | (30) | (0.3) | 19 | .8 | 6 | 1.3 |
| | $3,395 | 39.6% | $590 | 25.6% | $(164) | (34.6)% |

This tax effect of the primary temporary differences giving rise to Sterling's deferred tax assets and liabilities for 1992 is as follows:

| | Asset | Liability |
|---|---|---|
| Net operating loss carryforward | $ 408 | |
| Allowance for loan losses | 5,657 | |
| Office properties and equipment | | $ 435 |
| Equity in losses of partnerships | | 402 |
| Hedging premiums | 168 | |
| Purchase accounting discount or premium | 941 | 1,993 |
| Deferred loan fees | — | 36 |
| Tax credit carryforwards | 304 | |
| Other | 204 | |
| **Total deferred income taxes** | **$7,682** | **$2,866** |

For tax return purposes, Sterling had available at June 30, 1992 acquired tax net operating loss carryforwards of approximately $1.2 million which expire on June 30, 2003. Pursuant to Internal Revenue Code Section 382 limitations, Sterling's utilization of tax net operating loss and tax credit carryforwards are currently limited to an aggregate maximum of approximately $393 annually.

## 13. EMPLOYEE SAVINGS PLAN

Sterling maintains an employee savings plan under section 401(k) of the Internal Revenue Code. Substantially all employees are eligible to participate in the plan subject to certain requirements. Under the plan, employees may elect to contribute up to 8% of their salary and Sterling will make a matching contribution equal to 25% of the employee's contribution. Each employee may make a supplemental contribution of an additional 2% of their salary. All contributions vest immediately. Employees have the option of directing that their contributions be invested in a fixed income security account, an equity security account or Sterling's common stock. During the years ended June 30, 1992, 1991 and 1990, Sterling contributed $54, $49 and $53, respectively, to the employee savings plan.

## 14. COMMITMENTS

At June 30, 1992, Sterling had loan commitments to borrowers and brokers totaling $44,828, including $32,999 for fixed rate loans and $11,829 for variable rate loans. Substantially all loan commitments have interest rates that float with the market until closing or until committed for sale in the secondary market. At June 30, 1992, commitments to secondary market institutions to sell fixed rate loans totaled $23,350. Commitments, which are disbursed subject to certain limitations, extend over various periods of time, with the majority of funds being disbursed within a twelve-month period. Substantially all of the commitments are for single family residential loans that have credit risk similar to Sterling's existing portfolio.



App. 364 SG 0063114

"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0511

Sterling limits market risk (risk of fluctuating interest rates affecting the market value of an asset) on commitments to originate or buy fixed rate mortgage loans through the use of option transactions. At June 30, 1992, Sterling had purchased options to deliver $45,000 of mortgage-backed securities (from underlying fixed rate residential mortgages) at set prices, which, in conjunction with commitments to sell specific loans, eliminates a majority of the market risk on fixed rate commitments.

At June 30, 1992, Sterling had mandatory forward commitments from the FHLB for $20,000 of fixed rate advances. These commitments mature in fiscal year 1993. These advances have a weighted average rate of 5.9% and mature in fiscal years 1994 through 1996.

At June 30, 1992, Sterling had sold approximately $9,045 of mortgage-backed securities to be delivered in July 1992 and has classified these as held for sale at June 30, 1992.

At June 30, 1992, Sterling had made available various secured and unsecured commercial and personal lines of credit of approximately $12,349, of which the undisbursed portion is approximately $4,571. These lines of credit provide for periodic adjustment to market rates of interest, and have credit risk similar to Sterling's existing portfolio.

Rental expense for office properties under operating leases was $920, $865 and $933 for the years ended June 30, 1992, 1991 and 1990, respectively. Future minimum rental commitments as of June 30, 1992, under noncancelable operating leases with initial or remaining terms of more than one year, are as follows:

| Year Ending June 30, | |
|---|---|
| 1993 | $1,003 |
| 1994 | 805 |
| 1995 | 537 |
| 1996 | 441 |
| 1997 | 364 |
| Thereafter | 1,947 |
| | **$5,097** |

## 15. INCENTIVE STOCK OPTIONS

Sterling has granted options to purchase shares of its common stock as summarized in the table below. All options granted become exercisable one year after the date of grant (all options outstanding are exercisable at June 30, 1992).

| | Number of Shares (A) | Option Price Per Share | Expiration Date |
|---|---|---|---|
| Balance, June 30, 1989 | 48,500 | $7.68-$10.21 | 1989-1998 |
| Options granted | 10,750 | $8.75 | 1993 |
| Options granted | 2,000 | $8.75 | 1999 |
| Options exercised | (2,500) | $7.68 | 1989 |
| Options cancelled | (500) | $8.75 | 1993 |
| Balance, June 30, 1990 | 58,250 | $7.68-$10.21 | 1990-1999 |
| Options granted | 11,500 | $5.00 | 1994 |
| Options granted | 4,000 | $5.00 | 2000 |
| Options cancelled | (5,000) | $5.00-$10.21 | 1991-1994 |
| Options expired | (9,500) | $9.72-$10.21 | 1991 |
| **Balance, June 30, 1991** | **59,250** | **$5.00-$10.21** | **1991-2000** |
| **Options granted** | **16,750** | **$8.25** | **1995** |
| **Options granted** | **6,500** | **$8.25** | **2001** |
| **Options expired** | **(8,250)** | **$9.90** | **1992** |
| **Balance, June 30, 1992** | **74,250** | **$5.00-$10.21** | **1993-2001** |

(A) Stock options for a total of 38,250 shares have been granted in tandem with a corresponding number of stock appreciation rights. These rights entitle the recipient to payment for the increase in market value of the stock, above the option price, at the date of exercise. Payment is to be made in cash or in the form of newly issued common stock, or any combination thereof. The exercise of either rights or options serves to cancel the other. Since the current market value exceeds the exercise price, compensation expense of $76 has been accrued at June 30, 1992 in connection with these stock appreciation rights.

## 16. PREFERRED STOCK

During the year ended June 30, 1992, Sterling exercised its option and converted each share of Series B cumulative, convertible preferred stock into 2.2 shares of common stock. All accumulated dividends as of the conversion date were declared and paid. Had this conversion occurred at the beginning of the fiscal year, there would have been no material effect on earnings or earnings per share as reported.

## 17. REGULATORY CAPITAL

In connection with the insurance of its deposits by the FDIC and general regulatory oversight by the OTS, Sterling is required to maintain minimum levels of regulatory capital.

As an inducement to acquire insolvent thrift institutions in the past, Sterling's regulators allowed it to include certain items in the calculation of its regulatory capital (see Note 18). The OTS has taken the position that the right to include such items in the calculation of regulatory capital was eliminated by FIRREA. Sterling's beliefs on how its regulatory capital should now be computed differ from the OTS' position. Sterling believes that the Acquisition Agreements for the acquisitions of several troubled institutions, and the various forbearances included therein, define the methodology for computing its regulatory capital requirements through December 31, 1993. Based on compliance with these Acquisition Agreements, Sterling's computation of its regulatory capital at June 30, 1992 is as follows:

| | Amount | Percent of Assets |
|---|---|---|
| Total stockholders' equity | $ 38,223 | 5.87% |
| Adjustment for amortization of goodwill under regulatory accounting | (1,980) | (.30) |
| Contractual regulatory capital (FDIC cash assistance payments) | 13,480 | 2.07 |
| | 49,723 | 7.64 |
| Computed regulatory capital | | |
| Minimum regulatory capital required under contractual acquisition agreements (specifically Central Evergreen Business Plan) | 25,730 | 3.94 |
| Regulatory capital surplus | **$23,993** | **3.70%** |

Sterling exceeds all current and fully phased-in capital requirements even if the OTS interpretation of the FIRREA requirements were applicable to Sterling and if the agreements were not binding on the regulators. The following tables set forth Sterling's tangible capital, core capital and risk-based capital at June 30, 1992, computed in accordance with the OTS capital regulations without giving effect to forbearance or capital provisions of the Acquisition Agreements (Note 18), and compares these with Sterling's tangible, core and risk-based capital requirements, under OTS capital regulations as currently in effect and as scheduled to be fully phased-in over a period ending December 31, 1994.

| | Tangible Capital at June 30, 1992 (Unaudited) | | | |
|---|---|---|---|---|
| | Current Requirements | | Fully Phased-in Requirements | |
| | Amount | Ratio (1) | Amount | Ratio (1) |
| Total Shareholders' Equity | $ 38,223 | 6.07% | $ 38,223 | 6.07% |
| Less: | | | | |
| Intangibles (2) | (10,649) | (1.69) | (10,649) | (1.69) |
| Nonqualifying capital (3) | (408) | (.06) | (408) | (.06) |
| Shares purchased by Deferred Compensation Plan, nonvested portion (4) | (236) | (.05) | (236) | (.05) |
| Investment in non-includable subsidiary | (374) | (.06) | (374) | (.06) |
| Total tangible capital | 26,556 | 4.21 | 26,556 | 4.21 |
| Tangible capital requirement | 9,452 | 1.50 | 9,452 | 1.50 |
| Tangible capital excess | **$17,104** | **2.71%** | **$17,104** | **2.71%** |







"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0513

## 17. REGULATORY CAPITAL (CON'T)

| | Core Capital at June 30, 1992 (Unaudited) | | | |
|---|---|---|---|---|
| | Current Requirements | | Fully Phased-in Requirements | |
| | Amount | Ratio (1) | Amount | Ratio (1) |
| Total tangible capital | $ 26,556 | 4.21% | $ 26,556 | 4.21% |
| Add: | | | | |
| Includable Supervisory Goodwill (2) | 6,302 | .98 | 0 | .00 |
| Qualifying identification intangibles up to 25% of other core capital | 3,327 | .52 | 3,327 | .51 |
| Total core capital | 36,185 | 5.71 | 29,883 | 4.72 |
| Core capital requirement | 19,004 | 3.00 | 19,004 | 3.00 |
| **Core capital excess** | **$17,181** | **2.71%** | **$10,879** | **1.72%** |

| | Risk-Based Capital at June 30, 1992 (Unaudited) | | | |
|---|---|---|---|---|
| | Current Requirements | | Fully Phased-in Requirements | |
| | Amount | Ratio (1) | Amount | Ratio |
| Total core capital | $ 36,185 | 9.75% | $ 29,883 (2) | 8.21% |
| Add: | | | | |
| Supplementary capital up to 100% of core capital: | | | | |
| General valuation allowances | 3,393 | .93 | 3,393 | .93 |
| Total risk-based capital | 39,578 | 10.68 | 33,276 | 9.14 |
| Risk-based capital requirement | 26,679 | 7.20 | 29,140 | 8.00 |
| **Risk-based capital excess** | **$12,899** | **3.48%** | **$ 4,136** | **1.14%** |

(1) Ratio of capital to total adjusted assets for tangible and core capital to risk-weighted assets for risk-based capital.

(2) Under existing regulations, Sterling's risk-based capital requirement is 7.2% until December 31, 1992, at which time the permanent requirement of 8% is scheduled to be phased-in. Additionally, certain items currently includable in core capital and therefore in risk-based capital are scheduled to be phased out over a period ending December 31, 1994.

(3) Excludes from capital that portion of the deferred tax assets which Sterling believes would be excluded pursuant to regulatory directives, although no specific determination by the OTS has yet been made.

(4) The assets of Sterling's nonqualified deferred compensation plan are subject to the claims of Sterling's creditors until vested in participants in the plan and as such are not included in regulatory capital.

The OTS has proposed regulations which would likely increase capital requirements for certain thrift institutions, including Sterling, above current levels. Also, under certain conditions, the OTS could establish an individual minimum capital requirement which might exceed any or all of the current or proposed capital requirements otherwise applicable to Sterling. Management expects that Sterling will remain in compliance with applicable regulatory capital requirements although, due to the preliminary nature of the proposed rule making, there can be no assurance in this regard.







"Confidential Material Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0514

## 18. ACQUISITIONS

During the years ended June 30, 1988 and 1989, Sterling, with the approval of its regulators, completed supervisory acquisitions of two troubled institutions, Tri-Cities Savings and Loan Association ("Tri- Cities") and Central Evergreen Federal Savings and Loan Association ("Central Evergreen"), respectively. Both of these institutions were insolvent at the date of acquisition, which resulted in the recording of significant intangible assets on Sterling's financial statements as part of accounting for the acquisitions. Both of the supervisory acquisitions were subject to contractual acquisition agreements ("Acquisition Agreements") with then-existing regulatory authorities.

a. Central Evergreen Federal Savings and Loan Association

On December 31, 1988, Sterling acquired all of the outstanding stock of Central Evergreen of Chehalis, Washington, in exchange only for assuming its outstanding net liabilities. The acquisition was accounted for as a purchase, and resulted in the recording of $22,083 of intangible assets. This "supervisory" acquisition was conducted under an Acquisition Agreement executed with the Federal Home Loan Bank Board ("FHLBB"). As part of the acquisition, the FHLBB (now OTS) provided a "certification of insolvency" for Central Evergreen, which allows Sterling to utilize Central Evergreen's tax basis net operating loss carryforwards.

The Central Evergreen acquisition did not involve cash assistance or indemnification from loss on troubled assets. The Acquisition Agreement was based upon an approved Business Plan under which Sterling would operate through December 31, 1993. This Acquisition Agreement and the underlying Business Plan also established the level and methodology of computing regulatory capital. The regulatory capital requirements included in the Business Plan incorporated the forbearances and other provisions of certain other supervisory Acquisition Agreements, including Tri-Cities Savings and Loan Association (see below).

b. Tri-Cities Savings and Loan Association

On April 8, 1988, Sterling acquired substantially all of the assets and assumed the liabilities of Tri-Cities of Kennewick, Washington, from the Federal Savings and Loan Insurance Corporation ("FSLIC"). FSLIC was succeeded by the FDIC pursuant to FIRREA. The acquisition was accounted for as a purchase, and resulted in the recording of $2,239 of intangible assets. Pursuant to an Acquisition Agreement executed with FDIC, Sterling received a cash assistance payment of $11,730 from FDIC. As part of the acquisition Agreement, FDIC agreed to indemnify Sterling for 75% of any capital losses on certain assets until Sterling's share of losses reaches $900, and 100% of any capital losses on these assets thereafter. FDIC further agreed to guarantee a minimum yield to Sterling on this same group of assets. During the years ended June 30, 1992 and 1991, Sterling received $504 and $640, respectively, for loss indemnification and $0 and $159, respectively, for yield subsidies from FDIC pursuant to the Tri-Cities Acquisition Agreement. FDIC also indemnified the Association for any undisclosed liabilities, unreserved claims, or costs incurred in defending preexisting litigation of Tri-Cities for a period of five years.

As part of the acquisition, the FHLBB provided a "certification of insolvency" for Tri-Cities, which allows the Association to utilize Tri-Cities' tax basis net operating loss carryforwards. Sterling agreed to refund to FDIC 100% of the tax benefit resulting from capital losses on indemnified assets and 50% of the tax benefit resulting from the utilization of any tax basis net operating loss carryforward of Tri-Cities that arose prior to April 8, 1988.

The Tri-Cities Acquisition Agreement provided Sterling with regulatory forbearances granting temporary relief from applicable regulatory capital and liquidity requirements. Also, as part of the Acquisition Agreement, Sterling was specifically allowed to: (1) record regulatory cash assistance payments received as part of regulatory capital; (2) include intangible assets resulting from the acquisition in the determination of regulatory capital; and (3) extend intangible amortization periods beyond those allowed under generally accepted accounting principles.

App. 368

## 19. QUARTERLY FINANCIAL DATA (UNAUDITED)

Unaudited quarterly results of operations for the year ended June 30, 1992 was restated to reflect a change in accounting principle (Note 1). Unaudited, restated quarterly results and the effects of restatement are summarized below:

| | Year Ended June 30, 1992 | | | |
|---|---|---|---|---|
| | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
| Interest income | $13,394 | $13,052 | $13,025 | $13,350 |
| Interest expense | 10,244 | 9,398 | 8,301 | 8,130 |
| Provision for loan losses | 650 | 150 | 250 | 600 |
| Net interest income after provision for loan losses | 2,500 | 3,504 | 4,474 | 4,620 |
| Other income | 2,487 | 3,052 | 3,246 | 2,948 |
| Operating expenses | 4,216 | 4,712 | 4,535 | 4,783 |
| Income before income taxes | 771 | 1,844 | 3,185 | 2,785 |
| Income tax provision | 305 | 729 | 1,260 | 1,101 |
| Net income from operations | 466 | 1,115 | 1,925 | 1,684 |
| Cumulative effect of change in accounting principle | 375 | | | |
| Extraordinary item, net of tax | | | (822) | |
| Net income | **$ 841** | **$1,115** | **$1,103** | **$1,684** |
| Net income applicable to common shares | **$ 785** | **$1,078** | **$1,103** | **$1,684** |
| Earnings per share | **$ 1.51** | **$ .68** | **$ .31** | **$ .47** |

| Effects of restatement: | Year Ended June 30, 1992 | | | |
|---|---|---|---|---|
| | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
| Net income from operations, as previously reported | $ 474 | $ 1,244 | $ 2,214 | $ 1,684 |
| Effect of restatement, net of tax | (8) | (129) | (289) | 0 |
| Net income from operations, restated | 466 | 1,115 | 1,925 | 1,684 |
| Cumulative effect of change in accounting for income taxes | 375 | | | |
| Extraordinary item, as previously reported | | | (897) | |
| Effect of restatement | | | 75 | |
| Extraordinary item, as restated | | | (822) | |
| Net income, restated | **$ 841** | **$1,115** | **$1,103** | **$1,684** |







"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0516

## 19. QUARTERLY FINANCIAL DATA (UNAUDITED)

| | Year Ended June 30, 1991 | | | |
|---|---|---|---|---|
| | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
| Interest income | $15,664 | $16,263 | $14,737 | $14,019 |
| Interest expense | 12,491 | 12,975 | 11,587 | 10,835 |
| Provision for loan losses | 0 | 50 | 50 | 50 |
| Net interest income after provision for loan losses | 3,173 | 3,238 | 3,100 | 3,134 |
| Other income | 1,455 | 1,582 | 2,058 | 2,313 |
| Operating expenses | 4,471 | 4,523 | 4,242 | 4,506 |
| Income before income taxes | 157 | 297 | 916 | 941 |
| Income tax provision | 40 | 76 | 234 | 240 |
| Net income | $ 117 | $ 221 | $ 682 | $ 701 |
| Net income applicable to common shares | $ 61 | $ 164 | $ 626 | $ 645 |
| Earnings per common share | $ .12 | $ .32 | $ 1.21 | $ 1.24 |

### STOCK PRICE RANGE

The following table sets forth the high and low bid prices per share for the Common Stock for the periods indicated. The stock is currently traded in the over-the-counter market and is quoted on the NASDAQ/NMS system under the symbol STSA. Prior to November 21, 1991, the Common Stock was quoted in the "Pink Sheet" over-the-counter market. The number of common shareholders of record on June 30, 1992, was approximately 897.

| FISCAL YEAR 1992 | HIGH | LOW | FISCAL YEAR 1991 | HIGH | LOW |
|---|---|---|---|---|---|
| **FOURTH QUARTER** | **11-1/2** | **9-1/2** | FOURTH QUARTER | 4-3/4 | 3-1/4 |
| THIRD QUARTER | 10-1/2 | 8-1/2 | THIRD QUARTER | 5 | 2-1/4 |
| SECOND QUARTER | 9-1/4 | 5 | SECOND QUARTER | 4-1/8 | 2 |
| FIRST QUARTER | 6 | 4-3/4 | FIRST QUARTER | 5-1/4 | 4 |

App. 370 SG 0063120



"Confidential Material-Subject to Protective Order"

CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER PSG027 0517

# Independent Auditor's Report

The Board of Directors
Sterling Savings Association
Spokane, Washington

We have audited the accompanying consolidated balance sheets of Sterling Savings Association and subsidiaries ("Sterling") as of June 30, 1992 and 1991, and the related consolidated statements of income, changes in stockholders' equity and cash flows for the years ended June 30, 1992, 1991 and 1990. These consolidated financial statements are the responsibility of Sterling's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatements. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

Our report, dated August 15, 1991, on Sterling's financial statements as of June 30, 1991, and for the two years in the period then ended, included an explanatory paragraph regarding uncertainties concerning the ultimate outcome of a civil action against thrift industry regulatory authorities by Sterling seeking to resolve the method of determining compliance with capital standards as promulgated pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") and the specific actions, if any, that regulatory authorities might later take if Sterling does not prevail in its lawsuit. As described in Note 2, as a result of the successful public stock offering completed in the quarter ended December 31, 1991, Sterling is in compliance with all current and fully phased-in FIRREA capital requirements and, therefore, the pending legal proceedings described above are not expected to have a material adverse effect on Sterling, regardless of the ultimate outcome of the case. Accordingly, our present opinion on the 1991 and 1990 financial statements as presented herein is different from that expressed in our previous report.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Sterling Savings Association and subsidiaries at June 30, 1992 and 1991, and the consolidated results of their operations and their cash flows for the years ended June 30, 1992, 1991 and 1990 in conformity with generally accepted accounting principles.

As discussed in Note 1 to the consolidated financial statements, Sterling changed its method of accounting for income taxes in 1992.

**Coopers & Lybrand**

Spokane, Washington
August 5, 1992



"Confidential Material Subject to Protective Order"

SG 0063121



CONFIDENTIAL MATERIAL- SUBJECT TO PROTECTIVE ORDER L PSG027 0518