find raising capital about as easy as raising the dead."[104] The article further described the attempts of undercapitalized thrifts like Sterling to raise capital as "a kind of financial death march" and quoted Goldman Sachs investment banker John Oros characterizing the capital markets as "unthinkable" for many thrifts.

This uncertainty created by FIRREA affected the thrift industry well beyond the immediate period of time surrounding the law's taking effect. Former FHLBB Chairman Richard Pratt, then at Merrill Lynch Mortgage Capital Inc., was quoted in the Wall Street Journal article as saying "the thrift industry is now heading into a period of maximum confusion and paralysis."[105] Mr. Pratt's concerns were borne out, as a November 1991 letter from Jerry Gitt, another investment banker at Merrill Lynch, indicates – Mr. Gitt wrote to OTS Director Tim Ryan stating that Mr. Ryan's recent statements regarding certain thrifts "have created a new, substantial cloud of regulatory uncertainty and have had a demonstrably chilling effect on these – and other – institutions' ability to access the capital markets.... I believe that companies with improving prospects will continue to be thwarted in their efforts to attract new capital."[106]

Sterling experienced the instability created by FIRREA in the capital markets first hand. As a result of the breach, Sterling was unable to meet any of the FIRREA capital requirements. Thus, the failure to meet the capital standards implied a real risk that Sterling would not be able to survive.[107] Additionally, Sterling was forced to withdraw its $12 million unit offering consisting of 1 share of preferred and 1 share of common stock. This unit offering was cancelled due to the regulators disallowing a dividend on the preferred stock to be issued. The dividend was disallowed due to the fact that post-FIRREA, Sterling would be violating all three of the new regulatory ratios. The withdrawal of the unit offering hurt Sterling's reputation in the capital markets and likely negatively affected its ability to raise capital in the future.

---

[104] "Ongoing Fiasco: Hundreds of S&Ls Fall Hopelessly Short of New Capital Rules", *The Wall Street Journal*, December 7, 1989.
[105] Ibid.
[106] November 18, 1991 letter from Jerry Gitt, First Vice President of Merrill Lynch, to OTS Director Timothy Ryan.
[107] For example, the OTS performed an examination of Sterling during 1988 resulting in Sterling getting a composite rating of "2." The composite rating system ranges in a scale of 1 to 5. A composite rating of "2" indicated that an institution was fundamentally sound but may reflect modest weaknesses correctable in the normal course of business. After the enactment of FIRREA the composite rating was changed to "5" in 1990, the worst rating possible, which signified almost certain failure within a short period of time (Joint OTS and FDIC Report of Examination, September 17, 1990, pp. 1-a-2, SG0052526 – SG0052592).

Given the market conditions in 1989 and Sterling's own situation, there is evidence supporting a conclusion that investors would have required a dividend rate as high as 25% to invest in Sterling's stock. Despite this I have chosen a conservative (after-tax) rate of 14% for my analysis, as seen in column [7a] of Exhibit AA, Page 2. This rate is conservative for several reasons. First, it is lower than the rates demanded by investors in some of the more speculative grades of high yield bonds.[108] Second, it is on the lower end of the range of dividend yields for issues of preferred stock of other thrift institutions in the 1989.[109] Finally, funding for distressed thrift institutions during this period was often available only through so-called "vulture" investors who would require rates of between 25 and 35 percent.[110]

Unlike interest payments on debt, the coupon payment on preferred stock is not tax-deductible. Assuming a 37% tax rate[111], to pay $63 in dividends, Sterling must first earn $100 and then pay $37 in taxes to have enough after taxes for the dividend. Absent the breach, Sterling would have remained in business, operated profitably, and paid taxes. Therefore, the dividend rate must be grossed up for taxes in order to calculate the amount of pre-tax dollars required to meet the payments. Sterling is only fully compensated if it receives enough to pay the required dividends after first paying taxes. In Column [7b] of Exhibit AA, Page 2, the dividend payments are adjusted for a 37% tax rate.

As explained above, to determine the net cost of replacement capital, I also consider the benefits of cash raised through an issuance of replacement capital. My analysis assumes that the cash obtained through the issuance of replacement preferred stock would be used to pay off some of the bank's liabilities, which supervisory capital could not do. I use 7.7% as this benefit, which is consistent with the average cost of funds for Sterling in the period leading up to the breach. I believe this is a reasonable proxy for the bank's expectations for future liability costs at that time, and in fact, this is conservative when

[108] Merrill Lynch's High Yield Index of B rated bonds was at 14.8% in December 1989, and rose to 18.1% by December 1990. The index of CCC rated bonds was at 21.8% in December 1989, and increased to 28.9% in December 1990. See Exhibit DD.

[109] The American Banker "Top 25" Thrift Index provides clear evidence of the high cost of capital for thrifts at the end of 1989. Five thrifts in the American Banker "Top 25" Thrift Index had some kind of preferred stock outstanding in December 1989. The median dividend yield of these preferred stock issues is 35.5% (see Exhibit EE).

[110] "According to a recent study by the Joint Economic Committee (JEC), venture capital firms anticipated a minimum rate of return of 30 percent per year on an individual venture investment." Schilit, Keith, "Evaluating the Performance of Venture Capital Investments," *Business Horizons*, Sept./Oct. 1994, p.70.

[111] 37% represents the approximate marginal Federal and State tax rate for Sterling. The estimate is based on a conversation with Daniel G. Byrne, the CFO of Sterling.

compared with Sterling' actual post-breach cost of funds, which was close to 5.3%. See Exhibit FF.

My analysis calculates the cost of replacement preferred stock from the time of the breach until end of the contract. I divide the analysis in two parts, the past and the future damage estimation.[112] I first calculate the damages that have accrued since the date of the breach up until the present. This represents the past cost of replacement to Sterling and totals $38.754 million.

Due to the fact that Sterling' contract ran beyond the year 2000, there is still the need to calculate the costs of the replacement from the date of the trial until the end of the contract, i.e. the future damages owed to Sterling. I assume that Sterling refinances the outstanding preferred stock in 2000. Again, since issuing securities involves transaction costs, I estimate the transaction costs to be $1.306 million (see Column [4] and Row [15], Exhibit AA, Pages 3 and 4).[113]

As Sterling issues preferred stock in 2000 it will have to pay the required dividend payment to the investors who buy the preferred stock. In order to determine the appropriate dividend I examine the current yields on Sterling's publicly traded preferred stock and floating rate note as well as yields on non-cumulative non-convertible preferred stock offerings of industry peers (Exhibit GG). To be conservative I assume that Sterling refinances its preferred at a lower dividend rate of 9% in 2000 (Columns [5a] and [11a], Exhibit AA, Pages 3 and 4). The assumed 9% dividend yield as of 2000 is conservative when compared to Sterling's own publicly traded preferred with current yield of 9.78% and its floating rate note due in 2006 with current yield of 9.08%. Note that this estimate of dividend yield is also conservative when compared to non-cumulative non-convertible preferred new issues (average offer yield of 9.66%). As described above, the dividend payment is adjusted for a 37% tax rate (Column [5b] and [11b], Exhibit AA, Pages 3 and 4).

As discussed previously, supervisory capital is a non-earning asset. Therefore, when calculating the net cost of replacement capital, I also consider the benefit of cash raised

[112] Past damages are presented through the end of the most recent calendar year. I will adjust model at the time of trial to update my presentation of past and future damages.
[113] Lee, Lochhead, Ritter and Zhao, "The Cost of Raising Capital," *The Journal of Financial Research*, Spring 1996. Note that this is a conservative estimate of the true cost of refinancing as I am ignoring transaction costs associated with retiring the outstanding preferred stock.

through issuance of replacement capital. Since in 2000 Sterling was a financially stable institution I assume that Sterling would not use the cash obtained through issuance of replacement preferred stock to pay off some of its liabilities but instead would invest the funds in a conservative investment. For this purpose I use the investment earnings rate of 5.9% which approximates the yield on Government bills and bonds as of December 2000.

The cash flows that occur in the future must be discounted to the time of trial. I discount future cash flows back to the date of trial at the current risk-free rate 5.9 %.[114] In my opinion, the risk free rate is the appropriate rate to use in discounting the future net costs. The supervisory capital was riskless to Sterling, and to fully replace them, my model must not place the bank in any more risk than it would have faced absent the breach. The risk-free rate is therefore the correct rate for this calculation. Just as future cash flows must be brought back to the present, it would be economically correct to compound past cash flows forward to the present. It is my understanding however that prejudgment interest may not be allowed in a breach of contract case in this court. I have therefore not compounded past costs, and as a result, my analysis is a conservative estimate of the true cost to Sterling of replacing the supervisory capital.

In the second step of my analysis I calculate the cost of replacement capital from the date of trial until the end of the contract for the supervisory goodwill (Exhibit AA, Page 3). The third step involves valuing the capital credits (Exhibit AA, Page 4).[115] As shown on Line [17], Exhibit AA, the present value of the net cost of replicating the supervisory capital in the future, as of the date of the trial, is $21.264 million. Adding past damages, the total cost of replacement damages suffered by Sterling is $60.018 million.

[114] As noted above, I am currently using 12/31/2000 as a proxy for the date of trial, however I will adjust my model as necessary to reflect the actual trial date.

[115] The capital credits are valued as perpetuity: Net cost of preferred stock divided by the discount rate.

## VIII. Additional Component of Damages for Lost Profits

It is my understanding that Dr. Horvitz is calculating the lost profits damages for Sterling from the time of the breach. While Dr. Horvitz's damages analysis calculates lost profits damages up until the date of the trial, the calculation does not include damages stemming from the inability to leverage the remaining supervisory capital that would have existed from the date of the trial until the end of the contract. The cost of replacement methodology can be used to compute that additional damages component. The attorneys have requested that I estimate cost of replacement damages resulting from the inability to leverage the remaining supervisory capital as of the date of the trial. I have performed this calculation in the previous section, showing that the net cost of replicating the supervisory capital in the future, as of the date of the trial, is $21.264 million (Exhibit AA, Page 4, Line [17]).

## IX. Review of Lost Profits Calculation

I have reviewed the report of Dr. Paul Horvitz and have examined the lost profits model presented in his report. I have been asked to evaluate the reasonableness of his calculations.

As noted by Dr. Horvitz these types of models are routinely used by the agencies regulating financial institutions. For instance, they are used to evaluate the effect of mergers between financial institutions and the projected performance of the combined entities. The results of the modeling are important considerations in the decision making of the agencies.

I believe the model that Dr. Horvitz has presented is a simple yet comprehensive approach that uses relatively few assumptions. I believe it is realistic in that it is premised on Sterling levering the lost supervisory capital to acquire additional assets. This is consistent with Sterling's operating strategy and the testimony of the fact witnesses.

Dr. Horvitz uses Sterling's actual growth rates and Sterling's actual net income to project the performance of the but-for bank. The but-for bank that he has projected adds incremental assets through internal generation and acquisition. The returns on the incremental assets are the same returns as on the actual assets Sterling held over this time. I believe these are reasonable assumptions.

I have also examined data for other financial institutions in Sterling's market areas to assess if the performance of institutions located in the same geographical areas was similar to Sterling and the but-for performance modeled by Dr. Horvitz. I have reviewed the growth and profitability of these institutions. I have looked at data for OTS-regulated institutions in Washington, the Portland metropolitan area, and northern Idaho for 1990 through 2000. I have also examined aggregate statewide data for Washington for both OTS-regulated institutions and FDIC-regulated savings institutions for the same time period and also prior to 1990.

First, the returns of other OTS-regulated institutions were generally higher than Sterling's - hence higher than the returns used by Dr. Horvitz in his analysis (see Exhibit Q). Second, in evaluating the growth of the but-for institution, its growth is consistent with

maintaining its market share relative to other Washington savings institutions (see Exhibit R.) As another perspective on the growth of the but-for institution, I have compared Sterling's growth prior to the breach with other institutions in Washington and then contrasted these results with the results in Exhibit R. Exhibit S demonstrates that the growth of the but-for bank is very reasonable in light of Sterling's historical growth. The results of these comparisons are consistent with the performance of the but-for bank that Dr. Horvitz has modeled.

## X. Summary

In summary, it is my opinion that Sterling incurred significant damages from the government's breach of the terms of the acquisition. In my opinion, under a cost of replacement theory Sterling incurred damages of $60.018 million, under a restitution theory incurred damages of $37.565 million, and under a reliance theory incurred damages of $23.059 million. Although it would be economically correct to add interest to these amounts to the present, it is my understanding that prejudgment interest may not be allowed against the government. Accordingly, my analysis includes no interest on these amounts, despite the fact that the breach occurred over ten years ago.

I have reviewed the lost profits analysis conducted by Dr. Horvitz and concluded that it is reasonable and consistent with my understanding of Sterling's business strategy.

* * *

I hold the opinions expressed herein to a reasonable degree of certainty, and declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. I reserve the right to modify my report and opinions in response to reports of the government's experts, legal decisions, additional facts that may come to light, or testimony at the time of trial.

Christopher James

Executed

A

# Exhibit A - Corrected
## *Sterling Savings v. United States*
## Documents Reviewed by Christopher James

### Depositions

Deposition of Rodney W. Barnett: April 11, 2000

Deposition of Daniel G. Byrne, with Exhibits 1-96: July 10-13, 2000

Exhibit 81: Letter from William Durbin, OTS, to Sterling's Board of Directors, May 11, 1990

Exhibit 86: Letter from Daniel Byrne to Carol Fiend, OTS, June 21, 1990

Deposition of A. Adgate Duer: July 24, 1999

Deposition of Harold Gilkey, with Exhibits 1-57: June 6 - 8, 2000

| | |
|---|---|
| Exhibit 12: Letter from William W. Zuppe to Hilton S. Hewitt Accompanying the Bid Package for Lewis Federal, June 13, 1985 | WOF-014 0415-014 0420 |
| Exhibit 16: News Release from Sterling Savings Association, April 11, 1988 | SG-0501899-0501900 |
| Exhibit 17: Counter Proposal to Sterling Savings Association from Tri-Cities Savings and Loan Association, with Notes from Ruth Rush, 5/21/1986 | SG-0162153-0162154 |
| Exhibit 20: Sterling Savings Association and Central Evergreen Federal S&L Association Combined Supervisory Stock Conversion and Merger (Acquisition) Application, 8/15/1988 | WON-9442186-9442189 |

Exhibit 35: Sterling Savings Association Capital Restoration Plan, February 19, 1990

Deposition of Dale Larrabee: April 25-26, 2000

Deposition of R. Jay Tejera: July 31, 1999

Deposition of William W. Zuppe: May 23-26, 2000

Exhibit 7: Letter to William W. Zuppe from Donald W. Mochel, March 20, 1985

Deposition of Roger Orders

### Legal Briefs and Filings

**Amended Master Protective Order & Exhibit B Declaration of Expert**

**First Amended Complaint, April 21, 1995**

**Motion for Partial Summary Judgment Re: Liability & Affidavit of Leslie R. Weatherhead in Support of Motion with Exhibits, January 16, 1997**

**Defendant s First Phase II Case-Specific Interrogatories with Responses, February 24, 2000**

**Verified Complaint for Declaratory & Injunctive Relief, or in the Alternative, for Rescission & Damages, May 15, 1990**

**Defendant's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment Concerning Liability Issues and in Support of Defendant's Partial Motion to Dismiss and Cross-Motion for Partial Summary Judgment: October 10, 2000**

| | |
|---|---|
| Exhibit 2.3: Acquisition Agreement between The Federal Savings and Loan Insurance Corporation as Receiver for Lewis Federal Savings and Loan Association and Sterling Savings Association: November 5, 1985 | DRI-07702-07716 |
| Federal Home Loan Bank Board Memo from James R. Faulstich (Principal Supervisory Agent) to Federal Home Loan Bank Board re FSLIC-Assisted Acquisition: October 8, 1985 | WOF-0140449 |
| Exhibit 2.1: Assistance Agreement between The Federal Savings and Loan Insurance Corporation and Sterling Savings Association: November 5, 1985 | PwC-02716-02750 |
| Federal Home Loan Bank Board Resolution No. 85 - 985, Acquisition of Assets and Liabilities of Lewis Federal Savings and Loan Association: November 4, 1985 | WOL-6890510-6890516 |
| Federal Home Loan Bank Board Resolution 85 - 989: November 4, 1985 | XXX-1050145-1050146 |
| Federal Home Loan Bank Board Resolution No. 88 - 250P, Approval of Acquisition of Assets and Liabilities of Tri-Cities Savings and Loan Association: April 7, 1988 | WON-9440767-9440777 |
| Federal Home Loan Bank Board Letter to Sterling Savings Association Board of Directors, Document FHLBB No. 7918: April 6, 1988 | WOR-4880389-4880390 |
| Assistance Agreement between The Federal Savings and Loan Insurance Corporation and Sterling Savings Association: April 8, 1988 Agreement between the Federal Savings and Loan Insurance Corporation and Sterling Savings Association: December 28, 1988 | WON-8782164-8782169 |
| Federal Home Loan Bank Board Resolution No. 88 - 1273: December 8, 1988 | SG-0142033-0142039 |
| Coopers & Lybrand Letter to Sterling Savings Association Board of Directors: January 27, 1989 | SG-0142086-0142088 |
| Sterling Savings Association Memo from Daniel G. Byrne (Senior VP, Finance) to File: January 6, 1989 | SG-0142067-0142068 |
| Sterling Savings Association Annual Report to Shareholders: 1989 | SG-0062997-0063034 |
| Sterling Savings Association Capital Restoration Plan: February 19, 1990 | WOT-9421131-9421139 |

| | |
|---|---|
| Office of Thrift Supervision, Department of the Treasury, Letter from William J. Durbin (District Director) to Sterling Savings Association Board of Directors: May 22, 1990 | WOT-9421441-9421443 |
| Declaration of Carol A. Friend: June 14, 1990 | WOL-1230623-1230626 |
| Affidavit of William W. Zuppe: May 28, 1990 | WON-9520933-9520950 |
| Deposition of Daniel G. Byrne, Part I: July 10, 2000 | |
| Deposition of Daniel G. Byrne, Part II: July 11, 2000 | |
| Office of Thrift Supervision, Department of the Treasury, Letter from Carol Friend (Assistant District Director) to Sterling Savings Association, Daniel G. Byrne (Senior VP, Finance): June 18, 1990 | WON-9530681 |
| Director of Office of Thrift Supervision, Department of the Treasury, Form 10-Q for Sterling Savings Association: December 31, 1991 | WON-8801074-8810184 |
| Sterling Savings Association Letter from Daniel G. Byrne (Senior VP, Finance) to Office of Thrift Supervision, Edwin Hedlund (Assistant Regional Director): March 31, 1992 | WON-9312953-9312954 |
| Office of Thrift Supervision, Department of the Treasury, Letter from Edwin Hedlund (Assistant Regional Director) to Sterling Savings Association, Daniel G. Byrne (Senior VP, Finance): April 8, 1992 | WON-9200877 |
| Coopers & Lybrand Letter to Sterling Savings Association Board of Directors: July 28, 1988 | SG-0137651-0137652 |

**Plaintiffs' Reply to Defendant's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment Concerning Liability Issues and in Support of Defendant's Partial Motion to Dismiss and Cross-Motion for Partial Summary Judgment (December 16, 2000) and Affidavit of William M. Symmes (December 15, 2000)**

| | |
|---|---|
| Continued Deposition Excerpts of William Zuppe: May 24, 2000 | 0000291-0000304 |
| Federal Home Loan Bank Board Resolution No. 88-1434 re approval of Supervisory Conversion and Merger of American Savings Bank (Springfield, IL), with Illinois Interim Federal Savings Bank (Springfield, IL), and Merger with Citizens Federal Bank (Miami, FL). 1988 | 0000305 |
| Federal Home Loan Bank Board (Topeka, KS) letter from Mary Barnett, ICR Coordinator, to Commercial Federal Savings and Loan Association (Omaha, NE). Docket No. 05198, June 17, 1988 | 0000306 |
| Second Supplemental Affidavit and Exhibits of Daniel G. Byrne: December 16, 2000 | 0000307-0000353 |
| Deposition Excerpts and Exhibits of Edwin C. Hedlund: August 4, 2000 | 0000354 |

| | |
|---|---|
| Deposition Excerpts of Rodney W. Barnett: April 11, 2000 | 0000001-0000013 |
| Deposition Excerpts and Exhibits of Daniel G. Byrne: July 10, 2000 | 0000014-0000076 |
| Deposition Excerpts and Exhibits of James R. Faulstich, Volumes I, II, III: August 1 - 3, 2000 | 0000077-0000157 |
| Deposition Excerpts of Harold Gilkey: June 6, 2000 | 0000159-0000178 |
| Deposition Excerpts of Edwin John Gray: July 26, 1999 | 0000179-0000181 |
| Deposition Excerpts and Exhibits of Patricia McJoynt: August 10, 2000 | 0000182-0000287 |
| Deposition Excerpts of Alvin W. Smuzynski: July 26, 1999 | 0000288-0000290 |

**Defendant's Reply to Plaintiffs' Supplemental Opposition to Defendant's Partial Motion to Dismiss and Cross Motion for Partial Summary Judgment, with Appendix: January 16, 2001**

**Motion for Partial Summary Judgment Re: Liability, and Affidavit of Leslie R. Weatherhead Re: Sterling Savings Associations Motion for Partial Summary Judgment Re: Liability, with Exhibits, January 17, 1997**

Exhibit A: Principal documentation evidencing Sterling Savings Association s agreements with the FSLIC and FHLBB in relation to Sterling's acquisition of Lewis Federal Savings and Loan Association: November 1985

Exhibit A-1: Letter from FHLBB to Harold Gilkey re forbearances: 8/14/85

Exhibit A-2: FHLBB Resolution 85-985: 11/4/85

Exhibit A-3: FHLBB Resolution 85-990: 11/4/85

Exhibit A-4: FHLBB s Appointment of Receiver for Lewis Federal S&LA, No. 85-984: 11/4/85

Exhibit A-5: Acquisition Agreement between FSLIC as Receiver for Lewis Federal S&LA and Sterling Savings Association: 11/5/85

Exhibit A-6: Assistance Agreement between FSLIC and Sterling Savings Association: 11/5/85

Exhibit A-7: Letter from FHLBB to Harold Gilkey re forbearances: 11/12/85

Exhibit A-8: FHLBB Resolution No. 85-984: 11/4/85

Exhibit A-9: FHLBB Resolution No. 85-986: 11/4/85

Exhibit A-10: FHLBB Resolution No. 85-987: 11/4/85

Exhibit A-11: FHLBB Resolution No. 85-988: 11/4/85

Exhibit A-12: FHLBB Resolution No. 85-989: 11/4/85

Exhibit B: Principal documentation evidencing Sterling Savings Association s agreements with FSLIC and FHLBB in relation to Sterling's acquisition of Tri-Cities Savings and Loan Association: April 1988

Exhibit B-1: Letter from FHLBB to Sterling Savings Association Board of Directors re forbearances: 4/6/88

Exhibit B-2: FHLBB Resolution No. 88-250P: 4/7/88

Exhibit B-3: FHLBBs Appointment of Receiver for Tri-Cities S&LA, No. 88-249P: 4/7/88

Exhibit B-4: Acquisition Agreement between FSLIC as Receiver for Tri-Cities S&LA and Sterling Savings Association: 4/8/88

Exhibit B-5: Assistance Agreement between FSLIC and Sterling Savings Association: 4/8/88

Exhibit B-6: FHLBB Order No. 807: 4/7/88

Exhibit B-7: FHLBB Resolution No. 88-249: 4/7/88

Exhibit B-8: FHLBB Resolution No. 88-251: 4/7/88

Exhibit B-9: FHLBB Resolution No. 88-252: 4/7/88

Exhibit B-10: FHLBB Resolution No. 88-253: 4/7/88

Exhibit B-11: FHLBB Resolution No. 88-254: 4/7/88

Exhibit B-12: Letter from Coopers & Lybrand to Sterling Savings Association Board of Directors re accounting principles: 7/28/88

Exhibit C: Principal documentation evidencing Sterling Savings Association s agreements with FSLIC and FHLBB in relation to Sterling's acquisition of Central Evergreen Federal Savings and Loan Association: April 1988

Exhibit C-1: Letter from Coopers & Lybrand to Sterling Savings Association (D. Byrne) re net operating loss carry forwards: 1/30/89

Exhibit C-2: Letter from Coopers & Lybrand to Sterling Savings Association Board of Directors re accounting principles: 1/27/89

Exhibit C-3: Agreement between Sterling Savings Association and FSLIC: 12/28/88

Exhibit C-4: Certificate of Corporate Resolution of Sterling Savings Association: 12/22/88

Exhibit C-5: Memorandum from Graham and Dunn (P. Cann) to Betty Reed, et al., re Closing Memorandum - Conversion/Merger of Central Evergreen FS&LA into Sterling Savings Association: 12/20/88

Exhibit C-6: FHLBB Resolution No. 88-1273: 12/8/88

Exhibit C-7: Acquisition Agreement between Sterling Savings Association and Central Evergreen FS&LA: 7/20/88

Exhibit D: Affidavit of Harold Gilkey, without exhibits: 5/29/90

Exhibit E: Affidavit of William Zuppe, without exhibits: 5/28/90

Exhibit F: Opinion of the United States District Court, Published as Sterling Savings Assn. v. Ryan: 8/8/90

Exhibit G: Unpublished opinion of the United States Court of Appeals for Ninth District Court: 4/14/92

**Defendant's Motion to Dismiss Plaintiff Sterling Financial Corporation; Cross-Motion for Summary Judgment; and Opposition to Plaintiffs' Motion for Partial Summary Judgment, with Appendix, April 1, 1997**

**Sterling Savings Association's Reply Re: Motion for Partial Summary Judgment Re: Liability and Response to Cross-Motion to Dismiss, and Supplemental Affidavit of Leslie R. Weatherhead Re: Sterling Savings Association's Motion for Partial Summary Judgment Re: Liability, June 16, 1997**

Supplemental Affidavit of Harold B. Gilkey

Supplemental Affidavit of Daniel G. Byrne

Affidavit of Leo Clarke

Declaration of David H. Martens

Sterling Savings Association Annual Report, Year Ending June 1986

Sterling Savings Association Annual Report, Year Ending June 1987

Sterling Savings Association Annual Report, Year Ending June 1988

Sterling Savings Association Annual Report, Year Ending June 1989

Selected Pages of a Bid Package sent by FHLBB/FSLIC to Sterling Savings relative to FSLIC's sale of Lewis Federal Savings & Loan

Selected Pages of a Bid Package sent by FHLBB/FSLIC to Sterling Savings relative to FSLIC's sale of Tri-Cities Savings & Loan

FHLBB's Information for the Thrift Financial Report

Letter from Coopers & Lybrand to Sterling Savings

Sterling Savings Association Annual Report, Year Ending June 1988

**Sealed Affidavit of Leslie R. Weatherhead re: Sterling Savings Association's Motion for Partial Summary Judgment re: Liability, June 16, 1997**

| | |
|---|---|
| Memorandum from Darrel Dochow to John M. Buckley | WOF-01401066-01401068 |
| Memorandum from Jordan Luke to FHLBB | WOT-9420329-9420341 |
| Memorandum from James Faulstich, Principal Supervisory Agent, to the FHLBB | WOF-0140468-0140472 |
| Memorandum from James Faulstich to the FHLBB | WOL-0140473-0140481 |

**Plaintiffs' Memorandum Re: Motion to Strike the Declaration of Joe A. Hargett and its Surreply Regarding the Permanency and Non-Amortization of the FSLIC Assistance, with Appendix: February 26, 2001**

| | |
|---|---|
| Declaration of Daniel G. Byrne Re: Motion to Strike and Surreply | |
| Letter to Ned M. Barnes, Secretary, Sterling Savings Association, from Gary Jeffers, OTS | SG-0170327-0170334 |

| | |
|---|---|
| Letter to Gary Jeffers, Counsel, OTS, from Daniel G. Byrne, Sr. Vice President - Finance, Sterling Savings Association, and exhibits | SG-0170335-0170347 |
| Letter to Ned M. Barnes, Secretary, Sterling Savings Association, from Gary Jeffers, Counsel, OTS, and attachments | WON-9312324-9312333 |
| FSLIC Agreement: 12/28/88 | WON-9412133-9412147 |
| Declaration of David H. Martens | |
| Statement of Financial Accounting Standards No. 72 Accounting for Certain Acquisitions of Banking or Thrift Institutions an Amendment of APB Opinion No. 17, an interpretation of APB Opinions 16 and 17, and an amendment of FASB Interpretation No. 9: February 1983 | SG-0703239-0703243 |
| Sterling Savings Association, Spokane, Washington, Joint Regular Examination as of June 19, 1989 | SG-0052262-0052339 |
| APB Opinion No. 16, footnote 2: August 1970 | |
| Declaration of Roger J. Orders | |
| Affidavit of William M. Symmes Re: Exhibits to Motion to Strike and Surreply | |
| Defendants Initial Disclosure Pursuant to Paragraph IV (A) (1) of the Discovery Plan | |
| Interrogatory No. 49 Defendants Responses and Objections to Sterling's First Set of Interrogatories | 0000377-0000379 |

**Defendant's Opposition to Plaintiffs' Motion to Strike the Declaration of Joe A. Hargett and for Leave to File Surreply Regarding the Permanency and Non-amortization of the FSLIC Assistance, with Appendix: April 5, 2001**

**Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion to Strike the Declaration of Joe A. Hargett and For Leave to File Surreply Regarding the Permanency and Non-Amortization of the FSLIC Assistance: April 26, 2001**

## FHLBB Memoranda re Supervisory Acquisitions

| | |
|---|---|
| Memo to Jon M. Rundle from Hilton S. Hewitt Re: Bank Board Res. No 84-782 | WOF-0140378 |
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: FSLIC Assisted Acquisition of Assets | WOF-0140450-0140454 |
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: FSLIC Assisted Acquisition of Assets | WOB-0200309-0200314 |
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: FSLIC Assisted Acquisition of Assets | WOF-0140468-0140472 |

| | |
|---|---|
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: FSLIC Assisted Acquisition of Assets | WOB-0200315-0200318 |
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: FSLIC Assisted Acquisition of Assets | WOF-0140473-0140481 |
| Memo to Federal Home Loan Bank Board from Norman H. Raiden Re: FSLIC-Assisted Acquisition of Lewis Federal Savings & Loan Association by Sterling Savings Association | WOF-0140456-0140467 |
| Memo to Federal Home Loan Bank Board from Norman H. Raiden Re: FSLIC-Assisted Acquisition of Lewis Federal Savings & Loan Association by Sterling Savings Association | WOB-0200319-0200330 |
| Exhibit I-7 Memo to Steven Davidson from Alan R. Nilsen Re: Liquidation Costing Tri-Cities S&LA | WOB-0051229-0051251 |
| Exhibit I-5 Memo to Herb Held from Patricia A. McJoynt Re: Recommendations for Action on Bids Received fro Tri-Cities Savings & Loan Association | WOB-0051223-0051226 |
| Memo to John M. Buckley, Jr. from James R. Faulstich Re: Recommendation for the Appointment of the Federal Savings & Loan Insurance Corporation (FSLIC) as Receiver for and the Subsequent Acquisition of Substantially all the Assets and Liabilities of Tri-Cities Savings & Loan Association | WOF-0141079-0141090 |
| Memo to Federal Home Loan Bank Board from James R. Faulstich Re: Proposed Appointment of the Federal Savings & Loan Insurance Corporation (FSLIC) as Receiver for and Subsequent Acquisition of Tri-Cities Savings & Loan Association by Sterling Savings Association | WOF-0141091-0141095 |
| Memo to Federal Home Loan Bank Board from Leo Clarke Re: FSLIC-Assisted Acquisition of Tri-Cities Savings & Loan Association | WOF-0141069-0141078 |
| Memo for John M. Buckley, Jr. from Darrel W. Dochow Re: Proposed Appointment of the Federal Savings & Loan Insurance Corporation as Receiver for a Subsequent Acquisition of Tri-Cities Savings & loan Association by Sterling Savings Association | WOF-0141066-0141068 |
| Federal Home Loan Bank Board Application for Permission to Convert to a Federally-Chartered Stock Association | WOT-9420010-9420015 |
| Memo to Jordan Luke from Kathleen V.O'Dee Re: Increase in Accounts of an Insurable Type Via Merger of Central Evergreen FS&LA | WOT-9420322-9420323 |
| Memo to Federal Home Loan Bank Board from Jordan Luke Re: Voluntary Supervisory Conversion of Central Evergreen Federal Savings & Loan Association and Acquisition by | |

| | |
|---|---|
| Sterling Savings Association | WOT-9420324-9420325 |
| Memo to Nadine Y. Washington Board Operations from Jordan Luke Re: Voluntary Supervisory Conversion of Central Evergreen Federal Savings & Loan Association and Acquisition by Sterling Savings Association | WOT-9420326-9420328 |
| Memo to Federal Home Loan Bank Board from Jordan Luke Re: Voluntary Supervisory Conversion of Central Evergreen Federal Savings & Loan Association and Simultaneous Merger Into Sterling Savings Association | WOT-9420329-9420423 |

## Examination Reports: 1986 and 1988 - 1998

| | |
|---|---|
| Jointly - FHLB of Seattle and State of Washington: October 29, 1986 | SG-0052114-0052169 |
| Jointly - FHLB of Seattle and State of Washington: April 18, 1988 | SG-0052170-0052247 |
| Jointly - FHLB of Seattle and State of Washington: June 19, 1989 | SG-0052248-0052340 |
| Jointly - OTS and State of Washington: November 13, 1989 | SG-0052341-0052431 |
| FDIC: November 13, 1989 | SG-0052432-0052525 |
| Jointly - OTS and FDIC: September 17, 1990 | SG-0052526-0052592 |
| OTS: September 17, 1990 | SG-0052593-0052683 |
| Jointly - OTS and State of Washington: September 16, 1991 | SG-0052684-0052801 |
| OTS Exam Letter: 11/7/1991 | SG-0052685-0052686 |
| FDIC: September 16, 1991 | SG-0052802-0052865 |
| Jointly - OTS, West Region, and State of Washington: August 10, 1992 | SG-0052866-0052929 |
| OTS: July 6, 1993 | SG-0052930-0052974 |
| OTS: June 30, 1994 | SG-0052975-0053016 |
| Jointly - State of Washington, OTS, and FDIC: August 21, 1995 | SG-0053017-0053088 |
| Jointly - State of Washington and OTS: September 16, 1996 | SG-0053089-0053164 |
| Jointly - State of Washington and OTS: October 14, 1997 | SG-0053165-0053238 |
| OTS: October 26, 1998 | SG-0053239-0053293 |

## Sterling Financial Statements: 1985 - 1989

| | |
|---|---|
| November 1985 Financial Statements | SG-0097724-0097792 |
| 1986 Operating Budget | SG-0097353-0097366 |
| March 1986 Financial Statements | SG-0097501-0097552 |
| June 1986 Financial Statements | SG-0097367-0097408 |
| June 1987 Revised Financial Statements | SG-0099242-0099353 |
| April 1988 Financial Statements | SG-0100861-0100966 |
| June 1988 Financial Statements | SG-0101162-0101269 |
| December 1988 Financial Statements | SG-0101813-0101921 |
| March 1989 Branch Analysis | SG-0706460 |
| June 1989 Financial Statements (no narrative) | SG-0102551-0102576 |
| June 1989 Financial Statements | SG-0102595-0102704 |
| September 1989 Financial Statements | SG-0102988-0103134 |
| December 1989 Financial Statements (no narrative) | SG-0103428-0103455 |
| December 1989 Financial Statements | SG-0103504-0103618 |

## Sterling Savings Association/Financial Corporation 10-Ks

| | |
|---|---|
| Sterling Savings Association 10-K 1984 | SG-0705190-0705209 |
| Sterling Savings Association 10-K 1985 | SG-0705210-0705232 |
| Sterling Savings Association 10-K 1986 | SG-0705233-0705274 |
| Sterling Savings Association 10-K 1987 | SG-0705275-0705305 |
| Sterling Savings Association 10-K 1988 | SG-0705306-0705337 |
| Sterling Savings Association 10-K 1989 | SG-0705338-0705392 |
| Sterling Savings Association 10-K 1990 | SG-0705393-0705458 |
| Sterling Savings Association 10-K 1991 | SG-0705459-0705528 |
| Sterling Savings Association 10-K 1992 | SG-0705529-0705590 |
| Sterling Financial Corporation 10-K 1993 | SG-0705591-0705644 |
| Sterling Financial Corporation 10-K 1994 | SG-0705645-0705704 |
| Sterling Financial Corporation 10-K 1995 | SG-0705705-0705768 |
| Sterling Financial Corporation 10-K 1996 | SG-0705769-0705826 |

## Sterling Savings Association/Financial Corporation Annual Reports

Sterling Savings Association Annual Report 1983

Sterling Savings Association Annual Report 1984

Sterling Savings Association Annual Report 1985

Sterling Savings Association Annual Report 1986

| | |
|---|---|
| Sterling Savings Association Annual Report 1987 | |
| Sterling Savings Association Annual Report 1988 | |
| Sterling Savings Association Annual Report 1989 | |
| Sterling Savings Association Annual Report 1990 | |
| Sterling Savings Association Annual Report 1991 | |
| Sterling Savings Association Annual Report 1992 | |
| Sterling Financial Corporation Annual Report 1993 | |
| Sterling Financial Corporation Annual Report 1994 | |
| Sterling Financial Corporation Annual Report 1995 | |
| Sterling Financial Corporation Annual Report 1996 | |
| Sterling Financial Corporation Annual Report 1997 | SG-0703020-0703140 |
| Sterling Financial Corporation 1997 Annual Report on Form 10 - K | SG-0702958-0703019 |
| Sterling Financial Corporation Annual Report 1998 | SG-0702858-0702957 |
| Sterling Financial Corporation 1999 Annual Report on Form 10-K | SG-0703141-0703235 |

## Board of Directors Meetings Minutes

| | |
|---|---|
| Sterling Savings Association Minutes of the Meeting of the Board of Directors, 11/21/1988 | SG-0191766-0191782 |
| Sterling Savings Association Minutes of the Meeting of the Board of Directors, 12/20/1988 | SG-0192365-0192381 |

## Case Document with Bates Numbers

| | |
|---|---|
| Letter to Harold B. Gilkey form Jeff Sconyers of the FHLBB, 11/12/1985 | SG-0600207-0600209 |
| Federal Home Loan Bank Board Resolution No. 85-985, 11/4/1985 | SG-0600145-0600151 |
| Federal Home Loan Bank Board Resolution No. 85-989, 11/4/1985 | SG-0600223 |
| Acquisition Agreement, 11/5/1985 | SG-0600159-0600172 |
| Assistance Agreement, 11/5/1985 | SG-0600173-0600206 |
| Letter to Patricia McJoynt of FHLBB from Daniel L. Byrne, 11/27/1987 | WOB-0051178-0051194 |
| FHLBB-Seattle Memorandum form James R. Faulstich, Principal Supervisory Agent, to Julie L. Williams, Deputy General Counsel, and Linda Plye, director of Corporate Activities, 11/7/88 | WOT-9420424-9420441 |
| FHLBB-Seattle Issues Memorandum, 11/7/1988 | WOT-9420352-9420365 |
| Stering Savings Offering Circular 1987, 3/31/1987 | WOL-6670346 |

## Sterling Savings Association Capital Restoration Plan

| | |
|---|---|
| Sterling Savings Association Capital Restoration Plan: January 5, 1990 | SG-0705827-0705925 |
| Sterling Savings Association Capital Restoration Plan: February 19, 1990 | SG-0705926-0705957 |

## Sterling Savings Offering Circulars

| | |
|---|---|
| Sterling Savings: Offering Circular Subject to Completion, Dated 11/14/1989 | SG-0704660-0704788 |
| Sterling Savings Association: Offering Circular, Dated 11/20/1991 | SG-0704789-0704908 |
| Sterling Financial Corporation: Prospectus, Dated 2/4/1993 | SG-0704909-0704994 |
| Sterling Financial Corporation: Prospectus, Dated 5/3/1994 | SG-0704995-0705082 |
| Sterling Financial Corporation: Prospectus, Dated 5/30/1997 | SG-0705083-0705138 |
| Sterling Financial Corporation: Offering Memorandum, Dated 5/25/1999 | SG-0705139-0705189 |

## Case Documents Without Bates Numbers

Dain Bosworth Corporate Finance Department Public Offering Memo re Sterling Savings Association, "Blue-Top," November 14, 1989

Marketing Package for Tri-Cities Savings and Loan Association, Kennewick, Washington

Letter from Sterling's Board of Directors to William J. Durbin, May 10, 1990

Analysis from Daniel G. Byrne, CFO, of Sterling Savings

Paul Horvitz Expert Report

David Welch Report

## Third Party Materials

Deposition of Richard Pratt in *Long Island Savings Bank, FSB, v. United States*, December 2, 1998

White, Lawrence. The S&L Debacle. Oxford University Press, 1991.

Barth, James. The Great Savings and Loan Debacle. The AEI Press, 1991.

Berger, Allen N., Richard J. Herring and Giorgio P. Szego. "The Role of Capital in Financial Institutions." Journal of Banking & Finance. Vol. 19, Nos. 3 – 4, 1995, pp. 393 – 430.

FHLBB Press Release, December 30, 1988.

FHLBB memorandum SP-24.

Testimony of James Croft in Glendale Federal v. U.S., March 28, 1997.

Testimony of James Croft in California Federal v. U.S., January 11, 1999.

FHLBB Agenda for Reform, March 1983.

Failure Costs of Government-Regulated Financial Firms: The Case of Thrift Institutions, James R. Barth, R. Dan Brumbaugh, Jr., and Daniel Sauerhaft, FHLBB Research Working Paper No. 123, October 1986.

Lee, Lochhead, Ritter and Zhao, "The Costs of Raising Capital," The Journal of Financial Research, Vol. XIX No. 1, Spring 1996, pp. 59-74.

"Ongoing Fiasco: Hundreds of S&L's Fall Hopelessly Short of New Capital Rules", The Wall Street Journal, December 7, 1989.

November 18, 1991 letter from Jerry Gitt, First Vice President of Merrill Lynch, to OTS Director Timothy Ryan.

Schilit, W. Keith, "Evaluating the Performance of Venture Capital Investments," Business Horizons, Sept./Oct. 1994.

Moody's Investor Service, "Notching for Differences in Priority of Claims and Integration of the Preferred Stock Rating Scale," November 2000.

Crabbe, L., "Estimating the Credit-Risk Yield Premium for Preferred Stock," Financial Analysts Journal, Sept./Oct. 1996.

Federal Home Loan Bank Board Annual Reports, 1982 – 1988.

GAO / AFMD Report 90-79, Financial Audit: Federal Savings and Loan Insurance Corporation's 1989 and 1988 Financial Statements.

Brealey and Myers, Principles of Corporate Finance, Fifth Edition, 1996.

Merrill Lynch High-Yield Bond Indices.

Bloomberg Professional

American Banker "Top 25" Thrifts, December 26, 1989.

Securities Data Company (SDC) Preferred Stock Database.

Securities Data Company (SDC) High Yield Debt Database.

Dow Jones Interactive

*Glendale Federal Bank, FSB v. Unites States*, 239 F. 3d 1374 (Fed. Cir. 2001)

OTS Corporate Structure System

OTS Thrift History Merger File

FDIC Institution Directory (internet site)

## Additional Materials

| | |
|---|---|
| Hard-copy Thrift Financial Reports, 3/98 | SG-0614446-468 |
| Hard-copy Thrift Financial Reports, 6/98 | SG-0615575-597 |
| Hard-copy Thrift Financial Reports, 9/98 and 12/98 | |
| Thrift Financial Report (FHLBB) 1983 – 1988 | |
| Thrift Financial Reports (Sheshunoff Information Services) 1989 – 2000 | |

B

## *Sterling Savings Association*

# Pre-FIRREA Acquisitions

SUPERVISORY ACQUISITIONS

**11/15**
**Lewis Federal**
Assets: $51,700,000
Deposits: $52,160,000
*(1986 Annual Report, p. 22)*

**4/8**
**Tri-Cities**
Assets: $69,500,000
Deposits: $63,145,000
*(1988 Annual Report, p. 31)*

**12/31**
**Central Evergreen**
Assets: $248,900,000
Deposits: $215,992,000
*(1989 Annual Report, p. 31)*




NON-SUPERVISORY ACQUISITIONS

**2/28**
**Lewis and Clark**
Assets: $44,100,000
Deposits: $38,331,000
*(1983 Annual Report, p. 14)*

**2/6**
**Great American Branches**
Assets: $47,278,000
Deposits: $47,548,000
*(1990 Annual Report, p. 29)*

**Exhibit B**
**Corrected**

C

# Examination Ratings of Sterling Savings Association
## 1983 - 1990

| Start Date | Completion Date | Type of Examination | Overall Composite | MACRO: Manage-ment | MACRO: Asset Quality | MACRO: Capital | MACRO: Risk | MACRO: Operating Results | |
|---|---|---|---|---|---|---|---|---|---|
| 9/16/83 | | Regular | 2 | - | - | - | - | - | [a] |
| 8/16/85 | | Annual | 2 | 2 | 2 | 2 | 2 | 2 | [a] |
| 10/29/86 | | Full Scope | 2 | 2 | 2 | 3 | 2 | 2 | [a] |
| 4/18/88 | | Regular | 2 | 2 | 2 | 3 | 2 | 2 | [a] |
| 6/19/89 | 7/25/89 | Joint Regular OTS and State | 3 | | | | | | [b] |
| 11/13/89 | 1/8/90 | Joint Special Limited OTS and State | 4 | | | | | | [c] |
| 9/17/90 | | Joint Examination | 5 | | | | | | [d] |
| | | | | CAMEL: Capital | CAMEL: Asset Quality | CAMEL: Manage-ment | CAMEL: Earnings | CAMEL: Liquidity | |
| 11/13/89 | 12/15/89 | FDIC Concurrent Exam | 5 | 5 | 4 | 4 | 3 | 3 | [e] |
| 9/17/90 | 10/19/90 | FDIC Concurrent Exam | 5 | 5 | 4 | 4 | 4 | 3 | [f] |

**Source:**

[a] FHLBB Memorandum from James R. Faulstich, PSA FHLB (WOT942 0429).
[b] OTS and State Joint Regular Examination dated 6/19/1989 (SG 0052270).
[c] OTS and State Joint Regular Examination dated 11/13/1989 (SG 0052353).
[d] OTS and State Joint Regular Examination dated 9/17/1990 (SG 0052603).
[e] November 13, 1989, FDIC Report of Examination, Zuppo Exhibit #58, p. A
[f] September 17, 1990, FDIC Report of Examination, Zuppo Exhibit #60, p. A (WON934 2381)

Exhibit C
Corrected

D

# OTS Composite Rating Definitions

Source: OTS and State Joint Regular Examination dated 6/19/89. (SG0052338, SG0052339)

The five composite ratings are defined as follows:

## Composite 1

Institutions in this group are sound institutions in every respect. Any critical findings are basically of a minor nature and can be handled in a routine manner. Moreover, such institutions are resistant to external economic and financial disturbances and capable of withstanding the vagaries of business conditions more ably than those with lower composite ratings.

## Composite 2

Institutions in this group are also fundamentally sound institutions but may reflect modest weaknesses correctable in the normal course of business. Such institutions are stable and also able to withstand business fluctuations quite well; however, areas of weaknesses could develop into conditions of greater concern. To the extent that the minor adjustments are handled in the normal course of business, the supervisory response is minimal.

## Composite 3

Institutions in this category exhibit a combination of weaknesses ranging from moderately severe to unsatisfactory. They are only nominally resistant to the onset of adverse business conditions and could easily deteriorate if concerted action is not effective in correcting the areas of weakness. Institutions which are in significant noncompliance with the laws and regulations may also be accorded this rating. Although their overall strength and financial capacity is such to make failure a remote possibility, such institutions are vulnerable and warrant special supervisory concern.

**Exhibit D, Page 1**
**Corrected**

# OTS Composite Rating Definitions (continued)

## Composite 4

Institutions in this group generally have an inadequate level of capital, or a combination of other conditions that are unsatisfactory. Major and serious problems or unsafe and unsound conditions may exist which are not being satisfactorily resolved by the institution. Unless prompt action is taken to correct these conditions, they could reasonably develop into a situation that could impair future viability. A potential for failure is present but is not pronounced. Institutions in this category require close supervisory attention and financial surveillance. Institutions with a positive net worth but that do not meet regulatory required minimal capital requirements would normally be assigned this rating. Also, profitable institutions that meet regulatory capital requirements, but have negative tangible capital, may also be assigned this rating. (Tangible capital is defined as capital, less tangible assets such as goodwill and deferred losses.)

## Composite 5

This category is reserved for institutions with an extremely high immediate or near-term probability of failure. The volume and character of weaknesses are such as to require urgent aid from the shareholders or other sources. Such institutions require immediate corrective action and constant supervisory attention. Obviously, formal administration action is presumed necessary. The probability of failure is high for these institutions.' Institutions with negative regulatory capital and those with negative generally accepted accounting principles (GAAP) capital and experiencing operating losses would normally be assigned this rating.

E

# Sterling Savings Association
## Summary of Reliance Recovery Through September 1989
($ in thousands)

| | | Sterling Savings' Investment | Lewis Federal | Tri-Cities | Central Evergreen | Total |
|---|---|---|---|---|---|---|
| 1 | + | Net liabilities assumed by Sterling | $3,794 | $14,338 | $20,083 | $38,215 |
| 2 | + | Cash assistance at the time of the acquisition | ($1,750) | ($11,730) | $0 | ($13,480) |
| 3 | | **Total of Sterling's Investment** | $2,044 | $2,608 | $20,083 | $24,735 |
| | | **Sterling Savings' Offsetting Gains** | | | | |
| 4 | + | Pre-Tax, Pre-Amortization Income from Supervisory Acquisitions, Sept. 1985 - Sept. 1989 | $1,387 | ($526) | $815 | $1,676 |
| 5 | + | Residual value of assets | $0 | $0 | $0 | $0 |
| 6 | | **Total of Sterling's Offsetting Gains** | $1,387 | ($526) | $815 | $1,676 |
| | | **Sterling Savings' Additional Costs (Wounded Bank Costs)** | | | | |
| 7 | | **Total Additional Costs** | $0 | $0 | $0 | $0 |
| | | **Total Damages (Line 3 less Line 6 plus Line 7)** | $657 | $3,134 | $19,268 | $23,059 |

Sources:
1 Net liabilities assumed equals the Supervisory Goodwill (SGW) balance corresponding to each of the acquisitions listed above.
Source: Analysis from Sterling Savings' CFO, Dan Byrne
2 Source: Analysis from Sterling Savings' CFO, Dan Byrne
4 Estimated as the sum of the Direct and Indirect Revenues and Expenses Source Exhibit F

Exhibit E
Corrected

F

# Sterling Savings Association
## Pre-Tax, Pre-Amortization Income from Supervisory Acquisitions
($ in thousands)

| | Lewis Federal | Tri-Cities | Central Evergreen | Total |
|---|---|---|---|---|
| **Directly Identified** [1] | ($1,744) | ($1,446) | ($1,163) | ($4,354) |
| Revenues | $6,447 | ($379) | $516 | $6,584 |
| Expenses | $8,192 | $1,067 | $1,679 | $10,938 |
| **Indirectly Identified (Allocated)** [2] | $3,131 | $920 | $1,978 | $6,029 |
| **Income** | $1,387 | ($526) | $815 | $1,676 |

Note:
[1] Source: Exhibit G
[2] Indirectly identified pre-tax, pre-amortization income is allocated based on the deposit size of the acquired thrifts. Source: Exhibit J

**Exhibit F**
**Corrected**

G

# Sterling Savings Association
## Direct Revenues and Expenses from Acquired Institutions
(Dollars in thousands)

| | Lewis Federal | Tri-Cities | Central Evergreen | Total |
|---|---|---|---|---|
| **June 1986** | | | | |
| Total Interest Income [1] | $ 2,251 | | | $ 2,251 |
| Total Interest Expense | $ 2,615 | | | $ 2,615 |
| Net Interest Income | $ (364) | | | $ (364) |
| Total Other Income | $ 79 | | | $ 79 |
| Total Operating Expense (excluding Goodwill) | $ 324 | | | $ 324 |
| Lewis Service Corp Net Income Before Taxes [2] | $ 37 | | | $ 37 |
| Income from Operation | $ (571) | | | $ (571) |
| **June 1987** | | | | |
| Total Interest Income [1] | $ 3,676 | | | $ 3,676 |
| Total Interest Expense | $ 3,760 | | | $ 3,760 |
| Net Interest Income | $ (84) | | | $ (84) |
| Total Other Income | $ 133 | | | $ 133 |
| Total Operating Expense (excluding Goodwill) | $ 430 | | | $ 430 |
| Lewis Service Corp Net Income Before Taxes [2] | $ 8 | | | $ 8 |
| Income from Operation | $ (373) | | | $ (373) |
| **June 1988** | | | | |
| Total Loan Fee and Other Fee Income [1] | $ 129 | $ 16 | | $ 145 |
| Total Operating Expense (excluding Goodwill) | $ 418 | $ 243 | | $ 661 |
| Tri-Cities Mortgage Net Income Before Taxes [2] | | $ (286) | | $ (286) |
| Tri West Mortgage Net Income Before Taxes | | $ (33) | | $ (33) |
| Income from Operation | $ (289) | $ (547) | | $ (836) |

Exhibit G, Page 1
Corrected

# Sterling Savings Association
## Direct Revenues and Expenses from Acquired Institutions
(Dollars in thousands)

| | Lewis Federal | Tri-Cities | Central Evergreen | Total |
|---|---|---|---|---|
| **June 1989** | | | | |
| Total Other Fee Income [1] | $ 107 | $ 177 | $ 216 | $ 500 |
| Total Operating Expense (excluding Goodwill) | $ 492 | $ 673 | $ 979 | $ 2,144 |
| Tri-Cities Mortgage Net Income Before Taxes [2] | | $ (205) | | $ (205) |
| Tri West Mortgage Net Income Before Taxes | | $ (55) | | $ (55) |
| Evergreen Environmental Dev Corp Net Income Before Taxes | | | $ 1 | $ 1 |
| Evergreen First Service Corp Net Income Before Taxes | | | $ 117 | $ 117 |
| Income from Operation | $ (385) | $ (757) | $ (645) | $ (1,786) |
| **September 1989 (3-months)** | | | | |
| Total Other Fee Income [1] | $ 26 | $ 47 | $ 142 | $ 0 |
| Total Operating Expense (excluding Goodwill) | $ 152 | $ 150 | $ 550 | $ 852 |
| Tri-Cities Mortgage Net Income Before Taxes [2] | | $ (41) | | $ (41) |
| Tri West Mortgage Net Income Before Taxes | | $ 1 | | $ 1 |
| Evergreen Environmental Dev Corp Net Income Before Taxes | | | $ 0 | $ 0 |
| Evergreen First Service Corp Net Income Before Taxes | | | $ 40 | $ 40 |
| Unit Offering Costs [3] | | | $ 151 | |
| Income from Operation | $ (126) | $ (142) | $ (519) | $ (851) |
| **Total Revenue** | $ 6,447 | $ (379) | $ 516 | $ 6,370 |
| **Total Expense** | $ 8,192 | $ 1,067 | $ 1,679 | $ 10,787 |
| **Total Income from Operations** | $ (1,744) | $ (1,446) | $ (1,163) | $ (4,417) |

**Notes:**

[1] The data for interest income, interest expense, loan fee income, other fee income and operating expenses are based on information from Sterling Savings' CFO, Dan Byrne. (See Exhibit I, page 3 - 9.)

[2] Serivce Corp net income before taxes is presented in Exhibit I page 2.

[3] Unit offering costs are presented on pages 3 and 4 of this exhibit. Dan Byrne, Sterling Savings' CFO, has indicated that these costs were not expensed until March 1990.

**Exhibit G, Page 2**
**Corrected**

# Sterling Savings Association

## Central Evergreen Related Expenses Prior to 9/30/89: 1989 Offering Costs

Source: Analysis from Sterling Savings' CFO, Dan Byrne

| DATE DESCRIPTION | CHECK # | JV# | AMOUNT | BALANCE | | Costs Incurred Before 9/30/89 |
|---|---|---|---|---|---|---|
| LEGAL FEES | | | | | | |
| 6/23 WKDT | | 8883 | 4,062.50 | | | 4,062.50 |
| 8/14 ARNOLD & PORTER | 28432 | | 10,000.00 | | | 10,000.00 |
| 9/21 WKDT | 29912 | | 25,775.06 | | | 25,775.06 |
| 10/5 WKDT | 30471 | | 37,502.71 | | | 0.00 |
| 10/27 ARNOLD & PORTER | 3158977 | | 15,285.98 | | | 0.00 |
| 10/27 RANDALL DANSKIN | 31647 | | 1,931.39 | | | 0.00 |
| 10/31 ARNOLD & PORTER | 31773 | | 15,405.50 | | | 0.00 |
| 11/22 PERKINS COIE | 32779 | | 3,982.23 | | | 0.00 |
| 11/22 RANDELL DANSKIN | 32778 | | 220.86 | | | 0.00 |
| 11/24 ARNOLD & PORTER | 32804 | | 2,632.18 | | | 0.00 |
| 12/15 WKDT | 33662 | | 72,789.63 | | | 0.00 |
| 12/28 ARNOLD & PORTER | 34036 | 10095 | 9,985.51 | | | 0.00 |
| 12/28 RANDALL DANSKIN | 34052 | 10095 | 27.00 | | | 0.00 |
| 1/4 90 WKDT | 34311 | 10152 | 7,630.00 | | | 0.00 |
| 1/31 ARNOLD & PORTER | 35248 | | 17,035.90 | | | 0.00 |
| 1/12 WKDT | 34688 | | 25,118.81 | | | 0.00 |
| 2/27 WKDT | 36153 | 10447 | 13,362.19 | | | 0.00 |
| 2/23 ARNOLD & PORTER | | | 593.93 | | | 0.00 |
| 3/29 WKDT | | | 4,750.52 | | | 0.00 |
| 4/30 WKDT | | | 2,112.62 | | | 0.00 |
| 5/4 WKDT | | | 5,207.86 | | | 0.00 |
| 5/25 PERKINS COIE | | | 9,529.46 | | | 0.00 |
| 6/5 WKDT | 37288 | | 12,353.34 | | | 0.00 |
| 7/31 ARNOLD & PORTER | (TFR TO 1711-1) | | (10,000.00) | 287,295.18 | | 0.00 |
| WKDT | 3/9/90 | 81316-949 | 29.35 | | ADDED | 0.00 |
| WKDT | 2/6/90 | 81316-949 | 11,124.23 | | ADDED | 0.00 |
| WKDT | 8/30/89 | 81316-949 | 25,775.06 | | ADDED | 25,775.06 |
| WKDT | 1/21/89 | 81316-949 | 310.50 | | ADDED | 310.50 |
| | | | | 37,239.14 | | 65,923.12 |
| DAIN BOSWORTH | | | | | | |
| 8/16 DAIN BOSWORTH | 26539 | | 50,000.00 | | | 50,000.00 |
| 12/27 DAIN BOSWORTH | 33983 | 10088 | 22.02 | | | 0.00 |
| 1/10/90 DAIN BOSWORTH | WT | | 398,717.00 | 448,739.02 | | 0.00 |
| | | | | | | 50,000.00 |
| ACCOUNTING SVC | | | | | | |
| 9/8 COOPERS & LYBRAND | 29313 | | 2,000.00 | | | 2,000.00 |
| 9/23 COOPERS & LYBRAND | 30069 | | 32,956.00 | | | 32,956.00 |
| 10/27 COOPERS & LYBRAND | 31612 | | 23,200.00 | | | 0.00 |
| 12/20 COOPERS & LYBRAND | 33788 | | 36,423.00 | | | 0.00 |
| 1/10/90 COOPERS & LYBRAND | 34479 | | 12,000.00 | | | 0.00 |
| 1/31 COOPERS & LYBRAND | | 10329 | 7,992.00 | 114,571.00 | | 0.00 |
| | | | | | | 34,956.00 |
| ROAD SHOW & OTHER TRAVEL & ENTERTAINMENT | | | | | | |
| 11/2 N JUDD | 31955 | | 36.90 | | | 0.00 |
| 11/10 B ZUPPE | 32409 | | 122.64 | | | 0.00 |
| 11/24 H STANLEY | DD | | 584.24 | | | 0.00 |
| 11/24 H STANLEY | DD | | 2,191.34 | | | 0.00 |
| 11/29 DIANE RASMUSSON | DD | | 126.79 | | | 0.00 |
| 12/6 KYLE HENDRICKS | DD | | 101.91 | | | 0.00 |
| 12/6 SPO. WORLD TRAVEL | 33232 | | 764.00 | | | 0.00 |
| 12/11 MARILYN BOWELS | 33472 | | 15.00 | | | 0.00 |
| 12/11 POMEROY SR CTR | 33473 | | 35.00 | | | 0.00 |
| 12/11 BRIDGET PIPER | 33474 | | 13.84 | | | 0.00 |
| 12/13 QUALITY INN | 33527 | | 214.05 | | | 0.00 |
| 12/13 N JUDD | | 10020 | 1,025.28 | | | 0.00 |
| 12/18 D BYRNE-NOV EXP | 33699 | | 109.25 | | | 0.00 |
| 12/20 WHITMAN RESTAURANT | 33835 | | 99.88 | | | 0.00 |
| 12/22 HANFORD HOUSE | 33912 | | 376.87 | | | 0.00 |
| 12/22 ST HELENS INN | 33923 | | 516.32 | | | 0.00 |
| 12/27 JOHN DECKER | 33981 | 10088 | 112.81 | | | 0.00 |
| 12/27 FOUR SEASONS | | 10088 | 1,862.66 | | | 0.00 |
| 12/27 FRANK KELLY | 33983 | 10088 | 158.99 | | | 0.00 |
| 12/27 NENDEL'S | 33984 | 10088 | 176.03 | | | 0.00 |
| 12/28 H STANLEY | DD | | 115.97 | | | 0.00 |

Exhibit G, Page3
Corrected

# Central Evergreen Related Expenses Prior to 9/30/89: 1989 Offering Costs

Source: Analysis from Sterling Savings' CFO, Dan Byrne

| DATE | DESCRIPTION | CHECK # | JV# | AMOUNT | BALANCE | Costs Incurred Before 9/30/89 |
|---|---|---|---|---|---|---|
| 1/4/90 | N JUDD | 34309 | 10159 | 412.56 | | 0.00 |
| 1/10 | BANKCARD SERVICES | 34480 | | 21,929.84 | | 0.00 |
| 1/8 | H STANLEY | | 10171 | 654 95 | | 0.00 |
| 1/31 | BRIDGET PIPER | DD | | 17.82 | 31,774.94 | 0.00 |
| | | | | | | 0.00 |
| MISC | | | | | | |
| 11/1 | NATL ASSN SEC DEALERS | 31915 | | 1,828 25 | | 0.00 |
| 11/9 | STATE FEES PC | 32373/32397 | | 10,035.00 | | 0.00 |
| 11/9 | MIDWEST SEC | 32401 | | 40.00 | | 0.00 |
| 11/21 | MELLON BANK | 32772 | | 100 00 | | 0.00 |
| 12/8 | KROMA | 33434 | 9995 | 10,126.74 | | 0.00 |
| 12/20 | CUSIP SVC | 33794 | | 74.00 | | 0.00 |
| 12/21 | FED EXPRESS | MISC. CKS | | 823 24 | | 0.00 |
| 12/22 | WALT'S MAILING | 33930 | | 63 00 | | 0.00 |
| 12/28 | FED EXPRESS | 34045 | 10095 | 19 50 | | 0.00 |
| 1/31/90 | JAN ACCR - KROMA | | 10333 | 506 66 | | 0.00 |
| 1/10 | FED EXPRESS | 34539 | 10188 | 52 00 | | 0.00 |
| 1/17 | FED EXPRESS | 34782 | | 45 00 | | 0.00 |
| 1/31 | JAN ACCR - FED EXPRESS | | 10333 | 87 48 | | 0.00 |
| 1/12 | MILLER JORDAN TRAVEL | 34659 | | 596 00 | | 0.00 |
| 1/24 | BUDGET RENT A CAR | 35069 | | 51 15 | | 0.00 |
| 1/24 | DEPOSITORY TRUST | 35108 | | 60 00 | | 0.00 |
| 1/24 | H GILKEY | DD | 10258 | 2,131 73 | | 0.00 |
| 1/18 | B ZUPPE | DD | | 120 32 | | 0.00 |
| 2/9 | DEPOSITORY TRUST | 35728 | | 60 00 | | 0.00 |
| 2/9 | ONE HR PHOTO | 35745 | | 40 55 | | 0.00 |
| 2/12 | METRO CAFÉ | 35823 | | 12 40 | | 0.00 |
| 2/23 | FED EXPRESS | 36031 | | 9 75 | | 0.00 |
| 2/26 | H STANLEY | DD | | 11 27 | | 0.00 |
| 2/26 | H STANLEY | DD | | 102 81 | | 0.00 |
| 3/31 | ACCR OC EXP | | 10715 | 75,000 00 | | 0.00 |
| 3/13 | BANKCARD SERVICES | 36525 | | (567 80) | | 0.00 |
| 3/15 | FED EXPRESS | 35947 | 10550 | 35 20 | | 0.00 |
| 3/28 | H STANLEY | DD | | 290 57 | | 0.00 |
| 4/13 | DEVRIES | 39311 | | 593 13 | | 0.00 |
| 4/13 | BANKCARD SERVICES | 36760 | 10742 | 205 28 | | 0.00 |
| 4/20 | FED EXPRESS | 36847 | | 19 50 | | 0.00 |
| 4/27 | FED EXPRESS | 36938 | | 10 50 | | 0.00 |
| 4/30 | BANKCARD SER-APR ACCR | | 10843 | 1,668 63 | | 0.00 |
| 5/14 | WISCONSIN OFFICE OF | VD CK32396 | 10914 | (200 00) | | 0.00 |
| 5/14 | ST TREAS OF COLORADO | VD CK32375 | 10914 | (130 00) | | 0.00 |
| 6/8 | ST OF NEBRASKA | REFUND | | (610 00) | | 0.00 |
| 6/19 | ST OF OHIO | REFUND | | (220 00) | | 0.00 |
| 7/31 | CONNELLEY RECEIVABLES | 41703 | | 7,606 79 | 110,518 65 | 0.00 |
| | | | | | 1,030,137.93 | 0.00 |
| | | | | | Total | 150,879.12 |

**App. 494**

Exhibit G, Page4
Corrected

H

Exhibit H
Corrected

# Sterling Savings Association
## Pre-Tax, Pre-Amortization Net Income
## December 1985 - September 1989

Source: FHLBB Thrift Financial Reports
(Dollars in thousands)

| Period | Net Income [a] | Amortization of Goodwill [b] | Taxes [c] | Pre-Tax, Pre-Amort. Net Income [d] = [a] + [b] + [c] |
|---|---|---|---|---|
| Sep-85 | 118 | 33 | 33 | 184 |
| Dec-85 | 181 | 49 | 39 | 269 |
| Mar-86 | 206 | 118 | 58 | 382 |
| Jun-86 | 324 | 126 | 75 | 525 |
| FY 1986 | 829 | 326 | 205 | 1,360 |
| Sep-86 | 202 | 57 | 71 | 330 |
| Dec-86 | 228 | 57 | 82 | 367 |
| Mar-87 | 335 | 57 | 195 | 587 |
| Jun-87 | 325 | 57 | 212 | 594 |
| FY 1987 | 1,090 | 228 | 560 | 1,878 |
| Sep-87 | 166 | 58 | 81 | 305 |
| Dec-87 | 330 | 58 | 181 | 569 |
| Mar-88 | 328 | 65 | 180 | 573 |
| Jun-88 | 383 | 291 | 310 | 984 |
| FY 1988 | 1,207 | 472 | 752 | 2,431 |
| Sep-88 | 71 | 304 | 122 | 497 |
| Dec-88 | 113 | 304 | 148 | 565 |
| Mar-89 | 283 | 983 | 146 | 1,412 |
| Jun-89 | 514 | 681 | 144 | 1,339 |
| FY 1989 | 981 | 2,272 | 560 | 3,813 |
| Sep-89 | 262 | 813 | 134 | 1,209 |
| Total (12/85 -9/89) | 4,251 | 4,078 | 2,178 | 10,691 |