**IN THE U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STERLING SAVINGS ASS'N, a state chartered savings Ass'n, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES**

## I. ISSUES PRESENTED AND RELIEF SOUGHT

Sterling Savings Association ("Sterling") brought suit against the U.S. in May 1990, seeking to remedy breaches of contracts for the acquisition of three thrifts. In January 1997, Sterling moved for partial summary judgment on liability for breach. That motion was granted in September 2002. On March 3, 2005, the Government moved for reconsideration as to the Central Evergreen transaction. That motion was granted on August 30, 2006. [Doc. 204] A three week trial is set to commence on June 25, 2007, to determine the amount of damages owed to Sterling.

The Court has established a series of deadlines to manage discovery, yet, years after the expiration of these discovery deadlines and only a few months before trial, the Government has added two new fact witnesses and one new expert witness. Further, the Government has likewise furnished new expert opinions by witnesses not previously identified to render such opinions, and who did not render such opinions during expert discovery. Accordingly, Sterling respectfully requests that the Court strike the untimely witnesses and opinions.

## II. STATEMENT OF FACTS

In order to efficiently and uniformly manage discovery for the entire series of *Winstar* cases pending before the U.S. Court of Federal Claims, in 1997 the Court issued Procedural Order No. 2: Discovery Plan. Pl's App. A-1 – A-10. The Discovery Plan established a deadline for initially disclosing "the name and title of any current or former employee, agent or representative of a party likely to have discoverable information relevant to the allegations in the Complaint." Pl's App. A-7. Pursuant to the Discovery Plan, the Government filed its initial disclosures on September 20, 1999. Pl's App. A-11 – A-19. On October 10, 2001, the Government produced its initial identification of expert witnesses. Pl's App. A-20 – A-23.

On February 26, 2002, then-presiding Chief Judge Edward J. Damich issued an Order that required "all outstanding fact and expert discovery" to be completed no later than July 22, 2002. Pl's App. A-24. On July 23, 2002, and again on October 1, 2002, upon the parties' joint motions, Chief Judge Damich extended the cut-off for expert discovery until November 8, 2002. Pl's App. A-25 and A-26. The deadline for factual discovery was never extended beyond July 22, 2002.

Following Chief Judge Damich's grant of Sterling's motion for summary judgment on liability, then-presiding Judge Victor J. Wolski entered an order allowing the parties to provide supplemental expert damages reports to reflect the effect of *Coast Federal Bank, FSB v. U.S.*, 323 F.3d 1035 (Fed. Cir. 2003). Pl's App. A-27 – A-28. This Order established a deadline of February 9, 2004, for the Government to respond to any supplemental expert reports filed by Sterling. *Id.* Pursuant to this Order, the Government disclosed Dr. Mukesh Bajaj to respond to Sterling's amended reports. Pl's App. A-29 – A-30.

On March 3, 2005, the Government moved for reconsideration of Chief Judge Damich's summary judgment opinion with respect to liability for the Central Evergreen transaction. This Court granted the Government's motion for reconsideration on August 30, 2006. [Doc. 204.]

Based upon the exclusion of Central Evergreen's capital from Sterling's damage calculations, the Court issued a Scheduling Order that allowed the parties to update their expert reports to reflect the passage of time and the Court's order regarding Central Evergreen. Pl's App. A-31 – A-32. The Court did not issue an order that would permit the parties to add new theories or defenses or to add new witnesses. Indeed, the Government expressly requested that the Court prohibit such conduct. Pl's App. A-33 – A-52.

On December 5, 2006, the Government filed its Amended Response to Sterling's First Set of Interrogatories, adding two new fact witnesses, David Kroeger and John W. Stone. Pl's App. A-53 – A-56. On February 15, 2007, the Government disclosed, for the first time, W. Barefoot Bankhead as an expert witness. Pl's App. A-57 – A-74. On this same date, the Government further disclosed new expert opinions by Joe Hargett and Dr. William Hamm, two previously disclosed experts on other subject matters. Pl's App. A-75 – A-87 and A-88 – A-155. Mr. Hargett and Dr. Hamm have issued opinions beyond the scope of their original opinions and on matters for which they were never disclosed during the expert discovery phase of this case.

## III. <u>ARGUMENT</u>

### A. EVIDENCE THAT IS NOT TIMELY DISCLOSED MUST BE STRICKEN.

Under Rule 37(c)(1) of the Rules of the Court of Federal Claims (RCFC), a party that fails to timely disclose additional fact or expert witnesses is precluded from using that witness or information at trial. The exclusion of non-disclosed evidence is automatic and mandatory under RCFC 37(c)(1) unless non-disclosure was substantially justified or harmless. *Zoltek Corp. v. U.S.,* 71 Fed. Cl. 160, 167 (2006). The Government's failures to disclose are neither harmless nor substantially justified. Because the Government cannot (and has failed to ever attempt to) justify its dilatory disclosures, such witnesses should be stricken.

## B. DAVID KROEGER AND JOHN W. STONE SHOULD BE STRICKEN BASED UPON THEIR UNTIMELY DISCLOSURE.

On September 20, 1999, pursuant to the Court of Federal Claims' Discovery Plan, the Government initially disclosed all persons then known to have knowledge of Sterling's regulatory and capital activities during the relevant time period. Pl's App. A-11 – A-19. Neither David Kroeger nor John W. Stone, who were Government employees at all relevant times, were disclosed at that time. *Id.* Sterling propounded its first set of interrogatories and requests for production to the Government on June 2, 2000. Pl's App. A-178 – A-179. Interrogatory No. 1 asked the Government to identify any member of any Federal Banking Agency who, between 1983 and the present, analyzed or discussed the regulatory restrictions placed on Sterling. *Id.* Again, neither Mr. Kroeger nor Mr. Stone were included in the Government's initial response to Sterling's Interrogatories. Pl's App. A-180 – A-183.

The Government did not disclose Mr. Kroeger or Mr. Stone prior to the factual discovery cut-off on February 26, 2002. The Government then amended its initial response to Sterling's interrogatories on December 5, 2006, to add Mr. Kroeger and Mr. Stone. Pl's App. A-53 – A-54. Both Mr. Stone and Mr. Kroeger have been known to the Government during the entire 17-year course of this litigation. The Government has not indicated any difficulty in reaching either witness or even attempted to provide a justification for their untimely disclosure.

Sterling is prejudiced by the disclosure of two additional witnesses just months short of trial. Fact discovery has been closed for nearly five years. Sterling has not had the opportunity to depose or otherwise prepare for the testimony of Mr. Stone or Mr. Kroeger. Therefore, this Court should strike David Kroeger and John W. Stone from the Government's witness list and disallow their participation in the trial.

**C. W. BAREFOOT BANKHEAD SHOULD BE STRICKEN AS AN EXPERT.**

Pursuant to RCFC 26(a)(2)(C), disclosure of expert witnesses "shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties …, the disclosures shall be made at least 70 days before the scheduled close of discovery." The cut-off date for expert discovery, as established by court order, was November 8, 2002. Pl's App. A-26. The Government did not disclose W. Barefoot Bankhead as an expert until nearly five years later, when his expert report was served on February 15, 2007. Pl's App. A-57 – A-67. Therefore, this expert should be stricken.

**D. JOE A. HARGETT'S AND WILLIAM G. HAMM'S SUPPLEMENTAL OPINIONS SHOULD BE STRICKEN.**

***1. Mr. Hargett's Supplemental Expert Report Contains Opinions Beyond His Original Opinion Disclosed During Expert Discovery.***

The Government retained Joe Hargett to offer his opinion as to Sterling's calculation and amortization of "RAP" goodwill, expectancy damages, reliance damages, restitution, replacement damages, and wounded bank damages. Pl's App. A-156 – A-165. Mr. Hargett reserved the right to amend his report "depending on the passage of time or something," but reiterated that the scope of his opinion was contained within the Expert Report. Pl's App. A-158.

Mr. Hargett filed his Supplemental Report on February 15, 2007. In Paragraph 9 of the Supplemental Report, Mr. Hargett offers his opinion on new subject matters as to how the Office of Thrift Supervision (OTS) *may have* applied contractual and non-contractual goodwill within FIRREA's new regulatory core capital requirements, including the 1.5% limit on supervisory goodwill. Pl's App. A-78. This opinion is demonstrably beyond the scope of Mr. Hargett's previous expert report or deposition testimony. In the "Background and Assignment" section of his Supplemental Report, Mr. Hargett concedes that many of his opinions offered during expert discovery have been rendered moot, and as a result, the Government in January of 2007 asked him

to offer new opinions concerning the calculation of core capital. Pl's App. A-76. These new opinions exceed the scope of his testimony and report as disclosed to Sterling. *See* RCFC 26(b). Consequently, Mr. Hargett's opinions not offered during expert discovery in 2002 should be stricken.

***2. Mr. Hargett's Opinions As To An Inadmissible Expert Report Are Irrelevant.***

Mr. Hargett notes that he was "asked to review the expert report prepared by W. Barefoot Bankhead (the Bankhead Report) in this matter and to opine on the methodologies" described in that report. Pl's App. A-76. As discussed, W. Barefoot Bankhead was never disclosed to Sterling and his report is untimely, prejudicial and should be stricken in its entirety. *See Section III-C, supra*. Consequently, Mr. Hargett's concurrence with the Bankhead Report is irrelevant and should be similarly stricken.

***3. Dr. Hamm's Expert Opinion Is Limited To Restitution and Reliance Damages.***

The Government retained Dr. William G. Hamm to opine on the issue of restitution and reliance damages. Subsequent to the filing of his initial report, Dr. Hamm testified to the limited scope of his engagement:

> Q: So to know whether Sterling was harmed by the withdrawal of the promise to use supervisory goodwill as capital, you would want to use some other measure?
>
> A: Well, Mr. Weatherhead, I have only addressed restitution and reliance in my report. And I have not addressed expectancy damages. And certainly as an economist that would generally be the first place I would look for damages. But I can't – I have no opinion on expectancy damages.

Pl's App. A- *Hamm Dep.*, 199:15-25.

On February 15, 2007, however, Dr. Hamm presented his Supplemental Expert Report. Contrary to his asserted area of expertise, Dr. Hamm's Supplemental Report contains many pages of opinions regarding Dr. Paul Horvitz's "lost profits model" and calculations of expectancy damages. Pl's App. A-116 – A-139 and A-139 – A-140. These opinions are beyond the scope of that for

which he was disclosed and to which he testified. As such, any of Dr. Hamm's opinions with respect to lost profits or expectancy damages are beyond the scope of his original report and area of expertise and should be stricken.

In sum, under RCFC 26(b), the Government was duty-bound to disclose the full scope of its experts' testimony. The supplemental reports exceed this scope. The Court only granted the parties leave to update their reports to reflect the Court's decision regarding Central Evergreen, not to add new expert witnesses or theories. The supplemental reports violate both RCFC 26(b) and this Court's September 27 Order.

Moreover, the Government is hardly in a position to deny the prejudice that would occur to Sterling if it were allowed to present opinions not previously disclosed. The Government has admitted on the record that it would be prejudicial to add new witnesses or theories this close to trial. Pl's App. A-172.

### E. THE GOVERNMENT'S SUPPLEMENTAL EXPERT REPORTS ARE NOT PROBATIVE OF THE DAMAGES ISSUE BECAUSE THEY PRESUME, WITHOUT FOUNDATION, A SEPARATE GOVERNMENTAL BREACH OF CONTRACT.

The Government's expert witnesses misinterpret the settled law in this case. Chief Judge Damich's summary judgment opinion determined the Government's liability for breaching its contracts in Sterling's acquisitions of Lewis Federal, Tri-Cities and Central Evergreen. [Doc. 103] On August 30, 2006, the Court reversed the part of Chief Judge Damich's opinion that dealt with liability for the Central Evergreen acquisition. [Doc. 204] Pursuant to the September 27, 2006 Scheduling Order, both Sterling and the Government's experts were to submit supplemental reports on the finite issue of recalculating damages based upon the acknowledged breach of contracts in the Lewis Federal and Tri-Cities acquisitions. Pl's App. A-31 – A-32.

The Government's experts' supplemental reports posit a new theory, namely, that the Government would have treated the Lewis Federal and Tri-Cities contracts another way so as to

render the breach that did occur harmless. Specifically, the Government's experts speculate that even had the Government recognized Sterling's contracts and allowed Sterling to count the contractual goodwill from Lewis Federal and Tri-Cities, the FDIC, as a tough new regulator, would have focused on tangible capital levels where its predecessor had not. Pl's App. A-59 – A-60 and A-121 – A-127. Damage models that presuppose the Government's breach of contract, only by a different name, are without merit. This same argument was rejected by the Court in *Fifth Third Bank v. U.S.*, 71 Fed. Cl. 56 (2006). In refuting the Government's claim that the FDIC may have regulated thrifts more stringently than its predecessor, and thus eliminated any goodwill that may have been realized in the absence of FIRREA, Judge Christine Odell Cook Miller wrote:

> This argument is unavailing. Even if the court were to assume that the FDIC, as the tough new regulator, would have focused on tangible capital levels where its predecessor did not, the fact is that Citizens formed a contract with the Government for special accounting treatment. … Defendant conveniently posits a scenario where FIRREA did not exist to breach the contract and remove goodwill from the capital requirements, but, instead, the FDIC decided on its own to threaten Citizens with removal of insurance and, thus, insolvency if it did not raise its tangible capital levels relative to goodwill. Had this scenario transpired, it also would have constituted a breach of contract by the Government. The breaching activity would have occurred through a different mechanism – the regulator's choice to eliminate the promised treatment of goodwill – rather than a mandate from Congress eliminating the treatment of goodwill. Defendant's speculative scenario does not even appear to illuminate causation; rather, it imagines a different sort of breach.

*Id*. at 70.

The *Fifth Third* Court made clear that the Government cannot escape paying damages for an adjudged breach of contract by creating a hypothetical situation in which the same contracts would have been breached in a slightly different manner. *See also Slattery v. U.S.*, 53 Fed. Cl. 258, 285 (2002). The Government's experts were charged with the task of responding to Sterling's experts' damages recalculations following the removal of Central Evergreen capital. They are not, however, permitted to opine as to how the FDIC, independent of FIRREA, may have treated Sterling in order to effectuate a different breach and eliminate but-for Sterling's contractual damages.

## IV. CONCLUSION

For these reasons, the Court should strike the noted portions of Joe A. Hargett and William G. Hamm's Supplemental Expert Reports, and prohibit in the entirety any testimony by Mr. W. Barefoot Bankhead, Mr. David Kroeger and Mr. John W. Stone.

DATED this 2nd day of March, 2007.

WITHERSPOON, KELLEY, DAVENPORT
& TOOLE, P.S.

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member of the Bar of the U.S.
Court of Federal Claims

1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on March 2, 2007, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff