**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 95-829C** |
| | ) | **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

---

**OPPOSITION TO STERLING'S MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES**

---


**Respectfully submitted,**

**MICHAEL F. HERTZ**
**Deputy Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Acting Director**

**ELIZABETH M. HOSFORD**
**Trial Attorney**
**Commercial Litigation Branch**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 616-0332**

**Attorneys for Defendant**

**Of counsel:**

**TAREK SAWI**
**Senior Trial Counsel**
**MELINDA HART**
**DELISA SANCHEZ**
**TIMOTHY ABRAHAM**
**WILLIAM KANELLIS**
**ELIZABETH HOLT**


**March 19, 2007**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

APPENDIX TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

OPPOSITION TO STERLING'S MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. THE GOVERNMENT'S DISCLOSURE OF JOHN W. STONE AND DAVID KROEGER AS TRIAL WITNESSES WAS TIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. There Is No Duty To Supplement Our Initial Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. Our Responses To Sterling's Interrogatory Requests Were Seasonably Supplemented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. THE EXPERT REPORT OF W. BAREFOOT BANKHEAD IS TIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. THE SUPPLEMENTAL EXPERT REPORTS OF WILLIAM G. HAMM AND JOE HARGETT SHOULD NOT BE STRICKEN BECAUSE THEY DIRECTLY ADDRESS NEW ASSUMPTIONS IN DR. HORVITZ'S 2006 REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. Mr. Hargett's Supplemental Report Addresses An Issue That Could Not Have Been Disclosed Previously Because It Was Raised For The First Time In Dr. Horvitz's 2006 Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B. Dr. Hamm's Supplemental Report Addresses A New Assumption In Dr. Horvitz's 2006 Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. MR. BANKHEAD AND DR. HAMM DO NOT INTEND TO OPINE THAT THE GOVERNMENT WOULD NOT HAVE HONORED GOODWILL CONTRACTS IN THE "BUT-FOR" WORLD . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES
## CASES

California Federal Bank v. United States,
54 Fed. Cl. 704 (Fed. Cl. 2002), aff'd, 395 F.3d 1263 (Fed. Cir. 2005) . . . . . . . . 9

Fifth Third Bank v. United States,
71 Fed. Cl. 56 (2006) . . . . . . . . 13

Glendale Federal Bank v. United States,
43 Fed. Cl. 390 (1999) 239 F.3d 1374 (Fed. Cir. 2001) . . . . . . . . 10

Kumho Tire, Inc. v. Carmichael,
526 U.S. 137 (1999) . . . . . . . . 12

Slattery v. United States,
53 Fed. Cl. 258 (2002) . . . . . . . . 13

Sterling Savings Ass'n v. United States,
57 Fed. Cl. 445 (2003) . . . . . . . . 7, 8

Sterling Savings Ass'n v. United States,
72 Fed. Cl. 404 (2006) . . . . . . . . 4

Zoltek Corp, v. United States,
71 Fed. Cl. 160 (2006) . . . . . . . . 5

## STATUTES AND RULES

Fed. R. Evid. 702 . . . . . . . . 12

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
Pub. L. No. 101-73 103 Stat. 183 ("FIRREA") . . . . . . . . 13

Rule 26 . . . . . . . . 2, 6

Rule 26(a)(2)(c) . . . . . . . . 6

Rule 26(c)(1) . . . . . . . . 3

Rule 26(e) . . . . . . . . 2, 4

Rule 26(e)(2) . . . . . . . . 4

Rule 37(c)(1) . . . . . . . . *passim*

Rule 37(e)(1) . . . . . . . . 3

## APPENDIX TABLE OF CONTENTS

DEFENDANT'S INITIAL WITNESS LIST, DECEMBER 13, 2006 . . . . . . . . . . . . . . . . . App. 1

UPDATE TO THE EXPERT REPORT OF DR. PAUL HORVITZ, DATED DECEMBER 11, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 95-829C (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**OPPOSITION TO STERLING'S MOTION TO**
**<u>STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES</u>**

Defendant, the United States, respectfully opposes the motion of plaintiffs, Sterling Savings Association and Sterling Financial Corporation ("Sterling"), to "strike" two of the Government's fact witnesses, Mr. John W. Stone and Mr. David Kroeger, and three of the Government's expert witnesses, Mr. W. Barefoot Bankhead, Mr. Joe Hargett and Dr. William G. Hamm, from testifying at trial. We respectfully request that the Court deny Sterling's motion to preclude these witnesses from testifying at the trial scheduled for June 25, 2007.[1]

With respect to Mr. Stone and Mr. Kroeger, both of whom are former employees of the Federal Deposit Insurance Corporation ("FDIC"), Sterling's motion should be denied because we have followed the Rules of this Court by identifying these gentlemen, both in a supplement to our interrogatory responses and in the initial witness list required by the Court's order dated September 27, 2006 ("September 27, 2006 Order"). Our disclosure of these witnesses a full six

[1] To date, Sterling has not noticed the depositions of any of our experts, including Dr. Mukesh Bajaj, who is not the subject of its motion, notwithstanding the Court-imposed deadline of March 17, 2007. Further, Sterling has not timely requested an enlargement of time within which to conduct these depositions. Consequently, we assume that Sterling does not intend to depose these individuals.

months prior to the start of trial eliminates any possibility of prejudice to Sterling by providing ample time to depose the witnesses prior to their testimony.

Similarly, Sterling's attempt to strike the recent expert reports of Messrs. Bankhead and Hargett and Dr. Hamm is meritless. Consistent with the Court's September 27, 2006 Order, each report was issued in direct response to the expert reports that were filed by Sterling's experts, Dr. Paul Horvitz and Professor Christopher James, on December 11, 2006 ("Horvitz 2006 Report" and "James 2006 Report"). Moreover, contrary to Sterling's contention otherwise, Mr. Bankhead's and Dr. Hamm's expert reports do not assume a "but-for" world in which the Government breaches goodwill contracts.

## ARGUMENT

### I. THE GOVERNMENT'S DISCLOSURE OF JOHN W. STONE AND DAVID KROEGER AS TRIAL WITNESSES WAS TIMELY

In seeking to strike the testimony of Messrs. Stone and Kroeger, Sterling misinterprets Rules 26 and 37 of the Rules of the United States Court of Federal Claims ("RCFC" or "Rules"), as well as the Court's September 27, 2006 Order. Further, Sterling overlooks Appendix A of the Rules, which expressly permits parties to identify new witnesses as little as 63 days prior to trial so long as the new witness is subject to discovery.

As a preliminary matter, Sterling claims that Rule 37(c)(1) requires, as a general matter, that "a party that fails to timely disclose additional fact or expert witnesses is precluded from using that witness or information at trial." Pl. Mot. at 3. While Rule 37(c)(1) does require supplementation of initial disclosures made pursuant to Rule 26(e) and supplementation of interrogatory responses, there has been no violation of that rule here because: (1) Rule 26(e) does

not apply to the initial disclosures made in the Winstar-related cases pursuant to special order; and (2) On December 5, 2005, as acknowledged by Sterling, we did supplement our interrogatory responses to include the identification of Messrs. Stone and Kroeger, consistent with Rules 37(c)(1) and 26(e)(2).

A. There Is No Duty To Supplement Our Initial Disclosures

Sterling argues that the testimony of Mr. Stone and Mr. Kroeger should be excluded because we failed to identify them in our initial disclosures filed in 1999 pursuant to *All-Winstar* Procedural Order No. 2, and because we did not comply with Rule 26(c)(1) and 37(e)(1) requirements for supplementation of initial disclosures. Pl. Mot. at 3-4. This claim is without merit. Sterling provides no evidence that we knew, in 1999, when we served our initial disclosures, that Mr. Stone and Mr. Kroeger might have "knowledge of Sterling's regulatory and capital activities during the relevant time period," id. at 4, and it simply ignores the fact that Procedural Order No. 2 does not require parties in Winstar-related cases to supplement their initial disclosures.

Sterling is apparently unaware that our initial disclosures in this case were not submitted pursuant to RCFC 26, but rather were submitted pursuant to paragraph VI(A)(1) of the Court's Procedural Order No. 2 for *Winstar*-related cases, which was issued on August 11, 1997, Pl. App. 1,[2] approximately five years prior to the addition of initial disclosure procedures to the Court's Rules. The initial disclosures were intended as an initial attempt to disclose individuals with discoverable information. These disclosures were provided 30 days after the commencement of

[2] The appendix attached to Sterling's motion will be referred to as "Pl. App.," and the appendix attached to this opposition will be referred to as "App."

discovery, at a time when the vast majority of discovery had not yet been conducted, and were never intended to be exhaustive listings of potentially relevant trial witnesses. And, as noted above, the Order, unlike Rule 26(e), does not include a requirement that parties supplement their initial disclosures. Therefore, Sterling's claim that we were required to amend the initial disclosures is without merit.

B. Our Responses To Sterling's Interrogatory Requests Were Seasonably Supplemented

Sterling's claim that we failed to comply with Rule 26(e)(2), which requires seasonable amendments to interrogatory responses, is also unavailing. Mr. Stone and Mr. Kroeger may be in a position to provide testimony relevant to an issue raised in our revised motion for summary judgment regarding damages, filed on February 26, 2007, which is an update to the motion for summary judgment regarding damages that we filed on July 20, 2004. Not long after the filing of our original motion, it was stayed, pursuant to orders issued on August 10, 2004, and February 18, 2005, during the pendency of a motion to recuse and our motion for reconsideration of the Court's 2002 liability ruling with respect to Sterling's acquisition of Central Evergreen Savings and Loan Association. Full resolution of those motions did not occur until August 30, 2006, when the Court granted our motion for reconsideration. Sterling Savings Ass'n v. United States, 72 Fed. Cl. 404 (2006). While we still believe that the issues upon which Mr. Stone and Mr. Kroeger may testify can be resolved upon summary judgment based upon documents previously produced to Sterling,[3] on December 5, 2006, in an abundance of caution, we amended our

[3] As disclosed in our initial witness list, Mr. Stone and Mr. Kroeger may be able to address whether the FDIC complied with an injunction issued to Sterling in August 1990. App. 10-12.

response to Sterling's interrogatory requests, consistent with Rule 37(c)(1).[4] That amendment occurred in excess of six months prior to the scheduled commencement of trial in this case, providing ample time for Sterling to depose Mr. Stone and Mr. Kroeger.

Similarly, our preliminary witness list, filed on December 13, 2006, included Mr. Stone and Mr. Kroeger. Indeed, the Court's Rules contemplate the addition of witnesses not previously disclosed as few as 63 days prior to commencement of trial. Paragraph 13(b) of Appendix A to the Court's Rules addresses a pre-trial "meeting of counsel" that is required to be held no later than 63 days prior to trial, and specifically provides that "[a]ny witness whose identity has not been previously disclosed shall be subject to discovery." Thus, Appendix A expressly anticipates that fact witnesses may be identified for the first time only 63 days prior to trial, and allows the opposing party to obtain discovery of any such witness so as to eliminate prejudice to the opposing party.

Sterling's contention that Mr. Stone and Mr. Kroeger should be precluded from testifying at trial based upon the fact that they were first identified six months in advance of trial is plainly inconsistent with Appendix A. Further, in this case, the Court required the parties to provide a preliminary list of witnesses by December 13, 2006, well before the 63-day deadline of Paragraph 13(b) of Appendix A of the Rules, and Messrs. Stone and Kroeger were included on

---

[4] Sterling's reliance upon Zoltek Corp, v. United States, 71 Fed. Cl. 160, 167 (2006), to support its motion to strike Messrs. Stone and Kroeger from our witness list is misplaced. In Zoltek, a party was deemed to have untimely produced certain documents in discovery, but was not precluded from utilizing the documents because there was sufficient time to permit discovery upon the documents, thus rendering any error harmless. Id. at 171. Further, in this case, Sterling objects to our inclusion of Messrs. Stone and Kroeger on our initial witness list, when such inclusion is expressly permitted as late as 63 days prior to the start of trial by Appendix A to the Court's Rules, as explained below, so long as depositions are permitted.

the list. Consequently, Sterling's claim that their testimony should be stricken as untimely is groundless.

Finally, Sterling's claim that we were required to identify Mr. Stone and Mr. Kroeger prior to the fact discovery cutoff of February 26, 2002, is equally groundless. As conceded by Sterling, the Court's February 26, 2002 Order stated that "all outstanding fact and expert discovery" was to be completed no later than July 22, 2002. Pl. App. 24. While that Order may have precluded further discovery requests in the form of interrogatories or requests for production of documents without leave of Court, it did not preclude, and cannot be construed to preclude, either party from complying with its continuing obligation to supplement its responses to prior discovery requests, as required by the Court's Rules, or including previously unidentified witnesses on its list pursuant to Appendix A and the Court's September 27, 2006 Order.

For these reasons, the Court should deny Sterling's motion to "strike" Mr. Stone and Mr. Kroeger from our witness list.

## II. THE EXPERT REPORT OF W. BAREFOOT BANKHEAD IS TIMELY

Sterling, in a one-paragraph argument, contends, relying again upon initial disclosure requirements of Rule 26, that Mr. Bankhead's expert report, filed in response to Dr. Horvitz's December 11, 2006 expert report, is untimely, and his testimony should be stricken, because we did not disclose him as an expert prior to a November 8, 2002 discovery deadline. Pl. Mot. at 5. This contention is baseless. As demonstrated above, the initial disclosure deadlines set forth in RCFC 26(a)(2)(c) are inapplicable to this case because Procedural Order No. 2 governs discovery in the Winstar-related cases.

Moreover, the November 8, 2002 deadline Sterling refers to is obsolete, since we were initially required by Procedural Order No. 2, as supplemented by subsequent orders of the Court, to identify our expert witnesses by October 10, 2001, and depositions of our experts were subject to the November 8, 2002 deadline referenced by Sterling in its motion. Pl. App. 26. Expert discovery, however, has been reopened twice since that date in response to ruling of the Court.

As acknowledged by Sterling, expert discovery was first reopened in 2003 to permit Sterling to revise its damages calculations to reflect the Court's ruling adverse to it with respect to amortization of goodwill associated with FSLIC assistance. Sterling Savings Ass'n v. United States, 57 Fed. Cl. 445 (2003). At that time, the Court required the parties to identify expert witnesses who would address the new damages calculations and placed no limits upon the number or identity of the experts identified. Pl. App. at 27. In its September 27, 2006 Order, the Court again reopened discovery after its ruling with respect to the Central Evergreen acquisition. Pl. App. at 31. That Order stated that "Defendant shall submit to plaintiff its responsive expert reports on or before February 17, 2007," without requiring prior identification of the experts. Further, no limit on the number of expert reports, or on the identity of the experts, was included in the order. Consequently, Mr. Bankhead, an accounting expert, issued his report in direct response to new core capital ratio and damages calculations included in Dr. Horvitz's 2006 report as a result of the Court's recent ruling. Sterling does not dispute this. It merely contends that we should have identified Mr. Bankhead in 2002, four years prior to the issuance of the ruling that necessitated the changes to Dr. Horvitz's report. That contention has no basis in the Court's Rules, the Court's prior orders in this case, or the discovery procedures applicable to the Winstar-related cases. Therefore, Sterling's attempt to "strike" Mr. Bankhead should be rejected.

## III. THE SUPPLEMENTAL EXPERT REPORTS OF WILLIAM G. HAMM AND JOE HARGETT SHOULD NOT BE STRICKEN BECAUSE THEY DIRECTLY ADDRESS NEW ASSUMPTIONS IN DR. HORVITZ'S 2006 REPORT

With respect to Mr. Hargett's and Dr. Hamm's supplemental expert reports, Sterling concedes that the experts were previously "disclosed." Nonetheless, Sterling seeks to strike their supplemental reports because the reports address issues not previously addressed by those experts. Pl. Mot. at 5-7. Sterling's motion must fail because Mr. Hargett's and Dr. Hamm's new reports properly address only assumptions and calculations advanced by Dr. Horvitz for the first time in his 2006 report.

### A. Mr. Hargett's Supplemental Report Addresses An Issue That Could Not Have Been Disclosed Previously Because It Was Raised For The First Time In Dr. Horvitz's 2006 Report

In his 2006 expert report, Dr. Horvitz attempted to revise his "but-for" calculation of Sterling's core capital ratio to reflect the Court's finding that the enactment of FIRREA did not result in a breach of contract with respect to the Central Evergreen acquisition. App. 18.[5] (Horvitz report at 2). In his prior reports, Mr. Hargett addressed issues within his accounting expertise. One of those issues, relating to the amortization of goodwill associated with FSLIC assistance, has already been decided by the Court. Sterling, 57 Fed. Cl. 445. The other issues related to Sterling's restitution and reliance theories, and one of its wounded bank damages claims. Sterling has since abandoned its restitution and reliance claims.

The sole purpose of Mr. Hargett's supplemental report, issued on February 15, 2007, is to demonstrate, again applying his accounting expertise, that the methodology for calculating core

[5] Professor Horvitz states: "Tables 4a, 4b, and 4c of Exhibit 6 have been restructured or added to present the amount of supervisory intangibles that could have been included in Sterling's core capital but-for the breach." App. 18.

capital assumed in Dr. Horvitz's 2006 report is incorrect. Because that methodology was never presented by Dr. Horvitz until he issued his new report in December 2006, Sterling's claim that Mr. Hargett's report should be stricken because it is beyond the scope of his previous reports, Pl. Mot. at 5, defies simple logic. By necessity, Mr. Hargett's supplemental report must exceed the scope of his prior reports if it is to address the new assumption included in Dr. Horvitz's 2006 report. Therefore, his supplemental report should not be stricken.

Sterling's claim that Mr. Hargett's report and testimony should be stricken because he supports the "inadmissible" opinions in Mr. Bankhead's report is similarly unavailing because, as demonstrated above, Mr. Bankhead's opinions are not inadmissible. Pl. Mot. at 6. Moreover, even if it were inadmissible, Mr. Hargett's opinion stands on its own.

B. Dr. Hamm's Supplemental Report Addresses A New Assumption In Dr. Horvitz's 2006 Report

Sterling incorrectly alleges that Dr. Hamm is neither qualified to opine on expectancy damages nor permitted to do so because the opinions in his first report were addressed solely to restitution and reliance claims. Pl. Mot. at 6-7. Sterling's sole basis for claiming that Dr. Hamm is not qualified to opine on expectancy damages in the form of lost profits is his statement, at a deposition held in 2002, that he had no opinion, at that time, with respect to expectancy damages in this case. Id. at 6, quoting Pl. App. at 167. His statement did not express or imply that he was not qualified to opine upon expectancy damages. There is no question that Dr. Hamm is qualified to testify about expectancy damages, since he has been deemed an expert in that area in several Winstar-related cases, and Sterling has provided no basis upon which to question his qualifications. See, e.g., California Federal Bank v. United States, 54 Fed. Cl. 704 (Fed. Cl.

2002), aff'd, 395 F.3d 1263 (Fed. Cir. 2005); Glendale Federal Bank v. United States, 43 Fed. Cl. 390 (1999), aff'd in part and vacated in part, 239 F.3d 1374 (Fed. Cir. 2001). Sterling's claim that Dr. Hamm is precluded from testifying about theories of damages that he did not address in his original report is also unfounded. The Court's September 27, 2006 Order required Sterling to revise its damages calculations to conform to the Court's August 30, 2006 ruling with respect to the Central Evergreen acquisition, with only one limitation: that deposition questions not overlap in areas that had been covered previously. Pl. App. at 31. Similarly, the Order provided us with the ability to "submit to Plaintiff [] responsive expert reports on or before February 17, 2007." Id. Again, the scope of the depositions of our experts is limited by the order to "any new material not addressed in prior depositions." Id.

As required by the Order, Dr. Hamm's new expert report is responsive to a new assumption in Dr. Horvitz's December 2006 report. In his report, Dr. Hamm expressly states: "In this report, I apply my experience in the thrift industry and my expertise in thrift economics to certain revised assumptions underlying the lost profits model developed by Professor Horvitz and adopted by Professor James in 2006 after the recent decision by Judge Wheeler." Pl. App. at 90. He applies that experience and expertise in analyzing the following assumption of Dr. Horvitz's 2006 report[6] that resulted directly from this Court's recent decision:

> In his most-recent report, Professor Horvitz changes a key assumption that appeared in previous versions of his report. In his earlier reports, he assumed that the but-for Sterling's target regulatory capital ratio during the periods ending December 31,

[6] That assumption was also adopted by Professor James in his report issued on December 11, 2006 (James 2006 report). Therefore, Dr. Hamm addresses both Dr. Horvitz's and Professor James's revised damages calculations.

> 1989, June 30, 1990 and June 30, 1991, would have been 4.16%, 4.15% and 4.24%, respectively. . .Professor Horvitz now contends that the but-for Sterling would have "operate[d] with a core capital ratio of 4% from December 31, 1989 to June 30, 1991." [footnote omitted] He believes a lower capital ratio is appropriate given the Court's decision that the supervisory goodwill associated with Sterling's acquisition of Central Evergreen is non-contractual.

Pl. App. at 116. Thus, Dr. Hamm's report is directly responsive to Dr. Horvitz's new damages calculations and assumptions underlying those calculations that arise directly from Dr. Horvitz's understanding of the Court's most recent ruling, and is clearly within the scope of the Court's September 27, 2006 Order.

Finally, Sterling misstates the record in claiming that we have "admitted on the record that it would be prejudicial to add new witnesses or theories this close to trial." Pl. Mot. at 7, citing Pl. App. at 172. While it would have been prejudicial for Sterling to assert new theories or bases for damages in 2006 expert reports allowed for the sole purpose of permitting Sterling to adjust its damages claims in response to the Court's recent adverse ruling, and we stated as much on the record, Pl. App. at 172, we did not address the identification of witnesses. As demonstrated above, Mr. Bankhead, Mr. Hargett and Dr. Hamm addressed their February 15, 2007 expert reports solely to new assumptions and calculations contained in Sterling's 2006 reports. Therefore, they are within the scope of the Court's September 27, 2007 Order, and should not be stricken.

## IV. MR. BANKHEAD AND DR. HAMM DO NOT INTEND TO OPINE THAT THE GOVERNMENT WOULD NOT HAVE HONORED GOODWILL CONTRACTS IN THE "BUT-FOR" WORLD

Sterling's last argument appears to be in the nature of a motion in limine objecting to the content of the expert reports submitted by Mr. Bankhead and Dr. Hamm. Pl. Mot. at 7-8. As a

general matter, pursuant to the Federal Rules of Evidence, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Cttee. Note. Expert opinion testimony based upon technical and specialized knowledge need only be relevant and reliable in order to be admissible. Kumho Tire, Inc. v. Carmichael, 526 U.S. 137, 141 (1999).

While the basis for Sterling's objection to Mr. Bankhead's and Dr. Hamm's reports in this case is not entirely clear, Sterling implies that they intend to opine that, absent the breach, the FDIC would not have honored the goodwill contracts associated with Sterling's acquisitions of Tri-Cities Federal Savings and Loan Association ("Tri-Cities") and Lewis Federal Savings and Loan Association ("Lewis Federal"). Id.[7] As a preliminary matter, neither expert offers such an opinion. Sterling focuses on pages three to four of Mr. Bankhead's report to support this contention, Pl. App. at 59-60, yet those two pages make no mention of the FDIC. Indeed, Mr. Bankhead merely references the Court's ruling with respect to Central Evergreen, sets forth his assignment, and summarizes his opinion that Dr. Horvitz erred in performing a core capital calculation in estimating damages. Id.

Dr. Hamm, in the seven-page subsection of his 57-page report referenced by Sterling in support of its claim, does not opine that the FDIC would have ignored the Tri-Cities and Lewis Federal goodwill in evaluating Sterling's tangible capital position absent the breach. He merely addresses, in his expertise as an economist and former thrift executive, a change in assumption in Dr. Horvitz's 2006 report. In his prior reports, Dr. Horvitz assumed that, absent a breach,

[7]Sterling does not reference Mr. Hargett or his new report in this section of its brief. Therefore, we assume that the objection does not apply to his opinions. Even if it did, however, the objection would be groundless for the reasons articulated below with respect to Mr. Bankhead and Dr. Hamm.

Sterling would have maintained a minimum core capital ratio of 4.16 percent, 4.15 percent, and 4.24 percent for the years ending December 31, 1989, June 30, 1990 and June 30, 1991, respectively, consistent with its pre-breach business plan. In his new report, which recognizes that the Central Evergreen goodwill could not have been permitted to count as capital in his "but-for" world, Dr. Horvitz claims that Sterling would have maintained lower capital ratios of 4 percent in 1990 and 1991. The portion of Dr. Hamm's report cited by Sterling merely reflects his opinion that thrifts in the actual, post-FIRREA world, regardless of whether they possessed goodwill, did not maintain smaller capital cushions than they had maintained prior to enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), because thrift regulators, both FDIC and the Office of Thrift Supervision ("OTS"), were less lenient in granting forbearance from regulatory capital requirements. Pl. App. at 121-22. Dr. Hamm neither expressly nor impliedly opines that regulators in the post-FIRREA, "but-for" world would have ignored contractual commitments with respect to the Tri-Cities and Lewis Federal goodwill.

Finally, Sterling ignores the fact that, prior to the enactment of FIRREA, OTS's predecessor agency was concerned about Sterling's tangible capital levels, and Sterling agreed to raise $5 million of tangible capital in connection with its acquisition of Central Evergreen.

Consequently, the cases cited by Sterling, Fifth Third Bank v. United States, 71 Fed. Cl. 56, 70 (2006), and Slattery v. United States, 53 Fed. Cl. 258, 285 (2002), are inapposite. In those cases, the Court found that the Government had posited a "but for" the breach scenario in which a breach occurs nonetheless because FDIC threatened to terminate deposit insurance

notwithstanding tangible capital compliance. Our experts have not assumed, or even contemplated, such a scenario.

For these reasons, Sterling's objection to the opinions included in Mr. Bankhead's and Dr. Hamm's expert reports are baseless, and should be rejected.

**CONCLUSION**

For the foregoing reasons, we respectfully request that this Court deny Sterling's motion to strike.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

s/ Jeanne E. Davidson

JEANNE E. DAVIDSON
Director

s/ Elizabeth M. Hosford

ELIZABETH M. HOSFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0332

Attorneys for Defendant

Of counsel:

TAREK SAWI
Senior Trial Counsel
MELINDA HART
DELISA SANCHEZ
TIMOTHY ABRAHAM
WILLIAM KANELLIS
ELIZABETH A. HOLT

March 19, 2007

CERTIFICATE OF FILING

I hereby certify that on March 19, 2007, a copy of foregoing "OPPOSITION TO STERLING'S MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Elizabeth M. Hosford