IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD**

## I. RELIEF SOUGHT/SUMMARY OF ARGUMENT

Pursuant to RCFC 56(e), Plaintiff Sterling moves for an order striking the Expert Report of W. Barefoot Bankhead (the "Report"). The Government submitted the Report as evidentiary support for its Revised Motion for Summary Judgment Regarding Damages. *See Def's Rev. Brief*, p. 15-16 [and *Def's App*. Vol. II, pp. 805-15 [Doc. 222]. The Report does not comply with RCFC 56(e) and should be stricken because: (1) the Report is an unsworn statement, rendering it inadmissible hearsay; (2) the opinions within the Report consist of legal conclusions as to the meaning and application of FIRREA and regulations passed thereunder; and (3) the Report consists of opinions that contradict the express terms of Sterling's contracts with the Government.[1]

[1] As also set forth in Sterling's Motion to Strike the Government's Undisclosed Witnesses, the Report also should be stricken also because the Government did not timely designate Mr. Bankhead as an expert witness. Likewise, though not submitted in support of the Government's motion for summary judgment, the Updated Report of Mr. Hargett and his opinions should be excluded from trial upon the same grounds set forth herein.

## II. ARGUMENT

### A. THE REPORT IS AN INADMISSIBLE UNSWORN STATEMENT.

To establish facts in support of summary judgment, a party must submit evidence that would be admissible at trial. RCFC 56(e). Unsworn statements are inadmissible on summary judgment and cannot establish either undisputed facts for the moving party or a triable issue for the non-moving party. *See* RCFC 56(e); *Adarbe v. United States*, 58 Fed. Cl. 707, 711 n.1 (2003); *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *United States v. Dibble*, 429 F.2d 598, 601-02 (9th Cir. 1970). The requirements of RCFC 56(e) therefore apply to exclude on summary judgment any unsworn statements in expert reports. *See Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 569 (2003), *affirmed in part, rev'd in part*, 407 F.3d 1352 (2005) (FRE 703 does not permit expert reports to be considered as evidence). Because the Report is nothing more than an unsworn statement, it may not be considered under RCFC 56(e) and should be stricken.

### B. THE REPORT COMPRISES INADMISSIBLE LEGAL CONCLUSIONS.

Assuming for the sake of the argument that the Report was a sworn affidavit or declaration, it should be stricken regardless because it consists of legal conclusions over the meaning of FIRREA and its application to Sterling's contracts in the but for world. Such legal conclusions may not be considered on summary judgment. *Adarbe*, 58 Fed. Cl. at 711 n.1; *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1540-41 (11th Cir. 1990); *Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1258-59 (2nd Cir. 1987)*; Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2nd Cir.), *cert denied*, 434 U.S. 861, 98 S.Ct. 188 (1977) (the meaning and application of contract terms are questions of law for the court about which an expert may not opine)*; CFM Comm., LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233-34 (E.D. Cal. 2005) (the meaning and application of federal statutes and regulations are questions of law for the court).

In the Report, Mr. Bankhead opines how, in the but for world, FIRREA would apply to Sterling's contracts with the Government; in particular he opines as to how FIRREA supposedly required Sterling's RAP capital, or, as what he refers to as contractual capital, to be re-categorized as "qualifying supervisory goodwill" under 12 CFR 567.1(w), a classification of regulatory capital that did not exist at the time Sterling contracted with the Government. These opinions constitute inadmissible legal conclusions over the meaning of FIRREA and its application to Sterling's contracts and should be stricken.

Moreover, Mr. Bankhead's opinions should be stricken not only because they comprise legal conclusions, but because they are contrary to *Winstar* precedent. This Court, as well the United States Supreme Court and Federal Circuit, has held that the passage of FIRREA breached the agreements because, through the statute, Congress eliminated the right to count intangible assets toward what FIRREA refers to as "core" and "tangible" capital. *United States v. Winstar Corp.*, 518 U.S. 839, 870, 116 S.Ct. 2432, 2452-53 (1996); *Winstar Corp. v. United States*, 64 F.3d 1531, 1538, 1544-45 (Fed. Cir. 1995); *Coast Fed. Bank FSB v. United States*, 48 Fed. Cl. 402, 427-29 (2000); *Statesman v. United States*, 26 Cl. Ct. 904, 913 (1992); *Winstar Corp. v. United States*, 25 Cl. Ct. 541, 549 -50 (1992). The courts have additionally held that the FIRREA regulations relied upon by Mr. Bankhead furthered the breach by interpreting FIRREA's restrictions on the regulatory use of intangible assets as applying both to contractual and non-contractual capital, requiring them to be classified as "qualifying supervisory goodwill" subject to the FIRREA cap and phase-out.[2] *See Winstar*, 64 F.3d at 1545 ("The OTS by regulation treated capital credits in the same manner as supervisory goodwill, *see* 12 CFR 567.1(w), thereby restricting the use of such credits for regulatory capital purposes."). Accordingly, when

[2] Prior to FIRREA, the Savings and Loan Industry did not classify regulatory capital into different categories of core, tangible, or risk based capital. 12 CFR 561.13 (1985) (App. 1298-99); 12 CFR 561.13 (1987) (App. 1307-09); Instructions to the Thrift Financial Reports ("TFRs") of 1987 (App. 1303-06). RAP capital stood on equal footing with stock or cash. *Winstar*, 518 U.S. at 849-50, 116 S.Ct. at 2443.

Mr. Bankhead, in his report, applies FIRREA's definition of qualifying supervisory goodwill under 12 CFR 567.1(w) to Sterling's capital credits in the but-for world, he did that which the various *Winstar* courts have held to constitute a breach.[3]

Stated differently, Mr. Bankhead's opinions contravene the courts' holdings that, as a matter of law, Sterling's so-called contractual capital in the but for world would have counted fully towards its regulatory capital requirement without restriction and on par with other recognized tangible and core assets, such as cash:

> Because the FSLIC had insufficient funds to make up the difference between a failed thrift's liabilities and assets, the Bank Board had to offer a 'cash substitute' to induce a healthy thrift to assume a failed thrift's obligations.

*Winstar*, 518 U.S. at 849-50, 116 S.Ct. at 2443 (emphasis added). Therefore, in the but for world, Sterling is entitled to count as regulatory capital both the capital credits from its contracts with the Government and the so-called lessor class of non-contractual, supervisory goodwill from the Central Evergreen acquisition, though the Central Evergreen capital would be subject to the cap and phase-out requirements of FIRREA.

In sum, Mr. Bankhead's opinions in the Report not only should be stricken as legal conclusions, but as conclusions that would lead to a different sort of breach under well-established *Winstar* case law.[4]

---

[3] Mr. Bankhead's Report suggests that he is not applying FIRREA to the capital credits insofar as he credits Sterling for the full amount of regulatory capital required by the contracts. This suggestion is disingenuous. Though Mr. Bankhead gives full credit to Sterling's contractual capital in the but for world, he still nonetheless classifies the capital as the more restricted form of qualifying supervisory goodwill under 12 CFR 567.1(w). As discussed in Section C, this classification of Sterling's RAP capital under the contracts is in violation of the express terms of Sterling's contracts that causes harm by restricting the amount of capital to which Sterling would be entitled in the but for world under both the contracts and FIRREA.

[4] Sterling notes that the Government's arguments concerning Mr. Bankhead mirror those presented by the Government and rejected by the Court in *Fifth Third Bank v. United States*, 71 Fed. Cl. 56, 70 (2006).

**C. MR. BANKHEAD'S OPINIONS CONTRADICT THE EXPRESS TERMS OF STERLING'S CONTRACTS WITH THE GOVERNMENT.**

Mr. Bankhead's opinions concerning the meaning and application of Sterling's contracts in the but for world also should be stricken because they are contrary to the contracts' express terms. The Lewis Federal Assistance Agreement expressly stated that the cash assistance shall constitute regulatory net worth as then defined, not as later defined by FIRREA. The Assistance Agreement and the Forbearance Letter made this clear by stating that, for regulatory accounting purposes, the cash assistance was to be credited directly to Sterling's net worth account. (App. 566, 592) The terms "net worth" and "net worth account" referred to "Regulatory Net Worth" as then defined in 12 CFR § 561.13 (1985) (App. 1298-99) and the TFRs. (App. 1301) The November 4, 1985 FHLBB Resolution consummating the transaction reiterated that the capital to be acquired was regulatory capital as then defined by 12 CFR § 561.13 (1985):

> RESOLVED FURTHER, That the FSLIC hereby approves, pursuant to § 561.13 of the Insurance Regulations, Sterling's inclusion of the FSLIC's $1,750,000 cash contribution to Sterling, pursuant to the terms of the Assistance Agreement, as net worth, . . .

(App. 519) (emphasis added). Indeed, contrary to what Mr. Bankhead suggests, Sterling and the Government could not have agreed to a classification of regulatory capital that did not exist at the time of the agreements.

The same holds true for the RAP capital acquired as part of the Tri-Cities acquisition. The Assistance Agreement in that transaction expressly stated:

> "the cash contribution . . . shall be credited to [Sterling's] regulatory capital account and shall constitute regulatory capital as defined in § 561.13 of the Insurance Regulations, 12 CFR § 561.13 (1987)."

(App. 683).[5] Thus, as with Lewis Federal, Sterling's contract for Tri-Cities made clear that the

[5] By 1987, 12 CFR 561.13 no longer referred to "Regulatory Net Worth", but to "Regulatory Capital." *See* 12 CFR § 561.13 (1987) (App.1307-09).

regulatory capital obtained by Sterling was regulatory capital as contemporaneously defined and not as defined later by the regulators. As Chief Judge Damich previously held, Sterling's contracts with the Government gave it the express right to count the capital credits towards the regulatory capital requirement as it then existed, not as later restricted by FIRREA and 12 CFR 567.1(w). *Sterling Sav. v. United States*, 53 Fed. Cl. 599, 610-11 (2002), *vac., in part, on other grounds*, 72 Fed. Cl. 404 (2006).

In short, Mr. Bankhead's application of FIRREA's restricted definition of regulatory capital to Sterling's capital in the but for world violates its bargained-for rights and, consequently, would be a breach in the but for world. In the but for world, Sterling is entitled under the contracts to count its RAP capital as equivalent to, for example, common stock capital of equal dollar value or any other recognized tangible or core capital and, under FIRREA, to count the supervisory goodwill from Central Evergreen as qualifying supervisory goodwill under FIRREA subject to FIRREA's cap and phase-out rules. Mr. Bankhead's Report should be stricken on these grounds alone.

## III. CONCLUSION

Based upon the foregoing, Sterling requests that the Court strike the Report in its entirety.

Respectfully submitted this 29th day of March, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on March 29, 2007, a copy of the foregoing **PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff