### B. Plaintiffs' Interpretation Of The Injunction Renders It Meaningless

Sterling also claims that the "injunction did not cure, nor prevent, the severe effects of Defendant's breach...." Plaintiffs' reply, p. 30 (emphasis in original). Again, this argument, along with the factual claims accompanying it, pertains to damages, and is premature. We have not yet been provided access to plaintiffs' expert reports or theories, and plaintiffs' attempt to establish that the damages suffered are undisputed is futile.

Further, Sterling's interpretation of the injunction renders it meaningless. The injunction enjoined and restrained the Government from:

> a. imposing or enforcing any regulatory restriction or taking other regulatory action against Sterling that is inconsistent with the provisions of the November 1985, April 1988, and December 1988 supervisory acquisition agreements between Sterling and the FHLBB and the FSLIC; b. enforcing or attempting to enforce the operating restrictions imposed by the January 26, 1990, March 9, 1990, and the May 11, 1990, letters from the Office of Thrift Supervision to Sterling that treat Sterling as a troubled thrift; c. placing Sterling in a receivership or conservatorship; and d. interfering with Sterling's proposed public stock offering contemplated in the 1988 Central Evergreen acquisition agreement.

Sterling Savings Association v. Ryan, 751 F. Supp. 871, 881 (E.D. WA. 1990). Notwithstanding the broad scope of the injunction, Sterling claims that it merely "provided Sterling time to raise the capital needed to meet the FIRREA standards before being exposed to receivership." Plaintiffs' reply, p. 30. To the contrary, the injunction permitted Sterling to operate as it had prior to the enactment of FIRREA, and plaintiffs' attempt to create an issue of fact surrounding the effect of the injunction is unavailing.

Similarly, plaintiffs' claim that we did not "fully comply with the injunction order" is also unavailing. Plaintiffs' have provided not one single piece of documentary or testamentary

evidence to refute our showing that the Government fully complied with the injunction. In a letter dated June 18, 1990, the Assistant District Director of the Office of Thrift Supervision advised Sterling as follows:

> We fully recognize that, until the Temporary Restraining Order is dissolved or the court orders otherwise, we may not enforce the restrictions set forth in our letters of January 26, March 9th and May 11th. We intend strictly to obey the court's order.

Def. App. 257. Sterling ignores this letter, and instead argues that other letters that note the existence of the restrictions establish that the Government attempted to enforce the restrictions during the pendency of the injunction. Plaintiffs' reply, pp. 32-34. Those letters, on their face, do not indicate that the Government ever ignored or attempted to disobey the injunction. It is undisputed, however, that, during the pendency of the injunction, the restrictions, while not enforced, were still in place. On at least one occasion, however, the Government demonstrated that it was aware of the injunction and declined to take action inconsistent with the terms of it. R. App. 252-53.

Further, Sterling representatives have admitted that, notwithstanding their present claim that the Government failed to comply with the injunction, during the pendency of the injunction, Sterling never claimed that the Government was not in compliance or asked the district court for relief or enforcement of its injunction. R. App. 204. Further, several members of Sterling's board of directors testified, at deposition, that issuance of the injunction by the court provided the relief necessary for Sterling to resume normal operations. R. App. 198, 200-01 . Consequently, plaintiffs' claim that the Government failed to comply with the terms of the injunction is without basis.

Finally, Sterling claims that, had it operated pursuant to the terms of the injunction, it might have "exposed itself to ruin" if the Ninth Circuit vacated the injunction. Plaintiffs' reply, p. 33. Plaintiffs provide absolutely no evidence to support that claim except the self-serving deposition testimony of its own officers. Plaintiffs' reply, p. 33. Further, plaintiffs provide no legal authority for their assumption that Sterling would have been penalized, upon lifting of the injunction, for operating within its terms during its pendency. Moreover, Sterling does not even allege that, when the injunction was in fact lifted, it suffered "ruin." Therefore, this argument, too, is unavailing.

### C. Plaintiffs' Claim That The Second Public Offering Did Not Replace The Capital That Was Phased Out After The Enactment Of FIRREA Is Refuted By The Testimony Of Its Own Officers

In our supplemental motion, we pointed out that plaintiffs could not claim breach of contract for the period during the injunction, or for the period after the injunction was lifted, because, by that time, 1992, Sterling had completed its 1991 public offering and achieved regulatory capital compliance. Supplemental motion, p. 39. Plaintiff contends that they did not "recapture" the regulatory capital eliminated in 1989 as a result of FIRREA. Plaintiffs' reply, p. 31. That contention is inconsistent with the deposition testimony of Sterling's officers, however. The chief executive officer, Harold Gilkey, testified that the purpose of the 1991 public offering was to meet the post-FIRREA capital requirements. R. App. 208. Similarly, Mr. Byrne, the CFO, testified that the purpose of the public offering was to achieve compliance with FIRREA. R. App. 229.

Plaintiffs' additional arguments about "profit opportunities" lost and benefits that would have been derived from the capital are premature. Plaintiffs' reply, p. 31. Sterling has not yet

provided the Government with access to any quantification of damages, or the basis for any such quantification. It is undisputed, however, that the Government was subject to a broad injunction prohibiting it from enforcing FIRREA in abrogation of alleged contracts between the Government and Sterling, 751 F. supp. at 881, and Sterling achieved capital compliance in 1991, thus negating the need for FIRREA-based restrictions, prior to the lifting of the injunction in 1992.

## IV. STERLING ADMITS THAT COUNT IV OF ITS COMPLAINT DOES NOT STATE A CLAIM, SO COUNT IV SHOULD BE DISMISSED

### A. Sterling Now Alleges That Count IV Concerns A Potential Remedy, And Does Not State A Cause Of Action

In its opposition, Sterling admits that count IV of its complaint does not state a claim. In light of the law cited by the Government in its motion, Sterling retreats from the language in its complaint and instead states that it is seeking "nothing other than a claim for restitutionary damages." Plaintiffs' reply, p. 34. As this Court has recognized, and as Sterling has acknowledged, restitution is not a cause of action, but a potential remedy. Therefore, the fifth cause of action of Sterling's complaint must be dismissed.

Judge Smith already addressed this issue in a hearing in connection with the plaintiffs' request for a stay in the 1st 30 wave of the Winstar-related cases. In those cases, as Sterling has done here, many plaintiffs included counts in their complaints for restitution. When the Government pointed out that these were not causes of actions and did not implicate liability issues, the Court ordered plaintiffs to "put those issues in their complaint, those counts that are purely damage counts, and provide the Government with that list unless the Government has an objection that this is really a liability count that they'll try to sandbag us later on and then come

up with a stipulated order." Plaintiffs in All Winstar-Related Cases At The Court v. United States, No. 90-8C, et al. (Sept. 29, 1999 hearing), p. 42 (attached as R. App. 214).

Whether Sterling is ultimately entitled to restitution damages is not implicated in the Government's motion to dismiss, and need not be decided by the Court at this time. It is undisputed, however, that the fifth cause of action of Sterling's complaint fails to state a claim, and should be dismissed.

**B. The Proper Measure For Restitution Is The Non-Breaching Party's Pre-Contract Position, Not Unjust Enrichment**

This Court can grant our motion to dismiss the fifth cause of action of Sterling's complaint without addressing the proper measure of restitution. In fact, the proper measure of restitution is irrelevant to deciding whether the fifth cause of action, which Sterling now claims is a claim for restitution damages, can exist as a stand-alone, substantive claim. Therefore, the fifth cause of action should be dismissed

Nevertheless, we wish to address the proper measure of restitution, because Sterling misstates it in its complaint, although it cites the controlling case on this issue, Acme Process Equipment Co. v. United States, 171 Ct. Cl. 324, 359, 347 F.2d 509, 530 (1965), rev'd on other grounds, 385 U.S. 138 (1966), in its reply at page 34. In the complaint, Sterling assumes that restitution damages are measured by the "benefits of the bargains [Sterling] struck with the government...." Compl., ¶ 7.9. The measure of restitution that Sterling posits is flatly inconsistent with the governing law in this Circuit.

The governing law on restitution in this Circuit could hardly be clearer: "[R]estitution is permitted as an alternative remedy for breach of contract in an effort to restore the innocent party

to its pre-contract status quo, and not to prevent the unjust enrichment of the breaching party." Acme Process, 171 Ct. Cl. at 359, 347 F.2d 509, 530 (1965); see also State of Arizona v. United States, 216 Ct. Cl. 221, 237-38, 575 F.2d 855, 864 (1978). In calculating restitution, therefore, a court determines the cost of performance to the non-breaching party, "measured at the time of performance," because this cost of performance is "the best means of restoring the status quo ante." Acme Process, 171 Ct. Cl. at 359, 347 F.2d at 530; accord Pacific Architects & Eng'rs v. United States, 203 Ct. Cl. 499, 516, 491 F.2d 734, 744 (Cl. Ct. 1974) ("[r]estitution would entitle plaintiff merely to be restored to the status quo ante, pursuant to which it would be limited to its prudent costs"); Rockwell Int'l Corp. v. United States, 8 Cl. Ct. 662, 664 (1985) (restitution is measured by "reasonable costs" of plaintiff). From that amount, if any, the court offsets the benefits received by the nonbreaching party from the contract. State of Arizona, 216 Ct. Cl. at 238, 575 F.2d at 865.

Consequently, the fifth cause of action of the complaint should be dismissed, and, to the extent Sterling seeks restitution damages, it should be subject to the standard articulated above.

## V. STERLING'S CAUSE OF ACTION FOR EQUITABLE ESTOPPEL SHOULD BE DISMISSED BECAUSE STERLING HAS NOT PLED FACTS REQUIRED TO ESTABLISH AN ESTOPPEL CLAIM

In its reply, Sterling argues that its fourth cause of action is for equitable estoppel, rather than promissory estoppel. P. reply, p. 35. Nonetheless, the cause of action should be dismissed because Sterling has not alleged affirmative Government misconduct, a prerequisite to a claim of equitable estoppel.

An equitable estoppel claim must include facts establishing affirmative Government misconduct, and plaintiffs have not pled such misconduct. This Court has recently

acknowledged that a claim of equitable estoppel against the Government is appropriate under very limited circumstances:

> Although the United States Supreme Court and other courts have left open the narrow possibility that under limited circumstances and in cases of affirmative misconduct by a government agent an estoppel claim against the government may succeed, thus far, federal courts generally have done so only while rejecting, for a variety of reasons, each attempt at application of the estoppel theory in the particular case then before the court.

Sullivan v. United States, 46 Fed. Cl. 480, 489 (2000).[6] In other words, "without affirmative misconduct on the part of the government, there can be no equitable estoppel against the government. Id. at 489 n. 12, citing Westinghouse Electric Corp. v. United States, 41 Fed. Cl. 229, 240-41 (1998); Hanson v. Office of Personnel Management, 833 F.2d at 1569.

In this case, Sterling's complaint does not allege affirmative misconduct on the part of the Government. Consequently, its cause of action for estoppel should be dismissed.

---

[6] Citing Heckler v. Community Health Servs., 467 U.S. 51, 66 (1984) (holding that detriment faced was not so severe or imposed in such an unfair way as to invoke the estoppel doctrine); Office of Personnel Management v. Richmond, 496 U.S. 414, 434 (1990) (courts cannot estop the Constitution and, therefore, there can be no "estoppel by a claimant seeking public funds"); Henry v. United States, 870 F.2d 634, 637 (Fed. Cir. 1989) (holding that the oral advice given by an IRS agent did not constitute affirmative misconduct because the element of reasonable reliance was absent); Hanson v. Office of Personnel Management, 833 F.2d 1568, 1569 (Fed. Cir. 1987)(misrepresentations made by Office of Personnel Management and Office of Workers Compensation Programs officials to a benefits recipient did not constitute affirmative misconduct because the officials acted in good faith on the basis of the currently accepted reading of the statute).

## CONCLUSION

For the reasons stated above, we respectfully request that this Court grant the Government's motion to for summary judgment with respect to the first cause of action of the complaint, and dismiss the fourth and fifth causes of action. In the event that the Court denies the Government's motion for summary judgment, plaintiffs' motion for partial summary judgment should be denied and this case set down for trial.

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

ELIZABETH M. HOSFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-7300
Attorneys for Defendant

January 16, 2001

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on January 16, 2001, I caused to be served by United States mail (first-class mail, postage prepaid) copies of "DEFENDANT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT," addressed as follows:

William D. Symmes, Esq.
Witherspoon, Kelley, Davenport & Poole
1100 U.S. Bank Building
Spokane, Washington 99201
Tel.: (509) 624-5265

[signature]

August 14, 1985

Mr. Harold B. Gilkey, Chairman
Sterling Savings Association
North 120 Wall Street
Spokane, Washington 99201

Dear Sir:

In connection with the approval by the Federal Home Loan Bank Board ("Bank Board") of the merger ("Merger") of Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"), with and into Sterling Savings Association, Spokane, Washington ("Sterling"), the following forbearances are hereby granted:

1. The assets acquired by Sterling from Lewis will be deemed to have been acquired in a merger instituted for supervisory reasons. Therefore, pursuant to any section of the regulations administered by the Bank Board where scheduled items are referred to as "assets acquired in a merger instituted for supervisory reasons," scheduled items attributable to Lewis shall be excluded from the computation of scheduled items and in determining whether Sterling meets the requirements of such sections following the effective merger date as defined by the resolution of the Bank Board approving the Merger ("Effective Date").

2. Section 563.13 (Reserve Accounts) of the Rules and Regulations for the Federal Savings and Loan Insurance Corporation ("Insurance Regulations") provides no exceptions permitting the exclusion of scheduled items or liabilities acquired from another institution in computing the net worth requirements of this section. However, in view of the fact that the Merger was instituted for supervisory reasons, the Federal Savings and Loan Insurance Corporation ("FSLIC") will forbear, for a period of five years following consummation of the Merger, from exercising its authority, under Section 563.13 of the Insurance Regulations, for any failure of Sterling to meet the net worth requirements of Section 563.13 arising solely from (1)(a) scheduled items attributable to the assets of Lewis existing at the Effective Date, (b) any reduction in net worth resulting from losses on assets or losses on continuing operations acquired in connection with the Merger, and (c) any increase in liabilities of Sterling as of the Effective Date by reason of Sterling's

assumption of liabilities; or (2) Sterling's assumption of the net worth deficiency of Lewis as of the Effective date.

3. For a period of one year following the Effective date, in determining whether a penalty shall be assessed against or paid by Sterling pursuant to Section 523.12 (Deficiencies and Penalties) of the Rules and Regulations for the Federal Home Loan Bank System ("Bank Regulations"), the liquidity requirements of Section 523.11 (Liquidity Requirements) of the Bank Regulations as applied to Sterling shall be reduced by (1) the amount of Lewis' liquidity deficiencies existing at the Effective Date and (2) any aggregate net withdrawals (excess of withdrawals over cash savings received) from Lewis' offices after the Effective Date.

The forbearances or waivers extended by this letter do not relieve Sterling of its continuing obligations to maintain records of its net worth condition and to report its financial condition in accordance with applicable regulatory requirements. This letter should not and shall not be construed to constitute forbearance or waiver by the Bank Board or the FSLIC with respect to any regulatory or other requirements other than those encompassed within the preceding paragraphs 1 through 3. Other than the actions to enforce the regulatory requirements waived in accordance with paragraphs 1 through 3 and the statutory provisions authorizing imposition of the waived requirements, insofar as such requirements are waived, the Bank Board and the FSLIC expressly reserve all of their statutory rights and pow with respect to Sterling, including without limitation, those under Section 5 of the HOLA and Sections 406 and 407 of the National Housing Act, as amended.

The Federal Home Loan Bank Board

OFFICE OF SUPERVISORY AGENT
FEDERAL HOME LOAN BANK BOARD
600 STEWART STREET PHONE (206) 624-3980
SEATTLE, WASHINGTON 98101

July 29, 1985

Harold B. Gilkey, Chairman
Sterling Savings Association
North 120 Wall Street
Spokane, Washington 99201

FHLBB No. 7918

Dear Mr. Gilkey:

After review of proposals received in the course of a recently completed bidding procedure involving Lewis Federal Savings and Loan Association, it has been determined that your institution has submitted the lowest cost bid. According to our understanding, that proposal involves the following salient features:

1. $1.75 million in FSLIC cash assistance;

2. Indemnification for undisclosed liabilities and/or challenges to the merger, which total indemnification will not exceed $1,000,000;

3. The granting of certain regulatory forbearances including those relating to the accounting of the transaction; and,

4. A provision for partial recovery of the cash assistance by the FSLIC, which recovery in any case will not exceed $300,000 in the aggregate and will be based upon actual losses experienced on the disposition of specific real estate owned properties and the performance of mortgage loans delinquent at the time of acquisition.

As we have discussed, I intend to handle this proposal under a program currently in place that allows for the District Bank processing of certain FSLIC-assisted acquisitions. It is important, however, to point out that neither myself nor anyone at the Seattle Bank is able to commit the Federal Home Loan Bank Board in any matter where its explicit action is required. That being the case, please realize that while we find significant merit to the subject proposal, and will work towards its fruition, our authority is limited. What we can assure you of is an expedient as possible processing of the related documentation necessary for Bank Board review.

The following matters will need to be addressed in the near future:

1. Obtaining non-inducement affidavits (sample enclosed) from each director of both Lewis and Sterling;

Harold B. Gilkey, Chairman
Sterling Savings Association
Spokane, Washington
July 29, 1985
Page Two

2. A calculation, and plan for repayment, of the interest paid to date by the FSLIC on the net worth certificates outstanding to Lewis;

3. The submission of a list of the locations of each facility office to be operated by the resulting association; and,

4. The submission of a letter affirming Sterling's intention to not retain any current Lewis employee in a policy-making capacity with the resulting association. .

In the near future we hope to be able to provide you with draft copies of both the assistance and merger agreements. If you have any questions about the current status or future processing of this matter, please feel free to contact me.

Sincerely,

HILTON S. HEWITT
Supervisory Agent

rm

Enclosure

# Federal Home Loan Bank Board

To all to whom these presents shall come, Greeting:

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-985, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the Federal Home Loan Bank Board

B

**FEDERAL HOME LOAN BANK BOARD**

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985

Date:

WHEREAS, The Federal Home Loan Bank Board ("Bank Board"), by Resolution No. 85- 984, dated November 4, 1985, has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver ("Receiver") for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"); and

WHEREAS, The FSLIC as Receiver is authorized by § 406(b)(1)(A) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1729(b)(1)(A) (1982), to liquidate Lewis in an orderly manner or to make such other disposition of the matter as it deems to be in the best interests of Lewis, its savers, and the FSLIC; and

WHEREAS, The Bank Board has considered a proposed Acquisition Agreement (a copy of which is in the Minute Exhibit File) between the FSLIC as Receiver for Lewis and Sterling Savings Association, Spokane, Washington ("Sterling"), under which Sterling will purchase substantially all of the assets and assume substantially all of the liabilities of Lewis from the Receiver ("Acquisition"); and

WHEREAS, The Bank Board has considered a proposed Receiver's Agreement (a copy of which is in the Minute Exhibit File) between the FSLIC as Receiver for Lewis and the FSLIC in its corporate capacity, pursuant to which the FSLIC in its corporate capacity will purchase from the Receiver certain assets of Lewis not purchased by Sterling and assume certain liabilities and expenses of the Receiver; and

WHEREAS, The Bank Board has considered a proposed Assistance Agreement (a copy of which is in the Minute Exhibit File) between Sterling and the FSLIC under which the FSLIC will provide certain financial assistance and indemnifications to Sterling to facilitate the Acquisition; and

WHEREAS, The Bank Board has considered memoranda from the Federal Home Loan Bank of Seattle, dated October 23, 1985, and the Office of the General Counsel, dated November 1, 1985 (copies of which memoranda are in the Minute Exhibit File):

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985

Page 2

## General Findings

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board hereby finds and determines that: (1) the transfer of assets and liabilities of Lewis provided for in the Acquisition Agreement and the Receiver's Agreement is preferable to the liquidation of Lewis accompanied by payment of insurance on its accounts in that such transfer will preserve savings and loan services for the communities served by Lewis, and avoid the loss to Lewis's accountholders and creditors that would result from a liquidation accompanied by payment of insurance of accounts; (2) the execution and implementation of the Acquisition Agreement and the Receiver's Agreement are in the public interest and in the best interests of Lewis, its savers and creditors, and of the FSLIC in its corporate capacity; and (3) delay in the execution and implementation of the Acquisition Agreement following the Receiver's taking possession of Lewis would prevent such a transfer of assets and liabilities and result in the liquidation of Lewis and the payment of insurance on its accounts; and

RESOLVED FURTHER, That the Bank Board hereby finds and determines that the transfer of Lewis's assets and liabilities to Sterling pursuant to the Acquisition Agreement should be effected without delay, in the public interest and in the interests of Lewis, its savers and creditors, and the FSLIC in its corporate capacity; and

## Authority for Receiver to Transfer Assets and Liabilities of Lewis

RESOLVED FURTHER, That the proposed Acquisition Agreement and the Receiver's Agreement are hereby approved and the FSLIC, as Receiver for Lewis, is hereby authorized to sell and transfer the assets and liabilities of Lewis and to enter into an Acquisition Agreement and a Receiver's Agreement with respect to Lewis in the form or substantially in the form of each such proposed Agreement; provided that the final form of each Agreement has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the Special Representative of the FSLIC as Receiver of Lewis, designated in or pursuant to Bank Board Resolution No. 85- 984, dated November 4, 1985, is hereby authorized to execute on behalf of the FSLIC as Receiver an Acquisition Agree-

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985



ment and a Receiver's Agreement in the form or substantially in the form of the proposed Agreements, and to execute all other documents and perform all other provisions of the Acquisition Agreement and the Receiver's Agreement and otherwise to implement the intent and purposes of the Agreements and this Resolution, provided that the final form of each such Agreement and document has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the Director or Deputy Director, Office of the FSLIC, or such person as the Director may designate ("Director"), is hereby authorized to execute a Receiver's Agreement on behalf of the FSLIC in its corporate capacity; and

RESOLVED FURTHER, That the purchase of assets and assumption of liabilities pursuant to the Acquisition Agreement are hereby approved pursuant to § 563.22 of the Rules and Regulations of the Federal Savings and Loan Insurance Corporation ("Insurance Regulations") 12 C.F.R. § 563.22 (1985); and

Prevention of Probable Failure

RESOLVED FURTHER, That the Bank Board hereby finds that approval of the Acquisition is necessary to prevent the probable failure of Lewis; and

Supervisory Conversion

RESOLVED FURTHER, that the Bank Board deems and finds that:

1. Pursuant to approvals given in this Resolution for the provision of assistance to facilitate the acquisition of Lewis by Sterling the FSLIC has contracted to provide assistance under § 406(f) of the NHA, 12 U.S.C. § 1729(f) (1982); and

2. Severe financial conditions exist which threaten the stability of Lewis and the authorization of the Acquisition is likely to improve the financial condition of Lewis; and

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985



RESOLVED FURTHER, That the Bank Board as operating head of the FSLIC finds that:

1. Lewis is insolvent in that its assets are less than its obligations to creditors and others.

2. The Bank Board has the power to appoint a receiver for the purpose of liquidating Lewis;

3. Upon the liquidation of Lewis accompanied by the payment of insurance of accounts, the members of Lewis would have no realizable equity interest in Lewis apart from their claims for deposits plus accrued interest on such deposits;

4. Following the Acquisition and conversion of Lewis, Sterling (the acquiring association) will be a viable entity; and

5. The conversion of Lewis to stock form is hereby approved; and

RESOLVED FURTHER, That the Bank Board, pursuant to § 563b.1(a) of the Rules and Regulations for the FSLIC ("Insurance Regulations"), 12 C.F.R. § 563b.1(a) (1985), hereby waives the requirements of Part 563b of the Insurance Regulations with respect to the conversion of Lewis; and

Cancellation of Net Worth Certificates

RESOLVED FURTHER, That the Director or Deputy Director, Office of the FSLIC, or the Director or Deputy Director of the Office of Examinations and Supervision, or such other persons as any of them may designate ("Authorized Representative"), shall cancel and return to Sterling all Net Worth Certificates purchased by the FSLIC from Lewis upon receipt by the Authorized Representative of all evidences of the FSLIC's indebtedness to Lewis on account of such Net Worth Certificates, duly cancelled by Sterling, and the sum of $14,500 which represents the total amount of interest paid by the FSLIC to Lewis on account of such indebtedness; and

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985



Financial Assistance

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby determines, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), that (1) financial assistance and indemnifications by the FSLIC are necessary to prevent the default of Lewis and to facilitate the Acquisition; and (2) the amounts of such assistance and indemnifications, to be provided in accordance with the terms and conditions of the proposed Assistance Agreement would not exceed that amount reasonably necessary to save the cost of liquidating, including paying the insured accounts of, Lewis; and

RESOLVED FURTHER, That the proposed Assistance Agreement is hereby approved, and the Director is authorized to execute on behalf of the FSLIC an Assistance Agreement in the form or substantially in the form of the proposed form of such Agreement, provided, that the final form of such Agreement has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the FSLIC hereby approves, pursuant to § 561.13 of the Insurance Regulations, Sterling's inclusion of the FSLIC's $1,750,000 cash contribution to Sterling, pursuant to the terms of the Assistance Agreement, as net worth; and

RESOLVED FURTHER, That the Director is authorized to take such further actions as may be necessary or appropriate to exercise the rights and fulfill the obligations of the FSLIC contained in the Assistance Agreement; and

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985



Accounting

RESOLVED FURTHER, That, in accounting for the Acquisition, Sterling shall use generally accepted accounting principles prevailing in the savings and loan industry, as accepted, modified, clarified, or interpreted by applicable regulations of the Bank Board and the FSLIC; and

RESOLVED FURTHER, That no later than ninety (90) days following the effective date of the Acquisition, Sterling shall furnish an analysis, accompanied by a concurring opinion from its independent public accountants satisfactory to the Supervisory Agent and the Office of Examination and Supervision, which shall (a) specifically describe as of the date of the Acquisition any intangible assets, including goodwill or the discount of assets arising from the Acquisition to be recorded on Sterling's books for purposes of separate financial statements and consolidated financial statements, and (b) substantiate the reasonableness and conformity with regulatory requirements of the amounts attributed to intangible assets, including goodwill, and the discount of assets and the related amortization periods and methods; and

Forbearance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary is authorized and directed to send to Sterling a letter, substantially in the form of a letter which is in the Minute Exhibit File, concerning forbearance by the Bank Board and the FSLIC with respect to certain regulatory requirements, provided, that the final form of such letter shall be approved by the Office of the General Counsel; and

Tax Certification

RESOLVED FURTHER, That the Bank Board finds and certifies that the ground set forth in § 5(d)(6)(A)(i) of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to Lewis, in that Lewis is insolvent in that its assets are less than its obligations to its creditors and others, including its withdrawable accountholders; and

**FEDERAL HOME LOAN BANK BOARD**

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 985



RESOLVED FURTHER, That the Secretary or an Assistant Secretary is hereby authorized and directed to send to Sterling a letter certifying on behalf of the Bank Board the matters set forth in the immediately preceding resolving paragraph, and the Secretary or an Assistant Secretary is hereby authorized to provide a copy of such letter to any agency of the United States upon request; and

Bank Stock and Membership; Secondary Reserve

RESOLVED FURTHER, That the transfer of the stock of Lewis in the Federal Home Loan Bank of Seattle ("Bank") to Sterling is approved effective as of the effective date of the Acquisition; and

RESOLVED FURTHER, That pursuant to the last sentence of § 404(e) of the NHA, 12 U.S.C. § 1727(e) (1982), the FSLIC hereby provides that the pro rata share of Lewis in the secondary reserve of the FSLIC, if any, shall be transferred to Sterling as of the effective date of the Acquisition; and

RESOLVED FURTHER, That the cessation of the membership of Lewis in the Bank be noted by reason of the Acquisition approved herein, effective as of the date of the Acquisition; and

Certificate of Insurance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary is hereby directed to cancel the certificate of insurance of Lewis upon surrender of the certificate to the FSLIC; and

Effective Date

RESOLVED FURTHER, That the Acquisition shall be effective upon the execution by the parties of the Acquisition Agreement.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

# Federal Home Loan Bank Board

**To all to whom these presents shall come, Greeting:**

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 - G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-990, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I, Kim S. Ferguson, Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the Federal Home Loan Bank Board

**FEDERAL HOME LOAN BANK BOARD**

**Emergency Thrift Acquisition Findings and Approval of Acquisition of Lewis Federal Savings and Loan Association Chehalis, Washington**

No. 85- 990

Date: November 4, 1985

WHEREAS, The Federal Home Loan Bank Board ("Bank Board"), by Resolution No. 85- 984, dated November 4, 1985, has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver ("Receiver") for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis");

WHEREAS, That the Bank Board by Resolution No 85- 985, dated November 4 1985, has approved the acquisition of the assets and liabilities of Lewis ("Acquisition") by Sterling Savings Association, Spokane, Washington ("Sterling"):

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board, as operating head of the FSLIC, hereby determines with respect to the Acquisition that:

1. Severe financial conditions exist which threaten the stability of a significant number of institutions, the accounts of which are insured by the FSLIC ("insured institutions"), and of insured institutions possessing significant financial resources;

2. Lewis is a failing institution that is eligible for assistance pursuant to § 406(f) of the National Housing Act, as amended ("NHA"), in connection with the acquisition if its assets and liabilities by another insured institution or other company;

3. The procedures used by agents of the FSLIC with respect to Lewis to solicit practicable offers from prospective purchasers or merger partners both qualified and capable of acquiring the failing institution's assets and liabilities comply with the standards of § 408(m) of the NHA;

4. The Bank Board, in making the findings and issuing the approvals contained in Resolution No. 85-985, dated November 4, 1985, has given full and due consideration to the need to minimize the cost of financial assistance, the maintenance of specialized depository institutions, and the priorities and purposes of §.408(m) of the NHA;

5. The acquisition of Lewis by Sterling will lessen the risk to the FSLIC;

FEDERAL HOME LOAN BANK BOARD

Emergency Thrift Acquistion Findings and Approval of Acquisition of Lewis Federal Savings and Loan Association Chehalis, Washington

No. 85- 990

Page 2

6. The offer of Sterling to acquire Lewis presents the lowest expense and least risk to the FSLIC of any proposal submitted; and

RESOLVED FURTHER, That, notwithstanding any provision of state law, t acquisition of Lewis by Sterling is hereby authorized under section 408(m) of the National Housing Act.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

A

# FEDERAL HOME LOAN BANK BOARD

**Appointment of Receiver for**
**Lewis Federal Savings and Loan Association**
**Chehalis, Washington**

No. 85- 984

Date: November 4, 1985

## Recitals

WHEREAS, Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"), is a federally-chartered savings and loan association, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"); and

WHEREAS, The Federal Home Loan Bank Board ("Bank Board") has exclusive power and jurisdiction to appoint a receiver for a Federal savings and loan association in the event that the Bank Board determines that any of the grounds specified in § 5(d)(6)(A) of the Home Owners' Loan Act of 1933, as amended ("HOLA"), 12 U.S.C. § 1464(d)(6)(A) (1982), exists with respect to such association; and

WHEREAS, Pursuant to § 5(d)(6)(D) of the HOLA, 12 U.S.C. § 1464(d)(6)(D) (1982), the Bank Board shall appoint only the FSLIC as receiver for a Federal savings and loan association; and

WHEREAS, The Bank Board has considered memoranda from the Federal Home Loan Bank of Seattle, dated October 23, 1985, and the Office of the General Counsel, dated November 1, 1985, together with accompanying attachments and exhibits (copies of which memoranda are in the Minute Exhibit File):

## Grounds for Appointment

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board finds that the ground specified in § 5(d)(6)(A)(i) of the HOLA, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to Lewis in that Lewis is insolvent in that its assets are less than its obligations to its creditors and others, including its members; and

## Appointment of Receiver

RESOLVED FURTHER, That the Bank Board, pursuant to § 5(d)(6)(A) of the HOLA, 12 U.S.C. § 1464(d)(6)(A) (1982), hereby appoints the FSLIC as sole receiver for Lewis ("Receiver"); and

EXHIBIT 3

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85- 984



Powers and Duties of Receiver

RESOLVED FURTHER, That the Receiver shall have and exercise all powers, rights, and privileges, and shall assume, perform, and discharge all duties, responsibilities, and obligations of a receiver for a Federal savings and loan association accorded or imposed by, and subject to, applicable provisions of law and regulations and orders of the Bank Board, including, but not limited to, § 5(d)(6) of the HOLA, 12 U.S.C. § 1464(d)(6) (1982), § 406 of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1729 (1982), and the provisions of Parts 547 and 549 of the Rules and Regulations for the Federal Savings and Loan System ("Federal Regulations"), 12 C.F.R. Parts 547 and 549 (1985); and

RESOLVED FURTHER, That, in addition to all powers and authority of a receiver provided for by law, regulations, and orders, the Receiver is hereby authorized and empowered, and need not seek further approval from the Bank Board, to borrow money in such amounts from any source and in any manner as the Receiver requires to fulfill its duties as receiver, to execute, acknowledge, and deliver evidence of indebtedness for such borrowing, and to secure repayment of such borrowings by mortgages, pledges, and assignments in trust, or hypothecation of any property of Lewis; and

RESOLVED FURTHER, That notwithstanding the provisions of §§ 549.2 and 548.1, as made applicable by 549.2, of the Federal Regulations, 12 C.F.R. §§ 548.1 and 549.2 (1985), the Receiver may elect to notify by certified mail all persons and entities that the Receiver knows to be holding or in possession of assets of Lewis; and

RESOLVED FURTHER, That the Receiver shall not be required to furnish any bond; and

Implementing Authority

RESOLVED FURTHER, That the Director or the Deputy Director of the Office of the FSLIC ("Director"), or the designee of either, is authorized to take such action as may be necessary or appropriate to carry out the obligations of the FSLIC as Receiver, pursuant to its appointment; and

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-984



RESOLVED FURTHER, That the FSLIC, in its corporate capacity and not in its capacity as Receiver, is authorized to make advances to the Receiver for the purpose of enabling the Receiver to perform its functions and duties, on such terms and conditions as the Director shall deem appropriate, and the Director may execute such documents as may be necessary to make such advances or enter into collateral agreements; and

Special Representatives

RESOLVED FURTHER, That one or more persons shall be designated as Special Representative of the Receiver ("Special Representative"), and such designated person or persons shall have the power and authority to act in the name and on behalf of the Receiver, including the authority, subject to the direction of the Director, to take prompt possession of the books, records, property, and assets of every kind and description of Lewis and to exercise all powers of the Receiver; that, initially R. Scott Taylor, Grayson H. Bowers, Robert M. Schmid, Edward P. Gerber, Donald W. Crocker and John W. Sears shall serve as Special Representatives and, the Director may replace or remove any Special Representative and may designate such additional Special Representative(s) as the Director deems appropriate, prescribing the functions and responsibilities of each such Special Representative as he deems appropriate; and

Termination of Employment Contracts

RESOLVED FURTHER, That every employment contract between Lewis and its officers, employees, agents, or consultants is hereby terminated by the Bank Board pursuant to the appointment of the receiver effective upon the date of default of Lewis; and

Records and Reports

RESOLVED FURTHER, That each Special Representative shall keep a record of his or her actions as Special Representative for the Receiver, and shall report on such actions from time to time as directed by the Director; and

A

**FEDERAL HOME LOAN BANK BOARD**

**Appointment of Receiver for**
**Lewis Federal Savings and Loan Association**
**Chehalis, Washington**

No. 85-984

Page 4

RESOLVED FURTHER, That the Director shall from time to time report the Bank Board with respect to actions taken pursuant to this Reso tion.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

B

# FEDERAL HOME LOAN BANK BOARD

## Acquisition of Assets and Liabilities of Lewis Federal Savings and Loan Association Chehalis, Washington

No. 85- 985

Date: November 4, 1985

WHEREAS, The Federal Home Loan Bank Board ("Bank Board"), by Resolution No. 85- 984 dated November 4 , 1985, has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver ("Receiver") for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"); and

WHEREAS, The FSLIC as Receiver is authorized by § 406(b)(1)(A) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1729(b)(1)(A) (1982), to liquidate Lewis in an orderly manner or to make such other disposition of the matter as it deems to be in the best interests of Lewis, its savers, and the FSLIC; and

WHEREAS, The Bank Board has considered a proposed Acquisition Agreement (a copy of which is in the Minute Exhibit File) between the FSLIC as Receiver for Lewis and Sterling Savings Association, Spokane, Washington ("Sterling"), under which Sterling will purchase substantially all of the assets and assume substantially all of the liabilities of Lewis from the Receiver ("Acquisition"); and

WHEREAS, The Bank Board has considered a proposed Receiver's Agreement (a copy of which is in the Minute Exhibit File) between the FSLIC as Receiver for Lewis and the FSLIC in its corporate capacity, pursuant to which the FSLIC in its corporate capacity will purchase from the Receiver certain assets of Lewis not purchased by Sterling and assume certain liabilities and expenses of the Receiver; and

WHEREAS, The Bank Board has considered a proposed Assistance Agreement (a copy of which is in the Minute Exhibit File) between Sterling and the FSLIC under which the FSLIC will provide certain financial assistance and indemnifications to Sterling to facilitate the Acquisition; and

WHEREAS, The Bank Board has considered memoranda from the Federal Home Loan Bank of Seattle, dated October 23 , 1985, and the Office of the General Counsel, dated November 1 , 1985 (copies of which memoranda are in the Minute Exhibit File):

B

# FEDERAL HOME LOAN BANK BOARD

## Acquisition of Assets and Liabilities of Lewis Federal Savings and Loan Association Chehalis, Washington



### General Findings

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board hereby finds and determines that: (1) the transfer of assets and liabilities of Lewis provided for in the Acquisition Agreement and the Receiver's Agreement is preferable to the liquidation of Lewis accompanied by payment of insurance on its accounts in that such transfer will preserve savings and loan services for the communities served by Lewis, and avoid the loss to Lewis's accountholders and creditors that would result from a liquidation accompanied by payment of insurance of accounts; (2) the execution and implementation of the Acquisition Agreement and the Receiver's Agreement are in the public interest and in the best interests of Lewis, its savers and creditors, and of the FSLIC in its corporate capacity; and (3) delay in the execution and implementation of the Acquisition Agreement following the Receiver's taking possession of Lewis would prevent such a transfer of assets and liabilities and result in the liquidation of Lewis and the payment of insurance on its accounts; and

RESOLVED FURTHER, That the Bank Board hereby finds and determines that the transfer of Lewis's assets and liabilities to Sterling pursuant to the Acquisition Agreement should be effected without delay, in the public interest and in the interests of Lewis, its savers and creditors, and the FSLIC in its corporate capacity; and

### Authority for Receiver to Transfer Assets and Liabilities of Lewis

RESOLVED FURTHER, That the proposed Acquisition Agreement and the Receiver's Agreement are hereby approved and the FSLIC, as Receiver for Lewis, is hereby authorized to sell and transfer the assets and liabilities of Lewis and to enter into an Acquisition Agreement and a Receiver's Agreement with respect to Lewis in the form or substantially in the form of each such proposed Agreement; provided that the final form of each Agreement has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the Special Representative of the FSLIC as Receiver of Lewis, designated in or pursuant to Bank Board Resolution No. 85-984, dated November 4, 1985, is hereby authorized to execute on behalf of the FSLIC as Receiver an Acquisition Agree-

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington



ment and a Receiver's Agreement in the form or substantially in the form of the proposed Agreements, and to execute all other documents and perform all other provisions of the Acquisition Agreement and the Receiver's Agreement and otherwise to implement the intent and purposes of the Agreements and this Resolution, provided that the final form of each such Agreement and document has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the Director or Deputy Director, Office of the FSLIC, or such person as the Director may designate ("Director"), is hereby authorized to execute a Receiver's Agreement on behalf of the FSLIC in its corporate capacity; and

RESOLVED FURTHER, That the purchase of assets and assumption of liabilities pursuant to the Acquisition Agreement are hereby approved pursuant to § 563.22 of the Rules and Regulations of the Federal Savings and Loan Insurance Corporation ("Insurance Regulations") 12 C.F.R. § 563.22 (1985); and

Prevention of Probable Failure

RESOLVED FURTHER, That the Bank Board hereby finds that approval of the Acquisition is necessary to prevent the probable failure of Lewis; and

Supervisory Conversion

RESOLVED FURTHER, that the Bank Board deems and finds that:

1. Pursuant to approvals given in this Resolution for the provision of assistance to facilitate the acquisition of Lewis by Sterling the FSLIC has contracted to provide assistance under § 406(f) of the NHA, 12 U.S.C. § 1729(f) (1982); and

2. Severe financial conditions exist which threaten the stability of Lewis and the authorization of the Acquisition is likely to improve the financial condition of Lewis; and

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-985



RESOLVED FURTHER, That the Bank Board as operating head of the FSLIC finds that:

1. Lewis is insolvent in that its assets are less than its obligations to creditors and others.

2. The Bank Board has the power to appoint a receiver for the purpose of liquidating Lewis;

3. Upon the liquidation of Lewis accompanied by the payment of insurance of accounts, the members of Lewis would have no realizable equity interest in Lewis apart from their claims for deposits plus accrued interest on such deposits;

4. Following the Acquisition and conversion of Lewis, Sterling (the acquiring association) will be a viable entity; and

5. The conversion of Lewis to stock form is hereby approved; and

RESOLVED FURTHER, That the Bank Board, pursuant to § 563b.1(a) of the Rules and Regulations for the FSLIC ("Insurance Regulations"), 12 C.F.R. § 563b.1(a) (1985), hereby waives the requirements of Part 563b of the Insurance Regulations with respect to the conversion of Lewis; and

Cancellation of Net Worth Certificates

RESOLVED FURTHER, That the Director or Deputy Director, Office of the FSLIC, or the Director or Deputy Director of the Office of Examinations and Supervision, or such other persons as any of them may designate ("Authorized Representative"), shall cancel and return to Sterling all Net Worth Certificates purchased by the FSLIC from Lewis upon receipt by the Authorized Representative of all evidences of the FSLIC's indebtedness to Lewis on account of such Net Worth Certificates, duly cancelled by Sterling, and the sum of $14,500 which represents the total amount of interest paid by the FSLIC to Lewis on account of such indebtedness; and

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-985

Page 5

## Financial Assistance

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby determines, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), that (1) financial assistance and indemnifications by the FSLIC are necessary to prevent the default of Lewis and to facilitate the Acquisition; and (2) the amounts of such assistance and indemnifications, to be provided in accordance with the terms and conditions of the proposed Assistance Agreement would not exceed that amount reasonably necessary to save the cost of liquidating, including paying the insured accounts of, Lewis; and

RESOLVED FURTHER, That the proposed Assistance Agreement is hereby approved, and the Director is authorized to execute on behalf of the FSLIC an Assistance Agreement in the form or substantially in the form of the proposed form of such Agreement, provided, that the final form of such Agreement has been approved by the Office of the General Counsel; and

RESOLVED FURTHER, That the FSLIC hereby approves, pursuant to § 561.13 of the Insurance Regulations, Sterling's inclusion of the FSLIC's $1,750,000 cash contribution to Sterling, pursuant to the terms of the Assistance Agreement, as net worth; and

RESOLVED FURTHER, That the Director is authorized to take such further actions as may be necessary or appropriate to exercise the rights and fulfill the obligations of the FSLIC contained in the Assistance Agreement; and

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-985



## Accounting

RESOLVED FURTHER, That, in accounting for the Acquisition, Sterling shall use generally accepted accounting principles prevailing in the savings and loan industry, as accepted, modified, clarified, or interpreted by applicable regulations of the Bank Board and the FSLIC; and

RESOLVED FURTHER, That no later than ninety (90) days following the effective date of the Acquisition, Sterling shall furnish an analysis, accompanied by a concurring opinion from its independent public accountants satisfactory to the Supervisory Agent and the Office of Examination and Supervision, which shall (a) specifically describe as of the date of the Acquisition any intangible assets, including goodwill or the discount of assets arising from the Acquisition to be recorded on Sterling's books for purposes of separate financial statements and consolidated financial statements, and (b) substantiate the reasonableness and conformity with regulatory requirements of the amounts attributed to intangible assets, including goodwill, and the discount of assets and the related amortization periods and methods; and

## Forbearance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary is authorized and directed to send to Sterling a letter, substantially in the form of a letter which is in the Minute Exhibit File, concerning forbearance by the Bank Board and the FSLIC with respect to certain regulatory requirements, provided, that the final form of such letter shall be approved by the Office of the General Counsel; and

## Tax Certification

RESOLVED FURTHER, That the Bank Board finds and certifies that the ground set forth in § 5(d)(6)(A)(i) of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to Lewis, in that Lewis is insolvent in that its assets are less than its obligations to its creditors and others, including its withdrawable accountholders; and

B

FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-985

Page 7

RESOLVED FURTHER, That the Secretary or an Assistant Secretary is hereby authorized and directed to send to Sterling a letter certifying on behalf of the Bank Board the matters set forth in the immediately preceding resolving paragraph, and the Secretary or an Assistant Secretary is hereby authorized to provide a copy of such letter to any agency of the United States upon request; and

Bank Stock and Membership; Secondary Reserve

RESOLVED FURTHER, That the transfer of the stock of Lewis in the Federal Home Loan Bank of Seattle ("Bank") to Sterling is approved effective as of the effective date of the Acquisition; and

RESOLVED FURTHER, That pursuant to the last sentence of § 404(e) of the NHA, 12 U.S.C. § 1727(e) (1982), the FSLIC hereby provides that the pro rata share of Lewis in the secondary reserve of the FSLIC, if any, shall be transferred to Sterling as of the effective date of the Acquisition; and

RESOLVED FURTHER, That the cessation of the membership of Lewis in the Bank be noted by reason of the Acquisition approved herein, effective as of the date of the Acquisition; and

Certificate of Insurance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary is hereby directed to cancel the certificate of insurance of Lewis upon surrender of the certificate to the FSLIC; and

Effective Date

RESOLVED FURTHER, That the Acquisition shall be effective upon the execution by the parties of the Acquisition Agreement.

By the Federal Home Loan Bank Board

Jeff Sconyers
Jeff Sconyers
Secretary

C

# FEDERAL HOME LOAN BANK BOARD

Implementation Resolution

No. 85-986

Date: November 4, 1985

WHEREAS, The Director or Deputy Director, Office of the Federal Savings and Loan Insurance Corporation ("FSLIC"), or the designee of either of them ("Director"), have been authorized by Federal Home Loan Bank Board ("Bank Board") Resolution No. 85-985 dated November 4, 1985, to execute on behalf of the FSLIC in its corporate capacity an Assistance Agreement with Sterling Savings Association, Spokane, Washington, and a Receiver's Agreement, and other documents; and

WHEREAS, The Assistance Agreement, Receiver's Agreement, and other documents impose certain rights, duties, and obligations upon the FSLIC that do not require basic determinations of policy; and

WHEREAS, In the administration of such agreements, and of any rights or obligations of the FSLIC under them, it may be necessary or desirable that the FSLIC contract for legal, auditing, or other services or that the FSLIC authorize the settlement of certain claims:

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board, as operating head of the FSLIC, finds that expenditures of the FSLIC pursuant to such agreements are necessary, nonadministrative, and made under the National Housing Act, as amended ("NHA"), and shall be incurred, allowed, and paid under the provisions of the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), without regard to the provisions of any other law governing the expenditures of public funds; and

RESOLVED FURTHER, That the Director is hereby authorized and directed to take such actions as may be desirable or necessary to fulfill the rights, duties, and obligations of the FSLIC in its corporate capacity under the Assistance Agreement, Receiver's Agreement, and other authorized documents, and to incur, allow, and pay all expenditures in fulfillment of such rights, duties, and obligations, pursuant to the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), including, but not limited to:

(1) The payment of amounts required by such agreements;

(2) The making of advances to the FSLIC as Receiver for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Receiver");

C

FEDERAL HOME LOAN BANK BOARD

Implementation Resolution

No. 85- 986

Page 2

(3) Contracting for legal, accounting, or other services, provided, that the form of any contract shall be approved by the Office of General Counsel;

(4) The assignment, pursuit, and settlement of claims, provided, that the form of any assignment or settlement agreement entered into by the FSLIC shall be approved by the Office of General Counsel;

(5) The administration of any asset or claim acquired from the Receiver, provided, that any contract pertaining to such asset or claims, and the satisfaction, settlement, or termination of any claim, shall be approved by the Office of the General Counsel; and

(6) The waiver, if deemed necessary or desirable by the Director, of provisions of the Assistance Agreement concerning filings, representations, warranties, or certifications by Sterling, provided, that the form of any waiver by the FSLIC shall be approved by the Office of General Counsel; and

RESOLVED FURTHER, That the General Counsel may also exercise the authority conferred by the preceding resolving paragraphs with respect to contracting on behalf of the FSLIC for legal or other related services needed to implement the agreements.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

FEDERAL HOME LOAN BANK BOARD

**Contingent Payment of Insurance of Accounts: Lewis Federal Savings and Loan Association**

No. 85-987

Date: November 4, 1985

WHEREAS, The Federal Savings and Loan Insurance Corporation ("FSLIC") has been appointed as sole receiver for Lewis Savings and Loan Association, Chehalis, Washington ("Lewis"), effective as described in Federal Home Loan Bank Board ("Bank Board") Resolution No. 85-984 dated November 4, 1985; and

WHEREAS, Such appointment constitutes a default of Lewis within the meaning of § 401(d) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1724(d) (1982), and may necessitate the payment of insured accounts by the FSLIC, in its corporate capacity and not as receiver, within the meaning of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982):

NOW, THEREFORE, IT IS RESOLVED, That the Director or Deputy Director, Office of the FSLIC, or such person as either of them may designate in writing ("Director"), is hereby authorized and directed to take all necessary or appropriate steps and to incur all necessary or appropriate expenses in preparation for and to implement the payment of all insured accounts of Lewis pursuant to § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982); and

RESOLVED FURTHER, That, upon being advised by the General Counsel, or a Deputy General Counsel, that Lewis is in default and that the account liabilities of Lewis have not been assumed by another insured institution, the Director is hereby authorized and directed (1) to cause each insured account in Lewis that is surrendered and transferred to the FSLIC to be paid in cash or by making available a transferred account in another insured institution, (2) to take or cause to be taken such action(s) as may be necessary or appropriate to carry out this and any future directives of the Bank Board, and (3) to do all things necessary or appropriate to carry out expeditiously the objectives of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982) and Part 564 of the Rules and Regulations for the FSLIC, 12 C.F.R. Part 564 (1985) and for the protection of the FSLIC; and

RESOLVED FURTHER, That each Office and Division of the Bank Board is hereby requested to furnish such assistance to the Director in fulfillment for the intent of this Resolution as the Director may request.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

E

FEDERAL HOME LOAN BANK BOARD

Lewis Federal Savings and Loan Association
Chehalis, Washington
Pursuit of Claims

No. 85-988

Date: November 4, 1985

WHEREAS, The Federal Home Loan Bank Board has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"), pursuant to is Resolution No. 85-984 dated November 4, 1985; and

WHEREAS, Pursuant to a proposed Receiver's Agreement and the proposed Assistance Agreement (copies of which are in the Minute Exhibit File), potential claims of Lewis against certain parties will or may be transferred to the FSLIC in its corporate capacity; and

NOW, THEREFORE, IT IS RESOLVED, That the Director or Deputy Director, Office of the FSLIC, or any person designated by either of them, is hereby authorized to take whatever actions are deemed appropriate, including litigation, to recover on such claims of Lewis from any such parties, provided that the Office of the General Counsel shall concur in any such action.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

F

# FEDERAL HOME LOAN BANK BOARD

Approval of the Acquisition of Lewis Federal Savings and Loan Association, Chehalis, Washington, by Sterling Savings Association, Spokane, Washington

No. 85-989

Date: November 4, 1985

RESOLVED, That the acquisition of Lewis Federal Savings and Loan Association, Chehalis, Washington, by Sterling Savings Association, Spokane, Washington, is hereby approved, subject to any conditions that may be imposed by the Federal Home Loan Bank Board ("Bank Board") in any concurrent resolution or action issued as of the date of this Resolution.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

G

FEDERAL HOME LOAN BANK BOARD

Emergency Thrift Acquisition Findings and Approval of Acquisition of Lewis Federal Savings and Loan Association Chehalis, Washington

No. 85-990

Date: November 4, 19

WHEREAS, The Federal Home Loan Bank Board ("Bank Board"), by Resolution No. 85-984, dated November 4, 1985, has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver ("Receiver") for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis");

WHEREAS, That the Bank Board by Resolution No 85-985, dated November 4 1985, has approved the acquisition of the assets and liabil ties of Lewis ("Acquisition") by Sterling Savings Association, Spok ine, Washington ("Sterling"):

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board, as ope ating hea of the FSLIC, hereby determines with respect to the Acquisi ion that:

1. Severe financial conditions exist which threaten the stability of a significant number of institutions, the accounts of which are insured by the FSLIC ("insured institutions"), and of insured institutions possessing significant financial resources;

2. Lewis is a failing institution that is eligible for assistance pursuant to § 406(f) of the National Housing Act, as amended ("NHA"), in connection with the acquisition if its assets and liabilities by another insured institution or other company;

3. The procedures used by agents of the FSLIC with respect to Lewis to solicit practicable offers from prospective purchasers or merger partners both qualified and capable of acquiring the failing institution's assets and liabilities comply with the standards of § 408(m) of the NHA;

4. The Bank Board, in making the findings and issuing the approvals contained in Resolution No. 85-985, dated November 4, 1985, has given full and due consideration to the need to minimize the cost of financial assistance, the maintenance of specialized depository institutions, and the priorities and purposes of § 408(m) of the NHA;

5. The acquisition of Lewis by Sterling will lessen the risk to the FSLIC;

FEDERAL HOME LOAN BANK BOARD

Emergency Thrift Acquistion Findings and Approval of Acquisition of Lewis Federal Savings and Loan Association Chehalis, Washington

No. 85-990

Page 2

6. The offer of Sterling to acquire Lewis presents the lowest expense and least risk to the FSLIC of any proposal submitted; and

RESOLVED FURTHER, That, notwithstanding any provision of state law, the acquisition of Lewis by Sterling is hereby authorized under section 408(m) of the National Housing Act.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

# ACQUISITION AGREEMENT

BETWEEN

THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION

AS RECEIVER FOR LEWIS FEDERAL SAVINGS AND LOAN ASSOCIATION,
Chehalis, Washington

AND

STERLING SAVINGS ASSOCIATION
Spokane, Washington

Dated November 5, 1985

# TABLE OF CONTENTS

## ACQUISITION AGREEMENT BETWEEN THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION AS RECEIVER FOR LEWIS FEDERAL SAVINGS AND LOAN ASSOCIATION AND STERLING SAVINGS ASSOCIATION


| | Page |
|---|---|
| Recitals | 1 |
| § 1 Purchase of Assets | 2 |
| § 2 Assumption of Liabilities | 3 |
| § 3 Records | 4 |
| § 4 Tax Reports | 5 |
| § 5 Inventory and Audit | 5 |
| § 6 Purchase Price | 5 |
| § 7 Duties with Respect to Savers | 5 |
| § 8 Office Space for the RECEIVER | 7 |
| § 9 Litigation; Power of Attorney | 7 |
| § 10 Rights and Forbearance | 8 |
| § 11 Sole Benefit | 8 |
| § 12 Successors and Assigns | 8 |
| § 13 Notices | 9 |
| § 14 Accounting Principles | 9 |
| § 15 Governing Law | 10 |
| § 16 Effective Date | 10 |
| § 17 Entire Agreement, Severability | 10 |
| § 18 Counterparts, Modification, Headings | 11 |
| § 19 Warranties | 11 |
| § 20 Continuing Cooperation | 12 |
| Signature Page | 13 |

# ACQUISITION AGREEMENT

THIS AGREEMENT is made and entered into this 5th day of November 1985, by and between the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, in its capacity as RECEIVER for Lewis Federal Savings and Loan Association, Chehalis, Washington (respectively, "RECEIVER" and "CLOSED ASSOCIATION"), and Sterling Savings Association, Spokane, Washington ("ACQUIRING ASSOCIATION").

## RECITALS

A. The CLOSED ASSOCIATION is a mutual savings and loan association organized under the laws of the United States, the accounts of which are insured by the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION in its capacity as a corporate instrumentality of the United States ("CORPORATION").

B. The FEDERAL HOME LOAN BANK BOARD ("BANK BOARD"), by its Resolution No. 85-994, dated November 4th, 1985, duly appointed the CORPORATION as RECEIVER for the CLOSED ASSOCIATION pursuant to § 5(d)(6)(A) of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. § 1464(d)(6)(A) (1982), and the RECEIVER's appointment has become effective.

C. The RECEIVER has taken possession of the CLOSED ASSOCIATION and by operation of law has succeeded to all the rights, titles, powers, and privileges of the CLOSED ASSOCIATION.

D. The ACQUIRING ASSOCIATION is a state savings and loan association organized under the laws of the State of Washington, the accounts of which are insured by the CORPORATION.

E. It has been mutually agreed between the ACQUIRING ASSOCIATION and the RECEIVER and the BANK BOARD has determined that it is in the best interests of the CLOSED ASSOCIATION, its savers, and the CORPORATION that substantially all of the CLOSED ASSOCIATION's assets, all of its deposits or withdrawable accounts, and substantially all of its other liabilities be immediately transferred to and assumed by the ACQUIRING ASSOCIATION as provided in this Agreement.

F. In consideration of the foregoing and of the mutual covenants and agreements contained in this Agreement, the RECEIVER and the ACQUIRING ASSOCIATION enter into the following agreement.

## AGREEMENT

§ 1 Purchase of Assets. The RECEIVER hereby sells to the ACQUIRING ASSOCIATION, and the ACQUIRING ASSOCIATION hereby purchases from the RECEIVER, all of the RECEIVER's right, title, and interest in and to all of the CLOSED ASSOCIATION's assets that the RECEIVER owns or holds and any of the CLOSED ASSOCIATION's assets hereafter acquired by the RECEIVER, excluding, however: (i) any known or unknown claim, demand, cause of action, or judgment against the present or former controlling persons, directors, officers, or other persons directly or indirectly exercising a controlling influence over the

management or policies of the CLOSED ASSOCIATION or any of its subsidiaries, or their sureties, including any administrator, executor, personal representative, heir, or assign of any such person, arising out of any act(s) or omission(s) of such person prior to the effective date of this Agreement ("Effective Date") with respect to the CLOSED ASSOCIATION or its property, or its subsidiary or the subsidiary's property; (ii) any claim against counsel for the CLOSED ASSOCIATION for recovery of sums paid by the CLOSED ASSOCIATION to challenge the receivership or contemporary or subsequent actions of the BANK BOARD or the CORPORATION; and (iii) such limited items, parts, or portions of the CLOSED ASSOCIATION's books and records as are specifically identified by the RECEIVER, <u>provided</u> the ACQUIRING ASSOCIATION consents to the RECEIVER's retention of such records (the "excluded papers").

§ 2 <u>Assumption of Liabilities</u>. The ACQUIRING ASSOCIATION hereby expressly assumes and agrees to pay, perform, and discharge all of the CLOSED ASSOCIATION's liabilities, including, but not limited to, those shown on the CLOSED ASSOCIATION's books and records at such time as the RECEIVER takes possession of the CLOSED ASSOCIATION, but excluding, however, obligations under any compensation or employment contract between the CLOSED ASSOCIATION and any of its employees, officers, or directors, other than obligations to honor or satisfy any rights already vested under such contracts. The term "liability" as used in this section does not refer to any obligation to indemnify controlling persons, directors, officers, or other persons as a result of suits arising from claims described in § 1, and the AC-

QUIRING ASSOCIATION specifically does not assume by virtue of this Agreement any such obligations for indemnification of the directors, officers, or employees of the CLOSED ASSOCIATION.

§ 3 Records.

(a) The ACQUIRING ASSOCIATION acknowledges that the RECEIVER is delivering to it, as among the assets sold and purchased under § 1 of this Agreement, all of the CLOSED ASSOCIATION's books and records, except the excluded papers, if any.

(b) The ACQUIRING ASSOCIATION agrees to preserve and keep safe all of the CLOSED ASSOCIATION's books and records that it acquires pursuant to this Agreement, to permit the RECEIVER at any reasonable time to inspect, make extracts from or copies of any of such books and records, and to cooperate fully with the RECEIVER in the preparation of the inventory described below.

(c) As a condition of this Agreement, the ACQUIRING ASSOCIATION agrees at its own expense either to segregate and keep separate or, in the alternative and at the option of the ACQUIRING ASSOCIATION, to reconstruct as of the date of this Agreement, the CLOSED ASSOCIATION's books and records transferred to it until the period in which the CLOSED ASSOCIATION may file an action for removal of the RECEIVER pursuant to law has expired, or, if such action is filed, until the dismissal of such action or the issuance of an order determining an appeal from any order of a court directing the removal of the RECEIVER.

§ 4 Tax Reports.

The RECEIVER shall prepare and file or cause to be prepared and filed any and all federal and state tax reports otherwise required to be filed by the CLOSED ASSOCIATION through the Effective Date, as soon as it is practicable. The RECEIVER shall furnish a copy of all federal and state tax reports filed by RECEIVER on behalf of the CLOSED ASSOCIATION to ACQUIRING ASSOCIATION upon their completion. The ACQUIRING ASSOCIATION agrees to cooperate fully with the RECEIVER in preparing such tax reports.

§ 5 Inventory.

As soon as is practicable after the effective date of this Agreement, the RECEIVER shall make or cause to be made an inventory of the CLOSED ASSOCIATION's assets and a record of its liabilities, as directed by the BANK BOARD. The RECEIVER shall furnish a copy of the inventory of the CLOSED ASSOCIATION's assets and the record of its liabilities to the ACQUIRING ASSOCIATION upon their completion.

§ 6 Purchase Price. The purchase price of all assets sold to the ACQUIRING ASSOCIATION pursuant to § 1 shall be the assumption of liabilities provided for in § 2.

§ 7 Duties with Respect to Savers.

(a) The ACQUIRING ASSOCIATION agrees to pay, in accordance with the provisions of applicable law and the individual contracts governing the CLOSED ASSOCIATION's deposits or withdrawable accounts, all properly drawn and presented withdrawal requests by the CLOSED ASSOCIATION's depositors or withdrawable accountholders whose depos-

its or accounts are assumed by the ACQUIRING ASSOCIATION pursuant to § 2 of this Agreement, to the extent that such deposits or withdrawable account balances are sufficient to permit such payments and in compliance with the contractual terms of such deposits and accounts and in all other respects to discharge, in the usual course of business, the CLOSED ASSOCIATION's duties and obligations with respect to its depositors or accountholders whose deposits and accounts are assumed by the ACQUIRING ASSOCIATION; provided, however, that the ACQUIRING ASSOCIATION does not assume any special or unusual duties of the CLOSED ASSOCIATION to such depositors or accountholders unles the terms of such duties are disclosed in the CLOSED ASSOCIATION's records. Further, in accordance with applicable law and the individual contracts governing such deposits or accounts, the ACQUIRING ASSOCIATION agrees to pay interest on all of the CLOSED ASSOCIATION' deposits and withdrawable accounts that are assumed pursuant to § 2 of this Agreement.

(b) If any of such depositors or withdrawable accountholders declines to accept the obligation of the ACQUIRING ASSOCIATION to pay the CLOSED ASSOCIATION's deposit or account liabilities assumed pursuant to § 2 of this Agreement and asserts a claim agains the RECEIVER for any part of such assumed deposit liabilities, the ACQUIRING ASSOCIATION shall provide the RECEIVER, upon demand, with an amount of money sufficient to enable it to pay the claim of such depositors or accountholders, less any applicable early withdrawal penalties, not exceeding the amount credited to such persons on the

ACQUIRING ASSOCI. .ON's records at the time : h demand is made, and, upon paying the RECEIVER as so demanded, the ACQUIRING ASSOCIATION shall be discharged from any further liability for such claim under this Agreement.

(c) The ACQUIRING ASSOCIATION shall give written notice, in a form approved by the RECEIVER or its counsel, to the CLOSED ASSOCIATION's depositors and withdrawable accountholders whose deposits or accounts are assumed by the ACQUIRING ASSOCIATION pursuant to § 2 of this Agreement of its assumption of liability for such deposits or accounts.

§ 8 Office Space for the RECEIVER. The ACQUIRING ASSOCIATION agrees to provide the RECEIVER, without charge and, if its duties so require, for a period of one (1) year from the date of this Agreement, adequate space on the premises, including vault space and furnishings, for the RECEIVER's use in connection with the transfer and transactions required by this Agreement and with the exercise and discharge of its powers and duties as receiver of the CLOSED ASSOCIATION. After such period, the ACQUIRING ASSOCIATION shall continue to provide to the RECEIVER, at a reasonable rental to be agreed upon by the parties, such space and furnishings for such period as the RECEIVER may request.

§ 9 Litigation; Power of Attorney. In the event that any action at law or in equity in which the RECEIVER has an interest is instituted by any person against the CLOSED ASSOCIATION, the ACQUIRING ASSOCIATION, or both of them, or against the RECEIVER and either or

both of the foregoing as co-defendants, or in whi action the RECEIVER joins or is joined as co-defendant, the ACQUIRING ASSOCIATION agrees to file, or to join with the RECEIVER in filing, a petition to remove the action to an appropriate court, and hereby authorizes and appoints, as its attorney for the purpose of effecting such removal, any attorney designated or approved by the RECEIVER to act in that capacity.

§ 10 Rights and Forbearance. The rights, powers, and remedies given to the parties by this Agreement shall be in addition to all rights, powers, and remedies given by any applicable statute or rule of law. Any forbearance, failure, or delay by either party in exercising or partially exercising any right, power, or remedy shall not preclude the further exercise of such right, power, or remedy.

§ 11 Sole Benefit. It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all conditions and provisions of it, are for sole benefit of the RECEIVER and the ACQUIRING ASSOCIATION and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended to or shall be construed to give any person other than RECEIVER or the ACQUIRING ASSOCIATION any legal or equitable right, remedy, or claim under or with respect to this Agreement or any of its provisions.

§ 12 Successors and Assigns. All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties, their respective transferees, successors, and assigns, but

this Agreement may not be assigned nor may any rights under it be transferred to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of the CORPORATION.

§ 13 Notices. Any notice, request, demand, or other communication to either of the parties shall be deemed given when received and shall be given in writing and delivered in person or sent by first class mail in a prepaid envelope to such party at its address set forth below or at such other address as such party shall hereafter furnish in writing:

Sterling Savings Association
Attn: Daniel G. Byrne, Chief Financial Officer
North 120 Wall Street
Spokane, Washington 99201-0696
Attn: President

Federal Savings and Loan Insurance Corporation
Attn: Special Representative, Receiver for
Lewis Federal Savings and Loan Association
1700 G Street, N.W.
Washington, D.C. 20552

§ 14 Accounting Principles. Except as otherwise provided in this Agreement, any computations made for the purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of this Agreement, any assistance agreement or agreements to which the ACQUIRING ASSOCIATION and the CORPORATION are parties, including, but not limited to, an agreement to make a contribution or loan, an agreement to purchase subordinated debt, or an agreement to issue and purchase Income Capital Certifi-

cates, applicable regulations of the BANK BOARD the CORPORATION, or any resolution or action of the BANK BOARD or CORPORATION approving, or adopted concurrently with, this Agreement, then this Agreement, such assistance agreement, such regulations, and such resolutions or actions shall govern. In the case of any ambiguity in the interpretation or construction of any provision of this Agreement, such ambiguity shall be resolved in a manner consistent with an assistance agreement, such regulations, and the BANK BOARD's or the CORPORATION's resolutions or actions. If there is a conflict between this Agreement and an assistance agreement or such regulations or such resolutions or action, then the assistance agreement or such regulations or such resolutions or actions shall govern.

§ 15 Governing Law. To the extent that federal law does not control, this Agreement and the rights and obligations under it shall be governed by the law of the State of Washington. Nothing in this Agreement shall require any unlawful action or inaction by either party.

§ 16 Effective Date. This Agreement and the transfer of the CLOSED ASSOCIATION's assets and liabilities provided for by this Agreement shall become effective upon its execution by the parties.

§ 17 Entire Agreement, Severability.

(a) This Agreement, together with any interpretation of it or any understanding agreed to in writing by the parties, constitutes the entire agreement between the ACQUIRING ASSOCIATION and the CORPORATION as RECEIVER, but not in its corporate capacity in connection

with transactions contemplated by this Agreement and supersedes all prior agreements and understandings of the parties, excepting only any resolutions or letters approved or adopted contemporaneously with this Agreement by the BANK BOARD or the CORPORATION.

(b) If any provision of this Agreement is invalid or unenforceable, then, to the extent possible, all of the remaining provisions of this Agreement shall remain in full force and effect and shall be binding upon the parties.

§ 18 Counterparts, Modification, Headings.

(a) This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall together constitute one and the same instrument, and either party may execute this Agreement by signing any such counterpart.

(b) No modification of this Agreement shall be binding unless executed in writing and signed by the parties or their successors.

(c) Section headings are not to be considered part of this Agreement, are solely for convenience of reference, and shall not affect the meaning or interpretation of this Agreement or any of its provisions.

§ 19 Warranties.

(a) The RECEIVER warrants and represents that it has authority to enter into this Agreement and that as RECEIVER it has full power and authority to transfer the CLOSED ASSOCIATION's assets and liabilities as provided by this Agreement.

(b) The ACQUIRING ASSOCIATION warrants and represents that all of the transactions contemplated by this Agreement have been or will be authorized by all necessary corporate actions and that it, by its proper officers, has executed this Agreement and shall execute and deliver all instruments, certificates, and other documents that may be necessary or incidental to the performance of this Agreement.

(c) These warranties shall survive the execution, performance, and termination of this Agreement.

§ 20 Continuing Cooperation. The RECEIVER agrees, upon the request of the ACQUIRING ASSOCIATION, to execute and deliver such further instruments and documents of conveyance as shall be necessary or proper to vest in the ACQUIRING ASSOCIATION the RECEIVER's full legal or equitable title to the property transferred to the ACQUIRING ASSOCIATION pursuant to this Agreement.

IN WITNESS WHEREOF, The parties hereto have executed this Agreement by their duly authorized officers or agents.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION AS RECEIVER FOR LEWIS FEDERAL SAVINGS AND LOAN ASSOCIATION

Date: Nov 5 1985

Attest: [signature]

By: [signature]

Its: Special Representative

STERLING SAVINGS ASSOCIATION

Date: November 5 1985

Attest: [signature]

By: [signature]

Its: Chairman

**ASSISTANCE AGREEMENT**

**BETWEEN**

**THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION**

**AND**

**STERLING SAVINGS ASSOCIATION**
**Spokane, Washington**

**Dated:** November 5, **1985**

EXHIBIT 2

## SUMMARY OF SUBSTANTIVE PROVISIONS

| Assistance Provided | Section in Agreement |
|---|---|
| 1. Cash Contribution of $1,750,000 | § 3 |
| 2. Indemnification for undisclosed liabilities and litigation challenging the Acquisition. | § 4 |

**ASSISTANCE AGREEMENT**
**BETWEEN**
**THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION**
**AND**
**STERLING SAVINGS ASSOCIATION**

**Table of Contents**


| | Page |
|---|---|
| Recitals | 1 |
| Section 1. Definitions | 2 |
| (a) "Acquisition" | 2 |
| (b) "Acquisition Agreement" | 2 |
| (c) "Affiliate" | 2 |
| (d) "Bank Board" | 2 |
| (e) "Books" | 2 |
| (f) "Claim" | 3 |
| (g) "Effective Date" | 3 |
| (h) "Insurance Regulations" | 3 |
| (i) "Liquidation" | 3 |
| (j) "Net Proceeds Receiver" | 3 |
| (k) "Quarter" | 3 |
| (l) "Related Claim" | 4 |
| (m) "Subsidiary" | 4 |
| (n) "Supervisory Agent" | 4 |
| Section 2. Conditions | 4 |
| Section 3. Contributions by the CORPORATION | 5 |
| (a) Cash Contributions | 5 |
| (b) Indemnification Contributions | 6 |
| (c) Adjustments | 6 |
| Section 4. Indemnification for the Undisclosed Liabilities, Claims Against LEWIS, and Litigation Challenging the Acquisition | 7 |
| (a) Indemnifications | 7 |
| (1) Undisclosed Liabilities | 8 |
| (2) Challenges to the Acquisition | 9 |
| (b) Pursuit of Related Claims | 10 |
| (c) Payments as Contributions | 10 |
| (d) Limitation on Indemnification | 11 |
| (e) Tax Benefits | 11 |
| Section 5. Duplicate Payments | 15 |
| Section 6. Non-Reimbursable Expenses | 15 |

## ASSISTANCE AGREEMENT

Table of Contents


| | Page |
|---|---|
| Section 7. Reports, Records | 16 |
| (a) Quarterly Reports | 16 |
| (b) Final Accounting | 17 |
| (c) Access to Books and Records | 17 |
| (d) Audits and Examinations | 18 |
| (e) Reports Concerning Prosecution of Claims by Court Action and Settlement of Claims and Liabilities | 19 |
| Section 8. Covenants | 21 |
| (a) Management Standard | 21 |
| (b) Conduct of Litigation | 21 |
| (c) Disclosure of Agreement | 24 |
| Section 9. Accounting Principles | 25 |
| Section 10. Notices | 25 |
| Section 11. Termination of Agreement | 26 |
| Section 12. Rights and Forbearance | 27 |
| Section 13. Governing Law | 27 |
| Section 14. Entire Agreement, Severability | 27 |
| Section 15. Counterparts, Modifications, Headings | 28 |
| Section 16. Successors and Assigns | 28 |
| Section 17. Sole Benefit | 29 |
| Section 18. Continuing Cooperation | 29 |
| Signature Page | 30 |

# ASSISTANCE AGREEMENT

THIS AGREEMENT, dated November 5, 1985, is entered into by and between STERLING SAVINGS ASSOCIATION, Spokane, Washington ("ACQUIRING ASSOCIATION"), and the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate instrumentality and agency of the United States ("CORPORATION").

## RECITALS

A. The CORPORATION insures the accounts of both LEWIS FEDERAL SAVINGS AND LOAN ASSOCIATION, Chehalis, Washington ("LEWIS"), and the ACQUIRING ASSOCIATION in accordance with § 403 of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1726 (1982).

B. On November 4, 1985, the Federal Home Loan Bank Board ("Bank Board") duly appointed the CORPORATION as receiver for LEWIS ("Receiver").

C. On November 5, 1985, the Receiver entered into an Acquisition Agreement with the ACQUIRING ASSOCIATION, pursuant to which the ACQUIRING ASSOCIATION acquired substantially all of LEWIS' assets and assumed substantially all of LEWIS' liabilities.

D. The CORPORATION has decided, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), to provide financial assistance and indemnification as set forth in this Agreement, having determined that LEWIS is in danger of default and that the amount of such assistance and indemnification would be less than the losses the CORPORATION would sustain upon the liquidation of LEWIS through a receivership accompanied by the payment of insurance of accounts.

E. In consideration of the mutual promises contained in this Agreement, the parties enter into the following agreement:

## AGREEMENT

Section 1. Definitions. For the purpose of this Agreement, the following terms have the indicated meanings:

(a) "Acquisition": The acquisition of substantially all of the assets and the assumption of substantially all of the liabilities of LEWIS by the ACQUIRING ASSOCIATION.

(b) "Acquisition Agreement": The Acquisition Agreement between the Federal Savings and Loan Insurance Corporation as Receiver for LEWIS Federal Savings and Loan Association, Chehalis, Washington, and Sterling Savings Association, Spokane, Washington.

(c) "Affiliate": Affiliate, as that term is defined in § 561.25 of the Rules and Regulations for the Federal Savings and Loan Insurance Corporation, 12 C.F.R. § 561.25 (1985).

(d) "Bank Board": The Federal Home Loan Bank Board.

(e) "Books": The general ledger books of original entry and ancillary journal records and schedules necessary to reflect the financial condition of LEWIS in accordance with generally accepted accounting principles.

(f) "Claim": Any claim, demand, or cause of action.

(g) "Effective Date": The date and time at which the Acquisition becomes effective pursuant to the terms of the Acquisition Agreement and applicable law.

(h) "Insurance Regulations": The Rules and Regulations for the Federal Savings and Loan Insurance Corporation, as now or hereinafter in effect.

(i) "Liquidation": The release, compromise, satisfaction, settlement, reduction to judgment, or assignment to other than the CORPORATION of any Claim.

(j) "Net Proceeds Received": As used in reference to the amount received upon the Liquidation of a Claim, the amount computed by deducting from the gross proceeds received all reasonable expenses in the form of payments to third parties actually incurred or paid by the ACQUIRING ASSOCIATION in connection with such Liquidation, provided that such expenses have not been reimbursed otherwise. Such "reasonable expenses" may include, without being limited to, reasonable costs that are directly related to the Liquidation of the Claim.

(k) "Quarter": A calendar quarter, provided that the first Quarter during the term of this Agreement shall be deemed to include the period, if any, from the Effective Date to the last day preceding the first day of the first full calendar quarter following the Effective Date, and provided further, that the last quarter during the term of this Agreement shall be deemed to include the period, if any,

from the first day after the last day of the last full calendar quarter during the term of this Agreement to the date on which this Agreement terminates.

(l) "Related Claim": Any counterclaim, offset, insurance settlement, or other Claim which may result in a recovery by the ACQUIRING ASSOCIATION and which is related to a Claim or liability for which the CORPORATION is obligated to indemnify the ACQUIRING ASSOCIATION under § 4(a) of this Agreement.

(m) "Subsidiary": Any corporation or other entity 25 percent or more owned, directly or indirectly by LEWIS or the ACQUIRING ASSOCIATION.

(n) "Supervisory Agent": The Principal or other Supervisory Agent of the Bank Board in Seattle, Washington.

Section 2. Conditions. The CORPORATION's obligations under this Agreement are conditioned upon the following:

(a) The CORPORATION's receipt of an opinion from counsel for the ACQUIRING ASSOCIATION, in form and substance satisfactory to the CORPORATION and its counsel, to the effect that:

(1) The Acquisition has been duly authorized by the directors of the ACQUIRING ASSOCIATION and effected in compliance with the Charter and Bylaws of the ACQUIRING ASSOCIATION and with applicable law; and

(2) This Agreement has been duly authorized, executed, and delivered, and constitutes a valid and binding obligation of the ACQUIRING ASSOCIATION, enforceable in accordance with its terms;

(b) The CORPORATION's receipt of a certified copy of the corporate resolutions of the ACQUIRING ASSOCIATION authorizing execution and delivery of the Acquisition Agreement and this Agreement;

(c) The CORPORATION's receipt of a memorandum from the Office of the Attorney General of the State of Washington indicating that the Acquisition is in compliance with Washington law;

(d) The ACQUIRING ASSOCIATION and any of its Affiliates and Subsidiaries, within the time periods specified by the terms of this Agreement or by the Bank Board, (1) having executed and delivered to the CORPORATION all other agreements, instruments, and documents required to be executed and delivered by the terms of this Agreement and by any action of the Bank Board in approving the Acquisition and related transactions, and (2) having taken all other actions imposed as conditions to the CORPORATION's obligation to provide assistance in any action by the Bank Board in approving the Acquisition and related transactions.

Section 3. <u>Contributions by the CORPORATION</u>.

(a) <u>Cash Contributions</u>.

(1) Within five business days after the Effective Date, <u>provided</u> that the conditions set forth in § 2(a)-(c) of this Agreement have been satisfied, and the conditions set forth in § 2(d) have been satisfied to the extent specified by the Bank Board as a condition to the CORPORATION's initial cash contribution, the CORPORATION shall wire transfer to the account of the ACQUIRING ASSOCIA-

TION at the Federal Home Loan Bank of Seattle, Account No. 7918-16, a cash contribution in the amount of One Million, Seven Hundred Fifty Thousand Dollars ($1,750,000).

(2) For purposes of reports to the Bank Board other than reports or financial statements that are required to be governed by generally accepted accounting principles, all cash contributions made under this § 3 shall be credited to the ACQUIRING ASSOCIATION's net worth account. It is understood by the parties that the preceding sentence is not intended to address in any way the accounting treatment of contributions from the CORPORATION that must be reflected in any filing that the ACQUIRING ASSOCIATION may make, whether to the Bank Board or not, that requires the submission of financial statements prepared in accordance with generally accepted accounting principles.

(b) Indemnification Contributions. Within 30 days after receipt of the ACQUIRING ASSOCIATION's quarterly reports required pursuant to § 7(a) or within 90 days of the final accounting required pursuant to § 7(b) of this Agreement, the CORPORATION shall contribute to the ACQUIRING ASSOCIATION, in its account at the Federal Home Loan Bank of Seattle, Account No. 7918-16, the reported amounts that are owed pursuant to § 4 of this Agreement.

(c) Adjustments. Any contribution or payment by the CORPORATION or any accounting or report furnished by the ACQUIRING ASSOCIATION under this Agreement shall be subject to adjustment if it subsequently appears that such contribution, payment, accounting, or

report was based upon error or was not computed in accordance with the accounting principles prescribed by this Agreement.

Section 4. Indemnification for the Undisclosed Liabilities and Litigation Challenging the Acquisition.

(a) Indemnifications. To the extent not otherwise reimbursed or reimbursable, except as provided in § 4(a)(1), the CORPORATION will indemnify the ACQUIRING ASSOCIATION for, and pay as provided in § 3(b), the amounts actually paid by the ACQUIRING ASSOCIATION in connection with the satisfaction, settlement, or compromise of the following liabilities and the reasonable costs and expenses of litigation related to such liabilities and to the defense of Claims described in § 4(a)(2), including reasonable attorneys' and accountants' fees, travel expenses, court costs and related litigation expenses, and such other actual and reasonable costs as may be actually incurred and payable by the ACQUIRING ASSOCIATION in connection with such satisfaction, settlement, or compromise, provided that the ACQUIRING ASSOCIATION complies with the covenants set forth in § 8, and provided further that such costs and expenses shall be subject to approval by the CORPORATION as being related to matters subject to indemnification under this § 4(a), and the reports required by § 7(a) and (e) of this Agreement, in a form satisfactory to the CORPORATION, shall be submitted to the CORPORATION before such costs and expenses shall be paid by the CORPORATION pursuant to § 3(b):

(1) Undisclosed Liabilities. Except as provided in this § 4(a)(1), any liabilities of the ACQUIRING ASSOCIATION that were not disclosed or reflected on the Books or records of LEWIS immediately prior to the Effective Date and which, under generally accepted accounting principles as of the Effective Date consistently applied, are of the type that are disclosed or reflected as liabilities, but excluding any inadequacy in or lack of a valuation allowance or specific reserve, provided that, in the event that the satisfaction, settlement, or compromise of any liability or liabilities described in this § 4(a)(1) results in the acquisition by the ACQUIRING ASSOCIATION of an asset or assets, then at the CORPORATION's election:

(A) The ACQUIRING ASSOCIATION shall assign such asset or assets to the CORPORATION without cost to the CORPORATION; or

(B) The amount paid by the CORPORATION pursuant to § 4(a) shall be limited to the amount, if any, by which the amounts paid by the ACQUIRING ASSOCIATION in connection with the satisfaction, settlement, or compromise of such liability or liabilities exceed the fair market value of the asset or assets, if any, acquired as a consequence of the satisfaction, settlement, or compromise of such liability or liabilities as determined (i) by agreement between the ACQUIRING ASSOCIATION and the CORPORATION, or (ii) by an

appraisal performed by an independent appraiser approved by the CORPORATION, the cost of which appraisal shall be paid by the CORPORATION.

The CORPORATION's obligation to provide indemnification under this § 4(a)(1) shall not extend to any Subsidiaries of LEWIS or to liabilities of LEWIS incurred, prior to the Effective Date, with respect to any month or months for which the Books have not yet been completed or closed, (1) which normally recur in LEWIS' ordinary course of business and operations, (2) which are ordinarily posted on the Books on a periodic basis, and (3) which are in amounts that are materially the same as and can reasonably be predicted from prior postings on the Books, including, but not limited to, items such as (A) accrued employee salaries, (B) utility bills, (C) accrued interest due to depositors and accountholders, and (D) accrued interest payable to the Federal Home Loan Bank of Seattle, or any other lender to LEWIS, provided that, with respect to accrued interest payable to a lender, the underlying obligation to pay principal is reflected on the Books.

(2) Challenges to the Acquisition. Any action brought by other than the ACQUIRING ASSOCIATION, any of its Subsidiaries, creditors, or stockholders within a period of one year following the Effective Date to challenge or set aside the Acquisition or this Agreement that is grounded upon a Claim that an action or failure to act by the Bank Board or the CORPORATION was not in accordance with the Bank Board's or the CORPORATION's enabling legislation, and, in

the event that a court of competent jurisdiction directs the ACQUIRING ASSOCIATION to divest assets or liabilities of LEWIS on such ground, the reasonable costs and expenses of such divestiture, provided that such damages are directly attributable to such action or failure to act by the Bank Board or the CORPORATION.

(b) Pursuit of Related Claims. The ACQUIRING ASSOCIATION shall use its best efforts to reduce or minimize the CORPORATION's indemnity payments under this § 4 by the pursuit of Related Claims, and the CORPORATION shall indemnify the ACQUIRING ASSOCIATION for reasonable and related costs and expenses, and such other actual and reasonable costs as may be actually incurred and payable by the ACQUIRING ASSOCIATION in complying with this § 4(b), provided that the ACQUIRING ASSOCIATION complies with the covenants set forth in § 8, and provided further that the pursuit of Related Claims shall be subject to approval by the CORPORATION and the reports required by § 7(a) and (e) of this Agreement, in a form satisfactory to the CORPORATION, shall be submitted to the CORPORATION before costs and expenses related to the pursuit of Related Claims shall be paid by the CORPORATION pursuant to § 3(b). All sums recovered from each such Related Claim shall be paid over to the CORPORATION to the extent that the CORPORATION has made contributions pursuant to this Agreement.

(c) Payments as Contributions. All payments made by the CORPORATION to the ACQUIRING ASSOCIATION under this § 4 shall be considered contributions under this Agreement.

(d) Limitation on Indemnification. Subject to the provisions of § 11(b), the CORPORATION's obligations to provide indemnification under § 4(a)(1) shall not extend beyond three years after the Effective Date, and the CORPORATION's obligations to provide indemnification under § 4(a)(2) shall not extend beyond one year after the Effective Date. Notwithstanding anything contained in this Agreement to the contrary, the aggregate contributions made by the CORPORATION pursuant to § 4(a) shall not be in excess of One Million Dollars ($1,000,000).

(e) Tax Benefits. The ACQUIRING ASSOCIATION shall pay to the CORPORATION an amount equal to the net tax benefits, if any, realized by the ACQUIRING ASSOCIATION in any year ("Net Tax Benefits"), calculated as provided in this § 4(e). For purposes of this Agreement, the Net Tax Benefits shall be the tax benefits that are attributable to the items described in § 4(e)(1) and (2) below ("Tax Benefit Items") that are utilized by the ACQUIRING ASSOCIATION to reduce its federal income tax liability in a given tax year as calculated in § 4(e)(3) below.

(1) The total amount of any net operating and capital loss carryovers, and any other carryovers resulting in a tax deduction from the ACQUIRING ASSOCIATION's gross income, arising from a taxable year or taxable period of LEWIS which ends on or prior to the Effective Date.

(2) Any deductions or losses which are incurred by the ACQUIRING ASSOCIATION to the extent that the ACQUIRING ASSOCIATION is entitled to receive assistance from the CORPORATION pursuant to the terms of § 4 of this Agreement.

(3) The Net Tax Benefits for a taxable year shall be equal to the excess, if any, of

(A) the federal income tax liability for such taxable year (taking into account all allowable carryovers and carry-backs to such year) which would have been imposed on tne ACQUIRING ASSOCIATION, or the consolidated group of which the ACQUIRING ASSOCIATION is a member, if the Tax Benefit Items described in § 4(e)(1) and (2) had not been deducted in any taxable year, over

(B) the federal income tax liability for such taxable year (taking into account all allowable carryovers and carry-backs to such year) actually imposed on the ACQUIRING ASSOCIATION, or the consolidated group of which the ACQUIRING ASSOCIATION is a member.

(4) Net Tax Benefits shall be paid to the CORPORATION within 45 days of the date, or any extension thereof, for which a federal income tax return of the ACQUIRING ASSOCIATION for the taxable year in which such Net Tax Benefits are realized (including by way of carryovers and carrybacks) was required to be filed.

(5) The ACQUIRING ASSOCIATION shall, upon request of the CORPORATION, provide copies of the tax returns and amended tax returns of LEWIS, the ACQUIRING ASSOCIATION, and any of its Affiliates for any taxable year(s) specified by the CORPORATION.

(6) In the event Net Tax Benefits are paid with respect to Tax Benefit Items that are subsequently disallowed or that cease to be Tax Benefit Items because it is determined that payments with respect to such Tax Benefit Items were not excludible from gross income, such Net Tax Benefits shall be repaid by the CORPORATION to the ACQUIRING ASSOCIATION, with interest and any penalties assessed by the Internal Revenue Service.

(7) The total amount of Net Tax Benefits paid to the Corporation pursuant to this § 4(e) shall not exceed the total amount of assistance paid or payable by the CORPORATION to the ACQUIRING ASSOCIATION pursuant to the terms of this Assistance Agreement or any other assistance arrangements. If after the termination of this agreement, it is determined that the total amount of Net Tax Benefits paid by the ACQUIRING ASSOCIATION to the CORPORATION exceeds such total amount of the CORPORATION's assistance to the ACQUIRING ASSOCIATION, then the CORPORATION shall repay that excess amount to the ACQUIRING ASSOCIATION.

(8) This § 4(e) shall survive the termination of this Agreement.

(f) The ACQUIRING ASSOCIATION shall, within 60 days of the Effective Date, identify and list certain assets consisting of real estate owned and delinquent accounts receivable ("Listed Assets") that it acquired pursuant to the Acquisition Agreement. Such list will constitute Exhibit A to this Agreement, even though not completed as of the Effective Date. The ACQUIRING ASSOCIATION will pay to the CORPORATION the amount by which the proceeds received on the disposition or collection of any of the Listed Assets, on a cumulative basis, exceeds the sum of the following amounts:

(1) The total carrying value before any deduction for valuation reserve on the Books of LEWIS, as of a date immediately preceding the Effective Date ("Carrying Value");

(2) All costs of collection, maintenance, carrying and selling paid or incurred by the ACQUIRING ASSOCIATION with respect to the Listed Assets, which shall include (a) the actual costs paid by the ACQUIRING ASSOCIATION to preserve or enhance the value of the Listed Assets, and (b) interest from the Effective Date until the disposition or collection of the Listed Assets at the rate of 12% per annum calculated monthly on the Carrying Value of the Listed Assets as reduced by any amounts received on the disposition or collection of any of the Listed Assets; and

(3) $100,000.

The ACQUIRING ASSOCIATION will provide an accounting report to the CORPORATION not later than 45 days subsequent to each of the first three anniversaries of the Effective Date which report shall

include any dispositions or collections of the Listed Assets, maintenance, carrying and selling costs paid or incurred by the ACQUIRING ASSOCIATION, and interest as determined pursuant to this subsection 4(f), all from the Effective Date. Such accounting report shall be exempt from the reporting requirements of § 7 of this Agreement. In no event shall the total amount paid by the ACQUIRING ASSOCIATION to the CORPORATION pursuant to the terms of this section exceed $300,000.

Section 5. Duplicate Payments. Any cost or expense for which the ACQUIRING ASSOCIATION has been reimbursed under any section of this Agreement, or any recovery which has been paid over to or retained by the CORPORATION under any section of this Agreement, shall not be reimbursed to the ACQUIRING ASSOCIATION, or paid over to or retained by the CORPORATION, under any other section of this Agreement, even though such cost, expense, or recovery may be described in whole or in part in two or more sections of this Agreement.

Section 6. Non-Reimbursable Expenses. The ACQUIRING ASSOCIATION shall not seek reimbursement from the CORPORATION for expenses incurred in the administration of this Agreement. For purposes of this § 6, such expenses shall include, but shall not be limited to, compensation paid to employees or agents of the ACQUIRING ASSOCIATION for services performed in connection with the preparation of reports and supporting documentation required to be filed with the CORPORATION under § 7(a), (b), (d), and (e)(1) of this Agreement.

Section 7. <u>Reports, Records</u>. In the event of the failure of the ACQUIRING ASSOCIATION to comply with any of the following requirements, the CORPORATION may delay payment of a related charge for reimbursement under this Agreement until, in the CORPORATION's judgment, such requirement is met:

(a) <u>Quarterly Reports</u>. Within 45 days following the end of each Quarter in which a corporate officer of the ACQUIRING ASSOCIATION receives written notice of any Claim or liability that may cause payment by or to the CORPORATION, and for each Quarter thereafter, the ACQUIRING ASSOCIATION shall furnish a report or reports to the CORPORATION, in a format approved by the CORPORATION and supported by such data as, in the CORPORATION's judgment, may be necessary for verification, which report or reports shall include:

(1) Status information on all Claims and liabilities that may cause payment by or to the CORPORATION under this Agreement;

(2) Itemization of payments made by and due from the CORPORATION, which, with respect to charges by the ACQUIRING ASSOCIATION for reimbursement of attorneys' and accountants' fees pursuant to § 4(a) and (b) shall be supported by the following documentation and by such other documentation as the CORPORATION may request:

(A) Copies of itemized statements of charges received by the ACQUIRING ASSOCIATION from each law firm and accounting firm, which statements shall specify (i) the nature and resulting work product of each of the services performed by each individual attorney and accountant; (ii) the identity of the person who per-

formed each service; (iii) the date on which each service was performed; (iv) the hourly rate charged for each service; and (v) the total number of hours billed for such services; and

(B) Copies of any letters, contracts, or other documents that set forth the agreement between the ACQUIRING ASSOCIATION and such law firms and accounting firms concerning the basis on which fees and other compensation due such attorneys and accountants from the ACQUIRING ASSOCIATION are to be computed; and

(3) Payments made by and due from the ACQUIRING ASSOCIATION.

(b) Final Accounting. Within 90 days after the date this Agreement terminates, or such longer time as the CORPORATION may permit, the ACQUIRING ASSOCIATION shall render to the CORPORATION a final accounting, which may be prepared by the ACQUIRING ASSOCIATION's staff and shall include such information and be in such form as the CORPORATION shall request.

(c) Access to Books and Records. The ACQUIRING ASSOCIATION shall cause to be made available to the CORPORATION all books, papers, records, and information of any kind relating to any or all matters subject to the provisions of this Agreement, including any such materials or information in the possession of the ACQUIRING ASSOCIATION or any of its Affiliates or Subsidiaries.

(d) Audits and Examinations. The CORPORATION may audit or examine the ACQUIRING ASSOCIATION or any of its Affiliates or Subsidiaries with respect to transactions affecting the implementation

of this Agreement at any time or times chosen by the CORPORATION upon reasonable notice. Such audits shall be conducted by the CORPORATION at its own expense but with the assistance of the personnel of any of the parties hereto requested by the CORPORATION, whose salaries and expenses shall be paid by the appropriate party without reimbursement from the CORPORATION.

(e) Reports Concerning Prosecution of Claims by Court Action and Settlement of Claims and Liabilities.

(1) In requesting the CORPORATION's written consent, pursuant to § 8(b)(5)(A) of this Agreement, to engage attorneys or accountants, the cost of whose services may be chargeable to the CORPORATION, or otherwise incur expenses which may be chargeable to the CORPORATION under § 4(b) in connection with the pursuit of a Related Claim, the ACQUIRING ASSOCIATION, promptly upon determining the necessity to engage such attorneys or accountants or otherwise to incur such expenses, shall obtain and submit to the CORPORATION the following information, in a form satisfactory to the CORPORATION, supported by such supplementary documentation as the ACQUIRING ASSOCIATION deems necessary, or as in the opinion of the CORPORATION is necessary to enable the CORPORATION to give an informed consent to the ACQUIRING ASSOCIATION's engaging such attorneys or accountants or otherwise incurring such expenses, which information shall include, but shall not be limited to, the following:

(A) The parties to the dispute and the relationships among them;

(B) The nature of the dispute and the basic facts concerning the dispute; and

(C) A description of the specific actions taken by the ACQUIRING ASSOCIATION in pursuit of such Related Claim prior to determining the need to engage attorneys or accountants or otherwise to incur expenses in pursuit of such Related Claim.

(2) In requesting the CORPORATION's written consent, pursuant to § 8(b)(5)(B) of this Agreement, to prosecute any Related Claim by court action, the ACQUIRING ASSOCIATION, promptly upon determining the necessity for such court action, shall obtain and submit to the CORPORATION an opinion prepared by the attorney handling such Related Claim, in a form satisfactory to the CORPORATION and its counsel, supported by such supplementary documentation as the ACQUIRING ASSOCIATION or its counsel deems necessary, or as in the opinion of counsel to the CORPORATION is necessary to enable the CORPORATION to give an informed consent to the prosecution of such Related Claim by court action, which opinion shall include, but shall not be limited to the following:

(A) The parties to the dispute and the relationships among them;

(B) The nature of the dispute and the basic facts concerning the dispute;

(C) A discussion of the causes of action raised by the dispute and the defenses to such causes of action, including (i) citations to relevant statutes and significant case law, and (ii) the attorney's evaluation of the merits of such causes of action and defenses; and

(D) The attorney's estimate of (i) the time involved in prosecuting the Related Claim by court action, and (ii) the foreseeable costs and expenses, including attorneys' fees, which will be incurred in prosecuting the Related Claim by court action.

(3) In requesting the CORPORATION's written consent, pursuant to § 8(b)(5)(C) of this Agreement, to enter into a binding commitment with respect to the satisfaction, settlement, or compromise of any Claim or liability described in the introductory paragraph of § 8, the ACQUIRING ASSOCIATION, promptly upon determining that the satisfaction, settlement, or compromise of any such Claim or liability is appropriate, shall obtain and submit to the CORPORATION an opinion prepared by the attorney handling any such Claim or liability, in a form satisfactory to the CORPORATION and its counsel, supported by such supplementary documentation as the ACQUIRING ASSOCIATION or its counsel deems necessary, or as in the opinion of counsel to the CORPORATION is necessary to enable the CORPORATION to give an informed consent to the satisfaction, settlement, or compromise of such Claim or liability, which opinion and supporting documentation shall include, but shall not be limited to, the following:

(A) The information required by this § 7(e)(2)(A)-(C);

(B) Information concerning the status of litigation regarding the Claim or liability if litigation has been instituted, and, at the request of the CORPORATION, copies of all pleadings or other documents which have been filed in connection with such litigation; and

(C) The precise terms of the satisfaction, settlement, or compromise of such Claim or liability, and the attorney's basis for recommending the proposed satisfaction, settlement, or compromise of such Claim or liability.

Section 8. Covenants. In the event of the failure of the ACQUIRING ASSOCIATION to comply with any of the following covenants concerning the defense of a liability or Claim described in § 4(a), or the pursuit of a Related Claim as required under § 4(b), the CORPORATION may disallow a related charge by the ACQUIRING ASSOCIATION for indemnification:

(a) Management Standard. The ACQUIRING ASSOCIATION shall use its best efforts in pursuing Claims and defending against liabilities or Claims described in the introductory paragraph of this § 8.

(b) Conduct of Litigation. With respect to all Claims and liabilities described in the introductory paragraph of this § 8, the ACQUIRING ASSOCIATION shall:

(1) Use its best efforts to keep the CORPORATION fully informed of the status of all such Claims and liabilities by the timely filing of current reports pursuant to § 7(a) and (e) of this Agreement;

(2) Observe the right of the CORPORATION to monitor and direct their defense or prosecution, including the right to direct the ACQUIRING ASSOCIATION to file a petition to remove an action to the appropriate court or to appeal any determination of any court, provided that the CORPORATION shall bear the cost of removal or appeal and of monitoring and directing such defense or prosecution;

(3) Authorize the CORPORATION, upon the CORPORATION's election and at the CORPORATION's expense and with its own attorneys, to defend against, or to prosecute in the name of LEWIS, the ACQUIRING ASSOCIATION, or the CORPORATION, as the case may be, any such liability or Claim, and cooperate fully with the CORPORATION in such defense or prosecution, including, but not limited to, the furnishing to the CORPORATION of all applicable books, records, and other information in the possession of the ACQUIRING ASSOCIATION or any of its Affiliates or Subsidiaries;

(4) At the request of the CORPORATION, assign the CORPORATION and subrogate the CORPORATION to any right, title, or interest of the ACQUIRING ASSOCIATION in any such Claim or liability, any related defense, and any proceeds, and, in the event of such assignment, cooperate fully with the CORPORATION in the defense or

prosecution of any such Claim or liability, including, but not limited to, the causing to be made available to the CORPORATION all books, records, and other information that are in the possession of the ACQUIRING ASSOCIATION or any of its Affiliates or Subsidiaries; and

(5) Obtain the CORPORATION's written consent before:

(A) engaging attorneys or accountants to pursue a Related Claim, the cost of whose services may be chargeable to the CORPORATION pursuant to § 4(b) of this Agreement, or otherwise incurring expenses in connection with a Related Claim that may be chargeable to the CORPORATION pursuant to § 4(b) of this Agreement;

(B) prosecuting any Related Claim by court action;

(C) entering into any binding commitment with respect to the satisfaction, settlement, or compromise of any Related Claim; or

(D) entering into any binding commitment with respect to the satisfaction, settlement, or compromise of any Claim, other than a Related Claim, or liability described in the introductory paragraph of this § 8, unless such satisfaction, settlement, or compromise would involve payment by the ACQUIRING ASSOCIATION of an amount not in excess of Twenty-Five Thousand Dollars ($25,000), or is entered into pursuant to an adjudication by a court of competent jurisdiction which, with the permission of the CORPORATION, the ACQUIRING ASSOCIATION has not appealed.

(c) Disclosure of Agreement. Except as otherwise required by law or generally accepted accounting principles, the ACQUIRING ASSOCIATION, shall not, without the prior consent of the CORPORATION, disclose the terms of this Agreement, or the obligation of the CORPORATION to indemnify the ACQUIRING ASSOCIATION against the Claims and liabilities described in the introductory paragraph of this § 8, to any person, other than employees or agents of the ACQUIRING ASSOCIATION.

Section 9. Accounting Principles. Except as otherwise provided, any computations made for purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of the Agreement, applicable regulations of the Bank Board or the CORPORATION, or any resolution or action of the Bank Board approving or relating to the Acquisition of to this Agreement, then this Agreement, such regulations, or such resolution or action shall govern. In the case of any ambiguity in the interpretation or construction of any provision of this Agreement, such ambiguity shall be resolved in a manner consistent with such regulations and the Bank Board's resolution or action relating to the Acquisition or to this Agreement. If there is a conflict between such regulations and the Bank Board's resolution or action relating to the Acquisition or to this Agreement, the Bank Board's resolution or action shall govern. For purposes of this section, the governing regulations shall be those in effect on the Effective Date, as subsequently

clarified or interpreted by the Bank Board or its staff; and the accounting principles shall be those in effect on the Effective Date, as clarified or interpreted by the Financial Accounting Standards Board ("FASB"), or any successor organization of the American Institute of Certified Public Accountants ("AICPA"). If there is a conflict between what is required by the FASB or the AICPA and what is required by the Bank Board, the interpretation of the Bank Board or its staff shall govern.

Section 10. Notices.

(a) Any notice or other communication required or permitted under this Agreement, unless otherwise specifically provided for, shall be deemed given if sent by first class mail, postage prepaid, to a party at its address set forth below or at such other address as the party shall furnish in writing:

STERLING SAVINGS ASSOCIATION
Attn: Daniel G. Byrne, Chief Financial Officer
North 120 Wall
Spokane, Washington 99201-0696

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION
Attn: Director, Financial Assistance Division
1700 G Street, N.W.
Washington, D.C. 20552

(b) Unless otherwise specifically provided for, if this Agreement requires that notice be given within a certain period of time, notice shall be deemed given as of the date of posting.

Section 11. Termination of Agreement.

(a) Except as otherwise specifically provided in this Agreement, this Agreement shall terminate three years following the Effective Date or on such other date to which the parties or their successors agree in writing, provided that in the event a receiver is appointed for the purpose of liquidating the ACQUIRING ASSOCIATION, or the ACQUIRING ASSOCIATION ceases to be an association the accounts of which are insured by the CORPORATION, this Agreement and all of the CORPORATION's obligations under it shall terminate upon the effective date of such occurrence.

(b) Notwithstanding termination of this Agreement as described in § 11(a) above, the CORPORATION shall indemnify the ACQUIRING ASSOCIATION for any loss arising from liabilities and Claims to the extent described in § 4(a), including the reasonable costs and expenses of related litigation actually incurred and payable by the ACQUIRING ASSOCIATION, for the reasonable costs and expenses actually incurred and payable by the ACQUIRING ASSOCIATION in the pursuit of a Related Claim pursuant to § 4(b), provided that any such Claim or liability is in litigation on the date that this Agreement terminates, provided further that the ACQUIRING ASSOCIATION continues to observe after the termination date all covenants, agreements of co-operation, reporting requirements, and agreements for the use of best efforts set forth in this Agreement, and provided further that any

recovery by the ACQUIRING ASSOCIATION on any Related Claims described in § 4(b) shall be paid over to the CORPORATION, subject to the limitations of § 4(b).

Section 12. Rights and Forbearance. The rights, powers, and remedies given to the parties by this Agreement shall be in addition to all rights, powers, and remedies given by any applicable statute or rule of law. Any forbearance, failure, or delay by any party in exercising or partially exercising any such right, power, or remedy shall not preclude its further exercise.

Section 13. Governing Law. This Agreement and the parties' rights and obligations under it shall be governed by the law of the State of Washington to the extent that Federal law does not control. Nothing in this Agreement shall require any unlawful action or inaction by either party.

Section 14. Entire Agreement, Severability.

(a) This Agreement, together with any interpretation or understanding agreed to in writing by the parties, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings of the parties in connection with it, excepting only the Acquisition Agreement and any resolutions or letters concerning the Acquisition or this Agreement issued by the Bank Board or the CORPORATION in connection with the approval of the Acquisition and this Agreement, provided, however, that in the event of any conflict, variance, or inconsistency between this Agreement and the Acquisition Agreement, the provisions of this Agreement shall govern

and be binding on all parties insofar as the rights, privileges, duties, obligations, and liabilities of the CORPORATION are concerned.

(b) If any provision of this Agreement is invalid or unenforceable, all of the remaining provisions of this Agreement shall nevertheless remain in full force and effect and shall be binding upon the CORPORATION and the ACQUIRING ASSOCIATION.

Section 15. Counterparts, Modifications, Headings.

(a) This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall constitute one and the same instrument, and any party may execute this Agreement by signing any such counterpart.

(b) No amendment or modification of this Agreement shall be binding unless executed in writing by the parties or their successors.

(c) Section headings are not to be considered part of this Agreement, are solely for convenience of reference, and shall not affect the meaning or interpretation of this Agreement or any of its provisions.

Section 16. Successors and Assigns. All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective transferees, successors, and assigns, but this Agreement may not be assigned to any party nor may

any rights or obligations under it be transferred or delegated to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of the CORPORATION.

Section 17. Sole Benefit. It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

Section 18. Continuing Cooperation. It is the purpose of this Agreement to provide a means by which the failure of LEWIS may be prevented, the savers and other creditors of LEWIS may be protected against losses, the thrift and financing needs of the community in which LEWIS' office is located may be served, the ACQUIRING ASSOCIATION may receive the benefits and assume the risks contracted for, and expense to the CORPORATION may be reduced. The parties therefore agree that they shall in good faith, and with their best efforts,

cooperate with one another to carry out the purposes of this Agreement as described in this section.

IN WITNESS WHEREOF, The parties have executed this Agreement by their duly authorized officers or agents.

STERLING SAVINGS ASSOCIATION

Date: November 5, 1985

Attest: [signature]

By: [signature]

Its: Chairman

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION

Date: November 5, 1985

Attest: [signature]

By: [signature]

Its: [signature]

Federal Home Loan Bank Board

1700 G Street, N.W.
Washington, D.C. 20552
Federal Home Loan Bank System
Federal Home Loan Mortgage Corporation
Federal Savings and Loan Insurance Corporation

R R R

November 12, 1985

Harold B. Gilkey
Chief Executive Officer
Sterling Savings Association
North 120 Wall Street
Spokane, Washington 99201

Dear Sir:

In connection with the approval by the Federal Home Loan Bank Board ("Bank Board") of the purchase of substantially all of the assets and assumption of substantially all of the liabilities of Lewis Federal Savings and Loan Association, Chehalis, Washington, by Sterling Savings Association, Spokane, Washington ("Sterling"), the forbearances listed below are hereby granted.

1. The assets acquired by Sterling from Lewis will be deemed to have been acquired in a merger instituted for supervisory reasons. Therefore, pursuant to any section of the regulations administered by the Bank Board where scheduled items are referred to as "assets acquired in a merger instituted for supervisory reasons," scheduled items attributable to Lewis shall be excluded from the computation of scheduled items in determining whether Sterling meets the requirements of such sections following the effective merger date as defined by the resolution of the Bank Board approving the Acquisition ("Effective Date").

2. Section 563.13 (Reserve Accounts) of the Rules and Regulations for the Federal Savings and Loan Insurance Corporation ("Insurance Regulations") provides no exceptions permitting the exclusion of scheduled items or liabilities acquired from another institution in computing the net-worth requirements of this section. However, in view of the fact that the Acquisition was instituted for supervisory reasons, the Federal Savings and Loan Insurance Corporation ("FSLIC") will forbear, for a period of five years following consummation of the Acquisition, from exercising its authority, under Section 563.13 of the Insurance Regulations, for any failure of Sterling to meet the net-worth requirements of Section 563.13 arising solely from (1) (a) scheduled items attributable to the assets of Lewis' existing at the Effective Date, (b) any reduction in net worth resulting from losses on assets or losses on continuing operations acquired in connection with the Acquisition, and (c) any increase in liabilities of Sterling as of the Effective Date by reason of Sterling's assumption of liabilities; or (2) Sterling's assumption of the net worth deficiency of Lewis as of the Effective Date.

3. For a period of one year following the Effective Date, in determining whether a penalty shall be assessed against or paid by Sterling pursuant to Section 523.12 (Deficiencies and Penalties) of the Rules and Regulations for the Federal Home Loan Bank System ("Bank Regulations"), the liquidity requirements of Section 523.11 (Liquidity Requirements) of the Bank Regulations as applied to Sterling shall be reduced by (1) the amount of Lewis' liquidity deficiencies existing at the Effective Date and (2) any aggregate net withdrawals (excess of withdrawals over cash savings received) from Lewis' offices after the Effective Date.

The forbearances or waivers extended by this letter do not relieve Sterling of its continuing obligations to maintain records of its net-worth condition and to report its financial condition in accordance with applicable regulatory requirements. This letter does not and shall not be construed to constitute forbearance or waiver by the Bank Board or the FSLIC with respect to any regulatory or other requirements other than those encompassed within the preceding paragraphs 1 through 3. Other than the actions to enforce the regulatory requirements waived in accordance with paragraphs 1 thorugh 3 and the statutory provisions authorizing imposition of the waived requirements, insofar as such requirements are waived, the Bank Board and the FSLIC expressly reserve all of their statutory rights and powers with respect to Sterling including, without limitation, those under Section 5 of the HOLA and Sections 406 and 407 of the National Housing Act, as amended.

This letter will also confirm that:

1. It is the FSLIC's intention that the cash contribution to be made to Sterling pursuant to an assitance agreement ("Assistance Agreement") to be entered into between the FSLIC and Sterling is to be a credit to Sterling's net worth; therefore, for regulatory accounting purposes, Sterling may book such contribution as a direct addition to its net worth.

2. For purposes of reporting to the Bank Board, the value of any intangible assets resulting from accounting for the Acquisition in accordance with the purchase method may be amortized by Sterling over a period not to exceed 40 years by the straight line method.

3. For purposes of reporting to the Bank Board, any discount, arising from the adjustment of Lewis' mortgage loan portfolio to its fair value, shall be amortized to income by the level yield method assuming contractually required payments will be received for 15 years, and the remaining balance will be repaid at the end of the 15th year. This amortization policy will be followed regardless of the actual repayment characteristics of the loans over time.

4. Not later than 90 days following the Effective Date, Sterling shall submit to the Supervisory Agent an independent certified public accountant's opinion that Sterling has accounted for the Acquisition in accordance with generally accepted accounting principles or that as herein provided by the Bank Board, for purposes of reporting to the Bank Board: (a) the cash contribution by the FSLIC to Sterling with respect to Lewis pursuant to the Assistance Agreement shall be deemed a contribution to net worth, and may be booked as a direct credit to Sterling, (b) the value of any intangible assets resulting from the Acquisition may be amortized by Sterling over a period of 40 years by the straight line method, and (c) any discount arising from adjusting Lewis' mortgage loan portfolio to its face value shall be amortized to income by the level yield method assuming contractual monthly payments for a 15 year period and repayment of the remaining balance at the end of the 15th year, regardless of the actual repayment experience of the loan portfolio.

By the Federal Home Loan Bank Board

Jeff Sconyers
Secretary

# Federal Home Loan Bank Board

**To all to whom these presents shall come, Greeting:**

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-984, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I, Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

[signature] Kim S. Ferguson

Assistant Secretary to the Federal Home Loan Bank Board

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-984

Date: November 4, 1985

Recitals

WHEREAS, Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"), is a federally-chartered savings and loan association, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"); and

WHEREAS, The Federal Home Loan Bank Board ("Bank Board") has exclusive power and jurisdiction to appoint a receiver for a Federal savings and loan association in the event that the Bank Board determines that any of the grounds specified in § 5(d)(6)(A) of the Home Owners' Loan Act of 1933, as amended ("HOLA"), 12 U.S.C. § 1464(d)(6)(A) (1982), exists with respect to such association; and

WHEREAS, Pursuant to § 5(d)(6)(D) of the HOLA, 12 U.S.C. § 1464(d)(6)(D) (1982), the Bank Board shall appoint only the FSLIC as receiver for a Federal savings and loan association; and

WHEREAS, The Bank Board has considered memoranda from the Federal Home Loan Bank of Seattle, dated October 23, 1985, and the Office of the General Counsel, dated November 1, 1985, together with accompanying attachments and exhibits (copies of which memoranda are in the Minute Exhibit File):

Grounds for Appointment

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board finds that the ground specified in § 5(d)(6)(A)(i) of the HOLA, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to Lewis in that Lewis is insolvent in that its assets are less than its obligations to its creditors and others, including its members; and

Appointment of Receiver

RESOLVED FURTHER, That the Bank Board, pursuant to § 5(d)(6)(A) of the HOLA, 12 U.S.C. § 1464(d)(6)(A) (1982), hereby appoints the FSLIC as sole receiver for Lewis ("Receiver"); and

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Lewis Federal Savings and Loan Association
Chehalis, Washington



Powers and Duties of Receiver

RESOLVED FURTHER, That the Receiver shall have and exercise all powers, rights, and privileges, and shall assume, perform, and discharge all duties, responsibilities, and obligations of a receiver for a Federal savings and loan association accorded or imposed by, and subject to, applicable provisions of law and regulations and orders of the Bank Board, including, but not limited to, § 5(d)(6) of the HOLA, 12 U.S.C. § 1464(d)(6) (1982), § 406 of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1729 (1982), and the provisions of Parts 547 and 549 of the Rules and Regulations for the Federal Savings and Loan System ("Federal Regulations"), 12 C.F.R. Parts 547 and 549 (1985); and

RESOLVED FURTHER, That, in addition to all powers and authority of a receiver provided for by law, regulations, and orders, the Receiver is hereby authorized and empowered, and need not seek further approval from the Bank Board, to borrow money in such amounts from any source and in any manner as the Receiver requires to fulfill its duties as receiver, to execute, acknowledge, and deliver evidence of indebtedness for such borrowing, and to secure repayment of such borrowings by mortgages, pledges, and assignments in trust, or hypothecation of any property of Lewis; and

RESOLVED FURTHER, That notwithstanding the provisions of §§ 549.2 and 548.1, as made applicable by 549.2, of the Federal Regulations, 12 C.F.R. §§ 548.1 and 549.2 (1985), the Receiver may elect to notify by certified mail all persons and entities that the Receiver knows to be holding or in possession of assets of Lewis; and

RESOLVED FURTHER, That the Receiver shall not be required to furnish any bond; and

Implementing Authority

RESOLVED FURTHER, That the Director or the Deputy Director of the Office of the FSLIC ("Director"), or the designee of either, is authorized to take such action as may be necessary or appropriate to carry out the obligations of the FSLIC as Receiver, pursuant to its appointment; and

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Lewis Federal Savings and Loan Association
Chehalis, Washington

No. 85-984



RESOLVED FURTHER, That the FSLIC, in its corporate capacity and not in its capacity as Receiver, is authorized to make advances to the Receiver for the purpose of enabling the Receiver to perform its functions and duties, on such terms and conditions as the Director shall deem appropriate, and the Director may execute such documents as may be necessary to make such advances or enter into collateral agreements; and

Special Representatives

RESOLVED FURTHER, That one or more persons shall be designated as Special Representative of the Receiver ("Special Representative"), and such designated person or persons shall have the power and authority to act in the name and on behalf of the Receiver, including the authority, subject to the direction of the Director, to take prompt possession of the books, records, property, and assets of every kind and description of Lewis and to exercise all powers of the Receiver; that, initially R. Scott Taylor, Grayson H. Bowers, Robert M. Schmid, Edward F. Gerber, Donald W. Crocker and John W. Sears shall serve as Special Representatives and, the Director may replace or remove any Special Representative and may designate such additional Special Representative(s) as the Director deems appropriate, prescribing the functions and responsibilities of each such Special Representative as he deems appropriate; and

Termination of Employment Contracts

RESOLVED FURTHER, That every employment contract between Lewis and its officers, employees, agents, or consultants is hereby terminated by the Bank Board pursuant to the appointment of the receiver effective upon the date of default of Lewis; and

Records and Reports

RESOLVED FURTHER, That each Special Representative shall keep a record of his or her actions as Special Representative for the Receiver, and shall report on such actions from time to time as directed by the Director; and

**FEDERAL HOME LOAN BANK BOARD**

**Appointment of Receiver for**
**Lewis Federal Savings and Loan Association**
**Chehalis, Washington**

No. 85- 984

Page 4

RESOLVED FURTHER, That the Director shall from time to time report to the Bank Board with respect to actions taken pursuant to this Resolution.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

# Federal Home Loan Bank Board

## To all to whom these presents shall come, Greeting:

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-986, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I, Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the
Federal Home Loan Bank Board

c

# FEDERAL HOME LOAN BANK BOARD

## Implementation Resolution

No. 85-986

Date:

WHEREAS, The Director or Deputy Director, Office of the Federal Savings and Loan Insurance Corporation ("FSLIC"), or the designee of either of them ("Director"), have been authorized by Federal Home Loan Bank Board ("Bank Board") Resolution No. 85- 985 dated November 4, 1985, to execute on behalf of the FSLIC in its corporate capacity an Assistance Agreement with Sterling Savings Association, Spokane, Washington, and a Receiver's Agreement, and other documents; and

WHEREAS, The Assistance Agreement, Receiver's Agreement, and other documents impose certain rights, duties, and obligations upon the FSLIC that do not require basic determinations of policy; and

WHEREAS, In the administration of such agreements, and of any rights or obligations of the FSLIC under them, it may be necessary or desirable that the FSLIC contract for legal, auditing, or other services or that the FSLIC authorize the settlement of certain claims:

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board, as operating head of the FSLIC, finds that expenditures of the FSLIC pursuant to such agreements are necessary, nonadministrative, and made under the National Housing Act, as amended ("NHA"), and shall be incurred, allowed, and paid under the provisions of the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), without regard to the provisions of any other law governing the expenditures of public funds; and

RESOLVED FURTHER, That the Director is hereby authorized and directed to take such actions as may be desirable or necessary to fulfill the rights, duties, and obligations of the FSLIC in its corporate capacity under the Assistance Agreement, Receiver's Agreement, and other authorized documents, and to incur, allow, and pay all expenditures in fulfillment of such rights, duties, and obligations, pursuant to the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), including, but not limited to:

(1) The payment of amounts required by such agreements;

(2) The making of advances to the FSLIC as Receiver for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Receiver");