# FEDERAL HOME LOAN BANK BOARD

## Implementation Resolution

No. 85- 986

Page 2

(3) Contracting for legal, accounting, or other services, provided, that the form of any contract shall be approved by the Office of General Counsel;

(4) The assignment, pursuit, and settlement of claims, provided, that the form of any assignment or settlement agreement entered into by the FSLIC shall be approved by the Office of General Counsel;

(5) The administration of any asset or claim acquired from the Receiver, provided, that any contract pertaining to such asset or claims, and the satisfaction, settlement, or termination of any claim, shall be approved by the Office of the General Counsel; and

(6) The waiver, if deemed necessary or desirable by the Director, of provisions of the Assistance Agreement concerning filings, representations, warranties, or certifications by Sterling, provided, that the form of any waiver by the FSLIC shall be approved by the Office of General Counsel; and

RESOLVED FURTHER, That the General Counsel may also exercise the authority conferred by the preceding resolving paragraphs with respect to contracting on behalf of the FSLIC for legal or other related services needed to implement the agreements.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

# Federal Home Loan Bank Board

**To all to whom these presents shall come, Greeting:**

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-987, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I, Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the
Federal Home Loan Bank Board

FEDERAL HOME LOAN BANK BC )

Contingent Payment of Insurance of Accounts:
Lewis Federal Savings and Loan Association

No. 85-987

Date:

WHEREAS, The Federal Savings and Loan Insurance Corporation ("FSLIC") has been appointed as sole receiver for Lewis Savings and Loan Association, Chehalis, Washington ("Lewis"), effective as described in Federal Home Loan Bank Board ("Bank Board") Resolution No. 85-984, dated November 4, 1985; and

WHEREAS, Such appointment constitutes a default of Lewis within the meaning of § 401(d) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1724(d) (1982), and may necessitate the payment of insured accounts by the FSLIC, in its corporate capacity and not as receiver, within the meaning of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982):

NOW, THEREFORE, IT IS RESOLVED, That the Director or Deputy Director, Office of the FSLIC, or such person as either of them may designate in writing ("Director"), is hereby authorized and directed to take all necessary or appropriate steps and to incur all necessary or appropriate expenses in preparation for and to implement the payment of all insured accounts of Lewis pursuant to § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982); and

RESOLVED FURTHER, That, upon being advised by the General Counsel, or a Deputy General Counsel, that Lewis is in default and that the account liabilities of Lewis have not been assumed by another insured institution, the Director is hereby authorized and directed (1) to cause each insured account in Lewis that is surrendered and transferred to the FSLIC to be paid in cash or by making available a transferred account in another insured institution, (2) to take or cause to be taken such action(s) as may be necessary or appropriate to carry out this and any future directives of the Bank Board, and (3) to do all things necessary or appropriate to carry out expeditiously the objectives of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982) and Part 564 of the Rules and Regulations for the FSLIC, 12 C.F.R. Part 564 (1985) and for the protection of the FSLIC; and

RESOLVED FURTHER, That each Office and Division of the Bank Board is hereby requested to furnish such assistance to the Director in fulfillment for the intent of this Resolution as the Director may request.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

# Federal Home Loan Bank Board

## To all to whom these presents shall come, Greeting:

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-988, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I, Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the
Federal Home Loan Bank Board

E

# FEDERAL HOME LOAN BANK BOARD

**Lewis Federal Savings and Loan Association**
**Chehalis, Washington**
**Pursuit of Claims**

No. 85-988

Date:

WHEREAS, The Federal Home Loan Bank Board has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for Lewis Federal Savings and Loan Association, Chehalis, Washington ("Lewis"), pursuant to is Resolution No. 85-984, dated November 4, 1985; and

WHEREAS, Pursuant to a proposed Receiver's Agreement and the proposed Assistance Agreement (copies of which are in the Minute Exhibit File), potential claims of Lewis against certain parties will or may be transferred to the FSLIC in its corporate capacity; and

NOW, THEREFORE, IT IS RESOLVED, That the Director or Deputy Director, Office of the FSLIC, or any person designated by either of them, is hereby authorized to take whatever actions are deemed appropriate, including litigation, to recover on such claims of Lewis from any such parties, provided that the Office of the General Counsel shall concur in any such action.

By the Federal Home Loan Bank Board

/s/ Jeff Sconyers

Secretary

# Federal Home Loan Bank Board

**To all to whom these presents shall come, Greeting:**

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 85-989, adopted by the Federal Home Loan Bank Board on November 4, 1985.

In testimony whereof, I Kim S. Ferguson, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 5th day of November, 1985

Kim S. Ferguson

Assistant Secretary to the
Federal Home Loan Bank Board

F

**FEDERAL HOME LOAN BANK BOARD**

**Approval of the Acquisition of Lewis Federal Savings and Loan Association, Chehalis, Washington, by Sterling Savings Association, Spokane, Washington**

No. 85- 989

Date: November 4, 1985

RESOLVED, That the acquisition of Lewis Federal Savings and Loan Association, Chehalis, Washington, by Sterling Savings Association, Spokane, Washington, is hereby approved, subject to any conditions that may be imposed by the Federal Home Loan Bank Board ("Bank Board") in any concurrent resolution or action issued as of the date of this Resolution.

By the Federal Home Loan Bank Board

Secretary

1700 G Street, N.W.
Washington, D.C. 20552
Federal Home Loan Bank System
Federal Home Loan Mortgage Corporation
Federal Savings and Loan Insurance Corporation

Federal Home Loan Bank Board

April 6, 1988

Board of Directors
Sterling Savings Association
North 120 Wall Street
Spokane, WA 99201

FHLBB No. 7918

Members of the Board:

In connection with the approval by the Federal Home Loan Bank Board ("Board") of the supervisory acquisition of Tri-Cities Savings and Loan Association ("Tri-Cities") by Sterling Savings Association ("Sterling"), the following forbearances are hereby granted.

1. Capital Requirements The Federal Savings and Loan Insurance Corporation ("FSLIC") will forbear, for a period of five years following consummation of the acquisition, from exercising its authority, under Section 563.13 of the Rules and Regulations for FSLIC-Insured Institutions, for any failure of Sterling to meet the capital requirements of Section 563.13 arising solely from (1)(a) any increase in the contingency component attributable to the assets of Tri-Cities existing at the effective date, and (b) any increase in the net growth of Sterling as of the Effective Date by reason of Sterling's assumption of Tri-Cities' liabilities; or (2) Sterling's assumption of the capital deficiency of the disappearing institution as of the Effective Date.

2. Scheduled Items The assets acquired by Sterling from Tri-Cities will be deemed to have been acquired in an acquisition instituted for supervisory reasons. Therefore, pursuant to any section of the regulations administered by the Federal Home Loan Bank Board where scheduled items are referred to as "assets acquired in an acquisition instituted for supervisory reasons," scheduled items attributable to Tri-Cities shall be excluded from the computation of scheduled items in determining whether Sterling meets the requirements of such sections following the effective date of the acquisition.

3. Liquidity Deficiencies For a period of one year following the Effective Date, in determining whether a penalty shall be assessed against or paid by Sterling pursuant to 523.12 (Deficiencies and Penalties) of the Rules and Regulations for the Federal Home Loan Bank System ("Bank Regulations"), the liquidity requirements of Section 523.11 (Liquidity Requirements) of the Bank Regulations as applied to Sterling shall be reduced by (1) the amount of Tri-Cities liquidity deficiencies existing at the Effective Date and (2) any aggregate net withdrawals (excess of withdrawals over cash savings received) from Tri-Cities offices after the Effective Date.

4. Regulatory Capital It is the FSLIC's intention that the initial cash contribution to be made to Sterling pursuant to the Assistance Agreement is to be a credit to Sterling's regulatory capital; therefore, for regulatory accounting purposes, Sterling may book such contribution as a direct addition to its capital.

5. <u>Amortization of Unidentifiable Intangibles</u> For purposes of reporting to the Board, the value of any unidentifiable intangible assets resulting from accounting for the acquisition in accordance with the purchase method may be amortized by Sterling over a period not to exceed 15 years by the straight line method.

6. <u>Amortization of Loan Discount</u> For purposes of reporting to the Board, any discount, arising from the adjustment of Tri-Cities mortgage portfolio to its fair value, shall be amortized to income by the level yield method assuming contractually required payments will be received for eight years, and the remaining balance will be repaid at the end of the eighth year or by the level yield method over the average remaining life of the acquired portfolio, with the discount adjusted annually to reflect the actual prepayment experience of the portfolio.

Not later than 60 days following the date of consummation of the acquisition, Sterling shall submit to its Supervisory Agent an opinion of independent public accountants that Sterling has accounted for the transaction in accordance with generally accepted accounting principles ("GAAP") except that as herein provided by the Board, for purposes of reporting to the Board: (a) the cash contribution by the FSLIC to Sterling pursuant to the Assistance Agreement shall be deemed a contribution to regulatory capital, and may be booked as a direct credit to Sterling; (b) the value of any resulting unidentifiable intangible asset may be amortized by Sterling over a period of 15 years by the straight line method; and (c) any discount arising from adjusting the mortgage loan portfolio to its face value shall be amortized to income by the level yield method assuming contractual monthly payments for an eight year period and repayment of the remaining balance at the end of the eighth year or by the level yield method over the average life of the acquired portfolio, with the discount adjusted annually to reflect the actual prepayment experience of the portfolio.

The forbearances or waivers extended by this letter do not relieve Sterling of its continuing obligations to maintain records of its reserve and regulatory capital condition and to report its financial condition in accordance with applicable regulatory requirements. This letter does not and shall not be construed to constitute forbearance or waiver by the Board or the Corporation with respect to any regulatory or other requirements other than those encompassed within the preceding paragraphs numbered 1 through 6. Other than the actions to enforce the regulatory requirements waived in accordance with paragraphs numbered 1 through 6 and the statutory provisions authorizing imposition of the waived requirements, insofar as such requirements are waived, the Board and the Federal Savings and Loan Insurance Corporation expressly reserve all their statutory rights and powers with respect to Sterling including, without limitation, those under Section 5 of the Home Owners' Loan Act if 1933 and Sections 406 and 407 of the National Housing Act.

By the Federal Home Loan Bank Board

# Federal Home Loan Bank Board

**To all to whom these presents shall come, Greeting:**

I CERTIFY That hereto annexed are true copies of documents described below made from records of the Federal Home Loan Bank Board, which records are in the official custody of the Secretary to said Board and are on file in its offices at 1700 G Street, Northwest, Washington in the District of Columbia, to wit:

Copy of Resolution No. 88-250, adopted by the Federal Home Loan Bank Board on April 7, 1988

In testimony whereof, I, Pamela Ward Bort, Assistant Secretary to the Federal Home Loan Bank Board have hereunto caused the Seal of said Board to be affixed and my name subscribed hereto, in the District of Columbia, this 8th day of April, 1988

[signature]

Assistant Secretary to the
Federal Home Loan Bank Board

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P

Date: April 7, 1988

Recitals

WHEREAS, Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), is a state-chartered stock savings and loan association, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"); and

WHEREAS, The FSLIC has been appointed by the Federal Home Loan Bank Board ("Bank Board") as sole receiver ("Receiver") for the Association, effective as described in Resolution No. 88-249 P, dated April 7, 1988; and

WHEREAS, Upon the appointment of the Receiver, the Association is in "default", as such term is defined in § 401(d) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1724(d) (1982); and

WHEREAS, The FSLIC as Receiver is authorized by §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982), upon its appointment taking effect, to liquidate the Association in an orderly manner or to make such other disposition of the matter as it deems to be in the best interests of the Association, its savers and the FSLIC; and

WHEREAS, Sterling Savings Association, Spokane, Washington ("Acquiring Association"), is a state-chartered stock savings association, the accounts of which are insured by the FSLIC; and

WHEREAS, The Acquiring Association has applied to the FSLIC, pursuant to § 563.22 of the Rules and Regulations for the FSLIC ("Insurance Regulations"), 12 C.F.R. § 563.22 (1987), for approval of an increase in its accounts of an insurable type by reason of its acquisition of substantially all of the assets and assumption of substantially all of the liabilities of the Association; and

WHEREAS, The FSLIC has proposed that the Receiver transfer substantially all of the assets and liabilities of the Association to the Acquiring Association, pursuant to §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982); and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P



WHEREAS, The Bank Board has considered a proposed acquisition agreement between the Receiver and the Acquiring Association ("Acquisition Agreement"), pursuant to which agreement the Acquiring Association would purchase substantially all of the assets of the Association, or the rents, issues, profits, and proceeds therefrom, and assume substantially all of the liabilities of the Association from the Receiver, but would not assume any obligations to stockholders or holders of subordinated debt of the Association ("Acquisition") (a copy of which agreement is in the Minute Exhibit File); and

WHEREAS, The Bank Board has considered a proposed receiver's agreement ("Receiver's Agreement") between the Receiver and the FSLIC in its corporate capacity ("Corporation"), pursuant to which agreement the Corporation would purchase from the Receiver certain assets of the Association not purchased by the Acquiring Association, or the rents, issues, profits and proceeds therefrom, and assume certain liabilities and expenses of the Receiver (a copy of which agreement is in the Minute Exhibit File); and

WHEREAS, The Acquisition will be conditioned upon the execution of, and the Bank Board has considered, a proposed assistance agreement ("Assistance Agreement"), (a copy of which agreement is in the Minute Exhibit File), between the Acquiring Association and the Corporation, pursuant to which the Corporation will provide certain financial assistance and indemnifications to the Acquiring Association to facilitate the Acquisition; and

WHEREAS, the Supervisor, Division of Savings and Loans, State of Washington, has indicated orally her intent to grant at the time of closing the approvals necessary under state law to implement the Acquisition; and

WHEREAS, The Bank Board has considered a memorandum and accompanying exhibits from the General Counsel - Regulatory Affairs of the Federal Home Loan Bank of Seattle, Seattle, Washington, dated April 6, 1988, with which memorandum the General Counsel of the Bank Board has concurred, and memoranda and accompanying exhibits from the Principal Supervisory Agent at the Federal Home Loan Bank of Seattle, Seattle, Washington, dated March 31, 1988,

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-___P



S Memorandum having been concurred in by the Executive Director, Office of Regulatory Policy, Oversight and Supervision ("ORPOS"), and the Issues Memorandum having been concurred in by the Executive Director of the FSLIC (copies of which memoranda are in the Minute Exhibit File), and the balance of the administrative record submitted to it:

General Findings Concerning the Acquisition of Substantially All of the Assets and Liabilities of the Association by the Acquiring Association

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby finds and determines that:

(1) The transfer of assets and liabilities of the Association provided for in the Acquisition Agreement and the Receiver's Agreement is the most desirable alternative, consistent with Bank Board and FSLIC policy, to the liquidation of the Association and the payment of insurance on its accounts, which would result in the loss of the savings and loan services provided by the Association to the communities it serves and the recovery by creditors and accountholders having uninsured funds of only ratable distributions from the liquidation of the assets of the Association;

(2) The execution and implementation of the Acquisition Agreement and the Receiver's Agreement are in the public interest and in the best interests of the Association, its savers and creditors, and the Corporation; and

(3) Delay in the execution and implementation of the Acquisition Agreement and the Receiver's Agreement following the Receiver's taking possession of the Association would prevent the sale of assets and assumption of liabilities contemplated thereby from taking place and result in the liquidation of the Association and the payment of insurance on its accounts; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P



RESOLVED FURTHER, That the Bank Board hereby finds and determines that the transfer of substantially all of the Association's assets and liabilities to the Acquiring Association in accordance with §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982), and pursuant to the Acquisition Agreement should be effected without delay, is in the public interest and is in the best interests of the Association, its savers and creditors, and the Corporation; and

Approval of Purchase and Assumption Transaction and Increase of Insurable Accounts

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby approves the transfer of substantially all of the Association's assets and the assumption of substantially all of the Association's liabilities to and by the Acquiring Association pursuant to the Acquisition Agreement, and further approves the resulting increase in the Acquiring Association's accounts of an insurable type, pursuant to § 563.22 of the Insurance Regulations, 12 C.F.R. § 563.22 (1987), provided that:

(1) The board of directors of the Acquiring Association shall authorize the execution of, and the Acquiring Association shall enter into, an agreement to purchase substantially all of the assets and assume substantially all of the liabilities of the Association, in the form, or substantially in the form, of the proposed Acquisition Agreement, provided that the final form of such Acquisition Agreement has been approved by the Office of the General Counsel ("OGC"), and the Acquiring Association shall execute such other documents as may be necessary to effect such transfer of assets and liabilities of the Association to the Acquiring Association promptly upon the Receiver taking possession of the Association;

(2) The Acquiring Association shall take such other actions as may be necessary to consummate the Acquisition, and the Acquisition shall be effected in accordance with applicable state law promptly upon the Receiver taking possession of the Association; and

B

FEDERAL HOME LOAN BANK BOARD



(3) Within five (5) days after the date and time at which the Acquisition becomes effective pursuant to the Acquisition Agreement ("Effective Date"), the Acquiring Association shall submit to the Principal or other Supervisory Agent at the Federal Home Loan Bank of Seattle, Seattle, Washington ("Supervisory Agent"), an opinion of counsel stating the effective date of the Acquisition and that the Acquisition has been consummated in accordance with the Acquisition Agreement, the Charter and bylaws of the Acquiring Association, this Resolution, and applicable law;

(4) Not later than sixty (60) days following the Effective Date, unless such date is extended in writing by the Supervisory Agent, the Acquiring Association shall submit evidence to the FSLIC, or to an agent thereof, that it has given notice in writing, in a form approved by the OGC, to each accountholder who had an account in the Association or the Acquiring Association prior to the Effective Date, the total of whose withdrawable accounts in the Acquiring Association will exceed the sum of $100,000 after the Acquisition, (a) of the effect of the Acquisition on the extent of the accountholder's insurance coverage, and (b) that accounts assumed by the Acquiring Association from the Association shall have separate insurance which shall terminate at the end of six months from the Effective Date, or, in the case of any certificate accounts, at the earliest maturity date of such accounts after such six-month period;

(5) All forms of accounts transferred to the Acquiring Association from the Association are hereby approved pursuant to § 563.1 of the Insurance Regulations, 12 C.F.R. § 563.1 (1987), provided that the Acquiring Association obtains new approvals for any such forms when and as such accounts mature; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-350 P



Authority for the Receiver to Transfer the
Assets and Liabilities of the Association

RESOLVED FURTHER, That the proposed Acquisition Agreement and the proposed Receiver's Agreement are hereby approved, and the Receiver is hereby authorized to sell and transfer to the Acquiring Association substantially all of the assets and liabilities of the Association, and to enter into an Acquisition Agreement and a Receiver's Agreement with respect to the Association in the form or subst tially in the form of each such proposed agreement, provided that the final form of each such agreement has been approved by the OGC; and

RESOLVED FURTHER, That the Special Representative(s) of the Receiver ("SR"), designated in or pursuant to Bank Board Resolution No. 88-____P, dated April __, 1988, is hereby authorized to execute, on behalf of the Receiver, an Acquisition Agreement and a Receiver's Agreement with respect to the Association in the form, or substantially in the form, of each such proposed agreement, to execute all other documents necessary or desirable to implement the provisions of any such Acquisition Agreement and Receiver's Agreement or to complete the acquisition of substantially all of the assets and liabilities of the Association by the Acquiring Association, and otherwise to implement the intent and purposes of said agreements and this Resolution, provided that the final form of each such agreement and document has been approved by the OGC; and

Authorization of the Corporation
to Execute Agreements and Make Payments

RESOLVED FURTHER, That the Executive Director or a Deputy Executive Director of the FSLIC, or a designee of any of them ("Director"), is hereby authorized to execute, on behalf of the Corporation, a Receiver's Agreement in the form, or substantially in the form, of such proposed agreement, and to execute all other documents and perform all provisions of the Receiver's Agreement and otherwise to implement the intent and purpose of said agreement, provided that the final forms of such agreement and documents have been approved by the OGC; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington



RESOLVED FURTHER, That the Corporation is authorized to make advances and pay expenses to, or on behalf of, the Receiver in accordance with the Receiver's Agreement; and

RESOLVED FURTHER, That the Corporation is authorized to pay all necessary or appropriate expenses incurred by, or on behalf of, the Operations and Liquidations Division, Office of the FSLIC, in preparation for the appointment of the FSLIC as receiver for the Association, provided that no such expenditures to be made by the Corporation shall extend to services rendered or goods received after the date and time the Receiver takes possession of the Association; and

Grounds for Financial Assistance

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby determines, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), that (1) financial assistance and indemnifications by the FSLIC are necessary to facilitate the Acquisition, and (2) the amount of such assistance and indemnifications, to be provided in accordance with the terms and conditions of the proposed Assistance Agreement, would not exceed that amount reasonably necessary to save the cost of liquidating the Association, including the payment of its insured accounts; and

RESOLVED FURTHER, That the proposed Assistance Agreement is hereby approved, and the Director, or the Director, Financial Assistance Division, Office of the FSLIC, or his designee ("FAD Director"), is hereby authorized to execute, on behalf of the Corporation, an agreement in the form, or substantially in the form, of the proposed Assistance Agreement, provided that the final form of such Assistance Agreement has been approved by the OGC; and

RESOLVED FURTHER, That the Director or the FAD Director is authorized to take such further actions as may be necessary or appropriate to exercise the rights and fulfill the obligations of the FSLIC contained in the Assistance Agreement; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-252 P



Prevention of Probable Failure

RESOLVED FURTHER, That the Bank Board hereby finds that approval of the Acquisition pursuant to this Resolution is necessary to prevent the probable failure of the Association; and

Supervisory Acquisition

RESOLVED FURTHER, That the Bank Board hereby finds and determines that the Acquisition is instituted for supervisory reasons; and

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, finds that the acquisition of the Association by the Acquiring Association is an acquisition under § 406(f) of the NHA, 12 U.S.C. 1729(f) (1982), as amended, and is deemed a supervisory case; and

Forbearances

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is authorized and directed to send to the Acquiring Association a letter concerning supervisory forbearances by the Bank Board and the FSLIC with respect to certain regulatory requirements in the form, or substantially in the form, of the letter in the Minute Exhibit File ("Forbearance Letter"), provided that the final form of such letter shall be approved by the OGC; and

Accounting

RESOLVED FURTHER, That the Acquisition shall be accounted for, and the Acquiring Association shall report to the Bank Board and the FSLIC, in accordance with generally accepted accounting principles prevailing in the savings and loan industry, as accepted, modified, clarified, or interpreted by applicable regulations of the Bank Board and the FSLIC, except to the extent authorized in the Forbearance Letter; and

RESOLVED FURTHER, That, no later than ninety (90) days following the Effective Date, the Acquiring Association shall furnish an

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington



analysis, accompanied by a concurring opinion from its independent certified public accountants (which will indicate that the Acquisition was accounted for in accordance with generally accepted accounting principles except as otherwise authorized by the Bank Board), satisfactory to the Supervisory Agent and the ORPOS, which shall (a) specifically describe, as of the Effective Date, any intangible assets, including goodwill and the discount and premiums arising from the Acquisition, to be recorded on the Acquiring Association's books, and (b) substantiate the reasonableness and conformity with regulatory requirements, including the Forbearance Letter, of the amounts attributed to intangible assets, including goodwill and the discount and premiums, and the related amortization periods and methods; and

Secondary Reserve

RESOLVED FURTHER, That the FSLIC hereby provides that the pro rata share, if any, of the Association in the statutorily prescribed amount defined by § 404(e)(2)(D) of the NHA, 12 U.S.C. § 1727(e)(2)(D) (1982), as amended, shall be transferred to the Acquiring Association, effective as of the Effective Date; and

Federal Home Loan Bank Stock and Membership

RESOLVED FURTHER, That the transfer to the Acquiring Association of the Association's stock in the Federal Home Loan Bank of Seattle ("Bank") is approved, effective as of the Effective Date, and that, upon such transfer, the membership of the Association in the Bank shall cease; and

Cancellation of Certificate of Insurance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is hereby directed to cancel the Association's certificate of insurance upon its surrender to the FSLIC; and

Tax Certification

RESOLVED FURTHER, That the Bank Board finds and hereby certifies that the ground set forth in § 5(d)(6)(A)(i) of the HOLA,

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington



12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to the Association, in that the Association is insolvent in that its assets are less than its obligations to its creditors and others, including its withdrawable accountholders; and

RESOLVED FURTHER, That the Bank Board finds that the record before the Bank Board contains nothing to show or from which it could be inferred that the Association had intentionally placed itself in the position of being insolvent for the purpose of obtaining any tax advantages pursuant to 26 U.S.C. § 368(a)(3)(D) (1982) as amended; and

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is hereby authorized and directed to issue and send to the Acquiring Association a letter with respect to the Association certifying on behalf of the Bank Board the matters set forth in the immediately preceding resolving paragraphs, and the Secretary or an Assistant Secretary is hereby authorized to provide copies of such letter to any agency of the United States upon request; and

Marketing and Acquisition Findings

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby finds and determines that:

(1) FSLIC and its agents offered the Association for bid on an intra-state, unassisted basis in January 1987 to FSLIC-insured institutions that might be qualified and capable of acquiring the Association;

(2) Although indications of preliminary interest were received from four institutions, all four bidders eventually determined not to submit offers on an unassisted basis;

(3) The Association was again marketed, on an inter-industry, interstate assisted basis, together with two other FSLIC-insured institutions located in the State of Washington, at a bid conference held on October 15, 1987;

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P



(4) Bids were received from three institutions, but one of the institutions subsequently withdrew its bid;

(5) Of the two remaining bids, that of the Acquiring Association was both the lower cost bid and less than the cost of liquidation; and

(6) The Acquiring Association is an in-state insured institution; and

Effective Date

RESOLVED FURTHER, That the Acquisition shall be effective in accordance with applicable state law unless such law leaves that determination to the Bank Board in which case the Acquisition shall be effective upon the execution by the appropriate parties of the Acquisition Agreement and the Assistance Agreement.

By the Federal Home Loan Bank Board

/s/ John M. Buckley, Jr.

A

# FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88-249 P

Date: April 7, 1988

## Recitals

WHEREAS, Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), is a state-chartered stock savings and loan association incorporated under the laws of the State of Washington, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"); and

WHEREAS, Pursuant to § 406(c)(1)(B) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1729(c)(1)(B) (1982) ("§ 406(c)(1)(B)"), the Federal Home Loan Bank Board ("Bank Board") has exclusive power and jurisdiction to appoint the FSLIC as sole conservator or receiver for an insured institution other than a Federal association in the event that the Bank Board determines that any of the grounds specified in § 5(d)(6)(A)(i), (ii), or (iii) of the Home Owners' Loan Act of 1933, as amended ("HOLA"), 12 U.S.C. § 1464(d)(6)(A)(i), (ii), or (iii) (1982), exists with respect to such insured institution; and

WHEREAS, Pursuant to subsection (ii)(I) of § 406(c)(1)(B), the authority conferred by § 406(c)(1)(B) may be exercised without delay with respect to the Association upon receipt of the written approval of the State official having jurisdiction over the Association that the grounds specified by the Bank Board for its exercising such authority exist; and

WHEREAS, Pursuant to subsection (i)(II) of § 406(c)(1)(B), in a case in which the Bank Board has exercised its power and jurisdiction under subsection (i)(I) of § 406(c)(1)(B), the FSLIC shall have the same powers and duties with respect to an insured institution other than a Federal association as are conferred upon it under § 406(b) of the NHA, 12 U.S.C. § 1729(b) (1982), as amended, with respect to a Federal association; and

WHEREAS, Pursuant to § 406(c)(3) of the NHA, 12 U.S.C. § 1729(c)(3) (1982), in any case in which the FSLIC is appointed receiver for an insured institution pursuant to § 406(c)(1) of

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88-249 P



the NHA, 12 U.S.C. § 1729(c)(1) (1982), the provisions of § 5(d) of the HOLA, 12 U.S.C. § 1464(d) (1982), shall be applicable in the same manner and to the same extent as if such institution were a Federal association with respect to which the FSLIC had been appointed receiver; and

WHEREAS, The Bank Board has considered a memorandum and accompanying exhibits from the General Counsel - Regulatory Affairs of the Federal Home Loan Bank of Seattle, Seattle, Washington ("Seattle Bank Counsel") dated April 6, 1988, with which memorandum the General Counsel of the Bank Board has concurred, and memoranda and accompanying exhibits from the Principal Supervisory Agent at the Federal Home Loan Bank of Seattle, Seattle, Washington, dated March 31, 1988, the S Memorandum having been concurred in by the Executive Director, Office of Regulatory Policy, Oversight and Supervision and the Issues Memorandum having been concurred in by the Executive Director of the FSLIC (copies of which memoranda are in the Minute Exhibit File), and the balance of the administrative record submitted to it:

Ground for Appointment

NOW, THEREFORE, IT IS RESOLVED, That, for the reasons set forth in the aforesaid memorandum from the General Counsel - Regulatory Affairs of the Federal Home Bank of Seattle, and on the basis of the administrative record submitted to it, including, but not limited to, oral presentations made at the Bank Board's meeting, the Bank Board hereby finds and determines that the ground specified in § 5(d)(6)(A)(i) of the HOLA, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to the Association in that the Association is insolvent in that its assets are less than its obligations to its creditors and others, including its withdrawable accountholders; and

Notice to State Official

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board, or an agent of the FSLIC, shall cause a letter to be delivered to the Supervisor, Division of Savings and Loans, State of Washington ("Supervisor"), notifying the Supervisor of

A

**FEDERAL HOME LOAN BANK BOARD**

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88-249 P



the Bank Board's determination of the existence of the ground specified above for the appointment of the FSLIC as sole receiver for the Association, and requesting written approval that the ground specified exists, provided that the final form of such letter shall be approved by the Office of the General Counsel ("OGC"); and

RESOLVED FURTHER, That, upon delivery of such letter to the Supervisor, it shall be deemed to have been received by the official of the State of Washington having jurisdiction over the Association within the meaning of subsection (ii)(I) of § 406(c)(1)(B); and

Appointment of Receiver

RESOLVED FURTHER, That the Bank Board, pursuant to § 406(c)(1)(B), hereby appoints the FSLIC as sole receiver for the Association ("Receiver") for the purpose of liquidation, provided that the exercise of this appointment shall not be effective, and this appointment shall not be exercised, unless and until an attorney of the OGC, the Seattle Bank Counsel, or fee counsel designated by the General Counsel or his designee to represent the Receiver, or any person named as a Special Representative of the Receiver, or an Assistant Secretary to the Bank Board, shall have received the written approval of the Supervisor that the ground specified in § 5(d)(6)(A)(i) of the HOLA, 12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to the Association, and provided further, that the form of any such approval is satisfactory to the OGC; and

Worthlessness of Subordinated Debt
and Stock Interests

RESOLVED FURTHER, That the Bank Board finds that the Association is not a going concern and could continue as a going concern only with financial assistance from the FSLIC; and

RESOLVED FURTHER, That the Bank Board finds that the Association's financial condition is such that the Association cannot be sold to an independent third party without financial assistance from the FSLIC; and

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88-249P



RESOLVED FURTHER, That the Bank Board finds that, if the Association were liquidated, the proceeds that would be realized upon liquidation of the Association's assets would be insufficient to satisfy the Association's liabilities and obligations to its creditors and others, including its withdrawable accountholders, such that no amount would remain for distribution to the Association's stockholders and holders of subordinated debt, and therefore, the Association's stock (including common stock, preferred stock, permanent stock, guarantee stock, stock, nonwithdrawable accounts, as defined by § 561.42 of the Rules and Regulations for the FSLIC, 12 C.F.R. § 561.42 (1987), and subordinated debt issued by the Association) is worthless; and

Powers and Duties of Receiver

RESOLVED FURTHER, That, pursuant to § 406(c)(1)(B), (c)(3), and (d) of the NHA, 12 U.S.C. § 1729(c)(1)(B), (c)(3), and (d) (1982), the FSLIC as Receiver shall have and exercise all powers, rights and privileges, and shall assume, perform, and discharge all duties, responsibilities, and obligations of a receiver for a Federal savings and loan association accorded or imposed by, and subject to, applicable provisions of law and regulations and orders of the Bank Board, as now or hereafter in effect, including, but not limited to, § 5(d) of the HOLA, 12 U.S.C. § 1464(d) (1982), § 406 of the NHA, 12 U.S.C. § 1729 (1982), and the provisions of Parts 547 and 549 of the Rules and Regulations for the Federal Savings and Loan System ("Federal Regulations"), 12 C.F.R. Parts 547 and 549 (1987); and

RESOLVED FURTHER, That, in addition to all powers and authority of a receiver provided for by law, regulation and order, the Receiver is hereby authorized and empowered, and need not seek further approval from the Bank Board, to borrow money in such amounts from any source and in any manner as the Receiver requires to fulfill its duties as receiver, to execute, acknowledge, and deliver evidence of indebtedness for such borrowings, and to secure repayment of such borrowings by mortgages, pledges, and assignments in trust, or by hypothecation of any property of the Association, provided that the form of any contract or security agreement for such borrowing shall be approved by the OGC; and

A

**FEDERAL HOME LOAN BANK BOARD**

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88-249 P



RESOLVED FURTHER, That the Receiver need not furnish any bond; and

RESOLVED FURTHER, That, notwithstanding the provisions of § 548.1, as made applicable by § 549.2, of the Federal Regulations, 12 C.F.R. §§ 548.1 and 549.2 (1987), the Receiver may elect to notify by certified mail all persons and entities that the Receiver knows to be holding or to be in possession of assets of the Association; and

RESOLVED FURTHER, That, if the Association has issued subordinated debt that is outstanding as of the effective date of the appointment of the Receiver, the Receiver is hereby directed to publish notice to subordinated debt holders with respect to their subordinated debt holdings, and the Receiver is in any case hereby directed to publish notice to shareholders with respect to their shareholdings; and

Implementing Authority

RESOLVED FURTHER, That the Executive Director, or a Deputy Executive Director, of the FSLIC, or a designee of any of them ("Director"), is hereby authorized to take such action as may be necessary or appropriate to exercise the rights or to carry out the obligations of the FSLIC as Receiver, pursuant to its appointment; and

RESOLVED FURTHER, That the FSLIC, in its corporate capacity and not in its capacity as Receiver, is hereby authorized to make advances to the Receiver for the purpose of enabling the Receiver to perform its functions and duties, and to pay costs and expenses of the receivership, on such terms and conditions as the Director shall deem appropriate, and the Director may execute such documents as may be necessary to make such advances or enter into related collateral agreements, provided that the final form of any such document has been approved by the OGC; and

Special Representatives

RESOLVED FURTHER, That one or more persons shall be designated as a Special Representative of the Receiver ("SR"); that such designated person or persons shall have the power and authority to act

A

**FEDERAL HOME LOAN BANK BOARD**

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88- 249 P



in the name and on the behalf of the Receiver, including the authority, subject to the direction of the Director, to take prompt possession of the books, records, property, and assets, of every kind and description, of the Association, and to exercise all powers of the Receiver; that, initially, Edward F. Gerber, John W. Sears, Ann M. Barnes, John P. Marchant, Peggy H. Battle, and Douglas A. Warnecke shall each serve as an SR; and that the Director may replace or remove any SR and may designate such additional SR(s) as the Director deems appropriate, prescribing the functions and responsibilities of such SR(s) as the Director deems appropriate; provided, however, that any SR designated under this resolving paragraph shall not act for or on behalf of the FSLIC in its corporate capacity with regard to the Association in receivership; and

Termination of Employment Contracts

RESOLVED FURTHER, That the Bank Board determines that, upon the appointment of the FSLIC as receiver for the Association for the purpose of liquidation, the Association shall be in "default", as such term is defined in § 401(d) of the NHA, 12 U.S.C. § 1724(d) (1982); and

RESOLVED FURTHER, That every employment contract between the Association and its officers, employees, or agents is hereby terminated by the Bank Board, effective upon the date of default of the Association; and

Disclosure of Authority

RESOLVED FURTHER, That the Receiver shall require that any independent contractor, consultant, or counsel employed by the Receiver in connection with the liquidation of the Association shall fully disclose to all parties with which such contractor, consultant or counsel is negotiating, any limitation on the authority of such contractor, consultant or counsel to make legally binding representations on behalf of the Receiver; and

A

FEDERAL HOME LOAN BANK BOARD

Appointment of Receiver for
Tri-Cities Savings and Loan Association,
Kennewick, Washington
Under § 406(c)(1)(B)

No. 88- 249 P



Records and Reports

RESOLVED FURTHER, That each SR shall keep a record of his or her actions as SR of the Receiver, and shall report on such actions from time to time as directed by the Director; and

RESOLVED FURTHER, That the Director shall from time to time report to the Bank Board with respect to actions taken pursuant to this Resolution.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.
Secretary

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250P

Date: April 7, 1988

Recitals

WHEREAS, Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), is a state-chartered stock savings and loan association, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"); and

WHEREAS, The FSLIC has been appointed by the Federal Home Loan Bank Board ("Bank Board") as sole receiver ("Receiver") for the Association, effective as described in Resolution No. 88-249 P, dated April 7, 1988; and

WHEREAS, Upon the appointment of the Receiver, the Association is in "default", as such term is defined in § 401(d) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1724(d) (1982); and

WHEREAS, The FSLIC as Receiver is authorized by §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982), upon its appointment taking effect, to liquidate the Association in an orderly manner or to make such other disposition of the matter as it deems to be in the best interests of the Association, its savers and the FSLIC; and

WHEREAS, Sterling Savings Association, Spokane, Washington ("Acquiring Association"), is a state-chartered stock savings association, the accounts of which are insured by the FSLIC; and

WHEREAS, The Acquiring Association has applied to the FSLIC, pursuant to § 563.22 of the Rules and Regulations for the FSLIC ("Insurance Regulations"), 12 C.F.R. § 563.22 (1987), for approval of an increase in its accounts of an insurable type by reason of its acquisition of substantially all of the assets and assumption of substantially all of the liabilities of the Association; and

WHEREAS, The FSLIC has proposed that the Receiver transfer substantially all of the assets and liabilities of the Association to the Acquiring Association, pursuant to §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982); and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P

Page 2

WHEREAS, The Bank Board has considered a proposed acquisition agreement between the Receiver and the Acquiring Association ("Acquisition Agreement"), pursuant to which agreement the Acquiring Association would purchase substantially all of the assets of the Association, or the rents, issues, profits, and proceeds therefrom, and assume substantially all of the liabilities of the Association from the Receiver, but would not assume any obligations to stockholders or holders of subordinated debt of the Association ("Acquisition") (a copy of which agreement is in the Minute Exhibit File); and

WHEREAS, The Bank Board has considered a proposed receiver's agreement ("Receiver's Agreement") between the Receiver and the FSLIC in its corporate capacity ("Corporation"), pursuant to which agreement the Corporation would purchase from the Receiver certain assets of the Association not purchased by the Acquiring Association, or the rents, issues, profits and proceeds therefrom, and assume certain liabilities and expenses of the Receiver (a copy of which agreement is in the Minute Exhibit File); and

WHEREAS, The Acquisition will be conditioned upon the execution of, and the Bank Board has considered, a proposed assistance agreement ("Assistance Agreement"), (a copy of which agreement is in the Minute Exhibit File), between the Acquiring Association and the Corporation, pursuant to which the Corporation will provide certain financial assistance and indemnifications to the Acquiring Association to facilitate the Acquisition; and

WHEREAS, the Supervisor, Division of Savings and Loans, State of Washington, has indicated orally her intent to grant at the time of closing the approvals necessary under state law to implement the Acquisition; and

WHEREAS, The Bank Board has considered a memorandum and accompanying exhibits from the General Counsel - Regulatory Affairs of the Federal Home Loan Bank of Seattle, Seattle, Washington, dated April 6, 1988, with which memorandum the General Counsel of the Bank Board has concurred, and memoranda and accompanying exhibits from the Principal Supervisory Agent at the Federal Home Loan Bank of Seattle, Seattle, Washington, dated March 31, 1988, the

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250P

Page 3

S Memorandum having been concurred in by the Executive Director, Office of Regulatory Policy, Oversight and Supervision ("ORPOS"), and the Issues Memorandum having been concurred in by the Executive Director of the FSLIC (copies of which memoranda are in the Minute Exhibit File), and the balance of the administrative record submitted to it:

General Findings Concerning the Acquisition of Substantially All of the Assets and Liabilities of the Association by the Acquiring Association

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby finds and determines that:

(1) The transfer of assets and liabilities of the Association provided for in the Acquisition Agreement and the Receiver's Agreement is the most desirable alternative, consistent with Bank Board and FSLIC policy, to the liquidation of the Association and the payment of insurance on its accounts, which would result in the loss of the savings and loan services provided by the Association to the communities it serves and the recovery by creditors and accountholders having uninsured funds of only ratable distributions from the liquidation of the assets of the Association;

(2) The execution and implementation of the Acquisition Agreement and the Receiver's Agreement are in the public interest and in the best interests of the Association, its savers and creditors, and the Corporation; and

(3) Delay in the execution and implementation of the Acquisition Agreement and the Receiver's Agreement following the Receiver's taking possession of the Association would prevent the sale of assets and assumption of liabilities contemplated thereby from taking place and result in the liquidation of the Association and the payment of insurance on its accounts; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P

Page 4

RESOLVED FURTHER, That the Bank Board hereby finds and determines that the transfer of substantially all of the Association's assets and liabilities to the Acquiring Association in accordance with §§ 406(b)(1)(A)(vi) and 406(c)(3)(B) of the NHA, 12 U.S.C. §§ 1729(b)(1)(A)(vi) and (c)(3)(B) (1982), and pursuant to the Acquisition Agreement should be effected without delay, is in the public interest and is in the best interests of the Association, its savers and creditors, and the Corporation; and

Approval of Purchase and Assumption Transaction
and Increase of Insurable Accounts

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby approves the transfer of substantially all of the Association's assets and the assumption of substantially all of the Association's liabilities to and by the Acquiring Association pursuant to the Acquisition Agreement, and further approves the resulting increase in the Acquiring Association's accounts of an insurable type, pursuant to § 563.22 of the Insurance Regulations, 12 C.F.R. § 563.22 (1987), provided that:

(1) The board of directors of the Acquiring Association shall authorize the execution of, and the Acquiring Association shall enter into, an agreement to purchase substantially all of the assets and assume substantially all of the liabilities of the Association, in the form, or substantially in the form, of the proposed Acquisition Agreement, provided that the final form of such Acquisition Agreement has been approved by the Office of the General Counsel ("OGC"), and the Acquiring Association shall execute such other documents as may be necessary to effect such transfer of assets and liabilities of the Association to the Acquiring Association promptly upon the Receiver taking possession of the Association;

(2) The Acquiring Association shall take such other actions as may be necessary to consummate the Acquisition, and the Acquisition shall be effected in accordance with applicable state law promptly upon the Receiver taking possession of the Association; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250p



(3) Within five (5) days after the date and time at which the Acquisition becomes effective pursuant to the Acquisition Agreement ("Effective Date"), the Acquiring Association shall submit to the Principal or other Supervisory Agent at the Federal Home Loan Bank of Seattle, Seattle, Washington ("Supervisory Agent"), an opinion of counsel stating the effective date of the Acquisition and that the Acquisition has been consummated in accordance with the Acquisition Agreement, the Charter and bylaws of the Acquiring Association, this Resolution, and applicable law;

(4) Not later than sixty (60) days following the Effective Date, unless such date is extended in writing by the Supervisory Agent, the Acquiring Association shall submit evidence to the FSLIC, or to an agent thereof, that it has given notice in writing, in a form approved by the OGC, to each accountholder who had an account in the Association or the Acquiring Association prior to the Effective Date, the total of whose withdrawable accounts in the Acquiring Association will exceed the sum of $100,000 after the Acquisition, (a) of the effect of the Acquisition on the extent of the accountholder's insurance coverage, and (b) that accounts assumed by the Acquiring Association from the Association shall have separate insurance which shall terminate at the end of six months from the Effective Date, or, in the case of any certificate accounts, at the earliest maturity date of such accounts after such six-month period;

(5) All forms of accounts transferred to the Acquiring Association from the Association are hereby approved pursuant to § 563.1 of the Insurance Regulations, 12 C.F.R. § 563.1 (1987), provided that the Acquiring Association obtains new approvals for any such forms when and as such accounts mature; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250P

Page 6

Authority for the Receiver to Transfer the Assets and Liabilities of the Association

RESOLVED FURTHER, That the proposed Acquisition Agreement and the proposed Receiver's Agreement are hereby approved, and the Receiver is hereby authorized to sell and transfer to the Acquiring Association substantially all of the assets and liabilities of the Association, and to enter into an Acquisition Agreement and a Receiver's Agreement with respect to the Association in the form or substantially in the form of each such proposed agreement, provided that the final form of each such agreement has been approved by the OGC; and

RESOLVED FURTHER, That the Special Representative(s) of the Receiver ("SR"), designated in or pursuant to Bank Board Resolution No. 88-249P, dated April 7, 1988, is hereby authorized to execute, on behalf of the Receiver, an Acquisition Agreement and a Receiver's Agreement with respect to the Association in the form, or substantially in the form, of each such proposed agreement, to execute all other documents necessary or desirable to implement the provisions of any such Acquisition Agreement and Receiver's Agreement or to complete the acquisition of substantially all of the assets and liabilities of the Association by the Acquiring Association, and otherwise to implement the intent and purposes of said agreements and this Resolution, provided that the final form of each such agreement and document has been approved by the OGC; and

Authorization of the Corporation to Execute Agreements and Make Payments

RESOLVED FURTHER, That the Executive Director or a Deputy Executive Director of the FSLIC, or a designee of any of them ("Director"), is hereby authorized to execute, on behalf of the Corporation, a Receiver's Agreement in the form, or substantially in the form, of such proposed agreement, and to execute all other documents and perform all provisions of the Receiver's Agreement and otherwise to implement the intent and purpose of said agreement, provided that the final forms of such agreement and documents have been approved by the OGC; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P



RESOLVED FURTHER, That the Corporation is authorized to make advances and pay expenses to, or on behalf of, the Receiver in accordance with the Receiver's Agreement; and

RESOLVED FURTHER, That the Corporation is authorized to pay all necessary or appropriate expenses incurred by, or on behalf of, the Operations and Liquidations Division, Office of the FSLIC, in preparation for the appointment of the FSLIC as receiver for the Association, provided that no such expenditures to be made by the Corporation shall extend to services rendered or goods received after the date and time the Receiver takes possession of the Association; and

Grounds for Financial Assistance

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby determines, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), that (1) financial assistance and indemnifications by the FSLIC are necessary to facilitate the Acquisition, and (2) the amount of such assistance and indemnifications, to be provided in accordance with the terms and conditions of the proposed Assistance Agreement, would not exceed that amount reasonably necessary to save the cost of liquidating the Association, including the payment of its insured accounts; and

RESOLVED FURTHER, That the proposed Assistance Agreement is hereby approved, and the Director, or the Director, Financial Assistance Division, Office of the FSLIC, or his designee ("FAD Director"), is hereby authorized to execute, on behalf of the Corporation, an agreement in the form, or substantially in the form, of the proposed Assistance Agreement, provided that the final form of such Assistance Agreement has been approved by the OGC; and

RESOLVED FURTHER, That the Director or the FAD Director is authorized to take such further actions as may be necessary or appropriate to exercise the rights and fulfill the obligations of the FSLIC contained in the Assistance Agreement; and

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P

Page 8

Prevention of Probable Failure

RESOLVED FURTHER, That the Bank Board hereby finds that approval of the Acquisition pursuant to this Resolution is necessary to prevent the probable failure of the Association; and

Supervisory Acquisition

RESOLVED FURTHER, That the Bank Board hereby finds and determines that the Acquisition is instituted for supervisory reasons; and

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, finds that the acquisition of the Association by the Acquiring Association is an acquisition under § 406(f) of the NHA, 12 U.S.C. 1729(f) (1982), as amended, and is deemed a supervisory case; and

Forbearances

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is authorized and directed to send to the Acquiring Association a letter concerning supervisory forbearances by the Bank Board and the FSLIC with respect to certain regulatory requirements in the form, or substantially in the form, of the letter in the Minute Exhibit File ("Forbearance Letter"), provided that the final form of such letter shall be approved by the OGC; and

Accounting

RESOLVED FURTHER, That the Acquisition shall be accounted for, and the Acquiring Association shall report to the Bank Board and the FSLIC, in accordance with generally accepted accounting principles prevailing in the savings and loan industry, as accepted, modified, clarified, or interpreted by applicable regulations of the Bank Board and the FSLIC, except to the extent authorized in the Forbearance Letter; and

RESOLVED FURTHER, That, no later than ninety (90) days following the Effective Date, the Acquiring Association shall furnish an

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington



analysis, accompanied by a concurring opinion from its independent certified public accountants (which will indicate that the Acquisition was accounted for in accordance with generally accepted accounting principles except as otherwise authorized by the Bank Board), satisfactory to the Supervisory Agent and the ORPOS, which shall (a) specifically describe, as of the Effective Date, any intangible assets, including goodwill and the discount and premiums arising from the Acquisition, to be recorded on the Acquiring Association's books, and (b) substantiate the reasonableness and conformity with regulatory requirements, including the Forbearance Letter, of the amounts attributed to intangible assets, including goodwill and the discount and premiums, and the related amortization periods and methods; and

Secondary Reserve

RESOLVED FURTHER, That the FSLIC hereby provides that the pro rata share, if any, of the Association in the statutorily prescribed amount defined by § 404(e)(2)(D) of the NHA, 12 U.S.C. § 1727(e)(2)(D) (1982), as amended, shall be transferred to the Acquiring Association, effective as of the Effective Date; and

Federal Home Loan Bank Stock and Membership

RESOLVED FURTHER, That the transfer to the Acquiring Association of the Association's stock in the Federal Home Loan Bank of Seattle ("Bank") is approved, effective as of the Effective Date, and that, upon such transfer, the membership of the Association in the Bank shall cease; and

Cancellation of Certificate of Insurance

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is hereby directed to cancel the Association's certificate of insurance upon its surrender to the FSLIC; and

Tax Certification

RESOLVED FURTHER, That the Bank Board finds and hereby certifies that the ground set forth in § 5(d)(6)(A)(i) of the HOLA,

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P



12 U.S.C. § 1464(d)(6)(A)(i) (1982), exists with respect to the Association, in that the Association is insolvent in that its assets are less than its obligations to its creditors and others, including its withdrawable accountholders; and

RESOLVED FURTHER, That the Bank Board finds that the record before the Bank Board contains nothing to show or from which it could be inferred that the Association had intentionally placed itself in the position of being insolvent for the purpose of obtaining any tax advantages pursuant to 26 U.S.C. § 368(a)(3)(D) (1982) as amended; and

RESOLVED FURTHER, That the Secretary or an Assistant Secretary to the Bank Board is hereby authorized and directed to issue and send to the Acquiring Association a letter with respect to the Association certifying on behalf of the Bank Board the matters set forth in the immediately preceding resolving paragraphs, and the Secretary or an Assistant Secretary is hereby authorized to provide copies of such letter to any agency of the United States upon request; and

Marketing and Acquisition Findings

RESOLVED FURTHER, That the Bank Board, as operating head of the FSLIC, hereby finds and determines that:

(1) FSLIC and its agents offered the Association for bid on an intra-state, unassisted basis in January 1987 to FSLIC-insured institutions that might be qualified and capable of acquiring the Association;

(2) Although indications of preliminary interest were received from four institutions, all four bidders eventually determined not to submit offers on an unassisted basis;

(3) The Association was again marketed, on an inter-industry, interstate assisted basis, together with two other FSLIC-insured institutions located in the State of Washington, at a bid conference held on October 15, 1987;

FEDERAL HOME LOAN BANK BOARD

B

Approval of
Acquisition of Assets and Liabilities of
Tri-Cities Savings and Loan Association,
Kennewick, Washington

No. 88-250 P

Page 11

(4) Bids were received from three institutions, but one of the institutions subsequently withdrew its bid;

(5) Of the two remaining bids, that of the Acquiring Association was both the lower cost bid and less than the cost of liquidation; and

(6) The Acquiring Association is an in-state insured institution; and

Effective Date

RESOLVED FURTHER, That the Acquisition shall be effective in accordance with applicable state law unless such law leaves that determination to the Bank Board in which case the Acquisition shall be effective upon the execution by the appropriate parties of the Acquisition Agreement and the Assistance Agreement.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.
Secretary

C

FEDERAL HOME LOAN BANK BOARD

Contingent Payment of Insurance of Accounts in Tri-Cities Savings and Loan Association, Kennewick, Washington

No. 88-251 P

Date: April 7, 1988

## Recitals

WHEREAS, The Federal Savings and Loan Insurance Corporation ("FSLIC") has been appointed as sole receiver for Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), as described in Federal Home Loan Bank Board ("Bank Board") Resolution No. 88-249P, dated April 7, 1988; and

WHEREAS, Such appointment constitutes a default of the Association within the meaning of § 401(d) of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1724(d) (1982), and may necessitate the payment of insured accounts by the FSLIC, in its corporate capacity and not as receiver for the Association, within the meaning of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982):

## Payment of Insurance of Accounts

NOW, THEREFORE, IT IS RESOLVED, That the Executive Director or a Deputy Executive Director of the FSLIC, or a designee of any of them ("Director"), is hereby authorized and directed to take all necessary or appropriate steps and to incur all necessary or appropriate expenses in preparation for and to implement the payment of all insured accounts of the Association pursuant to § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982); and

RESOLVED FURTHER, That, upon being advised by the General Counsel, or a Deputy General Counsel, that the Association is in default and that the account liabilities of the Association have not been assumed by another insured institution, the Director is hereby authorized and directed (1) to cause each insured account in the Association that is surrendered and transferred to the FSLIC to be paid in cash or by making available a transferred account in another insured institution, (2) to take or cause to be taken such action(s) as may be necessary or appropriate to carry out this and any future directives of the Bank Board, and (3) to do all things necessary or appropriate to carry out expeditiously the objectives of § 405(b) of the NHA, 12 U.S.C. § 1728(b) (1982), and Part 564 of the Rules and Regulations for the FSLIC, 12 C.F.R. Part 564 (1987), and for the protection of the FSLIC; and

C

FEDERAL HOME LOAN BANK BOARD

Contingent Payment of Insurance of Accounts in Tri-Cities Savings and Loan Association, Kennewick, Washington

No. 88-251 P

Page 2

RESOLVED FURTHER, That each Office and Division of the Bank Board is hereby requested to furnish such assistance to the Director in fulfillment of the intent of this Resolution as the Director may request.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.
Secretary

D

# FEDERAL HOME LOAN BANK BOARD

## Pursuit of Claims of Tri-Cities Savings and Loan Association, Kennewick, Washington

No. 88-252p

Date: April 7, 1988

### Recitals

WHEREAS, The Federal Home Loan Bank Board ("Bank Board") has appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as sole receiver for Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), pursuant to Resolution No. 88-249p, dated April 7, 1988; and

WHEREAS, Pursuant to Resolution No. 88-250p, dated April 8, 1988, the Bank Board has approved the acquisition of substantially all of the assets and liabilities of the Association by Sterling Savings Association, Spokane, Washington ("Acquiring Association"); and

WHEREAS, Pursuant to a proposed Receiver's Agreement (a copy of which is in the Minute Exhibit File), potential claims of the Association against certain parties will be transferred to the FSLIC in its corporate capacity; and

WHEREAS, Pursuant to a proposed Assistance Agreement (a copy of which is in the Minute Exhibit File), the FSLIC in its corporate capacity has a right to take an assignment of potential claims of the Acquiring Association, as successor to the Association, against certain other parties:

### Pursuit of Claims

NOW, THEREFORE, IT IS RESOLVED, That the Executive Director or a Deputy Executive Director of the FSLIC, or a designee of any of them, is hereby authorized to take whatever actions are deemed appropriate, including litigation, to recover on such claims of the Association and the Acquiring Association, as successor to the Association, from any such parties, provided that the Office of the General Counsel shall concur in any such action.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.
Secretary

E

FEDERAL HOME LOAN BANK BOARD

Implementation Resolution

Acquisition of Assets and Liabilities
of Tri-Cities Saving and Loan Association
Kennewick, Washington

No. 88-253 P

Date: April 7, 1988

Recitals

WHEREAS, The Executive Director or a Deputy Executive Director of the Federal Savings and Loan Insurance Corporation ("FSLIC"), or the Director, Financial Assistance Division, Office of the FSLIC, or a designee of any of them ("Director"), has been authorized by Federal Home Loan Bank Board ("Bank Board") Resolution Nos. 88-250 P and 88-250 P, each dated April 7, 1988, to execute, on behalf of the FSLIC in its corporate capacity, a Receiver's Agreement with the FSLIC as receiver for Tri-Cities Savings and Loan Association, Kennewick, Washington, an Assistance Agreement with Sterling Savings Association, Spokane, Washington ("Acquiring Association"), and other documents ("Agreements"), and to pursue certain claims; and

WHEREAS, The Agreements impose certain rights, duties, and obligations upon the FSLIC in its corporate capacity, and permit the pursuit of certain claims, that do not require basic determinations of policy; and

WHEREAS, In the administration of the Agreements, and of any rights or obligations of the FSLIC under them, it may be necessary or desirable that the FSLIC, in its corporate capacity, contract for legal, auditing, or other services, or authorize the settlement of certain claims:

Implementing Authority

NOW, THEREFORE, IT IS RESOLVED, That the Bank Board, as operating head of the FSLIC, finds that expenditures of the FSLIC, in its corporate capacity, pursuant to and in the administration of the Agreements and in the pursuit of such claims, are necessary,

E

FEDERAL HOME LOAN BANK BOARD

Implementation Resolution

Acquisition of Assets and Liabilities
of Tri-Cities Savings and Loan Association
Kennewick, Washington

No. 88-253P

Page 2

nonadministrative, and made under the National Housing Act, as amended, 12 U.S.C. §§ 1724, et seq. (1982), and shall be incurred, allowed, and paid under the provisions of the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), without regard to the provisions of any other law governing the expenditure of public funds; and

RESOLVED FURTHER, That, effective upon the execution of the Agreements, the Director is hereby authorized and directed to take such actions as may be necessary or desirable to fulfill the rights, duties, and obligations of the FSLIC, in its corporate capacity, under the Agreements and in the pursuit of claims, and to incur, allow, and pay all expenditures in fulfillment of such rights, duties, and obligations, pursuant to the fourth sentence of § 402(c)(5) of the NHA, 12 U.S.C. § 1725(c)(5) (1982), including, but not limited to:

(1) The payment of any and all amounts required by the Agreements;

(2) The making of advances to the FSLIC as receiver for Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association");

(3) Contracting for legal, accounting, management, or other services relating to the implementation of the Agreements or the pursuit of claims, provided that the final form of any such contract shall be approved by the Office of the General Counsel ("OGC");

(4) The administration of any asset or claim acquired from the Receiver or Acquiring Association, provided that any contract pertaining to such asset or claim, and the satisfaction, settlement or termination of any claim, shall be approved by the OGC;

(5) The assignment, pursuit, and settlement of claims, provided, that the form of any assignment or settlement agreement entered into by the FSLIC shall be approved by the OGC; and

E

FEDERAL HOME LOAN BANK BOARD

Implementation Resolution

Acquisition of Assets and Liabilities
of Tri-Cities Savings and Loan Association
Kennewick, Washington

No. 88-253P

Page 3

(6) The waiver, if deemed necessary or desirable by the Director, of provisions of the Assistance Agreement concerning filings, representations, warranties, or certifications by the Acquiring Association, provided that the form of any waiver by the FSLIC shall be approved by the OGC; and

RESOLVED FURTHER, That the General Counsel may also exercise the authority conferred by the preceding resolving paragraphs with respect to contracting on behalf of the FSLIC for legal or other related services needed to implement the Agreements and pursue claims; and

RESOLVED FURTHER, That the Director is authorized and directed to take all other actions necessary and appropriate to exercise the rights and fulfill the duties and obligations of the FSLIC in the administration of the Agreements and the pursuit of claims.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.
Secretary

F

# FEDERAL HOME LOAN BANK BOARD

Acquisition of Assets and Liabilities of Tri-Cities Savings and Loan Association, Kennewick, Washington

No. 88-254 P

Date: April 7, 1988

RESOLVED, That the acquisition of substantially all of the assets and liabilities of Tri-Cities Savings and Loan Association, Kennewick, Washington ("Association"), by Sterling Savings Association, Spokane, Washington ("Acquiring Association"), pursuant to an Acquisition Agreement between the Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver for the Association, and the Acquiring Association, is hereby approved, effective in accordance with applicable state law unless such law leaves that determination to the Bank Board in which case the Acquisition shall be effective as of the execution of the Acquisition Agreement and the Assistance Agreement between the FSLIC, in its corporate capacity, and the Acquiring Association, and pursuant to approval by the Bank Board in a concurrent Resolution or action issued as of the date of this Resolution and subject to any conditions that may be imposed in such Resolution or action.

By the Federal Home Loan Bank Board

John M. Buckley, Jr.

John M. Buckley, Jr.
Secretary

# TABLE OF CONTENTS

ACQUISITION AGREEMENT BETWEEN
THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION
AS RECEIVER FOR
TRI-CITIES SAVINGS AND LOAN ASSOCIATION
KENNEWICK, WASHINGTON

AND

STERLING SAVINGS ASSOCIATION
SPOKANE, WASHINGTON


| | | Page |
|---|---|---|
| Recitals | | 1 |
| § 1 | Purchase of Assets | 2 |
| § 2 | Assumption of Liabilities | 4 |
| § 3 | Records | 5 |
| § 4 | Inventory | 6 |
| § 5 | Purchase Price | 6 |
| § 6 | Duties with Respect to Savers | 6 |
| § 7 | Office Space for the RECEIVER | 8 |
| § 8 | Litigation; Power of Attorney | 8 |
| § 9 | Rights and Forbearance | 8 |
| § 10 | Sole Benefit | 9 |
| § 11 | Successors and Assigns | 9 |
| § 12 | Notices | 9 |
| § 13 | Accounting Principles | 10 |
| § 14 | Governing Law | 11 |
| § 15 | Effective Date | 11 |
| § 16 | Entire Agreement; Severability | 11 |
| § 17 | Counterparts; Modification; Headings | 12 |
| § 18 | Warranties | 12 |
| § 19 | Continuing Cooperation | 13 |
| § 20 | Condition | 13 |
| Signature Page | | 13 |

ACQUISITION AGREEMENT

THIS AGREEMENT is made and entered into this 8th day of April, 1988, by and between the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, in its capacity as Receiver for TRI-CITIES SAVINGS AND LOAN ASSOCIATION, Kennewick, Washington (respectively, "RECEIVER" and "CLOSED ASSOCIATION"), and STERLING SAVINGS ASSOCIATION, Spokane, Washington ("ACQUIRING ASSOCIATION").

RECITALS

A. The CLOSED ASSOCIATION is a stock savings and loan association organized under the laws of the State of Washington, the accounts of which are insured by the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION in its capacity as a corporate instrumentality of the United States ("CORPORATION").

B. The FEDERAL HOME LOAN BANK BOARD ("BANK BOARD"), by its Resolution No. 88-249, dated April 7, 1988, duly appointed the CORPORATION as RECEIVER for the CLOSED ASSOCIATION, and the RECEIVER's appointment has become effective.

C. The RECEIVER has taken possession of the CLOSED ASSOCIATION and by operation of law has succeeded to all the rights, titles, powers, and privileges of the CLOSED ASSOCIATION.

D. The ACQUIRING ASSOCIATION is a stock savings association organized under the laws of the State of Washington, the accounts of which are insured by the CORPORATION.

E. It has been mutually agreed between the ACQUIRING ASSOCIATION and the RECEIVER, and the BANK BOARD has determined

that it is in the best interests of the CLOSED ASSOCIATION, its savers, and the CORPORATION, that substantially all of the CLOSED ASSOCIATION's assets, all of its deposits or withdrawable accounts, and substantially all of its other liabilities be immediately transferred to and assumed by the ACQUIRING ASSOCIATION, as provided in this Agreement.

F. In consideration of the foregoing and of the mutual covenants and agreements contained herein, the RECEIVER and the ACQUIRING ASSOCIATION enter into the following agreement.

AGREEMENT

§ 1 Purchase of Assets. The RECEIVER hereby sells to the ACQUIRING ASSOCIATION, and the ACQUIRING ASSOCIATION hereby purchases from the RECEIVER, all of the RECEIVER's right, title, and interest in and to all of the CLOSED ASSOCIATION's assets that the RECEIVER owns or holds and any of the CLOSED ASSOCIATION's assets hereafter acquired by the RECEIVER, excluding, however: (a) any known or unknown claim, demand, cause of action, or judgment (i) against the CLOSED ASSOCIATION's or any of its subsidiaries' present or former employees, agents, or controlling persons, directors, officers, or other persons, directly or indirectly exercising a controlling influence over the management or policies of the CLOSED ASSOCIATION or any of its subsidiaries, (ii) against any stockholder of the CLOSED ASSOCIATION, (iii) against any appraiser, accountant, auditor, attorney, investment banker or broker, loan broker, deposit

broker, securities dealer, or other professional individual or entity performing services for the CLOSED ASSOCIATION, and (iv) against any administrator, executor, personal representative, heir, assign, director or officer of any person or entity identified in § 1(a)(i), (ii) or (iii), arising out of any act(s) or omission(s) of such person or entity prior to the effective date with respect to the CLOSED ASSOCIATION or its property, or any of its subsidiaries or the subsidiaries' property; (b) any known or unknown claim, demand, cause of action or judgment against a surety for any person or entity identified in § 1(a)(i), (ii), (iii) or (iv), including any insurer who may be liable for indemnification for the loss caused by the action or inaction of any such person or entity; (c) any claim against counsel for the CLOSED ASSOCIATION for recovery of sums paid by the CLOSED ASSOCIATION to challenge the receivership or contemporary or subsequent actions of the BANK BOARD or the CORPORATION; (d) such limited items, parts, or portions of the CLOSED ASSOCIATION's books and records as are specifically identified by the RECEIVER, <u>provided</u> that the ACQUIRING ASSOCIATION consents to the RECEIVER's retention of such records (the "excluded papers"); and (e) those assets itemized on Exhibit A attached hereto, consisting of one participation interest in a loan known as Tech Center North, one participation interest in real estate owned ("REO") known as Morningstar Hill, and one subsidiary known as Tri-West Construction (and the subsidiaries of such subsidiary), and all books and records pertaining to said assets.

§ 2 Assumption of Liabilities. The ACQUIRING ASSOCIATION hereby expressly assumes and agrees to pay, perform, and discharge all of the CLOSED ASSOCIATION's liabilities, including, but not limited to, those shown on the CLOSED ASSOCIATION's books and records at such time as the RECEIVER takes possession of the CLOSED ASSOCIATION, but excluding, however, (a) obligations under any compensation or employment contract between the CLOSED ASSOCIATION and any of its employees, officers, or directors, other than obligations to honor or satisfy any right already vested under such contracts, and (b) any obligation of the CLOSED ASSOCIATION arising out of or related in any way to the assets itemized on Exhibit A attached hereto. The term "liability" as used in this section does not refer to any obligation of the CLOSED ASSOCIATION to its stockholders arising out of or related in any way to their stock holdings (including claims for damages or rescission arising from the purchase or sale of such stock holdings) or any obligation to indemnify controlling persons, directors, officers or other persons as a result of suits arising from claims described in § 1, and the ACQUIRING ASSOCIATION specifically does not assume by virtue of this Agreement any such obligations to the stockholders or for indemnification of the controlling persons, directors, officers or other persons. For the purposes of this Agreement, "stockholder" means a holder of stock; and "stock" includes a nonwithdrawable account, as defined by 12 C.F.R. § 561.42 (1987), stock, permanent stock, guarantee stock, common stock, preferred stock, and subordinated debt issued by the CLOSED ASSOCIATION.

§ 3 Records.

(a) The ACQUIRING ASSOCIATION acknowledges that the RECEIVER is delivering to it, among the assets sold and purchased under § 1 of this Agreement, all of the CLOSED ASSOCIATION's books and records, except those books and records pertaining to the assets itemized on Exhibit A hereto and the excluded papers, if any.

(b) The ACQUIRING ASSOCIATION agrees to preserve and keep safe all of the CLOSED ASSOCIATION's books and records that it acquires pursuant to this Agreement, to permit the RECEIVER at any reasonable time to inspect, make extracts from or copies of any of such books and records, and to cooperate fully with the RECEIVER in the preparation of the inventory described below.

(c) As a condition of this Agreement, the ACQUIRING ASSOCIATION agrees, at its own expense, either to segregate and keep separate or, in the alternative and at the option of the ACQUIRING ASSOCIATION, to reconstruct, as of the date of this Agreement, the CLOSED ASSOCIATION's books and records transferred to it until the period in which the CLOSED ASSOCIATION may file an action for removal of the RECEIVER pursuant to law has expired, or, if such action is filed, until the dismissal of such action or the issuance of an order determining an appeal from any order of a court directing the removal of the RECEIVER.

§ 4 Inventory. As soon as is practicable after the effective date of this Agreement, the RECEIVER shall make, or cause to be made, an inventory of the CLOSED ASSOCIATION's assets and a record of its liabilities, as directed by the BANK BOARD. The RECEIVER shall furnish a copy of the inventory of the CLOSED ASSOCIATION's assets and record of its liabilities to the ACQUIRING ASSOCIATION upon their completion.

§ 5 Purchase Price. The purchase price of all assets sold to the ACQUIRING ASSOCIATION pursuant to § 1 shall be the assumption of liabilities provided for in § 2.

§ 6 Duties With Respect to Savers.

(a) The ACQUIRING ASSOCIATION agrees to pay, in accordance with the provisions of applicable law and the individual contracts governing the CLOSED ASSOCIATION's deposits or withdrawable accounts, all properly drawn and presented withdrawal requests by the CLOSED ASSOCIATION's depositors or withdrawable accountholders whose deposits or accounts are assumed by the ACQUIRING ASSOCIATION pursuant to § 2 of this Agreement, to the extent that such deposits or withdrawable account balances are sufficient to permit such payments and in compliance with the contractual terms of such deposits and accounts, and in all other respects to discharge, in the usual course of business, the CLOSED ASSOCIATION's duties and obligations with respect to its depositors or accountholders, provided, however, that the ACQUIRING ASSOCIATION does not assume any special or unusual duties of the CLOSED ASSOCIATION to such depositors or accountholders

unless the terms of such duties are disclosed in the CLOSED ASSOCIATION's records. Further, in accordance with applicable law and the individual contracts governing such deposits or accounts, the ACQUIRING ASSOCIATION agrees to pay interest on all of the CLOSED ASSOCIATION's deposits and withdrawable accounts that are assumed pursuant to § 2 of this Agreement.

(b) If any such depositors or withdrawable accountholders decline to accept the obligation of the ACQUIRING ASSOCIATION to pay the CLOSED ASSOCIATION's deposit or account liabilities assumed pursuant to § 2 of this Agreement and asserts a claim against the RECEIVER for any part of such assumed deposit liabilities, the ACQUIRING ASSOCIATION shall provide the RECEIVER, upon demand, with an amount of money sufficient to enable it to pay the claims of such depositors or accountholders, less any applicable early withdrawal penalties, not exceeding the amount credited to such persons on the ACQUIRING ASSOCIATION's records at the time such demand is made, and, upon paying the RECEIVER as so demanded, the ACQUIRING ASSOCIATION shall be discharged from any further liability for such claim under this Agreement.

(c) The ACQUIRING ASSOCIATION shall give written notice, in a form approved by the RECEIVER or its counsel, to the CLOSED ASSOCIATION's depositors and withdrawable accountholders whose deposits or accounts are assumed by the ACQUIRING ASSOCIATION pursuant to § 2 of this Agreement of its assumption of liability for such deposits or accounts.

§ 7 Office Space for the RECEIVER. The ACQUIRING ASSOCIATION agrees to provide the RECEIVER, without charge and, if its duties so require, for a period of one year from the date of this Agreement, adequate space, including vault space and furnishings, for the RECEIVER's use in connection with the transfers and transactions required by this Agreement and with the exercise and discharge of its powers and duties as receiver of the CLOSED ASSOCIATION. After such period, the ACQUIRING ASSOCIATION shall continue to provide to the RECEIVER, at a reasonable rental to be agreed upon by the parties, such space and furnishings for such period as the RECEIVER may request.

§ 8 Litigation; Power of Attorney. In the event that any action at law or in equity in which the RECEIVER has an interest is instituted by any person against the CLOSED ASSOCIATION, the ACQUIRING ASSOCIATION, or both of them, or against the RECEIVER and either or both of the foregoing as co-defendants, or in which action the RECEIVER joins or is joined as co-defendant, the ACQUIRING ASSOCIATION agrees to file, or to join with the RECEIVER in filing, a petition to remove the action to an appropriate court, and hereby authorizes and appoints, as its attorney for the purpose of effecting such removal, any attorney designated or approved by the RECEIVER to act in that capacity.

§ 9 Rights and Forbearance. The rights, powers, and remedies given to the parties by this Agreement shall be in addition to all rights, powers, and remedies given by any applicable statute or rule of law. Any forbearance, failure, or delay to

either party in exercising or partially exercising any right, power, or remedy shall not preclude the further exercise of such right, power, or remedy.

§ 10 Sole Benefit. It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all conditions and provisions of it, are for the sole benefit of the RECEIVER and the ACQUIRING ASSOCIATION and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended to or shall be construed to give any person other than the RECEIVER or the ACQUIRING ASSOCIATION any legal or equitable right, remedy, or claim under or with respect to this Agreement or any of its provisions.

§ 11 Successors and Assigns. All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties, their respective transferees, successors, and assigns, but this Agreement may not be assigned nor may any rights under it be transferred to or vested in any other party, through merger, consolidation, or otherwise, without the prior written consent of the CORPORATION.

§ 12 Notices. Any notice, request, demand, or other communication to either of the parties shall be deemed given when received and shall be given in writing and delivered in person or sent by first class mail in a prepaid envelope to such party at its address set forth below or at such other address as such party shall hereafter furnish in writing:

STERLINGS SAVINGS ASSOCIATION
North 120 Wall Street
Spokane, Washington 99201-0696
Attn: Senior Vice President - Finance

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION
As Receiver for Tri-Cities Savings and Loan Association
1700 G Street, N.W.
Washington, D.C. 20552
Attn: Special Representative

§ 13 Accounting Principles. Except as otherwise provided in this Agreement, any computations made for the purposes of this Agreement shall be governed by generally accepted accounting principles as applied in the savings and loan industry, except that where such principles conflict with the terms of this Agreement, any assistance agreement or agreements to which the ACQUIRING ASSOCIATION and the CORPORATION are parties, including, but not limited to, an agreement to make a contribution or loan, an agreement to purchase subordinated debt, or an agreement to issue and purchase Income Capital Certificates, applicable regulations of the BANK BOARD or the CORPORATION, or any resolution or action of the BANK BOARD or CORPORATION approving, or adopted concurrently with, this Agreement, then this Agreement, such assistance agreement, such regulations, and such resolutions or actions shall govern. In the case of any ambiguity in the interpretation or construction of any provision of this Agreement, such ambiguity shall be resolved in a manner consistent with such assistance agreement, such regulations, and the BANK BOARD's or the CORPORATION's resolutions or actions. If there is a conflict between this Agreement and such assistance

agreement or such regulations or resolutions or actions, then such assistance agreement or such regulations or resolutions or actions shall govern.

§ 14 Governing Law. To the extent that federal law does not control, this Agreement and the rights and obligations under it shall be governed by the law of the State of Washington. Nothing in this Agreement shall require any unlawful action or inaction by either party.

§ 15 Effective Date. This Agreement, and the transfer of the CLOSED ASSOCIATION's assets and liabilities provided for by this Agreement, shall become effective upon its execution by the parties.

§ 16 Entire Agreement; Severability.

(a) This Agreement, together with any interpretation of it or any understanding agreed to in writing by the parties, constitutes the entire agreement between the ACQUIRING ASSOCIATION and the CORPORATION as RECEIVER, but not in its corporate capacity, in connection with the transactions contemplated by this Agreement, and supersedes all prior agreements and understandings of the parties, excepting only any resolutions or letters approved or adopted contemporaneously with this Agreement by the BANK BOARD or the CORPORATION.

(b) If any provision of this Agreement is invalid or unenforceable, then, to the extent possible, all of the remaining provisions of this Agreement shall remain in full force and effect and shall be binding upon the parties.

§ 17 Counterparts; Modification; Headings.

(a) This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall together constitute one and the same instrument, and either party may execute this Agreement by signing any such counterpart.

(b) No modification of this Agreement shall be binding unless executed in writing and signed by the parties or their successors.

(c) Section headings are not to be considered part of this Agreement, are solely for convenience of reference, and shall not affect the meaning or interpretation of this Agreement or any of its provisions.

§ 18 Warranties.

(a) The RECEIVER warrants and represents that it has authority to enter into this Agreement and that, as RECEIVER, it has full power and authority to transfer the CLOSED ASSOCIATION's assets and liabilities as provided by this Agreement.

(b) The ACQUIRING ASSOCIATION warrants and represents that all of the transactions contemplated by this Agreement have been or will be authorized by all necessary corporate actions and that it, by its proper officers or agents, has executed this Agreement and shall execute and deliver all instruments, certificates, and other documents that may be necessary or incidental to the performance of this Agreement.

(c) These warranties shall survive the execution, performance, and termination of this Agreement.

§ 19 Continuing Cooperation. The RECEIVER agrees, upon the request of the ACQUIRING ASSOCIATION, to execute and deliver such further instruments and documents of conveyance as shall be necessary or proper to vest in the ACQUIRING ASSOCIATION the RECEIVER's full legal or equitable title to the property transferred to the ACQUIRING ASSOCIATION pursuant to this Agreement.

§ 20 Condition. The obligations of the RECEIVER and the ACQUIRING ASSOCIATION pursuant to this Agreement are conditioned upon the execution and delivery simultaneously herewith of an Assistance Agreement between the CORPORATION and the ACQUIRING ASSOCIATION.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized officers or agents.

Attest:

Date: April 8, 1988

By: [signature]
Assistant Secretary

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATON
AS RECEIVER FOR TRI-CITIES SAVINGS AND LOAN ASSOCIATION

By: [signature]
Special Representative

STERLING SAVINGS ASSOCIATION

Date: April 8, 1988

By: [signature]

Its: SR V.P

By: [signature]

Its: Chairman

# EXHIBIT A

## ASSETS OF TRI-CITIES SAVINGS AND LOAN ASSOCIATION RETAINED BY THE FSLIC AS RECEIVER

| BORROWER/ PROJECT NAME | DESCRIPTION | LOCATION | GROSS BALANCE | EXISTING RESERVES | NET BOOK VALUE |
|---|---|---|---|---|---|
| Tech Center North[1] | Westside FS&LA, lead lender | | 1,054,098 | 950,004 | 104,094 |
| TOTAL LOANS | | | 1,054,098 | 950,004 | 104,094 |
| Morningstar[1] | Westside FS&LA, lead lender | | 2,105,303 | 1,645,529 | 459,774 |
| TOTAL REO | | | 2,105,303 | 1,645,529 | 459,774 |
| Investment in Tri-West Construction[2] | Sub of Tri-Cities S&LA | | (38,791) | 0 | (38,791) |
| Accounts Receivable, Tri-West Construction | | | 181,770 | 181,770 | 0 |
| TOTAL TRI-WEST | | | 142,979 | 181,770 | (38,791) |

---

1/ Data as of 2/29/88.

2/ Data as of 1/31/88.

**ASSISTANCE AGREEMENT**

**BETWEEN**

**THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**

**AND**

**STERLING SAVINGS ASSOCIATION**
**SPOKANE, WASHINGTON**

**DATED** April 8, **1988**

**EXHIBIT 4**

**ASSISTANCE AGREEMENT**

**BETWEEN**

**THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**

**AND**

**STERLING SAVINGS ASSOCIATION**
**SPOKANE, WASHINGTON**

**DATED ________________ __, 1988**

**TABLE OF CONTENTS**


| | | Page |
|---|---|---|
| | Recitals | 1 |
| § 1 | Definitions | 3 |
| | (a) "Affiliate" or "Affiliates" | 3 |
| | (b) "Bank" | 3 |
| | (c) "Bank Board" | 3 |
| | (d) "Book Value" | 3 |
| | (e) "Claim" | 7 |
| | (f) "Covered Asset" | 7 |
| | (g) "Covered Asset Loss" | 10 |
| | (h) "Credit" | 10 |
| | (i) "Debit" | 10 |
| | (j) "Effective Date" | 10 |
| | (k) "Federal Regulations" | 10 |
| | (l) "Foreclosure" | 10 |
| | (m) "GAAP" | 11 |
| | (n) "Initial Audit" | 11 |
| | (o) "Insurance Regulations" | 11 |
| | (p) "Liquidation" | 11 |
| | (q) "Net Proceeds Received" | 12 |
| | (r) "Quarter" | 12 |
| | (s) "Real Estate Owned" or "REO" | 13 |
| | (t) "Reimbursable" | 13 |
| | (u) "Related Claim" | 13 |
| | (v) "Repossessed Personal Property" | 14 |
| | (w) "Special Reserve Account" | 14 |
| | (x) "Subsidiary" | 14 |
| | (y) "Termination Date" | 14 |
| § 2 | Conditions | 14 |
| § 3 | Contributions | 17 |
| | (a) Initial Contribution by the CORPORATION | 17 |
| | (b) Debit Balances | 17 |
| | (c) Contributions Resulting from the Purchase of Covered Assets | 18 |

Page


(d) Contributions Resulting from Assignment of Claims........................ 18
(e) Reimbursement of Credit Balances.......... 19
(f) Adjustments.............................. 19
(g) Repayment................................ 20
§ 4 Special Reserve Account........................... 20
(a) Debits to Special Reserve Account......... 21
(1) Capital Losses on Covered Assets..... 21
(2) Appraisal Costs...................... 21
(3) Payment of Credits................... 21
(4) Indemnification...................... 22
(5) Related Claim Expenses............... 22
(6) Assignment of Related Claim.......... 22
(7) Expense to Cure...................... 22
(8) Tax Benefit Adjustment Payments...... 22
(9) Yield Subsidy........................ 22
(b) Exclusions from Debits.................... 26
(c) Credits to the Special Reserve Account................................... 27
(1) Other Recoveries on Covered Assets............................... 27
(2) Refunds.............................. 27
(3) Offset Gains......................... 28
(4) Recoveries on Related Claims......... 28
(5) CORPORATION's Contributions.......... 28
(6) Tax Benefits......................... 28
(7) Excess and Recalculated Yield........ 32
§ 5 Write-down of a Covered Asset..................... 33
§ 6 Inventory and Initial Audit....................... 34
§ 7 Indemnification for Undisclosed Liabilities, Unreserved-for Claims and Litigation Challenging the Acquisition........................ 35
(a) Indemnifications.......................... 35
(1) Undisclosed Liabilities.............. 37
(2) Unreserved-for Claims................ 38
(3) Challenges to the Acquisition........ 38
(b) Pursuit of Related Claims................. 39
(c) Payments as Contributions................. 40
(d) Scope of Indemnification.................. 40
§ 8 Duplicate Payments................................ 40
§ 9 Reports; Records.................................. 41
(a) Quarterly Reports......................... 41
(b) Reports on Covered Assets................. 43
(c) Reports Concerning Prosecution of Claims by Court Action and Settlement of Claims and Liabilities................. 43
(d) Other Reports............................. 46
(e) Access to Books and Records............... 47
(f) Audits and Examinations................... 47
(g) Final Accounting.......................... 48
(h) Change of Procedure....................... 48

Page

§ 10 Covenants of the ACQUIRING ASSOCIATION............ 48
(a) Administration of Assets and Liabilities................................ 48
(1) Management Standard.................. 48
(2) Pursuit of Claims.................... 49
(3) Conduct of Litigation................ 50
(4) Covered Asset Restrictions........... 52
(5) Covered Asset Requirements........... 53
(6) Debt Collection...................... 55
(b) Compliance with Law........................ 55
(c) Tax Benefits............................... 55
§ 11 Sale and Repair of Covered Assets................. 57
§ 12 Foreclosures ...................................... 61
§ 13 CORPORATION's Right to Assignment of Related Claims.................................. 64
§ 14 CORPORATION's Right to Purchase Covered Assets.... 66
§ 15 Disclosure of Agreement........................... 68
§ 16 Accounting Principles............................. 69
§ 17 Notices........................................... 70
§ 18 Termination of Agreement ......................... 70
§ 19 Rights and Forbearances........................... 72
§ 20 Governing Law..................................... 73
§ 21 Entire Agreement; Severability.................... 73
§ 22 Counterparts; Modifications; Headings............. 73
§ 23 Successors and Assigns............................ 74
§ 24 Sole Benefit...................................... 74
§ 25 Continuing Cooperation............................ 75

Signature Page.................................... 75

Exhibit A: Covered Assets

## SUMMARY OF SUBSTANTIVE PROVISIONS

| Assistance Provided | Section in Agreement |
|---|---|
| 1. Cash Contribution in amount of $11,730,128 | § 3(a) |
| 2. Indemnification for Losses on Covered Assets and Yield Subsidy | § 4(a) |
| 3. Indemnification for Undisclosed Liabilities, Unreserved-for Claims and Litigation Challenging the Acquisition | § 7 |

ASSISTANCE AGREEMENT

THIS AGREEMENT, dated April 8, 1988, is entered into by and between Sterling Savings Association, Spokane, Washington ("ACQUIRING ASSOCIATION"), a savings and loan association organized under the laws of the State of Washington, and the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate instrumentality of the United States ("CORPORATION").

RECITALS

A. On April 7, 1988, the Corporation was appointed receiver ("Receiver") for Tri-Cities Savings and Loan Association, Kennewick, Washington, a state-chartered stock savings and loan association ("CLOSED ASSOCIATION"). The Bank Board, by Resolution No. 88-250, dated April 7 1988, has authorized the ACQUIRING ASSOCIATION to purchase and assume substantially all of the assets and liabilities, respectively, of the CLOSED ASSOCIATION from the Receiver ("Acquisition") pursuant to the Acquisition Agreement ("Acquisition Agreement") of even date herewith between the Receiver and the ACQUIRING ASSOCIATION.

B. The Bank Board, by Resolution No. 88-250, dated April 7, 1988, has certified for purposes of Section 368(a)(3)(D) of the Internal Revenue Code that the ground set forth in 12 U.S.C. § 1464(d)(6)(A)(i) exists with respect to the CLOSED ASSOCIATION in that the CLOSED ASSOCIATION is insolvent.

C. The CORPORATION insured the accounts of the CLOSED ASSOCIATION and will continue to insure the accounts of the ACQUIRING ASSOCIATION after the Acquisition in accordance with § 403 of the National Housing Act, as amended ("NHA"), 12 U.S.C. § 1726 (1982).

D. The ACQUIRING ASSOCIATION, pursuant to the Acquisition Agreement, will succeed to substantially all of the rights, obligations, duties and liabilities of the CLOSED ASSOCIATION, and substantially all of the assets and property of every kind and character belonging to the CLOSED ASSOCIATION will be vested in and become the property of the ACQUIRING ASSOCIATION.

E. A condition to the obligation of the ACQUIRING ASSOCIATION to consummate the Acquisition pursuant to the Acquisition Agreement is that the CORPORATION and the ACQUIRING ASSOCIATION enter into an agreement in the form of this Agreement, pursuant to which the CORPORATION will provide financial assistance and indemnification to the ACQUIRING ASSOCIATION.

F. The CORPORATION has decided, pursuant to § 406(f)(1)-(4) of the NHA, 12 U.S.C. § 1729(f)(1)-(4) (1982), to provide financial assistance and indemnification as set forth in this Agreement, having determined that the CLOSED ASSOCIATION is in danger of default and that the amount of such assistance and indemnification would be less than the losses the CORPORATION would sustain upon the liquidation of the CLOSED ASSOCIATION through a receivership accompanied by the payment of insurance of accounts.

G. In consideration of the mutual promises contained in this Agreement, the parties enter into the following agreement.

## AGREEMENT

§ 1 Definitions. For the purposes of this Agreement the following terms have the indicated meanings:

(a) "Affiliate" or "Affiliates": This term shall be defined pursuant to § 583.15 and § 583.26 of the Regulations for Savings and Loan Holding Companies, 12 C.F.R. §§ 583.15 and 583.26 (1987).

(b) "Bank": The Federal Home Loan Bank of Seattle, Washington.

(c) "Bank Board": The Federal Home Loan Bank Board.

(d) "Book Value":

(1) Except as set forth in paragraph (d)(2) below:

(A) With respect to any Covered Asset reflected on the books and records of the CLOSED ASSOCIATION as of the Effective Date, the value of such asset as so reflected, and as adjusted by the Initial Audit and as thereafter adjusted or determined in accordance with the accounting principles required by this Agreement (but excluding any specific reserve or

valuation allowance for such Covered Asset on the books of the CLOSED ASSOCIATION immediately prior to the Effective Date); provided that with respect to a Covered Asset as defined in § 1(g)(1)(C), Book Value shall be the value of such asset as reflected on the books of the ACQUIRING ASSOCIATION as determined in accordance with the accounting principles required by this Agreement;

(B) With respect to any property or interest therein acquired after the Effective Date through Foreclosure of a lien on a Covered Asset:

(i) The outstanding principal amount of the indebtedness secured by such property (excluding any specific loss reserve relating to such indebtedness);

(ii) Any taxes or hazard insurance premiums accrued or due and payable as of the Effective Date that are subsequently paid by the ACQUIRING ASSOCIATION;

(iii) Costs, fees, and expenses of Foreclosure; provided that any costs, fees, and expenses incurred incident to the acceptance of a deed in lieu of foreclosure, or in connection with the repossession of property sold subject to a sales contract or loan which is in default, shall be included in Book Value only if approved in advance by the CORPORATION;

(iv) Expenses or assessments for the repair, rehabilitation, or completion of property that is a Covered Asset, provided that such expenses and assessments are (I) within the limits permitted by § 11(e) of this Agreement or have been approved in advance by the CORPORATION, (II) have not been reimbursed under another provision of this Agreement and (III) are determined and capitalized in accordance with the accounting principles required by this Agreement;

(v) The expenses, if approved in advance by the CORPORATION, for the removal of a lien upon a Covered Asset or security property for a Covered Asset; provided that such expenses have not been reimbursed under another provision of this Agreement; and

(vi) Any other costs, fees, and expenses associated with the acquisition of any property or interest therein that secures a Covered Asset; provided that such costs, fees, and expenses have not been reimbursed under another provision of this Agreement and have been approved in advance by the CORPORATION.

(2) There shall not be included in the determination of Book Value of Covered Assets under subparagraphs (A) or (B) of paragraph (1) above:

(A) Any amount of specific reserves and valuation reserves of Covered Assets of the CLOSED ASSOCIATION as of the Effective Date, as adjusted by the Initial Audit;

(B) Any amount of accrued and uncollected interest or late charges on the principal amount of the related indebtedness related to such Covered Asset, whether accrued prior to or after the Effective Date;

(C) The undisbursed portion of any loan in process account; provided, however, that disbursements made after the Effective Date pursuant to a legally binding commitment of the CLOSED ASSOCIATION, or with the prior written consent of the CORPORATION, shall not be excluded from Book Value;

(D) The amount of any deferred income related to a Covered Asset, including, without limitation, unearned discounts on loans purchased, unearned profit on real estate sold, deferred loan fees or acquisition credits, unearned discounts on installment loans, deferred gains on securities and other unearned discounts;

(E) With respect to any Covered Asset reflected on the CLOSED ASSOCIATION's books and records immediately prior to the Effective Date, any adjustment to the value of such Covered Asset made solely as a result of the accounting treatment of the Acquisition as a purchase of assets; and

(F) The amount of any net operating income and expenses, determined in accordance with the accounting principles required by this Agreement, that are attributable to Real Estate Owned on the books of the CLOSED ASSOCIATION immediately prior to the Effective Date or acquired as a result of Foreclosure with respect to a Covered Asset.

(3) Notwithstanding the foregoing, unless the CORPORATION expressly permits the write-down of the Book Value of a Covered Asset and a charge to the Special Reserve Account pursuant to § 4(a)(1) and (2) and § 5, no adjustment shall be made in the Book Value of a Covered Asset by reason of any uninsured casualty loss or any anticipated loss on any such asset even though a specific reserve is created for such anticipated loss or the value of such asset is written down pursuant to any regulatory requirement.

(e) "Claim": Any affirmative or defensive claim, demand, or cause of action in law or in equity.

(f) "Covered Asset":

(1) The term "Covered Asset" shall mean the following:

(A) The assets listed in Exhibit A attached hereto or any property securing such assets if such property is acquired by Foreclosure;

(B) Real Estate Owned acquired after the Effective Date as a result of a Foreclosure of any loan constituting a Covered Asset;

(C) Repossessed Personal Property acquired after the Effective Date as a result of a Foreclosure of any loan constituting a Covered Asset;

(D) Any loan, contract or investment made by the ACQUIRING ASSOCIATION in connection with or to facilitate the sale of, or to salvage a Covered Asset, or any property or interest therein received in exchange for a Covered Asset, if, prior to the making of any such loan, contract, investment or exchange of a Covered Asset, the ACQUIRING ASSOCIATION has obtained the CORPORATION's written consent to such transaction and to the treatment as a Covered Asset of such loan, contract, investment or property or interest received in exchange for a Covered Asset;

(2) Notwithstanding the provisions of the preceding subsection 1(f)(1), the term "Covered Asset" shall not include any loan as to which all delinquent interest is collected and which is reinstated as a performing loan in accordance with its original terms for ninety continuous days or more after the Effective Date; provided, that in the event that such a loan subsequently returns to nonperforming status, said loan shall again constitute a Covered Asset.

(3) The term "Covered Asset" shall not include any item not specifically set forth in subparagraph (1) above, including but not limited to:

(A) Any loan, contract or investment made by the ACQUIRING ASSOCIATION in connection with the sale of, or to salvage, a Covered Asset, or any property or interest therein received in exchange for a Covered Asset, unless prior to the making of any such loan, contract, investment or exchange of a Covered Asset, the ACQUIRING ASSOCIATION has obtained the CORPORATION's written consent to such transaction and to the treatment as a Covered Asset of such loan, contract, investment or property or interest received in exchange for a Covered Asset;

(B) The CLOSED ASSOCIATION's office buildings and facilities, any real estate or leasehold interest appurtenant thereto, and any parking lots;

(C) The CLOSED ASSOCIATION's leasehold improvements, office furniture, fixtures, and equipment;

(D) Any real estate held for development of an office site of the CLOSED ASSOCIATION; and

(E) Any property, real or personal, or interest therein, or any asset of any nature or kind that belongs to or is claimed to belong to a Subsidiary of the CLOSED ASSOCIATION, except for any item identified on Exhibit A.

(g) "Covered Asset Loss": The amount:

(1) by which the Book Value of a Covered Asset exceeds the Net Proceeds Received by the ACQUIRING ASSOCIATION upon the Liquidation of such Covered Asset; or

(2) of any write-down in Book Value of a Covered Asset approved by the CORPORATION pursuant to § 5 of this Agreement.

(h) "Credit": An amount credited to the Special Reserve Account pursuant to the provisions of § 4(c).

(i) "Debit": An amount charged or debited to the Special Reserve Account pursuant to the provisions of § 4(a).

(j) "Effective Date": The date and time at which the Acquisition becomes effective pursuant to the terms of Bank Board resolutions and applicable law.

(k) "Federal Regulations": The Rules and Regulations for the Federal Savings and Loan System, 12 C.F.R. § 541.1 et seq. (1987), as now or hereafter in effect.

(l) "Foreclosure": Unless specifically indicated otherwise by the context, includes, in addition to foreclosure, (1) the forfeiture of a contract of sale or a contract for deed, (2) a trustee's sale under a deed of trust, (3) the grant of a deed in lieu of foreclosure, (4) the acquisition of title to real

estate pursuant to other comparable procedures allowed under applicable law, (5) the acquisition of title to personal property pursuant to procedures for the enforcement of a security interest in such property under applicable law, and (6) the exercise of rights of possession to or control over personal property arising under contract or applicable law.

(m) "GAAP": Generally accepted accounting principles.

(n) "Initial Audit": The audit conducted pursuant to § 6(b).

(o) "Insurance Regulations": The Rules and Regulations for the Federal Savings and Loan Insurance Corporation, 12 C.F.R. § 561.1 *et seq.* (1987), as now or hereafter in effect.

(p) "Liquidation": As used in reference to a Covered Asset, Claim, or Related Claim:

(1) A sale of any asset, whether for cash or on other terms, at other than a Foreclosure sale at which the ACQUIRING ASSOCIATION is the purchaser, whether for cash or on other terms; provided however, that the sale of any asset between the ACQUIRING ASSOCIATION and any Affiliate shall not constitute a Liquidation hereunder unless specifically approved in writing by the CORPORATION; or

(2) The release, compromise, satisfaction, settlement, reduction to judgment, or assignment to other than the CORPORATION of any Claim.

(q) "__Net Proceeds Received__": As used in reference to the amount received by any of the parties hereto upon Liquidation of a Covered Asset, a Related Claim, or a Claim, the amount computed by deducting from the gross proceeds received all reasonable expenses in the form of payments to third parties incurred or paid by the ACQUIRING ASSOCIATION or the CORPORATION with respect to claims assigned to the CORPORATION, in connection with such Liquidation of a Covered Asset or particular Claim; __provided__ that such expenses have not been reimbursed otherwise. Such "reasonable expenses" may include, without being limited to, reasonable attorneys' and accountants' fees, travel expenses, court costs and related litigation expenses, commissions, inspection fees, escrow fees, title insurance and such other actual and reasonable costs as are directly related to Liquidation of the Covered Asset or particular Claim and are not included in the determination of the actual yield of any such asset for purposes of § 4(a)(9).

(r) "__Quarter__": A calendar quarter, __provided__ that the first Quarter during the term of this Agreement shall be deemed to include the period, if any, from the Effective Date to and including the last day preceding the first day of the first

full calendar quarter following the Effective Date, and provided further, that the last quarter during the term of this Agreement shall be deemed to include the period, if any, from the first day after the last day of the last full calendar quarter during the term of this Agreement to the Termination Date.

(s) "Real Estate Owned" or "REO": Real estate or such other property acquired by Foreclosure which, following Foreclosure, is not held for investment or for use or development as an office site to be used by the ACQUIRING ASSOCIATION or an Affiliate thereof.

(t) "Reimbursable": As used in describing a liability, loss, Claim, or Related Claim of the ACQUIRING ASSOCIATION, "Reimbursable" shall mean a liability, loss or claim as to which the ACQUIRING ASSOCIATION had a right to reimbursement under any bond, insurance policy or other source, but as to which the ACQUIRING ASSOCIATION does not receive reimbursement due to its failure to timely or vigorously pursue such right in accordance with the management standard described in § 10(a)(1).

(u) "Related Claim": Any counterclaim, offset, insurance settlement or other Claim which may result in a recovery by the ACQUIRING ASSOCIATION and which is related to a Covered Asset, or to a Claim or liability for which the CORPORATION is obligated to indemnify the ACQUIRING ASSOCIATION under § 7(a).

(v) "Repossessed Personal Property": An item of personal property acquired by Foreclosure of a Covered Asset.

(w) "Special Reserve Account": The Special Reserve Account established pursuant to § 4.

(x) "Subsidiary": Any corporation, service corporation or other entity 25 percent or more owned, directly or indirectly, by the CLOSED ASSOCIATION as of the Effective Date.

(y) "Termination Date": The date five (5) years after the Effective Date.

§ 2 Conditions.

(a) The CORPORATION's obligations pursuant to this Agreement are subject to the following conditions:

(1) The execution and delivery simultaneously herewith of the Acquisition Agreement, and the occurrence of the Effective Date;

(2) Receipt of an opinion from outside counsel for the ACQUIRING ASSOCIATION, in form and substance satisfactory to the CORPORATION and its counsel, to the effect that (i) the Acquisition has been duly authorized by the Directors of the Acquiring Association and effected in compliance with the charter and by-laws of the ACQUIRING ASSOCIATION and with applicable law; (ii) this Agreement, the Acquisition

Agreement, and any other agreements executed by the ACQUIRING ASSOCIATION in connection with the Acquisition have been duly authorized, executed and delivered, and constitute the valid and binding obligations of the ACQUIRING ASSOCIATION which are enforceable in accordance with their terms, except as enforceability thereof may be limited by bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the rights of creditors, and principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law). Such opinion may be qualified as an opinion only on the laws of the State of Washington and the federal laws of the United States;

(3) Receipt of a certified copy of the corporate resolutions of the ACQUIRING ASSOCIATION authorizing the Acquisition and the execution and delivery on the behalf of the ACQUIRING ASSOCIATION of this Agreement, the Acquisition Agreement, and any other agreements or instruments executed by the ACQUIRING ASSOCIATION in connection with the Acquisition.

(4) All corporate and other proceedings taken in connection with the Acquisition, and all documents incident thereto, being satisfactory in form and substance to the CORPORATION and its counsel, and the CORPORATION and its counsel having received all such counterpart originals or certified or other copies of such documents as either may reasonably request; and

(5) The ACQUIRING ASSOCIATION and any of its Affiliates and Subsidiaries, within the time periods specified by the terms of this Agreement or by the Bank Board, (i) having executed and delivered to the CORPORATION all other agreements, instruments and documents required to be executed and delivered by the terms of this Agreement and by any action of the Bank Board in approving the Acquisition and any related transactions, and (ii) having taken all other actions imposed, in any action taken by the Bank Board approving the Acquisition or any related transactions, as conditions herein to the CORPORATION's obligation to provide assistance and indemnification hereunder.

(b) The ACQUIRING ASSOCIATION's obligations pursuant to this Agreement are conditioned upon (i) the execution and delivery simultaneously herewith of the Acquisition Agreement; (ii) the CORPORATION certifying for purposes of § 368(a)(3)(D) of the Internal Revenue Code of 1986 that the ground for appointment of a conservator or a receiver set forth in 12 U.S.C. § 1464(d)(6)(A)(i) exists with respect to the CLOSED ASSOCIATION or will exist in the near future in the absence of action by the Bank Board; (iii) receipt of a Forbearance Letter from the CORPORATION or its designee; and (iv) receipt of a certified copy of the Federal Home Loan Bank Board's resolutions pursuant to this transaction.

§ 3 Contributions.

(a) Initial Contribution by the CORPORATION.

(1) If the conditions set forth in § 2 have been satisfied, within five business days after the Effective Date the CORPORATION shall wire transfer to the account of the ACQUIRING ASSOCIATION at the Bank immediately available funds in the amount of $11,730,128.

(2) For purposes of reports to the Bank Board other than reports or financial statements prepared for reporting or disclosure purposes that are required to be governed by GAAP, the cash contribution made under § 3(a)(1), shall be credited to the ACQUIRING ASSOCIATION'S regulatory capital account and shall constitute regulatory capital as defined in § 561.13 of the Insurance Regulations, 12 C.F.R. § 561.13 (1987). It is understood by the parties that the preceding sentence is not intended to address in any way the accounting treatment of contributions from the CORPORATION that must be reflected in any filing that the ACQUIRING ASSOCIATION may make, whether to the Bank Board (for reporting or disclosure purposes) or otherwise, that requires the submission of financial statements prepared in accordance with GAAP.

(b) Debit Balances. Within 30 days after receipt of each Quarterly Report required pursuant to § 9(a) or within 90 days of the final accounting required pursuant to § 9(g), the CORPORATION shall contribute to the ACQUIRING ASSOCIATION, by

deposit into the ACQUIRING ASSOCIATION's account at the Bank, an amount equal to the Debit balance of the Special Reserve Account that is not offset by Credits due to the CORPORATION. After the Termination Date, amounts payable to the ACQUIRING ASSOCIATION by the CORPORATION pursuant to § 7 shall be paid in a like manner.

(c) Contributions Resulting from the Purchase of Covered Assets. In the event that the CORPORATION exercises its right to purchase a Covered Asset pursuant to § 14, the excess, if any, of the purchase price paid by the CORPORATION over the fair market value of such asset, shall be deemed to be a contribution by the CORPORATION. Fair market value shall be determined, at the election of the CORPORATION, by (1) agreement of the CORPORATION and the ACQUIRING ASSOCIATION, or (2) an independent appraisal accepted by the CORPORATION.

(d) Contributions Resulting from Assignment of Claims. The amount of any payment made by the CORPORATION in excess of the fair market value of any Related Claim assigned to the CORPORATION pursuant to § 13, shall be deemed to be a contribution by the CORPORATION. Fair market value may be determined, at the election of the CORPORATION, by agreement of the CORPORATION and the ACQUIRING ASSOCIATION, or by an appraisal by an independent appraiser approved by the CORPORATION, the cost of which appraisal shall be paid by the CORPORATION.

(e) Reimbursement of Credit Balances.

(1) Within 30 days after the CORPORATION's receipt of each Quarterly Report, the ACQUIRING ASSOCIATION shall remit to the CORPORATION an amount equal to the aggregate amount of the net Credit balance of the Special Reserve Account as of the last day of the Quarter reported in such Quarterly Report; provided that if such amount exceeds the total of the contributions made by the CORPORATION to date and not repaid, then the ACQUIRING ASSOCIATION shall remit to the CORPORATION only so much of such amount as equals the total of such contributions, and the excess, if any, shall remain as a Credit balance in the Special Reserve Account.

(2) Within 90 days after rendering the final accounting required under § 9(g), the ACQUIRING ASSOCIATION shall remit to the CORPORATION an amount equal to the aggregate net Credit balance in the Special Reserve Account as of the Termination Date; provided that the amount so remitted shall not exceed the total contributions made by the CORPORATION under this Agreement and not repaid.

(f) Adjustments. Any contribution or payment made by the CORPORATION or the ACQUIRING ASSOCIATION pursuant to this Agreement, any Credit or Debit to the Special Reserve Account, or any accounting or report furnished by the ACQUIRING ASSOCIATION under this Agreement shall be subject to adjustment if it subsequently is determined that such contribution, payment,

Credit, Debit, accounting, or report was based upon error, or upon a tax determination that has been subsequently adjusted, or was not computed in accordance with the accounting principles prescribed by this Agreement, or, without the approval of the CORPORATION, was otherwise inconsistent with the terms of this Agreement.

(g) Repayment. In the event that, by order issued prior to the Termination Date, a court of competent jurisdiction directs the ACQUIRING ASSOCIATION to divest itself of the assets it acquired and the liabilities it assumed from the CLOSED ASSOCIATION, and such order becomes final, the contribution made by the CORPORATION pursuant to §§ 3(a)(1), (c) and (d) and all amounts debited to the Special Reserve Account pursuant to § 4(a)(1) shall be repaid to the CORPORATION by the ACQUIRING ASSOCIATION, and the Acquisition Agreement shall be rescinded. This § 3(g) shall survive the Termination Date.

§ 4 Special Reserve Account. The ACQUIRING ASSOCIATION shall establish as of the Effective Date a single memorandum account, with an opening balance of zero, to be called the Special Reserve Account, and shall maintain such account solely for the purposes of, and in accordance with, the provisions of this Agreement, without limitation of its duty to maintain its books and records in accordance with proper accounting procedures and the Insurance Regulations.

(a) Debits to Special Reserve Account. The ACQUIRING ASSOCIATION may, following the Effective Date, charge as Debits to the Special Reserve Account amounts equal to each of the following items:

(1) Capital Losses on Covered Assets. Seventy-five (75%) percent of each Covered Asset Loss, until such time as the remaining twenty-five (25%) percent share of Covered Assets Losses reaches a total of nine hundred thousand ($900,000) dollars, after which time one hundred (100%) percent of each Covered Asset Loss may be charged as a Debit to the Special Reserve Account;

(2) Appraisal Costs. The cost of any independent appraisal required by the CORPORATION pursuant to this Agreement and paid for by the ACQUIRING ASSOCIATION; provided that the appraiser selected by the ACQUIRING ASSOCIATION and the cost of appraisal have been approved in advance by the CORPORATION; and provided further, that the ACQUIRING ASSOCIATION shall instruct the appraiser (A) to deem both the ACQUIRING ASSOCIATION and the CORPORATION as its clients and (B) to conduct the appraisal in accordance with standards approved by the Bank Board;

(3) Payment of Credits. The amount of any payments made by the ACQUIRING ASSOCIATION to eliminate a Credit balance in the Special Reserve Account;

(4) Indemnification. The amounts owed by the CORPORATION under § 7(a);

(5) Related Claim Expenses. The amount of the reasonable costs and expenses incurred by the ACQUIRING ASSOCIATION in pursuit of a Related Claim and reimbursable by the CORPORATION pursuant to § 7(b);

(6) Assignment of Related Claim. The Book Value reflected on the CLOSED ASSOCIATION's books immediately prior to the Effective Date of a Related Claim assigned to the CORPORATION pursuant to § 13;

(7) Expense to Cure. The amount of payments or costs incurred with the CORPORATION's prior approval in order to cure or salvage any Covered Asset or prevent a substantial deterioration in value of a Covered Asset, provided that such payments or costs are not appropriately capitalized under GAAP;

(8) Tax Benefit Adjustment Payments. Any amount permitted to be debited to the Special Reserve Account pursuant to § 4(c)(6)(F).

(9) Yield Subsidy. (A) With respect to all assets which are, as of the Effective Date, or which become, prior to the Termination Date, Covered Assets, amounts, determined and charged at the end of each Quarter prior to the Termination Date, equal to the excess, if any, of (i) the

Guaranteed Yield Amount, as computed below, over (ii) the actual yield, whether positive or negative, during such Quarter on such Covered Assets, such actual yield to include all interest and other income received or accrued which is attributable to such Covered Assets, including, specifically, with respect to Real Estate Owned, any net operating income or net operating loss; provided, that if during any Quarter during the Term of this Agreement the actual yield exceeds the Guaranteed Yield Amount provided for hereunder, there shall be a credit calculated and applied at the end of each calender year during the term of this Agreement to the Special Reserve Account for the amount of such excess, as provided in § 4(c)(7), but only to the extent such amount to be credited does not exceed the aggregate amount debited to the Special Reserve Account pursuant to this § 4(a)(9) during such calendar year. Net operating income or operating loss on Real Estate Owned shall be determined by deducting all expenses directly attributable to such real estate, specifically excluding, however, depreciation and the ACQUIRING ASSOCIATION's administrative and overhead expenses, from the gross income attributable to such real estate.

(B) The Guaranteed Yield Amount for any Quarter constituting a full calendar quarter shall be computed by multiplying the Average Book Value of such Covered Assets for such Quarter (determined for a given Quarter by adding the Book Value of such Assets on the first day of the Quarter and on the

last day of each calendar month ending within the Quarter and dividing the sum by 4) by the Guaranteed Yield Percentage. The Guaranteed Yield Percentage shall be one-fourth of the sum of (i) the Average Treasury Bill Rate plus (ii) 150 basis points. (The Average Treasury Bill Rate shall be determined (i) for a given full calendar quarter, by adding the rate (stated as a percentage) on six-month Treasury Bills on the first day of the Quarter and on the last day of each calendar month ending within the Quarter as reported in The Wall Street Journal for each such day and dividing the sum by 4; and (ii) in the event the first Quarter during the term of this Agreement or the last part of the period prior to the Termination Date does not constitute a full calendar quarter, by adding the rate (stated as a percentage) on six-month Treasury Bills on the first day of the Quarter and on the last day of each calendar month ending within the Quarter or portion thereof as reported in The Wall Street Journal for each such day and dividing the sum by the total number of such first and last days.) In the event the first Quarter during the term of this Agreement or the last part of the period prior to the Termination Date does not constitute a full calendar quarter, the Guaranteed Yield Amount for such Quarter or portion thereof shall be the product of (i) the Average Book Value of such Covered Assets for such Quarter or portion thereof (determined by adding the Book Value of such Assets on the first day of the Quarter and on the last day of each calendar month ending within the Quarter or portion thereof and dividing the sum by the total number of

such first and last days) multiplied by a fraction (the numerator of which shall be the number of days during which this Agreement was in effect in such Quarter or portion thereof and the denominator of which shall be 365) and (ii) the Guaranteed Yield Percentage.

(C) In the event of reinstatement of a loan to income-producing status and collection of delinquent interest in accordance with the original terms of such loan so that such loan ceases to be a Covered Asset, the Guaranteed Yield Amount for any previous Quarter that included such loan in the determination of Average Book Value for all or any portion of such Quarter shall be recalculated excluding such loan, and the sum of the differences between the Guaranteed Yield Amount as recalculated and as originally calculated for each such Quarter shall be a credit to the Special Reserve Account as provided in § 4(c)(7). The calculation of the credit to be made to the Special Reserve Account, if any, pursuant to this § 4(a)(9)(C) shall be made at the end of each Quarter for all loans which cease to be Covered Assets during such Quarter.

(D) The debits to the Special Reserve Account made by the ACQUIRING ASSOCIATION under this paragraph 9 for any quarterly period prior to the Termination Date shall be computed in accordance with the accounting principles set forth in § 16.

(b) Exclusions from Debits. The ACQUIRING ASSOCIATION may not debit the Special Reserve Account and shall not seek reimbursement from the CORPORATION for:

(1) Any of the expenses or costs of the ACQUIRING ASSOCIATION incident to the Acquisition not specifically reimbursed by this Agreement;

(2) Any increase in the operating expenses of the ACQUIRING ASSOCIATION as a result of the Acquisition or the administration and management of the assets and liabilities of the CLOSED ASSOCIATION not specifically reimbursed by this Agreement;

(3) Any loss, charge, or expense to the extent caused by the ACQUIRING ASSOCIATION'S failure to comply with the management standard set forth in § 10(a) of this Agreement in its administration of the assets and liabilities of the ACQUIRED ASSOCIATION after the Effective Date;

(4) That portion of any loss, charge, or expense actually recovered or reasonably expected to be recovered by the ACQUIRING ASSOCIATION under any insurance policy or bond or other comparable provision for funding;

(5) Any expenses of the ACQUIRING ASSOCIATION incurred in the administration of this Agreement, including, but not limited to, compensation paid to employees or agents of

the ACQUIRING ASSOCIATION for services performed in connection with the preparation of reports and supporting documentation required to be filed with the CORPORATION under § 9; and

(6) The write-down of the Book Value of any Covered Asset if the CORPORATION has denied the ACQUIRING ASSOCIATION's application pursuant to § 5(b) to write down such asset, or if the CORPORATION has approved the application with modifications or conditions that the ACQUIRING ASSOCIATION has not met.

(c) Credits to the Special Reserve Account. The ACQUIRING ASSOCIATION shall promptly credit each of the following items to the Special Reserve Account:

(1) Other Recoveries on Covered Assets. One hundred (100%) percent of the amount of any recovery or benefit realized by the ACQUIRING ASSOCIATION in satisfaction of or recovery on any Covered Asset in excess of Book Value or, if such Covered Asset has been written down pursuant to § 5, in excess of Book Value as so written down, including but not limited to, any recoveries on any claim or judgment related to or in connection with such Covered Asset;

(2) Refunds. The amount of any refund received by the ACQUIRING ASSOCIATION with respect to payments or expenditures made by the CLOSED ASSOCIATION prior to the Effective Date;

(3) Offset Gains. Any amount the ACQUIRING ASSOCIATION recovers from other than the CORPORATION, whether by counterclaim, offset, insurance settlement or otherwise, with respect to any liability or Claim (including any Related Claim) as to which the ACQUIRING ASSOCIATION debited the Special Reserve Account;

(4) Recoveries on Related Claims. Any proceeds received upon the Liquidation by the ACQUIRING ASSOCIATION of any Related Claim to the extent such Claim is not reflected on the books of the CLOSED ASSOCIATION immediately prior to the Effective Date;

(5) CORPORATION's Contributions. Contributions made by the CORPORATION to eliminate a Debit balance in the Special Reserve Account;

(6) Tax Benefits. (A) The amount of the net tax benefits, if any, realized by the ACQUIRING ASSOCIATION or any consolidated group of which the ACQUIRING ASSOCIATION is a member ("Taxable Party") in any tax year ending subsequent to the Effective Date calculated as provided in § 4(c)(6)(B) ("Net Tax Benefits"). For purposes of this Agreement, the Net Tax Benefits are the tax benefits that are attributable to the following items ("Tax Benefit Items") and that are utilized by the Taxable Party to reduce its tax liability in a given tax year as calculated in § 4(c)(6)(B) below:

(i) Any federal, state or local income tax carryovers of net operating losses, capital losses, charitable contributions or business credits attributed to the CLOSED ASSOCIATION through the Effective Date. For any year or period subsequent to the Effective Date, the Taxable Party shall apply the carryovers available to it on the basis of the oldest carryovers first, whether of the CLOSED ASSOCIATION or otherwise, provided, that if some, but not all, of any net operating losses incurred during the same year, whether of the CLOSED ASSOCIATION or otherwise, are used as loss carryovers in subsequent years, the Taxable Party shall apply such net operating loss carryovers according to a ratio corresponding to the relationship between the percentage of such oldest net operating loss carryovers which are net operating losses of the CLOSED ASSOCIATION and the percentage of such oldest net operating loss carryovers which are other net operating losses.

(ii) any cost, expense or loss (1) which is incurred by the ACQUIRING ASSOCIATION, (2) for which the CORPORATION has made assistance payments to the ACQUIRING ASSOCIATION pursuant to § 7(a) or (b) or § 18(c), and (3) which is deductible on the ACQUIRING ASSOCIATION's federal or state income tax return.

(B) The Net Tax Benefits for a taxable year shall be equal to the sum of:

(i) the excess, if any, of

(1) the federal, state and local income tax liability for such taxable year, taking into account all allowable carryovers and carrybacks to such taxable year, which would have been imposed on the Taxable Party if the Tax Benefit Items described in § 4(c)(6)(A) had not been utilized in any taxable year over

(2) the federal, state and local income tax liability for such taxable year, taking into account all allowable carryovers and carrybacks to such taxable year, which would have been imposed on the Taxable Party if the Tax Benefit Items described in § 4(c)(6)(A)(ii) above had been utilized in any taxable year and if the Tax Benefit Items described in § 4(c)(6)(A)(i) above had not been utilized in any taxable year; and

(ii) fifty percent (50%) of the excess, if any, of

(1) the federal, state and local income tax liability for such taxable year, calculated as provided in § 4(c)(6)(B)(i)(2) above, over

(2) the federal, state and local income tax liability for such taxable year, taking into account all allowable carryovers and carrybacks to such taxable year, actually imposed on the Taxable Party.

(C) Net Tax Benefits shall be credited to the Special Reserve Account at the time prescribed by law for the filing, including extensions, of the federal income tax return of the Taxable Party for the taxable year in which such Net Tax Benefits are realized (including by way of carryovers and carrybacks);

(D) In the event Net Tax Benefits are credited or paid with respect to Tax Benefit Items that are subsequently disallowed, or that cease to be Tax Benefit Items because it is determined that payments with respect to losses otherwise described in § 4(c)(6)(A) were not allowable, such Net Tax Benefits shall be debited to the Special Reserve Account or shall be paid by the CORPORATION to the ACQUIRING ASSOCIATION as set forth in § 4(c)(6)(F);

(E) The ACQUIRING ASSOCIATION shall, upon request of the CORPORATION, provide copies of the tax returns and amended tax returns of itself and of the consolidated group, if any, of which it is a member, for any taxable year(s) that are specified by the CORPORATION and relevant to the determination of a Credit or Debit to the Special Reserve Account or payments required to be made to the CORPORATION or to the ACQUIRING ASSOCIATION pursuant to this § 4(c)(6);

(F) Repayments or payments by the CORPORATION required by this § 4(c)(6) shall be effected by a

Debit to the Special Reserve Account, if made prior to the Termination Date, and by a cash payment or wire transfer within ten days after the CORPORATION's receipt of written demand for payment, if made after the Termination Date; provided that in either case the CORPORATION shall receive a full written explanation of the basis for its payment obligation; and provided, further, that the ACQUIRING ASSOCIATION has complied with § 10(c) with respect to the Tax Benefit Items or Net Tax Benefits that are subject to adjustment and thereby create the CORPORATION's payment obligation; and

(G) This § 4(c)(6) shall survive the Termination Date. After the Termination Date, the ACQUIRING ASSOCIATION shall pay to the CORPORATION by cash payment or wire transfer amounts equal to all Net Tax Benefits that prior to the Termination Date would have been credited to the Special Reserve Account. The ACQUIRING ASSOCIATION agrees to use its best efforts, cooperate fully with the CORPORATION, and take all such actions as are necessary to implement the provisions of this § 4(c)(6).

(7) Excess and Recalculated Yield. With respect to the Covered Assets for which the CORPORATION provided a yield subsidy pursuant to § 4(a)(9), the amount of any excess of actual yield over the Guaranteed Yield Amount on such Covered

Assets as provided in § 4(a)(9)(A), and the amount of any credit resulting from a recalculation as provided in § 4(a)(9)(C).

§ 5 Write-down of a Covered Asset.

(a) Except with the prior written approval of the CORPORATION, the ACQUIRING ASSOCIATION shall undertake to liquidate each Covered Asset in accordance with the terms of this Agreement prior to applying to the CORPORATION for permission to write down any such Covered Asset's Book Value, which permission the CORPORATION shall not unreasonably withhold. Notwithstanding the preceding sentence, if the ACQUIRING ASSOCIATION determines that Liquidation of a Covered Asset would produce Net Proceeds Received less than the amount of Book Value of the asset, it may apply immediately to the CORPORATION for such permission.

(b) With respect to any Covered Asset, the amount of any write-down shall be determined as follows:

(1) The CORPORATION may require the ACQUIRING ASSOCIATION to write down the Book Value of any Covered Asset, and such write-down shall be debited to the Special Reserve Account in accordance with the terms of § 4(a)(1).

(2) Within 30 days of receipt of an application from the ACQUIRING ASSOCIATION setting forth the grounds for the ACQUIRING ASSOCIATION's opinion that the value of a Covered Asset is less than its Book Value, the CORPORATION may:

(A) Approve the application, with or without modifications or conditions, and permit the ACQUIRING ASSOCIATION to write down the asset's Book Value and Debit such write-down to the Special Reserve Account in accordance with the terms of this Agreement;

(B) Deny the application, in which case the CORPORATION shall direct the ACQUIRING ASSOCIATION to take such action with respect to such Covered Asset as the CORPORATION deems reasonably necessary or appropriate; or

(C) Require the ACQUIRING ASSOCIATION to submit additional information, including, but not limited to, an independent appraisal. Within 30 days after the CORPORATION'S receipt of any additional information, the CORPORATION shall approve, with or without modifications or conditions, or deny such application, in which case the CORPORATION shall direct action by the ACQUIRING ASSOCIATION as provided in paragraph (B) above.

§ 6 Inventory and Initial Audit. As soon as is practicable after the Effective Date, the CORPORATION, at its own expense but with the reasonable assistance of the ACQUIRING ASSOCIATION's personnel, whose salaries and expenses shall be paid by the ACQUIRING ASSOCIATION without reimbursement from the CORPORATION, shall: