FEDERAL HOME LOAN BANK BOARD
QUARTERLY FINANCIAL REPORT
Statement of Condition (continued)

As of Dec. 31, 19 85

(REPORT IN THOUSANDS OF DOLLARS)

DISTRICT/DOCKET: 12/07918

NAME AND ADDRESS OF INSTITUTION (Please Use Preprinted Label)

12/07918

STERLING SAVINGS ASSN
NORTH 120 WALL STREET
SPOKANE WA
99201-0000

## SECTION B LIABILITIES

AMENDED 6/30/86

| | Line | BIL | MIL | THOU |
|---|---|---|---|---|
| DEPOSITS | 010 | | 134 | 518 |
| BORROWINGS | | | | |
| FHLBank Advances | 020 | | 22 | 350 |
| Other Borrowed Money: | | | | |
| Commercial Bank Loans | 030 | | | 0 |
| Reverse Repurchase Agreements | 040 | | | 0 |
| Consumer Retail Repurchase Agreements | 050 | | | 0 |
| Overdrafts in Demand Deposits | 060 | | 2 | 028 |
| Commercial Paper Issued | 070 | | | 0 |
| Subordinated Debentures Not Qualifying for Net Worth | 080 | | | 0 |
| Mortgage-Backed Bonds Issued | 090 | | | 0 |
| Other Borrowings | 100 | | | 50 |
| OTHER LIABILITIES | | | | |
| Accrued Interest Payable | 110 | | | 165 |
| Interest Accrued or Declared on Deposits | 120 | | | 580 |
| Dividends Payable on Permanent Reserve, or Guaranty Stock | 130 | | | 0 |
| Accrued Taxes | 140 | | | 29 |
| Accounts Payable | 150 | | | 147 |
| Advance Payments by Borrowers for Taxes and Insurance | 160 | | | 472 |
| Financial Options Fees Received | 170 | | | 0 |
| Other Liabilities | 180 | | | 664 |
| Deferred Net Gains (Losses) on Futures/Options Hedging Liabilities | 190 | | | 0 |
| Deferred Federal and Other Income Taxes | 200 | | | 189 |
| TOTAL LIABILITIES (800 = 010 thru 200) | 800 | | 161 | 192 |

### MEMO

| | Line | BIL | MIL | THOU |
|---|---|---|---|---|
| Pledged Deposits included on Line #010 | 900 | | | 0 |

## SECTION C REGULATORY NET WORTH

| | Line | BIL | MIL | THOU |
|---|---|---|---|---|
| Preferred Stock | 010 | | | 0 |
| Permanent, Reserve or Guaranty Stock | 020 | | 3 | 521 |
| Paid-In Surplus | 030 | | 2 | 497 |
| Qualifying Mutual Capital Certificates | 040 | | | 0 |
| Qualifying Subordinated Debentures | 050 | | | 0 |
| Appraised Equity Capital | 060 | | | 0 |
| Net Worth Certificates | 070 | | | 0 |
| Accrued Net Worth Certificates | 080 | | | 0 |
| Income Capital Certificates | 090 | | | 0 |
| Reserves | 100 | | | 0 |
| Undivided Profits (Retained Earnings) | 110 | | | 346 |
| Net Undistributed Income | 120 | | | 298 |
| TOTAL REGULATORY NET WORTH (800 = 010 thru 120) | 800 | | 6 | 662 |
| TOTAL LIABILITIES AND REGULATORY NET WORTH (810 = B800 + C800) | 810 | | 167 | 854 |

316

### MEMO

| | Line | BIL | MIL | THOU |
|---|---|---|---|---|
| Cash Dividends on: | | | | |
| Preferred Stock | 900 | | | 0 |
| Permanent Stock | 910 | | | 0 |
| Other Capital Instruments | 920 | | | 0 |

Check if you are including in your balance sheet for the first time assets, etc., acquired as a result of merger, or if your institution has purchased or sold a branch during the quarter. 930 X

Check this item if Line C930 above is checked and the merger was accounted for under the purchase method of accounting.* 940 X

Annual Closing Date (Show month and day numerically; e.g., December 31 should be shown as 12/31) 950 06 30

*If C940 is checked, file Sections D and E and all quarterly activity items on Sections F and I (F010 thru F210 and I030) for the Disappearing Institution(s). Refer to Instruction Book under "Mergers and Acquisitions."

FHLBB Form 1313



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER

## SECTION C

## REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES

(Filed at quarter end. Balances are reported as of the quarter-end date.)

# TABLE OF CONTENTS

## SECTION C

## REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES


| SUBJECT | LINE NO. | PAGE |
|---|---|---|
| Preferred Stock: | | C-1 |
| Perpetual | C012 | C-1 |
| Other Qualifying | C014 | C-1 |
| Permanent, Reserve, or Guaranty Stock | C020 | C-1 |
| Contributed Capital | C030 | C-1 |
| Qualifying Mutual Capital Certificates | C040 | C-2 |
| Qualifying Subordinated Debentures | C050 | C-2 |
| Appraised Equity Capital | C060 | C-2 |
| Net Worth Certificates | C070 | C-2 |
| Accrued Net Worth Certificates | C080 | C-3 |
| Income Capital Certificates | C090 | C-3 |
| Retained Earnings | C115 | C-3 |
| TOTAL REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES | C800 | C-4 |
| TOTAL LIABILITIES AND REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES | C810 | C-4 |
| **MEMO** | | |
| Cash Dividends on: | | |
| Preferred Stock | C900 | C-5 |
| Permanent Stock | C910 | C-5 |
| Other Capital Instruments | C920 | C-5 |
| Check if you are including in your balance sheet for the first time assets, etc., acquired as a result of a merger, or if your institution has purchased or sold a branch during the quarter | C930 | C-5 |
| Check this item if Line C930 above is checked **and** the merger was accounted for under the purchase method of accounting | C940 | C-5 |
| Annual Closing Date (Show month and day numerically; e.g., December 31 should be shown as 12/31.) | C950 | C-5 |


APP. 1303

.

**REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES - Lines C012 thru C115**

General Loan-Loss Reserves are discussed in the instructions for Line C115 (Retained Earnings).

**Preferred Stock: - Lines C012 and C014**

Include on the appropriate line, stock issued by the institution that is guaranteed priority over common stock in liquidation and in the payment of dividends by the institution's corporate charter and that qualifies as regulatory capital as defined in Regulations 561.13 and 563.7-5. Exclude nonqualifying preferred stock and preferred stock issued by a finance subsidiary, reportable on Line B100 (Other Borrowings). Report preferred stock net of discounts (plus premiums) less issuance costs.

**Line C012 - Perpetual**

Report here preferred stock that has no stated maturity and cannot be redeemed except at the option of the issuer. Perpetual preferred stock also includes preferred stock that is convertible into common stock.

**Line C014 - Other Qualifying**

Report on this line qualified nonpermanent preferred stock (e.g., preferred stock that has a stated maturity, a required redemption provision, or a redemption that is at the option of the holder).

**Line C020 - Permanent, Reserve, or Guaranty Stock**

Enter the par value of all outstanding permanent, reserve, or guaranty stock (common stock) issued by the institution. Contributed capital in excess of par value net of the cost of issuing stock is to be reported on Line C030 (Contributed Capital). The par value of treasury stock (stock reacquired by the institution) must be deducted from this line to obtain the outstanding stock of the institution (that amount issued to others). If the par value of common stock issued is less than $500, report "1" on this line to indicate that it is not zero.

**Line C030 - Contributed Capital**

Report paid-in capital in excess of par value net of the cost of issuing stock. Generally, paid-in capital arises from the sale of common stock for an amount in excess of par value. Deduct

APP. 1304

## REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES (Cont'd)

### Line C030 - Contributed Capital (Cont'd)

from this line the amount paid for stock reacquired by the institution (treasury stock) in excess of its par value; however do not reduce this line to a negative amount; any amount in excess of the available contributed capital should be deducted from Line C115 (Retained Earnings). Also includable on this line are (1) capital contributions by the stockholders and/or holding company not related to the purchase of stock; and (2) permanent capital contributions by the FSLIC not in the form of the capital instruments reportable on Lines C070 thru C090.

### Line C040 - Qualifying Mutual Capital Certificates

Report on this line all outstanding mutual capital certificates that qualify as equity capital. Nonqualified mutual capital certificates must be included on Line B180 (Other Liabilities). Refer to Regulation 563.7-4.

### Line C050 - Qualifying Subordinated Debentures

Enter debt claims represented by subordinated debentures issued by the institution that qualify for inclusion in regulatory capital in accordance with Regulation 561.13. Accrued interest payable is reportable on Line B110 (Accrued Interest Payable). Interest expense on subordinated debentures is reportable on Line E190 (INTEREST CHARGES ON: Subordinated Debentures).

### Line C060 - Appraised Equity Capital

Report on this line the excess of appraised value over (1) net book value of office land, buildings and improvements, and eligible leasehold improvements, owned by the insured institution or any of its subsidiaries; and (2) the deferred profit from a sale with leaseback of formerly owned office properties. The amount entered on this line must equal the sum of Lines A430 and A500 (Appraisal Increment). The appraised value is equal to the "one time only" appraisal permitted by the Principal Supervisory Agent as provided for in Regulation 563.13(c). The portion of appraised equity capital attributable to unamortized deferred profit includes only that allowable under Regulation 563.13(c) and must be adjusted to reflect the current level of unamortized deferred profits. The amount reported on this line must be reduced for sales, other dispositions, and the aforementioned amortization of deferred profits.

### Line C070 - Net Worth Certificates

Include on this line Net Worth Certificates (NWCs) issued to the FSLIC.

APP. 1305

## REGULATORY CAPITAL EXCLUDING GENERAL LOAN-LOSS RESERVES (Cont'd)

### Line C080 - Accrued Net Worth Certificates

Enter on this line accruals for net worth certificates to be issued at the end of the current reporting period. Only those institutions that have received written assurances of NWC purchases from their Supervisory Agent may make such accruals.

### Line C090 - Income Capital Certificates

Include on this line Income Capital Certificates (ICCs) issued to the FSLIC.

### Line C115 - Retained Earnings

Report on this line all accumulated retained earnings of the institution. Retained earnings represent the accumulated net income of the institution since its inception, reduced by distributions to its shareholders and holders of other capital instruments and amounts transferred to contributed capital.

Include the following:

1. Net income from interim periods of operation prior to closing the institution's books (undistributed income);
2. Unallocated retained earnings from prior operating periods of which the institution's books are closed;
3. Reserves (allocations) of retained earnings set aside to absorb losses or contingencies;
4. Restrictions or appropriations of retained earnings that have been designated as such by the institution's board of directors;
5. Items credited to the discontinued Federal Insurance Reserve (FIR) account that still may be designated as restricted retained earnings.

**General Loan-Loss Reserves** -- Pursuant to Regulation 561.13(a) effective January 1, 1987, general loan-loss reserves (allowances) are included in the calculation of regulatory capital. The general loan-loss reserves referred to in the regulation should not be confused with FIR or other general reserves established through allocations of retained earnings. They refer only to valuation

TITLE 12--BANKS AND BANKING
Chapter V--Federal Home Loan Bank Board
Subchapter D--Federal Savings and Loan Insurance Corporation
Part 561--Definitions

s 561.13 Regulatory capital.

(a) The term "regulatory capital" means the sum of all reserve accounts, retained earnings, permanent common stock, permanent preferred stock, nonpermanent preferred stock issued prior to July 23, 1985, mutual capital certificates (issued pursuant to § 563.7-4 of this subchapter), securities which constitute permanent equity capital in accordance with generally accepted accounting principles (if approved by the Corporation), appraised equity capital (as defined in § 563.13(c) of this subchapter), allowances for loan losses except specific allowances, (including those specific allowances established pursuant to § 561.16c, 563.17-2, and 571.1a of this subchapter) and any other nonwithdrawable accounts of an insured institution (excluding any Treasury shares held by the insured institution): Provided, that for any nonpermanent instrument qualifying as regulatory capital under this paragraph, either.

(a)(1) The remaining period to maturity or required redemption (or time of any required sinking fund or other prepayment or reserve allocation, with respect to the amount of such prepayment or reserve) is not less than one year, or

(a)(2) The redemption or prepayment is only at the option of the issuing insured institutions and such payments would not cause the insured institution to fail or continue to fail to meet its regulatory capital requirement under § 563.13 of this subchapter; and Provided further, that capital stock may be included as regulatory capital without limitation if it would otherwise qualify but for either:

(a)(2)(i) A provision permitting redemption, in the event of a merger, consolidation, or reorganization approved by the Corporation where the issuing institution is not the survivor, or

(a)(2)(ii) A provision permitting a redemption where the funds for redemption are raised by the issuance of permanent stock.

(b) The term "regulatory capital" also includes the sum of outstanding net worth certificates issued in accordance with Part 572 of this Subchapter or which the Corporation is committed to purchase by virtue of § 572.1(c).

(c)(1) The term "regulatory capital" also includes subordinated debt securities issued pursuant to § 563.8-1 of this subchapter: Provided, that an institution whose application to include subordinated debt in regulatory capital pursuant to § 563.8-1 was approved prior to December 5, 1984, shall be permitted to continue to include 100 percent of the principal amount of such subordinated debt as regulatory capital until the remaining period to maturity (or time of any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

required sinking fund or other prepayment or reserve allocation, with respect to the amount of such prepayment or reserve) is less than one year; Provided further, that an institution that had filed a substantially complete application pursuant to § 563.8-1 prior to December 5, 1984, shall be permitted to include 100 percent of the subordinated debt issued pursuant to such application as regulatory capital until the remaining period to maturity (or time of any required sinking fund or other prepayment or reserve allocation, with respect to the amount of such prepayment or reserve) is less then one year if such subordinated debt otherwise is in compliance with the requirements of § 563.8-1 and if such application is not amended in any material respect subsequent to December 5, 1984; and Provided further, that except as otherwise provided in this paragraph (c)(1) and unless otherwise approved by the Corporation in writing, subordinated debt securities issued pursuant to § 563.8-1 after December 5, 1984, may be included as regulatory capital only in accordance with the following schedule:

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE

(c)(2) For purposes of determining the principal amount outstanding of an obligation issued at a discount which exceeds 10 percent of the face amount, the issuing institution shall treat as principal only the gross consideration actually received upon issuance plus the accured interest not payable until maturity, as of the date of the computation. In the case of an instrument sold at a discount which exceeds 10 percent and which bears no stated rate of interest, the amount which can be added to principal each period is an amount equal to the accured interest payable computed on the "level-yield" or "interest" method.

(c)(3) For purposes of computing the amount of subordinated debt includable as regulatory capital pursuant to this paragraph, the issuing institution must determine the effective maturity of each portion of the principal amount outstanding of the subordinated debt which is subject to required sinking-fund payments, other required prepayments and required reserve allocations, and calculate the percentage amount of each portion of the principal amount outstanding which may be included pursuant to the schedule set forth in this paragraph.

(d) The term "regulatory capital" also includes:

(d)(1) Preferred stock that is redeemable at the option of the issuer (1) which was issued prior to July 23, 1985, or (ii) which was issued after July 23, 1985: Provided, that the form of the security was approved prior to issuance pursuant to § 563.1 of this subchapter and states that no redemption may be made by the issuing insured institution if, after giving effect to such redemption, the insured institution would fail to meet its regulatory capital requirement under § 563.13 of this subchapter;

(d)(2) Mandatorily redeemable preferred stock which (i) was issued prior to July 23, 1985, or (ii) was issued pursuant to § 563.7-5 of this subchapter, after July 23, 1985, was approved as to its form prior to issuance pursuant to § 563.1 of this subchapter, and was approved in writing by the Corporation for inclusion as regulatory capital, before or after its issuance, pursuant to § 563.7-5: Provided, that unless otherwise approved by the Corporation in writing, mandatorily redeemable preferred stock issued after July 23, 1985, may be included

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

as regulatory capital only in accordance with the schedule set forth in paragraph (c)(1) of this section and consistent with the provisions of paragraphs (c) (2) and (3) of this section.

(e) Notwithstanding paragraphs (a), (b), (c) and (d) of this section, the term "regulatory capital" does not include any capital instrument or security which may be included as regulatory capital pursuant to any of those paragraphs if such capital instrument or security is held by a service corporation or other subsidiary, regardless of the organizational form of that entity, in which the insured institution directly or indirectly, (i) owns, controls, or holds with power to vote, or holds proxies representing, ten per cent or more of the voting shares or rights, or (ii) invested or contributed more than ten per cent of such entity's capital, unless regulatory capital inclusion is specifically approved by the Corporation in writing.

(f) Unless the context indicates otherwise, the term "regulatory capital" whenever used in this subchapter shall mean "regulatory capital" as defined in this section, except that the term as used in § 563.8-4 shall not include items permitted to be used pursuant to § 563.13(c).

[38 FR 6058, Mar. 6, 1973, as amended at 45 FR 50720, July 31, 1980; 45 FR 82158, Dec. 15, 1980; 46 FR 50052, Oct. 9, 1981; 47 FR 52965, Nov. 24, 1982; 47 FR 58225, Dec. 30, 1982; 48 FR 8257, Feb. 28, 1983; 50 FR 6909, Feb. 19, 1985; 50 FR 20553, May 17, 1985; 50 FR 46742, Nov. 13, 1985; 51 FR 33584, Sept. 22, 1986]

Authority: Sec. 10, 47 Stat. 725, as amended (12 U.S.C. 1421 et seq.); sec. 5A, 47 Stat. 727, as added by sec. 1, 64 Stat. 256, as amended (12 U.S.C. 1425a); sec. 4, 80 Stat. 824, sec. 17, 47 Stat. 736, as amended (12 U.S.C. 1425b and 1437); sec. 2, 48 Stat. 128, as amended (12 U.S.C. 1462); sec. 5, 48 Stat. 132, as amended (12 U.S.C. 1464); sec. 202, 96 Stat. 1489, as amended (12 U.S.C. 1729(f)); secs. 401-407, 48 Stat. 1255-1260, as amended (12 U.S.C. 1724-1730); sec. 408, 82 Stat. 5, as amended (12 U.S.C. 1730a); Reorg. Plan No. 3 of 1947, 12 FR 4981, 3 CFR, 1943-1948 Comp., p. 1071.

Source: 50 FR 53281, Dec. 31, 1985; 51 FR 10817, March 31, 1986; 51 FR 33584, Sept. 22, 1986, unless otherwise noted.

12 CFR s **561.13**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# STERLING SAVINGS ASSOCIATION

## FISCAL 1989 BUSINESS PLAN UPDATE
## TO INCLUDE THE ACQUISITION OF
## CENTRAL EVERGREEN SAVINGS AND LOAN ASSOCIATION

AUGUST 15, 1988

EXHIBIT
DAVID STOREY
STOREY & MILLER



0142173
SG
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG0291122

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

## I. SCOPE:

The Fiscal 1989 Business Plan reflects Sterling's goals and operating strategies for the year ending June 30, 1989. The purpose of this document is to update pertinent sections of that plan to address specific growth opportunities and expand the financial projections from fiscal 1989 to fiscal 1991.

## II. STERLING'S FISCAL 1989 OPERATING PLAN--OVERVIEW:

Sterling's Operating Plan for Fiscal 1989, which is included as Attachment D, incorporates four long-range goals which have influenced its strategies throughout the course of the year. These goals are:

a. To maintain the independence of the company;

b. To identify as a community bank specializing in real estate finance in the Pacific Northwest;

c. To maintain a leadership role in the financial community;

d. To enhance the value for stockholders by providing such things as consistent quality earnings and the means for greater marketability for Sterling's stock.

There are several major themes incorporated in the Fiscal 1989 Operating Plan. These themes address:

1. Major growth through acquisition is ignored for budget purposes. It is anticipated that at least one branch, de novo or acquired, will be added during the year. Additionally, five subsidiary company loan production offices are budgeted to be opened, principally in Idaho.

2. Increase in total assets to approximately $500 million.

3. Dedication to increasing return on assets (ROA) to .40% (post FASB 91 implementation), while maintaining regulatory net worth in excess of 4% of total assets, respectively.

4. Maintaining operating costs at 1.90%-2.00% of total assets.

5. Expansion of the planning process.

6. Development of management, the organization, and the management information systems.

7. Expansion of lending and secondary market activities through the expanded usage of mortgage banking subsidiary companies. The loan origination goal, for Sterling and its subsidiaries, was established at approximately $284 million with the mix being distributed as approximately 64% residential real estate, 24% commercial real estate, and 12% construction.



SG 0142174
"Confidential Material - Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1123

8. Continued high emphasis on asset and liability function with greater tolerance of maturity mismatch than in prior years. With reasonable flexibility provided, the goal is to remain between 10% and 15% negative A/L gap.

III. THE IMPACT OF CENTRAL EVERGREEN ACQUISITION:

Central Evergreen Savings and Loan Association ("Central Evergreen") is approximately $255 million in total assets, representing a ten branch delivery system located in western Washington along the I-5 corridor. Adding Central Evergreen to Sterling provides economy of scale in a number of functions such as special assets, data processing, and operations. Central Evergreen has a well developed residential lending function which would enhance Sterling's origination capability. Central Evergreen's depository locations provide a stable and cost effective source of deposits and have potential to grow and increase in market share. While Central Evergreen has experienced financial difficulty in the past due to problem loans and a deteriorating net interest rate spread, the institution has dealt with its problems, controlled its operating costs and has returned to profitability.

Sterling's analysis is that Central Evergreen's operations, staff, and systems are compatible with Sterling. Both are on ISC equipment and utilize Fiserv for data processing services with similar products. With Central Evergreen's familiarity of the ISC equipment, the conversion should be transparent to the customer.

The operations of Central Evergreen will be conducted as part of the Western Region of Sterling Savings. Accordingly, the following specific measures will be implemented:

1. Consolidation of the head office activities into the Sterling management in Spokane, thus providing standardization and acceptable level of internal controls as well as consistent policy and procedures companywide and effective asset and liability management.

2. Conversion of the data processing activities of Central Evergreen into the Sterling system which is presently utilizing the service bureau, Fiserv, Inc., thus providing a homogeneous system for general ledger income and expense controls, fixed assets, and savings and investment activities. Since Fiserv currently provides data processing services to Central Evergreen, conversion will be relatively easy.

3. Implementation of a program to infuse GAAP capital of $5 million during the three to six month period following the closing date. In our discussions with several underwriters, including Ed D. Jones; Piper, Jaffray and Hopwood, Inc.; and Gallagher and Associates, we are told that it is feasible to sell stock in either a public or community offering, depending on the timing. However, their recommendation is that we should consolidate first and then go to the market.

   Sterling's management is committed to infusing capital and has received non-binding expressions of interest to purchase a preferred stock product similar to Sterling $2.50 Cumulative Convertible Preferred Stock - Series B. Mr. Harold B. Gilkey, Chairman of the Board and C.E.O., and Mr. William W. Zuppe, President and C.O.O., have indicated an interest for this preferred stock of approximately

$250,000 and $100,000, respectively. Sterling's directorate and management has expressed an interest for an additional $100,000 and $215,000, respectively. Existing shareholders have expressed an interest for an additional $85,000 of this preferred stock. Further, Central Evergreen's directorate and senior management has expressed an interest for approximately $200,000. Additionally, approximately $300,000 of preferred stock is expected to be sold to senior management and employees as a result of IRA rollovers from the terminated Central Evergreen profit sharing plan. These expressions of interest total $1,250,000 or one-quarter of the total preferred stock committed for sale.

Sterling has experience in the sale of preferred stock through a community offering completed June 30, 1987. As part of this offering, Sterling's management and directors purchased 15% of the stock. It can be expected that this ratio of stock sold to insiders would be attained on future offerings and based upon the indicated interest of insiders, management is confident that at least $5 million can be raised.

Sterling intends to begin its offering circular application to sell this preferred stock product immediately upon completion of acquisition accounting and reporting, which we anticipate will take 30-60 days. At such time as this product is available, Sterling will solicit from those individuals who have expressed an interest in the preferred stock. The success of future offerings will require market timing and the support from OSC in Washington, D.C. to eliminate delays experienced in the past.

4. Central Evergreen appears to have identified their problem assets and under the direction of George Godding, have an action plan already in process to reasonably manage these special assets. As part of Sterling's due diligence function, it appears that the concern for problem assets has been appropriately addressed, and that all problem assets have been identified.

   Upon consolidation, the special assets function will be transferred to Mr. Greg Leland in order to centralize the management of delinquencies, troubled assets, real estate in foreclosure and in judgment. The manageeent of the special asset function will be coordinated with Mr. George Godding to ensure the workout of the special assets if within the level of reserves established. We don't anticipate additional staffing requirements to effectively manage Central Evergreen's special assets.

5. We anticipate the consolidation of the depository branches in Chehalis but may retain the other building for a loan production office, subject to a market analysis and an alternative use analysis for one or the other building. Further, should Sterling be unable to market a reasonable amount of capital, management would consider the sale of additional branches to improve the net worth position.

6. George Godding of Central Evergreen would become Sterling's Western Regional Manager. George Godding has over 25 years in the savings and loan industry and is a qualified and experienced real estate lender. By assuming the responsibility for the Western Region, Mr. Godding will be able to concentrate on loan origination activity, complementing the activities of Sterling's mortgage banking function. Diane Rasmusson, Sterling's current Southwestern Regional Manager in Chehalis, would become the Western Region's Operations Manager.



SG 0142176
"Confidential Material – Subject to Protective Order"
APP 1313
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1125

7. A review of the existing staffing at each location to assure that adequate numbers of properly trained people are in place. It is envisioned that there will be some staff reductions where duplication is identified. Certain key staff may be transferred to Spokane or elsewhere in the branch system. We do anticipate two directors of Central Evergreen, Messrs. Alverson and Fugate, will be added to Sterling's Board.

8. The implementation of a marketing plan to inform and encourage existing customers to continue their banking relationships with Sterling as well as seek out new customers in the area. This process is similar to the process performed shortly after the acquisition of Lewis Federal Savings and Loan Association. The marketing plan promoted the theme of "Hometown Helpful," provided adequate media coverage, and appropriate introductions of key staff to various community functions.

   As a result of the efforts in its prior acquisition, Sterling experienced no loss of deposits following the acquisition and has been successful in increasing deposits. For example, deposits have increased in Chehalis from $48.2 million to $53.1 million. With the success already experienced in Lewis County, Sterling is viewed as a very positive force in the community. Therefore, we believe the merger of Central Evergreen into Sterling would be viewed in a positive fashion.

9. The implementation in the Western Region of Sterling's existing array of products and services, including residential, commercial income property and consumer lending, as well as our full range of deposit products and "The Exchange" ATM network.

10. The implementation of appropriate internal controls and management systems to monitor the activities of the branches and subsidiary companies acquired from Central Evergreen.

11. To accomplish this supervisory conversion, no cash or other assistance from FSLIC will be requested. Additionally, Sterling believes forbearances or special accounting methods will not be necessary to make this supervisory conversion work.

12. Sterling intends to comply with all regulatory accounting methods and will not request special methods. For example, the deferred loan loss treated as an asset by Central Evergreen will be eliminated. The intangible asset created as a result of this conversion represents goodwill and will comply with the provisions of Statement for Financial Accounting Standards #72--"Accounting for Certain Acquisitions of Banking or Thrift Institutions" and the Accounting Principles Board's Opinion #16--"Business Combinations." This intangible asset results principally as a result of writing off the deferred loan loss, "marking" the loan and investment portfolios to market and providing adequate loan loss reserves. In our projections, we have calculated amortization of the intangible asset pursuant to GAAP using the interest method and an estimated average life of thirteen years. Again, we do not intend to request a special method such as the 25-year straight line method.



0142177
SG "Confidential Material – Subject to Protective Order"
APP. 1314
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1126

Sterling believes it can integrate Central Evergreen in an orderly fashion in a reasonable time frame. Our management team is experienced in merger and acquisition transactions and appropriate resources have been anticipated to ensure a successful integration.

The financial projections indicate that the supervisory conversion of Central Evergreen is economically viable. We believe we have established an appropriate plan to deal with our concern for a high level of non-earning assets. Initially, these non-earning assets will reduce Sterling's earning capability. For example, return on average assets (ROA) declines to .24% at June 30, 1989. The ROA increases to .38% by June 30, 1990 and to .58% by June 30, 1991. The improvement in ROA is a result of several factors.

First, the net interest rate spread improves from 1.92% during fiscal year 1989 to 2.23% during fiscal year 1991. The improvement in spread is achieved through increased earning assets in part resulting from a moderate liability growth plan, and in part through a reduction of non-earning assets. The reduction in non-earning assets is achieved through a combination of dealing with special assets and reduction of intangible assets through amortization and utilization of net operating loss carryforwards.

Secondly, increased markets and appropriate organization structure provide for increased lending and fee income generation. This increased income results from Sterling's subsidiary residential and commercial real estate mortgage banking functions, added to the critical mass of a branch system along the I-5 corridor between Seattle, Washington and Portland, Oregon, and a plan for expansion in the Idaho marketplace. Management believes the goals and results expressed in the projection are achievable based upon our prior accomplishments.

Finally, operating expenses can be controlled because the size of the company provides for certain economies of scale through specialization and elimination of duplicated functions. Fewer, but more effective, resources can be employed to deal with some functions when performed for the consolidated entity, compared to the separate companies, such as management of special assets, data processing, branch administration, loan servicing, accounting and audit expenses.

Sterling has additionally considered the asset and liability structure from a GAP management perspective. Our estimates indicate that upon consolidation of Sterling and Central Evergreen, the liability mismatch at the one-year and three-year repricing intervals would be 15% and 18%, respectively. This level is within reasonable tolerance of Sterling's Asset and Liability Committee's objectives and guidelines approved by Sterling's Board of Directors, which is to maintain these ratios between 5% and 25%.

The effect of the consolidation and the financial projection discussed above are attached hereto as Attachment A. The projection reflects management's estimates to carry out the plan to acquire Central Evergreen. Sterling has considered strategic alternatives to this plan which could be employed should certain events not occur as projected. For example, to enhance profitability and increase regulatory capital, a risk controlled arbitrage could be implemented and unwound within a three to five year period. This could add approximately $1.5 million per year based upon a



0142178
SG
Confidential Material – Subject to Protective Order
APP. 1315
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1127

$100 million arbitrage. Alternatively, the balance sheet could be reduced by a sale of branches. This could increase regulatory capital by approximately 2% of deposits sold. Additionally, other assets would be considered for sale, if necessary, to achieve the success of this conversion.

## V. SUMMARY:

Sterling believes that merging with Central Evergreen, pursuant to a supervisory conversion, is a viable transaction. The merger will save operating costs, will enhance loan origination goals, and help make Sterling more competitive throughout the state, thereby enhancing value to our shareholders, and service to customers will not be disrupted.

As a result of the merger, consolidated regulatory net worth would be approximately 3.4% of total assets. Sterling's Board has directed management to find ways to infuse additional capital, and management believes that $5 million can be raised. While this capital addition is anticipated three to six months after the merger, it will increase regulatory net worth to approximately 4.13%.

FSLIC incurs no cost in approving this supervisory conversion.



SG 0142179
"Confidential Material – Subject to Protective Order"
APP. 1316
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG0291128

STERLING SAVINGS ASSOC...ION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

INDEX



| | Page |
|---|---|
| ATTACHMENT A | A-1 to A-8 |
| Consolidation of Sterling Savings Association and Central Evergreen Federal Savings and Loan Association with Preferred Stock: | |
| - Executive Summary and Assumptions | |
| - Financial Projection | |
| ATTACHMENT B | B-1 to B-7 |
| Consolidation of Sterling Savings Association and Central Evergreen Federal Savings and Loan Association without Preferred Stock: | |
| - Executive Summary and Assumptions | |
| - Financial Projection | |
| ATTACHMENT C | C-1 |
| Loan Production Forecast | |
| ATTACHMENT D | |
| 1989 Business Plan | |





SG 0142180 -
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1129

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

# ATTACHMENT A

Executive Summary and Financial Projection:

Consolidation of Sterling and Central Evergreen
with Infusion of $5 Million Preferred Stock

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

## EXECUTIVE SUMMARY

Consolidation of Central Evergreen, and Sterling on September 30, 1988. This projection assumes $5 million of convertible preferred stock has been issued by June 30, 1989. The dividend rate is $2.50 (equivalent to a 10% non-compounded yield). The assumptions used are conservative and require no extraordinary events.

## Consolidation Results of Projection

On the date of the acquisition, consolidated assets are $706 million. Growth in the balance sheet approximates 6% to 9% annually. At the end of the projection, consolidated assets are $840 million. Regulatory net worth at the date of acquisition is 3.4% of total assets.

Non-earning assets represent 11.3% of the balance sheet at the date of acquisition but decrease to 5.6% at the end of the projection. This occurs due to reduction of special assets and reduction of intangible assets through amortization and utilization of $8 million of net operating losses during the projection period.

Net income is $1,341,000, $2,885,000, and $4,261,000 during fiscal 1989, 1990 and 1991, respectively. This represents return on average assets of approximately .23% during fiscal year 1989, which increases to approximately .53% during fiscal 1991. The combination of increased lending activities, containment of costs, and increase in spread contribute to this improvement in return on average assets.

The net interest rate spread as a percentage of total earning assets increases from approximately 2.02% for the first full quarter following consolidation (December 1988) to approximately 2.29% in the last quarter of the projection period. The increase in net interest rate spread is principally due to the incremental increase of net spread on new assets and the reduction in the level of non-earning assets.

## General Assumption

This financial projection assumes that Central Evergreen and Sterling are combined on December 31, 1988. Five million dollars of preferred stock is raised through a community offering and completed on June 30, 1989. Additional capital formation occurs principally through earnings. Interest rates assumed in this projection are the same as those outlined on Exhibit B (pages B-4 and B-5) of the Business Plan for Fiscal 1989, included as Attachment D. Liability growth increases at approximately 6% to 9% annually. The effects of implementing FASB 91, Accounting for Loan Fees, are built into the projections for both Sterling and Central Evergreen.

## Specific Assumptions

A. Sterling

The operations of Sterling are assumed to be approximately the same as in its Fiscal 1989 Operating Plan, adjusted only for a reduction in asset and liability growth by approximately $30 million.





SG 0142182
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1131

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

B. Central Evergreen

The operations of Central Evergreen are assumed to be relatively unchanged from its current level of activity with the following exceptions:

1. The head office function is consolidated in Spokane.

2. The lending function continues to concentrate on residential loan production. The level of loan originations increase slightly to approximately $95 million annually.

3. Operating costs reflect a net reduction of approximately $500,000 for duplicated functions and for economics of scale resulting from consolidation.

4. Added emphasis is given to sale of consumer insurance products which adds some revenue enhancement on a consolidated basis.

6. Intangible assets of $20.9 million are created principally as a result of eliminating Central Evergreen's deferred loan losses, establishing reserves for additional loan losses and writing down certain investments to current market. The intangible assets are amortized using the level-interest method over the estimated live of the loan portfolio, net of prepayments, or 12 years.

Utilization of net operating loss carryforwards of $8 million are expected to reduce intangible assets by approximately $2.8 million by the end of the projection period:

| Year Ending June 30, | NOL's Utilized | Tax Effect @ 34% |
|---|---|---|
| 1989 | $1,100,000 (1/2 year) | $ 374,000 |
| 1990 | 3,000,000 | 1,020,000 |
| 1991 | 4,000,000 | 1,360,000 |
| | $8,100,000 | $2,754,000 |

Approximately $14 million net operating loss carryforward would remain unused.





SG 0142183
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1132

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1989

| ASSETS | PROJECTED 1st QTR SEPTEMBER | PROJECTED 2nd QTR DECEMBER | PROJECTED 3rd QTR MARCH | PROJECTED 4th QTR JUNE |
|---|---|---|---|---|
| CASH | $5,692,369 | $8,989,748 | $9,246,100 | $3,053,276 |
| INVESTMENTS | 27,000,000 | 53,240,000 | 56,240,000 | 59,240,000 |
| LOANS RECEIVIABLE | 304,247,755 | 485,206,562 | 486,869,132 | 497,160,565 |
| MORTGAGE-BACKED SECURITIES | 60,000,000 | 73,326,000 | 76,399,260 | 84,473,253 |
| INVESTMENT & ADVANCES TO AFFILIATE | 14,677,810 | 16,685,997 | 16,684,486 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,300,000 | 3,375,000 | 3,450,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 5,550,000 | 10,764,000 | 10,839,000 | 11,089,000 |
| INTANBIBLE ASSETS | 18,825,359 | 39,362,609 | 38,535,859 | 37,335,109 |
| REAL ESTATE OWNED | 5,456,000 | 9,974,000 | 7,904,000 | 7,249,000 |
| PREPAID & OTHER ASSETS | 300,000 | 5,098,000 | 5,098,000 | 5,098,000 |
| TOTAL ASSETS | $445,049,293 | $706,021,916 | $711,265,837 | $725,006,379 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 302,975,100 | 528,084,500 | 532,977,935 | 542,523,430 |
| ADVANCES FROM FHLB | 55,300,000 | 85,900,000 | 85,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 50,000,000 | 51,000,000 | 50,000,000 | 52,000,000 |
| FED FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 3,600,000 | 3,750,000 | 3,900,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 540,000 | 600,000 | 660,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,300,000 | 1,200,000 | 1,800,000 | 1,700,000 |
| DEFERRED TAXES | 384,200 | 620,800 | 987,000 | 1,471,100 |
| DEFERRED INCOME | 239,600 | 261,908 | 253,967 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 1,000,000 | 4,086,000 | 4,086,000 | 4,096,000 |
| TOTAL LIABILITIES | 421,738,900 | 681,903,208 | 686,864,902 | 695,093,513 |
| **STOCKHOLDERS' EQUITY** GROWTH | | 4.75% | 62.86% | 1.93% |
| CAPITAL STOCK | 468,996 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 90,168 | 90,168 | 90,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,186,029 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 2,050,111 | 2,050,111 | 2,050,111 | 6,950,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 1,662,932 | 1,606,577 | 1,550,222 | 1,493,867 |
| UNDIVIDED PROFITS - CURRENT | 132,155 | 434,040 | 772,622 | 1,340,909 |
| TOTAL EQUITY | 23,310,393 | 24,118,708 | 24,400,935 | 29,912,867 |
| TOTAL LIABILITIES AND EQUITY | $445,049,293 | $706,021,916 | $711,265,837 | $725,006,379 |
| RAP LEVERAGE | 5.238% | 3.416% | 3.431% | 4.126% |
| GAAP LEVERAGE | 2.155% | 1.473% | 1.502% | 2.233% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.230% | 5.575% | 5.419% | 5.150% |

A





SG 0142184
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1133

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1989

| INTEREST INCOME | 1st QTR SEPTEMBER | 2nd QTR DECEMBER | 3rd QTR MARCH | 4th QTR JUNE | TOTAL |
|---|---|---|---|---|---|
| LOANS | $7,823,180 | $8,048,579 | $12,671,522 | $13,282,827 | $41,826,108 |
| MBS | 1,184,257 | 1,479,965 | 1,765,284 | 1,828,049 | 6,257,555 |
| INVESTMENTS | 691,384 | 603,419 | 1,086,923 | 1,225,290 | 3,607,016 |
| INVESTMENT IN AFFILIATE | 185,378 | 240,296 | 273,206 | 278,372 | 977,252 |
| LOAN DISCOUNT | 45,000 | 45,000 | 57,000 | 57,000 | 204,000 |
| TOTAL INTEREST INC. | 9,929,199 | 10,417,259 | 15,853,934 | 16,671,539 | 52,871,931 |
| INTEREST EXPENSE | | | | | |
| DEPOSITS | 5,427,886 | 5,588,914 | 9,912,471 | 10,504,905 | 31,434,176 |
| BORROWINGS | 2,078,099 | 2,241,158 | 2,902,914 | 2,991,115 | 10,213,286 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 7,508,984 | 7,833,072 | 12,818,385 | 13,499,020 | 41,659,462 |
| NET INT. SPREAD | $2,420,215 | $2,584,187 | $3,035,549 | $3,172,519 | $11,212,470 |
| OTHER INC. (EXP.) | | | | | |
| LOAN & COMMITMENT FEES | 90,000 | 93,000 | 106,000 | 109,000 | 398,000 |
| OTHER FEES | 206,666 | 213,519 | 321,270 | 317,192 | 1,058,647 |
| SERVICE INCOME | 67,500 | 81,000 | 94,500 | 108,000 | 351,000 |
| SERVICE CORP | (188,441) | 12,521 | 126,086 | 318,912 | 268,978 |
| RESERVE FOR LOANS & REO LOSSES | (150,000) | (150,000) | (100,000) | (100,000) | (500,000) |
| GAIN (LOSS) ON INVESTMENT | 37,500 | 37,500 | 43,500 | 43,500 | 162,000 |
| GAIN (LOSS) ON LOAN SALES | 0 | 0 | 315,000 | 352,500 | 667,500 |
| OTHER INCOME (EXPENSE) | 3,000 | 3,000 | 176,000 | 176,000 | 358,000 |
| TOTAL OTHER INCOME | 66,225 | 290,540 | 1,082,356 | 1,325,004 | 2,764,125 |
| OPERATING EXP. | | | | | |
| PERSONNEL | 826,193 | 908,122 | 1,048,387 | 1,059,896 | 3,842,598 |
| COMMUNICATIONS | 88,530 | 88,980 | 136,505 | 138,845 | 452,860 |
| ADVERTISING | 60,698 | 50,748 | 82,698 | 98,298 | 292,442 |
| TRAVEL & ENTERTAINMENT | 64,890 | 75,817 | 87,860 | 72,476 | 301,043 |
| OFFICE SUPPLIES | 77,339 | 77,439 | 108,489 | 109,439 | 372,706 |
| INSURANCE | 174,900 | 178,800 | 324,200 | 330,800 | 1,008,700 |
| DATA PROCESSING | 183,445 | 198,020 | 311,945 | 308,020 | 1,001,430 |
| TAXES AND LICENSES | 48,325 | 52,530 | 100,655 | 108,120 | 309,630 |
| LEGAL & ACCOUNTING | 63,800 | 59,800 | 66,325 | 66,300 | 256,225 |
| OCCUPANCY | 183,421 | 186,066 | 262,136 | 263,794 | 895,417 |
| DEPREC./AMORT. | 406,565 | 414,227 | 929,627 | 934,327 | 2,684,746 |
| OTHER | 101,842 | 102,492 | 129,807 | 127,732 | 461,863 |
| TOTAL OPERATING EXP. | 2,279,948 | 2,403,031 | 3,588,634 | 3,608,047 | 11,879,660 |
| NET INC (LOSS) BEFORE TAX | $206,492 | $471,696 | $529,271 | $889,476 | $2,096,935 |
| TAX (PROVISION) BENEFIT | (74,337) | (169,811) | (190,689) | (321,190) | (756,026) |
| NET INC (LOSS) | $132,155 | $301,885 | $338,582 | $568,287 | $1,340,909 |
| PREFERRED DIVIDEND | 56,355 | 56,355 | 56,355 | 56,355 | 225,420 |
| EARNINGS AVAILABLE TO COMMON | $75,800 | $245,530 | $282,227 | $511,932 | $1,115,489 |
| YIELD ON EARNING ASSETS | 7.838% | 8.169% | 9.947% | 10.336% | 9.084% |
| COST OF SAVINGS AND BORROWINGS | 5.611% | 5.965% | 7.569% | 7.991% | 6.990% |
| SPREAD DIFFERENCE | 2.227% | 2.304% | 2.378% | 2.346% | 2.204% |
| SPREAD ON AVG EARNING ASSETS | 1.911% | 2.026% | 1.905% | 1.967% | 1.926% |



SG 0142185
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1134

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1990

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $2,667,058 | $3,695,933 | $6,467,307 | $7,017,625 |
| INVESTMENTS | 60,290,000 | 61,371,500 | 62,485,445 | 63,632,808 |
| LOANS RECEVIABLE | 504,524,985 | 512,916,486 | 521,255,828 | 533,223,186 |
| MORTGAGE-BACKED SECURITIES | 88,147,985 | 90,491,465 | 92,903,740 | 95,386,858 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,783,177 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 36,497,041 | 35,658,973 | 34,820,905 | 32,962,836 |
| REAL ESTATE OWNED | 6,499,000 | 5,749,000 | 4,999,000 | 4,249,000 |
| PREPAID & OTHER ASSETS | 4,998,000 | 4,998,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $735,021,246 | $746,078,535 | $759,127,402 | $772,667,491 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 551,977,248 | 562,509,402 | 575,056,412 | 588,024,715 |
| ADVANCES FROM FHLB | 81,900,000 | 91,900,000 | 91,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 52,000,000 | 52,000,000 | 52,000,000 | 52,000,000 |
| FED.FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,050,000 | 4,050,000 | 4,050,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 720,000 | 720,000 | 720,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,700,000 | 1,700,000 | 1,700,000 | 1,700,000 |
| DEFERRED TAXES | 1,471,100 | 1,471,100 | 1,471,100 | 1,471,100 |
| DEFERRED INCOME | 242,983 | 242,983 | 242,983 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,086,000 | 4,086,000 | 4,086,000 | 4,086,000 |
| TOTAL LIABILITIES | 704,547,331 | 715,079,485 | 727,626,495 | 740,594,798 |
| **STOCKHOLDERS' EQUITY** GROWTH | 2.57% | 2.88% | 3.28% | 3.57% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 290,168 | 290,168 | 290,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 6,850,111 | 6,850,111 | 6,850,111 | 6,850,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 2,653,421 | 2,472,066 | 2,290,711 | 2,109,356 |
| UNDIVIDED PROFITS - CURRENT | 742,403 | 1,448,993 | 2,132,105 | 2,885,246 |
| TOTAL EQUITY | 30,473,915 | 30,999,050 | 31,500,907 | 32,072,693 |
| TOTAL LIABILITIES AND EQUITY | $735,021,246 | $746,078,535 | $759,127,402 | $772,667,491 |
| RAP LEVERAGE | 4.146% | 4.155% | 4.150% | 4.151% |
| GAAP LEVERAGE | 2.279% | 2.316% | 2.342% | 2.375% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.965% | 4.780% | 4.587% | 4.266% |





SG 0142186
Confidential Material – Subject to Protective Order
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1135

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1990

| | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | $13,665,869 | $13,301,287 | $12,905,748 | $12,975,491 | $52,848,395 |
| MBS | 2,193,555 | 2,132,375 | 2,093,506 | 2,114,643 | 8,534,079 |
| INVESTMENTS | 1,288,104 | 1,247,909 | 1,205,260 | 1,202,237 | 4,943,511 |
| INVESTMENT IN AFFILIATE | 259,174 | 233,216 | 217,800 | 209,759 | 919,950 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 17,463,702 | 16,971,786 | 16,479,315 | 16,559,131 | 67,473,934 |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 10,899,787 | 10,502,117 | 10,128,259 | 10,099,500 | 41,629,662 |
| BORROWINGS | 3,019,662 | 2,933,459 | 2,784,065 | 2,728,424 | 11,465,610 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,922,448 | 13,438,576 | 12,915,324 | 12,830,925 | 53,107,272 |
| NET INT. SPREAD | $3,541,254 | $3,533,211 | $3,563,991 | $3,728,206 | $14,366,662 |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 330,000 | 330,000 | 330,000 | 330,000 | 1,320,000 |
| SERVICE INCOME | 123,000 | 139,000 | 153,000 | 168,000 | 582,000 |
| SERVICE CORP | 350,000 | 350,000 | 320,000 | 320,000 | 1,340,000 |
| RESERVE FOR LOANS & RED LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 322,500 | 315,000 | 352,500 | 1,320,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,361,500 | 1,369,000 | 1,346,500 | 1,399,000 | 5,476,000 |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 1,119,961 | 1,163,979 | 1,192,478 | 1,277,480 | 4,753,899 |
| COMMUNICATIONS | 141,246 | 143,710 | 146,238 | 148,833 | 580,029 |
| ADVERTISING | 94,415 | 101,096 | 108,393 | 116,364 | 420,267 |
| TRAVEL & ENTERTAINMENT | 60,019 | 49,932 | 41,764 | 35,150 | 186,964 |
| OFFICE SUPPLIES | 110,400 | 111,374 | 112,359 | 113,355 | 447,488 |
| INSURANCE | 337,636 | 344,718 | 352,053 | 359,651 | 1,394,059 |
| DATA PROCESSING | 304,169 | 300,390 | 296,582 | 293,044 | 1,194,284 |
| TAXES AND LICENSES | 116,535 | 126,021 | 136,714 | 148,769 | 528,039 |
| LEGAL & ACCOUNTING | 66,275 | 66,250 | 66,225 | 66,200 | 264,950 |
| OCCUPANCY | 265,466 | 267,153 | 268,855 | 270,572 | 1,072,047 |
| DEPREC./AMORT. | 950,504 | 950,504 | 950,504 | 950,504 | 3,802,016 |
| OTHER | 155,698 | 153,704 | 151,750 | 149,835 | 610,988 |
| TOTAL OPERATING EXP. | 3,722,326 | 3,778,831 | 3,824,016 | 3,929,756 | 15,254,929 |
| NET INC (LOSS) BEFORE TAX | $1,180,428 | $1,123,379 | $1,086,475 | $1,197,450 | $4,587,732 |
| TAX (PROVISION) BENEFIT | (438,025) | (416,889) | (403,262) | (444,309) | (1,702,485) |
| NET INC (LOSS) | $742,403 | $706,490 | $683,212 | $753,141 | $2,885,246 |
| PREFERRED DIVIDEND | 181,355 | 181,355 | 181,355 | 181,355 | 725,420 |
| EARNINGS AVAILABLE TO COMMON | $561,048 | $525,135 | $501,857 | $571,786 | $2,159,826 |
| YIELD ON EARNING ASSETS | 10.439% | 10.188% | 9.511% | 9.472% | 9.890% |
| COST OF SAVINGS AND BORROWINGS | 8.050% | 7.829% | 7.241% | 7.144% | 7.613% |
| SPREAD DIFFERENCE | 2.389% | 2.359% | 2.270% | 2.328% | 2.277% |
| SPREAD ON AVG EARNING ASSETS | 2.117% | 2.121% | 2.057% | 2.133% | 2.106% |



SG 0142187
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1136

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1991

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $6,990,403 | $6,433,389 | $5,565,685 | $6,065,388 |
| INVESTMENTS | 64,814,593 | 66,031,830 | 67,494,544 | 69,008,453 |
| LOANS RECEVIABLE | 547,252,224 | 561,725,939 | 576,659,434 | 592,068,332 |
| MORTGAGE-BACKED SECURITIES | 97,942,930 | 100,574,128 | 103,292,692 | 106,070,926 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,783,177 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 32,150,268 | 31,337,700 | 30,525,132 | 28,352,565 |
| REAL ESTATE OWNED | 3,749,000 | 3,249,000 | 2,749,000 | 2,249,000 |
| PREPAID & OTHER ASSETS | 4,798,000 | 4,798,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $789,094,594 | $805,547,164 | $822,471,664 | $840,009,241 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 599,592,976 | 611,493,104 | 623,735,016 | 636,329,929 |
| ADVANCES FROM FHLB | 83,559,000 | 85,267,770 | 87,027,803 | 88,840,637 |
| REPO FUNDS PURCHASED | 54,340,000 | 56,241,900 | 58,210,367 | 60,247,729 |
| FED FUNDS PURCHASED | 5,025,000 | 5,050,125 | 5,075,376 | 5,100,753 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,070,250 | 4,090,601 | 4,111,054 | 4,131,610 |
| ACCRUED INTEREST PAYABLE | 1,407,000 | 1,414,035 | 1,421,105 | 1,429,211 |
| LOAN PARTICIPATIONS PAYABLE | 723,600 | 727,218 | 730,854 | 734,508 |
| ADVANCE PAYMENTS FOR T&I | 1,708,500 | 1,717,043 | 1,725,628 | 1,734,256 |
| DEFERRED TAXES | 1,478,456 | 1,485,848 | 1,493,277 | 1,500,743 |
| DEFERRED INCOME | 244,198 | 245,419 | 246,646 | 247,879 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,091,000 | 4,096,025 | 4,101,075 | 4,106,151 |
| TOTAL LIABILITIES | 756,239,980 | 771,829,087 | 787,879,201 | 804,401,405 |
| **STOCKHOLDERS' EQUITY** GROWTH | 3.93% | 4.22% | 4.18% | 4.22% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 290,168 | 290,168 | 290,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 6,850,111 | 6,950,111 | 6,950,111 | 6,850,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 4,913,247 | 4,631,892 | 4,450,537 | 4,269,192 |
| UNDIVIDED PROFITS - CURRENT | 963,277 | 2,008,094 | 3,064,836 | 4,261,163 |
| TOTAL EQUITY | 32,854,615 | 33,718,077 | 34,593,464 | 35,608,436 |
| TOTAL LIABILITIES AND EQUITY | $789,094,594 | $805,547,164 | $822,471,664 | $840,009,841 |
| RAP LEVERAGE | 4.164% | 4.186% | 4.206% | 4.239% |
| GAAP LEVERAGE | 2.425% | 2.483% | 2.538% | 2.606% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.074% | 3.990% | 3.711% | 3.375% |



-0142188 -

SG "Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1137

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1991

| INTEREST INCOME | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| LOANS | $13,301,397 | $13,692,781 | $13,677,268 | $14,194,881 | $54,866,327 |
| MBS | 2,193,682 | 2,268,437 | 2,272,229 | 2,356,395 | 9,090,743 |
| INVESTMENTS | 1,222,362 | 1,250,125 | 1,240,720 | 1,283,523 | 4,996,730 |
| INVESTMENT IN AFFILIATE | 207,834 | 211,021 | 204,364 | 206,635 | 929,853 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 16,982,275 | 17,479,364 | 17,451,581 | 18,098,434 | 70,011,654 |
| INTEREST EXPENSE | | | | | |
| DEPOSITS | 10,268,150 | 10,504,451 | 10,399,269 | 10,720,573 | 41,892,444 |
| BORROWINGS | 2,762,239 | 2,859,449 | 2,850,066 | 2,955,452 | 11,427,206 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,033,389 | 13,366,900 | 13,252,335 | 13,679,025 | 53,331,649 |
| NET INT. SPREAD | $3,948,886 | $4,112,464 | $4,199,246 | $4,419,409 | $16,680,004 |
| OTHER INC. (EXP.) | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 340,000 | 340,000 | 340,000 | 340,000 | 1,360,000 |
| SERVICE INCOME | 183,000 | 198,000 | 213,000 | 228,000 | 822,000 |
| SERVICE CORP | 440,000 | 440,000 | 440,000 | 440,000 | 1,760,000 |
| RESERVE FOR LOANS & REO LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 360,000 | 315,000 | 330,000 | 1,335,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,521,500 | 1,566,500 | 1,536,500 | 1,566,500 | 6,191,000 |
| OPERATING EXP. | | | | | |
| PERSONNEL | 1,306,874 | 1,380,325 | 1,412,364 | 1,435,185 | 5,534,748 |
| COMMUNICATIONS | 149,342 | 149,954 | 150,368 | 150,885 | 600,449 |
| ADVERTISING | 116,835 | 117,310 | 117,786 | 119,265 | 470,196 |
| TRAVEL & ENTERTAINMENT | 35,291 | 35,432 | 35,574 | 35,717 | 142,014 |
| OFFICE SUPPLIES | 113,772 | 114,191 | 114,612 | 115,035 | 457,610 |
| INSURANCE | 360,749 | 361,853 | 362,962 | 364,077 | 1,449,642 |
| DATA PROCESSING | 293,994 | 294,949 | 295,909 | 296,873 | 1,181,724 |
| TAXES AND LICENSES | 149,303 | 149,839 | 150,378 | 150,920 | 600,440 |
| LEGAL & ACCOUNTING | 66,326 | 66,453 | 66,580 | 66,708 | 266,067 |
| OCCUPANCY | 271,565 | 272,563 | 273,565 | 274,573 | 1,092,266 |
| DEPREC./AMORT. | 925,004 | 925,004 | 925,004 | 925,004 | 3,700,016 |
| OTHER | 150,309 | 150,785 | 151,264 | 151,746 | 604,105 |
| TOTAL OPERATING EXP. | 3,939,364 | 4,018,557 | 4,056,367 | 4,084,989 | 16,099,277 |
| NET INC (LOSS) BEFORE TAX | $1,531,021 | $1,660,407 | $1,679,378 | $1,900,921 | $6,771,727 |
| TAX (PROVISION) BENEFIT | (567,744) | (615,589) | (622,637) | (704,593) | (2,510,564) |
| NET INC (LOSS) | $963,277 | $1,044,817 | $1,056,742 | $1,196,327 | $4,261,163 |
| PREFERRED DIVIDEND | 181,355 | 181,355 | 181,355 | 181,355 | 725,420 |
| EARNINGS AVAILABLE TO COMMON | $781,922 | $863,462 | $875,387 | $1,014,972 | $3,535,743 |
| YIELD ON EARNING ASSETS | 9.385% | 9.632% | 9.175% | 9.378% | 9.387% |
| COST OF SAVINGS AND BORROWINGS | 7.039% | 7.225% | 6.863% | 7.014% | 7.104% |
| SPREAD DIFFERENCE | 2.347% | 2.407% | 2.311% | 2.364% | 2.284% |
| SPREAD ON AVG EARNING ASSETS | 2.182% | 2.266% | 2.208% | 2.290% | 2.236% |



0142189
SG
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1138

STERLING SAVINGS ASSOCI..ION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

ATTACHMENT B

Executive Summary and Financial Projection:

Consolidation of Sterling and Central Evergreen
without Capital Infusion

B

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

Executive Summary and Assumptions:

Consolidation of Central Evergreen and Sterling with no issuance of preferred stock. The assumptions used are the same as those used for the projections in Attachment A. This exhibit is provided only as a reference to determine the impact of consolidation without the capital infusion.



0142191
SG "Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1140

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1989

| ASSETS | PROJECTED 1st QTR SEPTEMBER | PROJECTED 2nd QTR DECEMBER | PROJECTED 3rd QTR MARCH | PROJECTED 4th QTR JUNE |
|---|---|---|---|---|
| CASH | $5,692,369 | $8,989,748 | $9,246,100 | $3,053,276 |
| INVESTMENTS | 27,000,000 | 53,240,000 | 56,240,000 | 59,240,000 |
| LOANS RECEIVABLE | 304,247,755 | 485,206,562 | 486,869,132 | 497,160,565 |
| MORTGAGE-BACKED SECURITIES | 60,000,000 | 73,326,000 | 76,399,260 | 79,473,253 |
| INVESTMENT & ADVANCES TO AFFILIATE | 14,677,810 | 16,685,997 | 16,684,486 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,300,000 | 3,375,000 | 3,450,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 5,550,000 | 10,764,000 | 10,839,000 | 11,089,000 |
| INTANGIBLE ASSETS | 18,825,359 | 39,362,609 | 38,535,859 | 37,335,109 |
| REAL ESTATE OWNED | 5,456,000 | 9,974,000 | 7,904,000 | 7,249,000 |
| PREPAID & OTHER ASSETS | 300,000 | 5,098,000 | 5,098,000 | 5,098,000 |
| TOTAL ASSETS | $445,049,293 | $706,021,916 | $711,265,937 | $720,006,379 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 302,975,100 | 529,084,500 | 532,977,935 | 542,523,430 |
| ADVANCES FROM FHLB | 55,300,000 | 85,900,000 | 85,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 50,000,000 | 51,000,000 | 50,000,000 | 52,000,000 |
| FED FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 3,600,000 | 3,750,000 | 3,900,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 540,000 | 600,000 | 660,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,300,000 | 1,200,000 | 1,800,000 | 1,700,000 |
| DEFERRED TAXES | 384,200 | 620,800 | 987,000 | 1,471,100 |
| DEFERRED INCOME | 239,600 | 261,908 | 253,967 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 1,000,000 | 4,086,000 | 4,086,000 | 4,086,000 |
| TOTAL LIABILITIES | 421,738,900 | 681,903,208 | 686,864,902 | 695,093,513 |
| **STOCKHOLDERS' EQUITY** GROWTH | | 4.75% | 62.86% | 1.93% |
| CAPITAL STOCK | 468,996 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 90,168 | 90,168 | 90,168 | 90,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,186,029 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 2,050,111 | 2,050,111 | 2,050,111 | 2,050,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 1,662,932 | 1,606,577 | 1,550,222 | 1,493,867 |
| UNDIVIDED PROFITS - CURRENT | 132,155 | 434,040 | 772,622 | 1,340,909 |
| TOTAL EQUITY | 23,310,393 | 24,118,708 | 24,400,935 | 24,912,967 |
| TOTAL LIABILITIES AND EQUITY | $445,049,293 | $706,021,916 | $711,265,837 | $720,006,379 |
| RAP LEVERAGE | 5.238% | 3.416% | 3.431% | 3.460% |
| GAAP LEVERAGE | 2.155% | 1.473% | 1.502% | 1.555% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.230% | 5.575% | 5.418% | 5.185% |



SG 0142192
Confidential Material – Subject to Protective Order



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1141

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1989

| INTEREST INCOME | 1st QTR SEPTEMBER | 2nd QTR DECEMBER | 3rd QTR MARCH | 4th QTR JUNE | TOTAL |
|---|---|---|---|---|---|
| LOANS | 7,823,180 | 8,048,579 | 12,671,522 | 13,282,827 | 41,826,108 |
| MBS | 1,184,257 | 1,479,965 | 1,765,284 | 1,828,049 | 6,257,555 |
| INVESTMENTS | 691,384 | 603,419 | 1,086,923 | 1,225,290 | 3,607,016 |
| INVESTMENT IN AFFILIATE | 185,378 | 240,296 | 273,206 | 278,372 | 977,252 |
| LOAN DISCOUNT | 45,000 | 45,000 | 57,000 | 57,000 | 204,000 |
| TOTAL INTEREST INC. | 9,929,199 | 10,417,259 | 15,853,934 | 16,671,539 | 52,871,931 |
| INTEREST EXPENSE | | | | | |
| DEPOSITS | 5,427,886 | 5,588,914 | 9,912,471 | 10,504,905 | 31,434,176 |
| BORROWINGS | 2,078,099 | 2,241,158 | 2,902,914 | 2,991,115 | 10,213,286 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 7,508,984 | 7,833,072 | 12,818,385 | 13,499,020 | 41,659,462 |
| NET INT. SPREAD | $2,420,215 | $2,584,187 | $3,035,549 | $3,172,519 | $11,212,470 |
| OTHER INC. (EXP.) | | | | | |
| LOAN & COMMITMENT FEES | 90,000 | 93,000 | 106,000 | 109,000 | 398,000 |
| OTHER FEES | 206,666 | 213,519 | 321,270 | 317,192 | 1,058,647 |
| SERVICE INCOME | 67,500 | 81,000 | 94,500 | 108,000 | 351,000 |
| SERVICE CORP | (189,441) | 12,521 | 126,086 | 319,812 | 268,978 |
| RESERVE FOR LOANS & REO LOSSES | (150,000) | (150,000) | (100,000) | (100,000) | (500,000) |
| GAIN (LOSS) ON INVESTMENT | 37,500 | 37,500 | 43,500 | 43,500 | 162,000 |
| GAIN (LOSS) ON LOAN SALES | 0 | 0 | 315,000 | 352,500 | 667,500 |
| OTHER INCOME (EXPENSE) | 3,000 | 3,000 | 176,000 | 176,000 | 358,000 |
| TOTAL OTHER INCOME | 66,225 | 290,540 | 1,082,356 | 1,325,004 | 2,764,125 |
| OPERATING EXP. | | | | | |
| PERSONNEL | 826,193 | 908,122 | 1,048,387 | 1,059,896 | 3,842,598 |
| COMMUNICATIONS | 88,530 | 88,990 | 136,505 | 138,845 | 452,860 |
| ADVERTISING | 60,698 | 60,748 | 82,698 | 89,298 | 292,442 |
| TRAVEL & ENTERTAINMENT | 64,890 | 75,817 | 87,860 | 72,476 | 301,043 |
| OFFICE SUPPLIES | 77,339 | 77,439 | 108,489 | 109,439 | 372,706 |
| INSURANCE | 174,900 | 178,800 | 324,200 | 330,800 | 1,008,700 |
| DATA PROCESSING | 183,445 | 198,020 | 311,945 | 308,020 | 1,001,430 |
| TAXES AND LICENSES | 48,325 | 52,530 | 100,655 | 108,120 | 309,630 |
| LEGAL & ACCOUNTING | 63,800 | 59,800 | 66,325 | 66,300 | 256,225 |
| OCCUPANCY | 183,421 | 186,066 | 262,136 | 263,794 | 895,417 |
| DEPREC./AMORT. | 406,565 | 414,227 | 929,627 | 934,327 | 2,684,746 |
| OTHER | 101,842 | 102,482 | 129,807 | 127,732 | 461,863 |
| TOTAL OPERATING EXP. | 2,279,948 | 2,403,031 | 3,589,634 | 3,608,047 | 11,879,660 |
| NET INC (LOSS)BEFORE TAX | $206,492 | $471,696 | $529,271 | $889,477 | $2,096,935 |
| TAX (PROVISION) BENEFIT | (74,337) | (169,811) | (190,689) | (321,190) | (756,026) |
| NET INC (LOSS) | $132,155 | $301,885 | $338,582 | $568,287 | $1,340,909 |
| PREFERRED DIVIDEND | 56,355 | 56,355 | 56,355 | 56,355 | 225,420 |
| EARNINGS AVAILABLE TO COMMON | $75,800 | $245,530 | $282,227 | $511,932 | $1,115,499 |
| YIELD ON EARNING ASSETS | 7.839% | 7.991% | 10.168% | 10.377% | 9.209% |
| COST OF SAVINGS AND BORROWINGS | 5.611% | 5.738% | 7.737% | 7.991% | 6.880% |
| SPREAD DIFFERENCE | 2.227% | 2.253% | 2.431% | 2.386% | 2.329% |
| SPREAD ON AVG EARNING ASSETS | 1.911% | 1.992% | 1.947% | 1.975% | 1.953% |



SG 0142193
"Confidential Material - Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1142

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1990

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $2,713,530 | $3,790,585 | $6,608,432 | $7,206,075 |
| INVESTMENTS | 60,290,000 | 61,371,500 | 62,485,445 | 63,632,808 |
| LOANS RECEIVABLE | 504,524,985 | 512,816,486 | 521,255,828 | 533,223,186 |
| MORTGAGE-BACKED SECURITIES | 83,147,985 | 85,491,465 | 87,903,740 | 90,386,858 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,783,177 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 36,497,041 | 35,658,973 | 34,820,905 | 32,962,836 |
| REAL ESTATE OWNED | 6,499,000 | 5,749,000 | 4,999,000 | 4,249,000 |
| PREPAID & OTHER ASSETS | 4,998,000 | 4,898,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $730,067,718 | $741,173,186 | $754,268,526 | $767,855,941 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 551,977,248 | 562,509,402 | 575,056,412 | 588,024,715 |
| ADVANCES FROM FHLB | 81,900,000 | 81,900,000 | 81,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 52,000,000 | 52,000,000 | 52,000,000 | 52,000,000 |
| FED FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,050,000 | 4,050,000 | 4,050,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 720,000 | 720,000 | 720,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,700,000 | 1,700,000 | 1,700,000 | 1,700,000 |
| DEFERRED TAXES | 1,471,100 | 1,471,100 | 1,471,100 | 1,471,100 |
| DEFERRED INCOME | 242,983 | 242,983 | 242,983 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,086,000 | 4,086,000 | 4,086,000 | 4,086,000 |
| TOTAL LIABILITIES | 704,547,331 | 715,079,485 | 727,626,495 | 740,594,798 |
| STOCKHOLDERS' EQUITY — GROWTH | 2.57% | 2.88% | 3.28% | 3.57% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 90,168 | 90,168 | 90,168 | 90,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 2,050,111 | 2,050,111 | 2,050,111 | 2,050,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 2,779,421 | 2,722,066 | 2,665,711 | 2,609,356 |
| UNDIVIDED PROFITS - CURRENT | 663,876 | 1,293,545 | 1,898,230 | 2,573,696 |
| TOTAL EQUITY | 25,520,387 | 26,093,701 | 26,642,031 | 27,261,143 |
| TOTAL LIABILITIES AND EQUITY | $730,067,718 | $741,173,186 | $754,268,526 | $767,855,941 |
| RAP LEVERAGE | 3.496% | 3.521% | 3.532% | 3.550% |
| GAAP LEVERAGE | 1.616% | 1.669% | 1.713% | 1.764% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.999% | 4.811% | 4.617% | 4.293% |





SG 0142194
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1143

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1990

| | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | 13,665,869 | 13,301,287 | 12,905,748 | 12,975,491 | 52,848,395 |
| MBS | 2,066,898 | 2,008,471 | 1,966,849 | 1,989,362 | 8,031,579 |
| INVESTMENTS | 1,288,104 | 1,247,909 | 1,205,260 | 1,202,237 | 4,943,511 |
| INVESTMENT IN AFFILIATE | 259,174 | 233,216 | 217,800 | 209,759 | 919,950 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 17,337,045 | 16,947,882 | 16,352,657 | 16,433,850 | 66,971,434 |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 10,899,787 | 10,502,117 | 10,128,259 | 10,099,500 | 41,629,662 |
| BORROWINGS | 3,019,662 | 2,933,459 | 2,784,065 | 2,728,424 | 11,465,610 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,922,448 | 13,438,576 | 12,915,324 | 12,830,925 | 53,107,272 |
| NET INT. SPREAD | $3,414,596 | $3,409,306 | $3,437,333 | $3,602,926 | $13,864,162 |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 330,000 | 330,000 | 330,000 | 330,000 | 1,320,000 |
| SERVICE INCOME | 123,000 | 138,000 | 153,000 | 168,000 | 582,000 |
| SERVICE CORP | 350,000 | 350,000 | 320,000 | 320,000 | 1,340,000 |
| RESERVE FOR LOANS & REO LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 322,500 | 315,000 | 352,500 | 1,320,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,361,500 | 1,369,000 | 1,346,500 | 1,399,000 | 5,476,000 |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 1,119,961 | 1,163,979 | 1,192,478 | 1,277,480 | 4,753,899 |
| COMMUNICATIONS | 141,246 | 143,710 | 146,238 | 148,833 | 580,028 |
| ADVERTISING | 94,415 | 101,096 | 108,393 | 116,364 | 420,267 |
| TRAVEL & ENTERTAINMENT | 60,019 | 49,932 | 41,764 | 35,150 | 186,864 |
| OFFICE SUPPLIES | 110,400 | 111,374 | 112,359 | 113,355 | 447,488 |
| INSURANCE | 337,636 | 344,718 | 352,053 | 359,651 | 1,394,059 |
| DATA PROCESSING | 304,169 | 300,390 | 296,682 | 293,044 | 1,194,284 |
| TAXES AND LICENSES | 116,535 | 126,021 | 136,714 | 148,769 | 528,039 |
| LEGAL & ACCOUNTING | 66,275 | 66,250 | 66,225 | 66,200 | 264,950 |
| OCCUPANCY | 265,466 | 267,153 | 268,855 | 270,572 | 1,072,047 |
| DEPREC./AMORT. | 950,504 | 950,504 | 950,504 | 950,504 | 3,802,016 |
| OTHER | 155,698 | 153,704 | 151,750 | 149,835 | 610,988 |
| TOTAL OPERATING EXP. | 3,722,326 | 3,778,831 | 3,824,016 | 3,929,756 | 15,254,929 |
| NET INC (LOSS)BEFORE TAX | $1,053,771 | $999,475 | $959,617 | $1,072,169 | $4,085,232 |
| TAX (PROVISION) BENEFIT | (389,895) | (369,806) | (355,132) | (396,703) | (1,511,536) |
| NET INC (LOSS) | $663,876 | $629,669 | $604,685 | $675,467 | $2,573,696 |
| PREFERRED DIVIDEND | 56,355 | 56,355 | 56,355 | 56,355 | 225,420 |
| EARNINGS AVAILABLE TO COMMON | $607,521 | $573,314 | $548,330 | $619,112 | $2,348,276 |
| YIELD ON EARNING ASSETS | 10.442% | 9.967% | 9.718% | 9.468% | 9.989% |
| COST OF SAVINGS AND BORROWINGS | 8.050% | 7.659% | 7.401% | 7.144% | 7.559% |
| SPREAD DIFFERENCE | 2.392% | 2.309% | 2.316% | 2.324% | 2.430% |
| SPREAD ON AVG EARNING ASSETS | 2.057% | 2.017% | 2.043% | 2.076% | 2.069% |



0142195
SG Confidential Material – Subject to Protective Order



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1144

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1991

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $7,225,326 | $6,716,491 | $5,395,259 | $6,442,288 |
| INVESTMENTS | 64,814,593 | 66,031,830 | 67,494,544 | 69,008,453 |
| LOANS RECEVIABLE | 547,252,224 | 561,725,939 | 576,659,434 | 592,068,332 |
| MORTGAGE-BACKED SECURITIES | 92,942,930 | 95,574,128 | 98,282,692 | 101,070,926 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,793,177 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 32,150,268 | 31,337,700 | 30,525,132 | 28,352,565 |
| REAL ESTATE OWNED | 3,749,000 | 3,249,000 | 2,749,000 | 2,249,000 |
| PREPAID & OTHER ASSETS | 4,798,000 | 4,798,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $784,329,517 | $800,830,266 | $817,801,238 | $835,386,741 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 599,592,976 | 611,493,104 | 623,735,016 | 636,328,928 |
| ADVANCES FROM FHLB | 83,559,000 | 85,267,770 | 87,027,803 | 88,340,637 |
| REPO FUNDS PURCHASED | 54,340,000 | 56,241,900 | 58,210,367 | 60,247,729 |
| FED FUNDS PURCHASED | 5,025,000 | 5,050,125 | 5,075,376 | 5,100,753 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,070,250 | 4,090,601 | 4,111,054 | 4,131,610 |
| ACCRUED INTEREST PAYABLE | 1,407,000 | 1,414,035 | 1,421,105 | 1,428,211 |
| LOAN PARTICIPATIONS PAYABLE | 723,600 | 727,218 | 730,854 | 734,508 |
| ADVANCE PAYMENTS FOR T&I | 1,708,500 | 1,717,043 | 1,725,628 | 1,734,256 |
| DEFERRED TAXES | 1,478,456 | 1,485,848 | 1,493,277 | 1,500,743 |
| DEFERRED INCOME | 244,198 | 245,419 | 246,646 | 247,879 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,091,000 | 4,096,025 | 4,101,075 | 4,106,151 |
| TOTAL LIABILITIES | 756,239,980 | 771,829,087 | 787,878,201 | 804,401,405 |
| **STOCKHOLDERS' EQUITY** GROWTH | 3.93% | 4.22% | 4.18% | 4.22% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 90,168 | 90,168 | 90,168 | 90,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 2,050,111 | 2,050,111 | 2,050,111 | 2,050,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 5,126,697 | 5,070,342 | 5,013,987 | 4,957,632 |
| UNDIVIDED PROFITS - CURRENT | 884,749 | 1,852,746 | 2,830,960 | 3,949,613 |
| TOTAL EQUITY | 28,089,537 | 29,001,179 | 29,923,038 | 30,985,336 |
| TOTAL LIABILITIES AND EQUITY | $784,329,517 | $800,830,266 | $817,801,238 | $835,386,741 |
| RAP LEVERAGE | 3.581% | 3.621% | 3.659% | 3.709% |
| GAAP LEVERAGE | 1.832% | 1.908% | 1.981% | 2.067% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.099% | 3.913% | 3.733% | 3.394% |





SG 0142196
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1145

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1991

| INTEREST INCOME | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| LOANS | 13,301,397 | 13,692,781 | 13,677,268 | 14,194,881 | 54,866,327 |
| MBS | 2,067,024 | 2,144,533 | 2,145,572 | 2,231,114 | 9,588,243 |
| INVESTMENTS | 1,222,362 | 1,250,125 | 1,240,720 | 1,283,523 | 4,996,730 |
| INVESTMENT IN AFFILIATE | 207,834 | 211,021 | 204,364 | 206,635 | 829,853 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 16,855,617 | 17,355,460 | 17,324,923 | 17,973,153 | 69,509,154 |
| INTEREST EXPENSE | | | | | |
| DEPOSITS | 10,268,150 | 10,504,451 | 10,399,269 | 10,720,573 | 41,892,444 |
| BORROWINGS | 2,762,239 | 2,859,449 | 2,850,066 | 2,955,452 | 11,427,206 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,033,389 | 13,366,900 | 13,252,335 | 13,579,025 | 53,331,649 |
| NET INT. SPREAD | $3,822,228 | $3,988,560 | $4,072,588 | $4,294,128 | $16,177,504 |
| OTHER INC. (EXP.) | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 340,000 | 340,000 | 340,000 | 340,000 | 1,360,000 |
| SERVICE INCOME | 193,000 | 199,000 | 213,000 | 228,000 | 822,000 |
| SERVICE CORP | 440,000 | 440,000 | 440,000 | 440,000 | 1,760,000 |
| RESERVE FOR LOANS & REO LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 360,000 | 315,000 | 330,000 | 1,335,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,521,500 | 1,566,500 | 1,536,500 | 1,566,500 | 6,191,000 |
| OPERATING EXP. | | | | | |
| PERSONNEL | 1,306,874 | 1,380,325 | 1,412,364 | 1,435,185 | 5,534,748 |
| COMMUNICATIONS | 149,342 | 149,854 | 150,368 | 150,885 | 600,449 |
| ADVERTISING | 116,835 | 117,310 | 117,786 | 118,265 | 470,196 |
| TRAVEL & ENTERTAINMENT | 35,291 | 35,432 | 35,574 | 35,717 | 142,014 |
| OFFICE SUPPLIES | 113,772 | 114,191 | 114,612 | 115,035 | 457,610 |
| INSURANCE | 360,749 | 361,853 | 362,962 | 364,077 | 1,449,642 |
| DATA PROCESSING | 293,994 | 294,949 | 295,909 | 296,873 | 1,181,724 |
| TAXES AND LICENSES | 149,303 | 149,839 | 150,378 | 150,920 | 600,440 |
| LEGAL & ACCOUNTING | 66,326 | 66,453 | 66,580 | 66,708 | 266,067 |
| OCCUPANCY | 271,565 | 272,563 | 273,565 | 274,573 | 1,092,266 |
| DEPREC./AMORT. | 925,004 | 925,004 | 925,004 | 925,004 | 3,700,016 |
| OTHER | 150,309 | 150,785 | 151,264 | 151,746 | 604,105 |
| TOTAL OPERATING EXP. | 3,939,364 | 4,018,557 | 4,056,367 | 4,084,998 | 16,099,277 |
| NET INC (LOSS) BEFORE TAX | $1,404,364 | $1,536,502 | $1,552,721 | $1,775,640 | $6,259,227 |
| TAX (PROVISION) BENEFIT | (519,615) | (568,506) | (574,507) | (656,987) | (2,319,614) |
| NET INC (LOSS) | $884,749 | $967,997 | $978,214 | $1,119,653 | $3,949,613 |
| PREFERRED DIVIDEND | 56,355 | 56,355 | 56,355 | 56,355 | 225,420 |
| EARNINGS AVAILABLE TO COMMON | $828,394 | $911,642 | $921,859 | $1,062,298 | $3,724,193 |
| YIELD ON EARNING ASSETS | 9.380% | 9.420% | 9.372% | 9.374% | 9.499% |
| COST OF SAVINGS AND BORROWINGS | 7.038% | 7.069% | 7.015% | 7.014% | 7.033% |
| SPREAD DIFFERENCE | 2.342% | 2.352% | 2.357% | 2.360% | 2.466% |
| SPREAD ON AVG EARNING ASSETS | 2.127% | 2.165% | 2.203% | 2.240% | 2.211% |

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

ATTACHMENT C

Loan Production Forecast

C



SG 0142198
"Confidential Material – Subject to Protective Order"
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1147

STERLING SAVINGS ASSOCI..ION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

Loan Production Forecast

The following is a summary of loan production by year used in the projection:

| Fiscal Year Ending June 30, | Sterling | Central Evergreen | Total |
|---|---|---|---|
| | (Amounts in millions of dollars) | | |
| 1989 | 284 | 43 * | 327 |
| 1990 | 300 | 95 | 395 |
| 1991 | 300 | 95 | 395 |

* Represents one-half year

The following are the estimates of loan production by location and product for fiscal 1989:

| | Total | Residential | Construction | Comm. R.E. End Loan |
|---|---|---|---|---|
| | (Amounts in millions of dollars) | | | |
| Sterling Savings Assn. (S) | $255 | $ 22 | $ 3 | -- |
| Action Mortgage Company (A) | 189 | 162 | 27 | -- |
| INTERVEST (I) | 70 | -- | 38 | $32 |
| TOTAL | 284 | 184 | 68 | 32 |
| Bellevue - Residential (A) | 49 | 43 | 6 | |
| Spokane - Residential (A) | 24 | 19 | 5 | |
| Clarkston (S) | 6 | 5 | 1 | |
| Chehalis (S) | 4 | 4 | -- | |
| Port Angeles (S) | 6 | 5 | 1 | |
| Portland - Residential (A) | 48 | 40 | 8 | |
| Income Property (I) | 70 | -- | 38 | 32 |
| Other Branches | 10 | 10 | | |
| Tri-Cities (A) | 3 | 2 | 1 | |
| Idaho (A) | 64 | 56 | 8 | |
| TOTAL | $284 (1) | $184 | $68 | $32 |
| Central Evergreen S & L Assn. | | | | |
| Thurston Co. (Lacey and Olympia) | $35 | $15 | $15 | $ 5 |
| Lewis Co. (Chehalis and Centralia) | 16 | 13 | 2 | 1 |
| Auburn | 24 | 15 | 5 | 4 |
| Vancouver | 20 | 15 | 5 | |
| TOTAL | $95 | $58 | $27 | $10 |

(1) Amount excludes commercial and consumer loan originations. Increased volumes are principally a result of opening the Portland residential office, increases in the Bellevue mortgage banking operation, and increases in income property loan origination along the I-5 corridor.

STERLING SAVINGS ASSOCIATION
FISCAL 1989 BUSINESS PLAN UPDATE TO INCLUDE
THE ACQUISITION OF CENTRAL EVERGREEN

August 15, 1988

ATTACHMENT D

Sterling's Fiscal 1989 Business Plan

D

26-7 '8
10:2.

| STATISTICS (YR3): CONSOLIDATED | Q1-Y3 | Q2-Y3 | Q3-Y3 | Q4-Y3 | YEAR END |
|---|---|---|---|---|---|
| **BALANCE SHEET:** | | | | | |
| NET WORTH TO TOTAL ASSETS(GAAP) | 2.425% | 2.483% | 2.538% | 2.606% | |
| NET WORTH TO TOTAL ASSETS(RAP) | 4.164% | 4.186% | 4.206% | 4.239% | |
| NON EARNING ASSETS TO TOTAL ASSETS | 6.632% | 6.330% | 6.039% | 5.593% | |
| **PERFORMANCE:** | | | | | |
| EARNINGS PER COMMON SHARE BEFORE PREFERRED | $1.87 | $2.03 | $2.05 | $2.32 | $8.26 |
| EARNINGS PER COMMON SHARE AFTER PREFERRED | $1.52 | $1.67 | $1.70 | $1.97 | $6.85 |
| BOOK VALUE PER COMMON SHARE (GAAP) | $12.05 | $12.05 | $12.05 | $12.05 | $12.05 |
| TOTAL ASSETS PER SHARE (000's) | $1,513.64 | $1,561.46 | $1,594.26 | $1,628.26 | $1,611.26 |
| RETURN ON AVERAGE COMMON EQUITY GAAP (NON-ANNU | 12.576% | 13.887% | 14.079% | 16.324% | 56.865% |
| RETURN ON AVERAGE TOTAL EQUITY RAP (NON-ANNUAL | 2.967% | 3.139% | 3.094% | 3.408% | 12.774% |
| RETURN ON AVERAGE TOTAL ASSETS | 0.123% | 0.131% | 0.130% | 0.144% | 0.534% |
| RETURN NET OF PREFERRED DIVIDEND ON AVG. ASSET | 0.100% | 0.108% | 0.108% | 0.122% | 0.443% |
| **PERCENT OF OPERATING INCOME:** | | | | | |
| TOTAL INTEREST INC. | 91.284% | 91.296% | 91.427% | 91.368% | 91.396% |
| TOTAL INTEREST EXP. | 70.058% | 69.816% | 69.427% | 69.209% | 69.621% |
| LOAN & COMMITMENT FEES | 0.586% | 0.569% | 0.571% | 0.551% | 0.569% |
| OTHER FEES | 1.828% | 1.776% | 1.781% | 1.720% | 1.775% |
| SERVICE INCOME | 0.984% | 1.034% | 1.116% | 1.154% | 1.073% |
| SERVICE CORP | 2.365% | 2.298% | 2.305% | 2.226% | 2.298% |
| RESERVE FOR LOANS & RED LOSSES | -0.538% | -0.522% | -0.524% | -0.506% | -0.522% |
| GAIN (LOSS) ON INVESTMENT | 0.234% | 0.227% | 0.228% | 0.220% | 0.227% |
| GAIN (LOSS) ON LOAN SALES | 1.774% | 1.880% | 1.650% | 1.670% | 1.743% |
| OTHER INCOME (EXPENSE) | 0.946% | 0.919% | 0.922% | 0.890% | 0.919% |
| TOTAL OTHER INCOME | 21.175% | 20.989% | 21.251% | 20.668% | 21.017% |
| PERSONNEL | 7.025% | 7.210% | 7.399% | 7.261% | 7.225% |
| TOTAL OPERATING EXP. | 21.175% | 20.989% | 21.251% | 20.668% | 21.017% |
| NET INC (LOSS)BEFORE TAX | 8.230% | 8.672% | 8.798% | 9.618% | 8.840% |
| TAX (PROVISION) BENEFIT | -3.052% | -3.215% | -3.262% | -3.565% | -3.277% |
| NET INC (LOSS) | 5.178% | 5.457% | 5.536% | 6.053% | 5.563% |
| **SPREAD: (ANNUALIZED)** | | | | | |
| LOAN INTEREST INCOME TO AVG. LOANS | 9.768% | 10.015% | 9.533% | 9.743% | 9.884% |
| MBS INTEREST INCOME TO AVG. MBS | 9.003% | 9.268% | 8.844% | 9.029% | 9.152% |
| INVEST. INT. INCOME TO AVG. INVEST. | 7.531% | 7.749% | 7.373% | 7.543% | 7.623% |
| TTL INT. INCOME TO AVG. EARNING ASSETS | 9.395% | 9.632% | 9.175% | 9.378% | 9.387% |
| DEPOSIT INT EXPENSE TO AVG DEPOSITS | 13.588% | 7.035% | 6.680% | 6.925% | 7.660% |
| BORROWINGS INT EXP TO AVG BORROWINGS | 15.335% | 8.012% | 7.618% | 7.786% | 8.713% |
| SUB DEBT INT EXP TO AVG SUB DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| TTL INT EXP TO AVG PAYING LIAB | 7.038% | 7.225% | 6.863% | 7.014% | 7.104% |
| NET SPREAD TO AVG EARNING ASSETS | 2.182% | 2.266% | 2.208% | 2.290% | 2.236% |
| **PER FTE:** | | | | | |
| TOTAL OPERATING INCOME | 77,515.73 | 79,774.43 | 79,533.67 | 82,353.89 | 319,177.72 |
| DEPOSITS | 2,498,304.07 | 2,547,887.93 | 2,579,895.90 | 2,651,370.54 | 0.00 |
| LOAN FEES | 454.17 | 454.17 | 454.17 | 454.17 | 1,816.67 |
| PER BRANCH | 0.08 | 0.08 | 0.08 | 0.08 | 0.08 |
| **CALCULATED BALANCES:** | | | | | |
| GROSS OPERATING INCOME (ANNUALIZED) | 73,808,455 | 77,647,114 | 75,729,896 | 79,276,933 | 76,602,654 |
| GROSS OPERATING INCOME | 18,603,775 | 19,145,864 | 19,099,081 | 19,764,934 | 76,602,654 |
| TOTAL COMMON EQUITY GAAP (EOP) | 6,217,810 | 6,217,810 | 6,217,810 | 6,217,810 | 6,217,810 |
| AVERAGE TOTAL ASSETS | 780,881,043 | 797,320,879 | 814,909,414 | 831,240,753 | 797,869,907 |
| AVERAGE EARNING ASSETS | 717,909,476 | 735,953,999 | 754,667,461 | 774,075,369 | 745,816,953 |
| AVERAGE INVESTMENTS | 64,223,700 | 65,423,211 | 65,763,187 | 68,251,499 | 65,544,145 |
| AVERAGE LOANS | 540,237,705 | 554,489,082 | 569,192,687 | 594,363,893 | 555,104,573 |
| AVERAGE MBS | 96,664,894 | 99,259,529 | 101,929,410 | 104,676,809 | 99,334,799 |
| AVERAGE PAYING LIABILITIES | 734,720,846 | 750,284,937 | 766,050,730 | 782,283,304 | 759,756,075 |
| AVERAGE DEPOSITS | 299,796,488 | 605,543,040 | 617,614,060 | 639,031,972 | 546,905,225 |
| AVERAGE BORROWINGS | 71,462,000 | 144,741,898 | 148,436,670 | 152,251,332 | 131,158,380 |
| AVERAGE SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| AVERAGE TOTAL EQUITY RAP | 32,463,654 | 33,286,346 | 34,155,770 | 35,100,950 | 33,358,704 |
| AVERAGE TOTAL COMMON EQUITY GAAP | 6,217,810 | 6,217,810 | 6,217,910 | 6,217,910 | 6,217,910 |
| PERCENT OF YEAR | 25.205% | 24.658% | 25.205% | 24.932% | 100.000% |
| SHARES OUTSTANDING | 515,895 | 515,895 | 515,895 | 515,895 | 515,895 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| FTE's: | | | | | |
| DEPOSIT | 156.00 | 156.00 | 156.00 | 156.00 | 156.00 |
| LOAN | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| ADMINISTRATION and OTHER | 44.00 | 44.00 | 44.00 | 44.00 | 44.00 |
| TOTAL FTE's | 240.00 | 240.00 | 240.00 | 240.00 | 240.00 |
| # OF BRANCHES | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 |

SG 0142201
Confidential Material – Subject to Protective Order



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1150

26-Ju
10:25 PM

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1989

| ASSETS | PROJECTED 1st QTR SEPTEMBER | PROJECTED 2nd QTR DECEMBER | PROJECTED 3rd QTR MARCH | PROJECTED 4th QTR JUNE |
|---|---|---|---|---|
| CASH | $5,692,369 | $9,989,748 | $9,246,100 | $3,053,276 |
| INVESTMENTS | 27,000,000 | 53,240,000 | 56,240,000 | 59,240,000 |
| LOANS RECEIVABLE | 304,247,755 | 485,206,562 | 486,869,132 | 497,160,565 |
| MORTGAGE-BACKED SECURITIES | 60,000,000 | 73,326,000 | 76,399,260 | 84,473,253 |
| INVESTMENT & ADVANCES TO AFFILIATE | 14,677,810 | 16,685,997 | 16,684,486 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,300,000 | 3,375,000 | 3,450,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 5,550,000 | 10,764,000 | 10,839,000 | 11,089,000 |
| INTANGIBLE ASSETS | 18,825,359 | 39,362,609 | 38,535,859 | 37,335,109 |
| REAL ESTATE OWNED | 5,456,000 | 9,974,000 | 7,904,000 | 7,249,000 |
| PREPAID & OTHER ASSETS | 300,000 | 5,098,000 | 5,098,000 | 5,098,000 |
| TOTAL ASSETS | $445,049,293 | $706,021,916 | $711,265,837 | $725,006,379 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 302,975,100 | 528,084,500 | 532,877,935 | 542,523,430 |
| ADVANCES FROM FHLB | 55,300,000 | 85,900,000 | 85,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 50,000,000 | 51,000,000 | 50,000,000 | 52,000,000 |
| FED FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 3,600,000 | 3,750,000 | 3,900,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 540,000 | 600,000 | 660,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,300,000 | 1,200,000 | 1,800,000 | 1,700,000 |
| DEFERRED TAXES | 384,200 | 620,800 | 987,000 | 1,471,100 |
| DEFERRED INCOME | 239,600 | 261,908 | 253,967 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 1,000,000 | 4,086,000 | 4,086,000 | 4,086,000 |
| TOTAL LIABILITIES | 421,738,900 | 681,903,208 | 686,864,902 | 695,093,513 |
| **STOCKHOLDERS' EQUITY** GROWTH | | 4.75% | 62.86% | 1.93% |
| CAPITAL STOCK | 468,996 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 90,168 | 90,168 | 90,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,186,029 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 2,050,111 | 2,050,111 | 2,050,111 | 6,850,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 1,662,932 | 1,606,577 | 1,550,222 | 1,493,867 |
| UNDIVIDED PROFITS - CURRENT | 132,155 | 434,040 | 772,622 | 1,340,909 |
| TOTAL EQUITY | 23,310,393 | 24,118,708 | 24,400,935 | 29,912,867 |
| TOTAL LIABILITIES AND EQUITY | $445,049,293 | $706,021,916 | $711,265,837 | $725,006,379 |
| RAP LEVERAGE | 5.238% | 3.416% | 3.431% | 4.125% |
| GAAP LEVERAGE | 2.155% | 1.473% | 1.502% | 2.233% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.230% | 5.575% | 5.418% | 5.150% |



SG 0142202
Confidential Material – Subject to Protective Order
CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1151

26-Jul-88
10:25 PM

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1989

| | 1st QTR SEPTEMBER | 2nd QTR DECEMBER | 3rd QTR MARCH | 4th QTR JUNE | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | $7,823,180 | $8,048,579 | $12,671,522 | $13,282,827 | $41,826,108 |
| MBS | 1,184,257 | 1,479,965 | 1,763,284 | 1,828,049 | 6,257,555 |
| INVESTMENTS | 691,384 | 603,419 | 1,086,923 | 1,225,290 | 3,607,016 |
| INVESTMENT IN AFFILIATE | 185,378 | 240,296 | 273,206 | 278,372 | 977,252 |
| LOAN DISCOUNT | 45,000 | 45,000 | 57,000 | 57,000 | 204,000 |
| TOTAL INTEREST INC. | 9,929,199 | 10,417,259 | 15,853,934 | 16,671,539 | 52,871,931 |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 5,427,886 | 5,588,914 | 9,912,471 | 10,504,905 | 31,434,176 |
| BORROWINGS | 2,078,099 | 2,241,158 | 2,902,914 | 2,991,115 | 10,213,286 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 7,508,984 | 7,833,072 | 12,818,385 | 13,499,020 | 41,659,462 |
| NET INT. SPREAD | $2,420,215 | $2,584,187 | $3,035,549 | $3,172,519 | $11,212,470 |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 90,000 | 93,000 | 106,000 | 109,000 | 398,000 |
| OTHER FEES | 206,666 | 213,519 | 321,270 | 317,192 | 1,058,647 |
| SERVICE INCOME | 67,500 | 81,000 | 94,500 | 108,000 | 351,000 |
| SERVICE CORP | (188,441) | 12,521 | 126,086 | 318,812 | 268,978 |
| RESERVE FOR LOANS & RED LOSSES | (150,000) | (150,000) | (100,000) | (100,000) | (500,000) |
| GAIN (LOSS) ON INVESTMENT | 37,500 | 37,500 | 43,500 | 43,500 | 162,000 |
| GAIN (LOSS) ON LOAN SALES | 0 | 0 | 315,000 | 352,500 | 667,500 |
| OTHER INCOME (EXPENSE) | 3,000 | 3,000 | 176,000 | 176,000 | 358,000 |
| TOTAL OTHER INCOME | 66,225 | 290,540 | 1,082,356 | 1,325,004 | 2,764,125 |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 826,193 | 908,122 | 1,048,387 | 1,059,896 | 3,842,598 |
| COMMUNICATIONS | 88,530 | 88,980 | 136,505 | 138,845 | 452,860 |
| ADVERTISING | 60,698 | 60,748 | 82,698 | 88,298 | 292,442 |
| TRAVEL & ENTERTAINMENT | 64,890 | 75,817 | 87,860 | 72,476 | 301,043 |
| OFFICE SUPPLIES | 77,339 | 77,439 | 108,489 | 109,439 | 372,706 |
| INSURANCE | 174,900 | 178,800 | 324,200 | 330,800 | 1,008,700 |
| DATA PROCESSING | 183,445 | 198,020 | 311,945 | 308,020 | 1,001,430 |
| TAXES AND LICENSES | 48,325 | 52,530 | 100,655 | 108,120 | 309,630 |
| LEGAL & ACCOUNTING | 53,800 | 59,800 | 56,325 | 66,300 | 256,225 |
| OCCUPANCY | 183,421 | 186,066 | 262,136 | 263,794 | 895,417 |
| DEPREC./AMORT. | 406,565 | 414,227 | 929,627 | 934,327 | 2,684,746 |
| OTHER | 101,842 | 102,482 | 129,807 | 127,732 | 461,863 |
| TOTAL OPERATING EXP. | 2,279,948 | 2,403,031 | 3,588,634 | 3,608,047 | 11,879,660 |
| NET INC (LOSS)BEFORE TAX | $206,492 | $471,696 | $529,271 | $989,476 | $2,096,935 |
| TAX (PROVISION) BENEFIT | (74,337) | (169,911) | (190,689) | (321,190) | (756,026) |
| NET INC (LOSS) | $132,155 | $301,985 | $338,582 | $568,287 | $1,340,909 |
| PREFERRED DIVIDEND | 56,355 | 56,355 | 56,355 | 56,355 | 225,420 |
| EARNINGS AVAILABLE TO COMMON | $75,800 | $245,530 | $282,227 | $511,932 | $1,115,489 |
| YIELD ON EARNING ASSETS | 7.838% | 8.169% | 9.947% | 10.336% | 9.084% |
| COST OF SAVINGS AND BORROWINGS | 5.611% | 5.865% | 7.569% | 7.991% | 6.880% |
| SPREAD DIFFERENCE | 2.227% | 2.304% | 2.379% | 2.346% | 2.204% |
| SPREAD ON AVG EARNING ASSETS | 1.911% | 2.026% | 1.905% | 1.967% | 1.926% |

APP. 1340

SG 0142203
"Confidential Material – Subject to Protective Order"

26-Jul-88
10:25 PM

CONSOLIDATED
INCOME (EXPENSE) AS A PERCENT OF AVERAGE A.
(PROJECTED)
YEAR ENDING 6\30\1989

| | 1st QTR SEPTEMBER | 2nd QTR DECEMBER | 3rd QTR MARCH | 4th QTR JUNE | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | 5.490% | 5.671% | 7.094% | 7.419% | 7.305% |
| MBS | 0.831% | 1.043% | 0.988% | 1.021% | 1.093% |
| INVESTMENTS | 0.485% | 0.425% | 0.609% | 0.684% | 0.630% |
| INVESTMENT IN AFFILIATE | 0.130% | 0.169% | 0.153% | 0.155% | 0.171% |
| LOAN DISCOUNT | 0.032% | 0.032% | 0.032% | 0.032% | 0.036% |
| TOTAL INTEREST INC. | 6.968% | 7.341% | 8.876% | 9.312% | 9.234% |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 3.809% | 3.938% | 5.550% | 5.867% | 5.490% |
| BORROWINGS | 1.458% | 1.579% | 1.625% | 1.671% | 1.784% |
| SUBORDINATED DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| OTHER | 0.002% | 0.002% | 0.002% | 0.002% | 0.002% |
| TOTAL INTEREST EXP. | 5.270% | 5.520% | 7.176% | 7.540% | 7.276% |
| NET INT. SPREAD | 1.698% | 1.821% | 1.699% | 1.772% | 1.958% |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 0.063% | 0.066% | 0.059% | 0.061% | 0.070% |
| OTHER FEES | 0.145% | 0.150% | 0.180% | 0.177% | 0.185% |
| SERVICE INCOME | 0.047% | 0.057% | 0.053% | 0.060% | 0.061% |
| SERVICE CORP | -0.132% | 0.009% | 0.071% | 0.178% | 0.047% |
| RESERVE FOR LOANS & REO LOSSES | -0.105% | -0.106% | -0.056% | -0.056% | -0.087% |
| GAIN (LOSS) ON INVESTMENT | 0.026% | 0.026% | 0.024% | 0.024% | 0.028% |
| GAIN (LOSS) ON LOAN SALES | 0.000% | 0.000% | 0.176% | 0.197% | 0.117% |
| OTHER INCOME (EXPENSE) | 0.002% | 0.002% | 0.099% | 0.098% | 0.063% |
| TOTAL OTHER INCOME | 0.046% | 0.205% | 0.606% | 0.740% | 0.483% |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 0.580% | 0.640% | 0.587% | 0.592% | 0.671% |
| COMMUNICATIONS | 0.062% | 0.063% | 0.076% | 0.078% | 0.079% |
| ADVERTISING | 0.043% | 0.043% | 0.046% | 0.049% | 0.051% |
| TRAVEL & ENTERTAINMENT | 0.046% | 0.053% | 0.049% | 0.040% | 0.053% |
| OFFICE SUPPLIES | 0.054% | 0.055% | 0.061% | 0.061% | 0.065% |
| INSURANCE | 0.123% | 0.126% | 0.182% | 0.185% | 0.176% |
| DATA PROCESSING | 0.129% | 0.140% | 0.175% | 0.172% | 0.175% |
| TAXES AND LICENSES | 0.034% | 0.037% | 0.056% | 0.060% | 0.054% |
| LEGAL & ACCOUNTING | 0.045% | 0.042% | 0.037% | 0.037% | 0.045% |
| OCCUPANCY | 0.129% | 0.131% | 0.147% | 0.147% | 0.156% |
| DEPREC./AMORT. | 0.285% | 0.292% | 0.520% | 0.522% | 0.469% |
| OTHER | 0.071% | 0.072% | 0.073% | 0.071% | 0.081% |
| TOTAL OPERATING EXP. | 1.600% | 1.693% | 2.009% | 2.015% | 2.075% |
| NET INC (LOSS) BEFORE TAX | 0.145% | 0.332% | 0.296% | 0.497% | 0.366% |
| TAX (PROVISION) BENEFIT | -0.052% | -0.120% | -0.107% | -0.179% | -0.132% |
| NET INC (LOSS) | 0.093% | 0.213% | 0.190% | 0.317% | 0.234% |
| PREFERRED DIVIDEND | 0.040% | 0.040% | 0.032% | 0.031% | 0.039% |
| EARNINGS AVAILABLE TO COMMON | 0.053% | 0.173% | 0.158% | 0.296% | 0.195% |

APP. 1341

SG 0142204
Confidential Material - Subject to Protective Order

26-Jul-88
10:25 PM

| STATISTICS (YR1): CONSOLIDATED | Q1-Y1 | Q2-Y1 | Q3-Y1 | Q4-Y1 | YEAR END |
|---|---|---|---|---|---|
| **BALANCE SHEET:** | | | | | |
| NET WORTH TO TOTAL ASSETS(GAAP) | 2.155% | 1.473% | 1.502% | 2.233% | |
| NET WORTH TO TOTAL ASSETS(RAP) | 5.238% | 3.416% | 3.431% | 4.126% | |
| NON EARNING ASSETS TO TOTAL ASSETS | 5.330% | 11.329% | 8.802% | 8.462% | |
| **PERFORMANCE:** | | | | | |
| EARNINGS PER COMMON SHARE BEFORE PREFERRED | $0.28 | $0.59 | $0.66 | $1.10 | $2.60 |
| EARNINGS PER COMMON SHARE AFTER PREFERRED | $0.16 | $0.48 | $0.55 | $0.99 | $2.16 |
| BOOK VALUE PER COMMON SHARE (GAAP) | $12.06 | $11.51 | $12.05 | $12.05 | $11.64 |
| TOTAL ASSETS PER SHARE (000's) | $948.94 | $1,368.54 | $1,378.70 | $1,405.34 | $1,392.02 |
| RETURN ON AVERAGE COMMON EQUITY GAAP (NON-ANNUALIZED) | 1.340% | 3.949% | 4.539% | 8.233% | 18.356% |
| RETURN ON AVERAGE TOTAL EQUITY RAP (NON-ANNUALIZED) | 0.568% | 1.273% | 1.396% | 2.093% | 5.451% |
| RETURN ON AVERAGE TOTAL ASSETS | 0.023% | 0.052% | 0.048% | 0.079% | 0.234% |
| RETURN NET OF PREFERRED DIVIDEND ON AVG. ASSETS | 0.013% | 0.043% | 0.040% | 0.071% | 0.195% |
| **PERCENT OF OPERATING INCOME:** | | | | | |
| TOTAL INTEREST INC. | 97.869% | 95.943% | 93.060% | 92.126% | 94.185% |
| TOTAL INTEREST EXP. | 74.014% | 72.142% | 75.242% | 74.594% | 74.212% |
| LOAN & COMMITMENT FEES | 0.897% | 0.857% | 0.622% | 0.602% | 0.709% |
| OTHER FEES | 2.037% | 1.967% | 1.886% | 1.753% | 1.896% |
| SERVICE INCOME | 0.665% | 0.746% | 0.555% | 0.597% | 0.625% |
| SERVICE CORP | -1.857% | 0.115% | 0.740% | 1.762% | 0.479% |
| RESERVE FOR LOANS & REO LOSSES | -1.478% | -1.381% | -0.587% | -0.553% | -0.891% |
| GAIN (LOSS) ON INVESTMENT | 0.370% | 0.345% | 0.255% | 0.240% | 0.289% |
| GAIN (LOSS) ON LOAN SALES | 0.000% | 0.000% | 1.849% | 1.948% | 1.189% |
| OTHER INCOME (EXPENSE) | 0.030% | 0.028% | 1.033% | 0.973% | 0.638% |
| TOTAL OTHER INCOME | 22.473% | 22.132% | 21.065% | 19.938% | 21.162% |
| PERSONNEL | 8.144% | 8.364% | 6.154% | 5.857% | 6.845% |
| TOTAL OPERATING EXP. | 22.473% | 22.132% | 21.065% | 19.938% | 21.162% |
| NET INC (LOSS)BEFORE TAX | 2.035% | 4.344% | 3.107% | 4.915% | 3.735% |
| TAX (PROVISION) BENEFIT | -0.733% | -1.564% | -1.119% | -1.775% | -1.347% |
| NET INC (LOSS) | 1.303% | 2.780% | 1.987% | 3.140% | 2.389% |
| **SPREAD: (ANNUALIZED)** | | | | | |
| LOAN INTEREST INCOME TO AVG. LOANS | 7.949% | 8.269% | 10.343% | 10.828% | 9.489% |
| MBS INTEREST INCOME TO AVG. MBS | 8.628% | 9.004% | 9.355% | 9.116% | 9.055% |
| INVEST. INT. INCOME TO AVG. INVEST. | 6.179% | 6.100% | 7.878% | 8.512% | 7.324% |
| TTL INT. INCOME TO AVG. EARNING ASSETS | 7.838% | 8.169% | 9.947% | 10.336% | 9.084% |
| DEPOSIT INT EXPENSE TO AVG DEPOSITS | 5.215% | 5.455% | 7.413% | 7.836% | 6.630% |
| BORROWINGS INT EXP TO AVG BORROWINGS | 6.985% | 7.208% | 8.145% | 8.576% | 7.775% |
| SUB DEBT INT EXP TO AVG SUB DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| TTL INT EXP TO AVG PAYING LIAB | 5.611% | 5.865% | 7.569% | 7.991% | 6.880% |
| NET SPREAD TO AVG EARNING ASSETS | 1.911% | 2.026% | 1.905% | 1.967% | 1.926% |
| **PER FTE:** | | | | | |
| TOTAL OPERATING INCOME | 46,538.64 | 45,240.83 | 70,984.54 | 75,402.26 | 73,193.40 |
| DEPOSITS | 1,389,794.04 | 2,200,352.08 | 2,220,324.73 | 2,260,514.29 | 2,240,419.51 |
| LOAN FEES | 412.84 | 387.50 | 441.67 | 454.17 | 447.92 |
| PER BRANCH | 0.09 | 0.08 | 0.08 | 0.09 | 0.08 |
| **CALCULATED BALANCES:** | | | | | |
| GROSS OPERATING INCOME (ANNUALIZED) | 40,250,867 | 44,034,407 | 67,599,630 | 72,585,034 | 56,136,056 |
| GROSS OPERATING INCOME | 10,145,424 | 10,857,799 | 17,035,290 | 18,096,543 | 56,136,056 |
| TOTAL COMMON EQUITY GAAP (EOP) | 5,655,025 | 6,217,810 | 6,217,810 | 6,217,810 | 6,077,114 |
| AVERAGE TOTAL ASSETS | 565,325,593 | 575,535,604 | 709,643,976 | 718,136,108 | 572,596,005 |
| AVERAGE EARNING ASSETS | 502,567,614 | 517,192,062 | 632,325,719 | 646,924,936 | 582,058,499 |
| AVERAGE INVESTMENTS | 44,390,473 | 40,120,000 | 54,740,000 | 57,740,000 | 49,247,618 |
| AVERAGE LOANS | 390,447,715 | 394,727,159 | 486,037,847 | 492,014,848 | 440,806,892 |
| AVERAGE MBS | 54,456,632 | 66,663,000 | 74,862,630 | 80,436,256 | 69,104,630 |
| AVERAGE PAYING LIABILITIES | 530,938,940 | 541,629,800 | 671,881,218 | 677,600,682 | 605,512,660 |
| AVERAGE DEPOSITS | 412,902,744 | 415,529,800 | 530,481,218 | 537,700,682 | 474,153,611 |
| AVERAGE BORROWINGS | 118,036,196 | 126,100,000 | 141,400,000 | 139,900,000 | 131,359,049 |
| AVERAGE SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| AVERAGE TOTAL EQUITY RAP | 23,272,493 | 23,714,550 | 24,259,821 | 27,156,901 | 24,600,941 |
| AVERAGE TOTAL COMMON EQUITY GAAP | 5,655,025 | 5,936,418 | 6,217,810 | 6,217,810 | 6,006,766 |
| PERCENT OF YEAR | 25.205% | 24.658% | 25.205% | 24.932% | 100.000% |
| SHARES OUTSTANDING | 468,996 | 515,895 | 515,895 | 515,895 | 515,895 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| FTE's: | | | | | |
| DEPOSIT | 136.00 | 156.00 | 156.00 | 156.00 | 156.00 |
| LOAN | 34.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| ADMINISTRATION and OTHER | 48.00 | 44.00 | 44.00 | 44.00 | 44.00 |
| TOTAL FTE's | 218.00 | 240.00 | 240.00 | 240.00 | 240.00 |
| # OF BRANCHES | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 |

APP. 1342

SG 0142205 Confidential Material – Subject to Protective Order

26-Jul-88
10:25 PM

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1990

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $2,667,058 | $3,695,933 | $6,467,307 | $7,017,625 |
| INVESTMENTS | 60,290,000 | 61,371,500 | 62,485,445 | 63,632,808 |
| LOANS RECEIVABLE | 504,524,985 | 512,816,486 | 521,255,828 | 533,223,186 |
| MORTGAGE-BACKED SECURITIES | 88,147,985 | 90,491,465 | 92,903,740 | 95,386,858 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,783,177 | 16,793,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 36,497,041 | 35,658,973 | 34,820,905 | 32,962,836 |
| REAL ESTATE OWNED | 6,499,000 | 5,749,000 | 4,999,000 | 4,249,000 |
| PREPAID & OTHER ASSETS | 4,998,000 | 4,898,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $735,021,246 | $746,078,535 | $759,127,402 | $772,667,491 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 551,977,248 | 562,509,402 | 575,056,412 | 588,024,715 |
| ADVANCES FROM FHLB | 81,900,000 | 81,900,000 | 81,900,000 | 81,900,000 |
| REPO FUNDS PURCHASED | 52,000,000 | 52,000,000 | 52,000,000 | 52,000,000 |
| FED FUNDS PURCHASED | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,050,000 | 4,050,000 | 4,050,000 | 4,050,000 |
| ACCRUED INTEREST PAYABLE | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| LOAN PARTICIPATIONS PAYABLE | 720,000 | 720,000 | 720,000 | 720,000 |
| ADVANCE PAYMENTS FOR T&I | 1,700,000 | 1,700,000 | 1,700,000 | 1,700,000 |
| DEFERRED TAXES | 1,471,100 | 1,471,100 | 1,471,100 | 1,471,100 |
| DEFERRED INCOME | 242,983 | 242,983 | 242,983 | 242,983 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,086,000 | 4,086,000 | 4,086,000 | 4,086,000 |
| TOTAL LIABILITIES | 704,547,331 | 715,079,485 | 727,626,495 | 740,594,798 |
| **STOCKHOLDERS' EQUITY** GROWTH | 2.57% | 2.88% | 3.28% | 3.57% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 290,168 | 290,168 | 290,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 6,950,111 | 6,850,111 | 6,850,111 | 6,850,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 2,653,421 | 2,472,066 | 2,290,711 | 2,109,356 |
| UNDIVIDED PROFITS - CURRENT | 742,403 | 1,448,893 | 2,132,105 | 2,885,246 |
| TOTAL EQUITY | 30,473,915 | 30,999,050 | 31,500,907 | 32,072,693 |
| TOTAL LIABILITIES AND EQUITY | $735,021,246 | $746,078,535 | $759,127,402 | $772,667,491 |
| RAP LEVERAGE | 4.146% | 4.155% | 4.150% | 4.151% |
| GAAP LEVERAGE | 2.279% | 2.316% | 2.342% | 2.375% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.965% | 4.780% | 4.567% | 4.266% |

APP. 1343

SG 0142206
Confidential Material – Subject to Protective Order

CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1155

26-Jul-[illegible]
10:25 PM

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1990

| | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | $13,665,869 | $13,301,287 | $12,905,748 | $12,975,491 | $52,848,395 |
| MBS | 2,193,555 | 2,132,375 | 2,093,506 | 2,114,643 | 8,534,079 |
| INVESTMENTS | 1,288,104 | 1,247,909 | 1,205,260 | 1,202,237 | 4,943,511 |
| INVESTMENT IN AFFILIATE | 259,174 | 233,216 | 217,800 | 209,759 | 919,950 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 17,463,702 | 16,971,786 | 16,479,315 | 16,559,131 | 67,473,934 |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 10,899,787 | 10,502,117 | 10,128,259 | 10,099,500 | 41,629,662 |
| BORROWINGS | 3,019,662 | 2,933,459 | 2,784,065 | 2,728,424 | 11,465,610 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,922,448 | 13,438,576 | 12,915,324 | 12,830,925 | 53,107,272 |
| NET INT. SPREAD | $3,541,254 | $3,533,211 | $3,563,991 | $3,728,206 | $14,366,662 |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 330,000 | 330,000 | 330,000 | 330,000 | 1,320,000 |
| SERVICE INCOME | 123,000 | 138,000 | 153,000 | 168,000 | 582,000 |
| SERVICE CORP | 350,000 | 350,000 | 320,000 | 320,000 | 1,340,000 |
| RESERVE FOR LOANS & REO LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 322,500 | 315,000 | 352,500 | 1,320,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,361,500 | 1,369,000 | 1,346,500 | 1,399,000 | 5,476,000 |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 1,119,961 | 1,163,979 | 1,192,478 | 1,277,480 | 4,753,899 |
| COMMUNICATIONS | 141,246 | 143,710 | 146,238 | 148,833 | 580,028 |
| ADVERTISING | 94,415 | 101,096 | 108,393 | 116,364 | 420,267 |
| TRAVEL & ENTERTAINMENT | 60,019 | 49,932 | 41,764 | 35,150 | 186,864 |
| OFFICE SUPPLIES | 110,400 | 111,374 | 112,359 | 113,355 | 447,488 |
| INSURANCE | 337,636 | 344,718 | 352,053 | 359,651 | 1,394,059 |
| DATA PROCESSING | 304,169 | 300,390 | 296,682 | 293,044 | 1,194,284 |
| TAXES AND LICENSES | 116,535 | 126,021 | 136,714 | 148,769 | 528,039 |
| LEGAL & ACCOUNTING | 66,275 | 66,250 | 66,225 | 66,200 | 264,950 |
| OCCUPANCY | 265,466 | 267,153 | 268,855 | 270,572 | 1,072,047 |
| DEPREC./AMORT. | 950,504 | 950,504 | 950,504 | 950,504 | 3,802,016 |
| OTHER | 155,698 | 153,704 | 151,750 | 149,835 | 610,988 |
| TOTAL OPERATING EXP. | 3,722,326 | 3,778,831 | 3,824,016 | 3,929,756 | 15,254,929 |
| NET INC (LOSS) BEFORE TAX | $1,180,428 | $1,123,379 | $1,085,475 | $1,197,450 | $4,587,732 |
| TAX (PROVISION) BENEFIT | (438,025) | (416,889) | (403,262) | (444,309) | (1,702,486) |
| NET INC (LOSS) | $742,403 | $706,490 | $683,212 | $753,141 | $2,885,246 |
| PREFERRED DIVIDEND | 181,355 | 181,355 | 181,355 | 181,355 | 725,420 |
| EARNINGS AVAILABLE TO COMMON | $561,048 | $525,135 | $501,857 | $571,786 | $2,159,826 |
| YIELD ON EARNING ASSETS | 10.439% | 10.189% | 9.511% | 9.472% | 9.890% |
| COST OF SAVINGS AND BORROWINGS | 8.050% | 7.829% | 7.241% | 7.144% | 7.613% |
| SPREAD DIFFERENCE | 2.389% | 2.359% | 2.270% | 2.328% | 2.277% |
| SPREAD ON AVG EARNING ASSETS | 2.117% | 2.121% | 2.057% | 2.133% | 2.106% |

SG 0142207
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1156

26-Ju.
10:25 PM

CONSOLIDAT
INCOME (EXPENSE) AS A PERCEN. AVERAGE ASSETS
(PROJECTED)
YEAR ENDING 6\30\1990

| | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | 7.427% | 7.284% | 6.803% | 6.795% | 7.128% |
| MBS | 1.192% | 1.168% | 1.104% | 1.107% | 1.151% |
| INVESTMENTS | 0.700% | 0.683% | 0.635% | 0.630% | 0.667% |
| INVESTMENT IN AFFILIATE | 0.141% | 0.128% | 0.115% | 0.110% | 0.124% |
| LOAN DISCOUNT | 0.031% | 0.031% | 0.030% | 0.030% | 0.031% |
| TOTAL INTEREST INC. | 9.491% | 9.294% | 8.687% | 8.672% | 9.100% |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 5.924% | 5.731% | 5.339% | 5.289% | 5.615% |
| BORROWINGS | 1.641% | 1.606% | 1.468% | 1.429% | 1.546% |
| SUBORDINATED DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| OTHER | 0.002% | 0.002% | 0.002% | 0.002% | 0.002% |
| TOTAL INTEREST EXP. | 7.566% | 7.360% | 6.808% | 6.720% | 7.163% |
| NET INT. SPREAD | 1.925% | 1.935% | 1.879% | 1.952% | 1.938% |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 0.059% | 0.060% | 0.057% | 0.057% | 0.059% |
| OTHER FEES | 0.179% | 0.181% | 0.174% | 0.173% | 0.178% |
| SERVICE INCOME | 0.067% | 0.076% | 0.081% | 0.088% | 0.078% |
| SERVICE CORP | 0.190% | 0.192% | 0.169% | 0.168% | 0.181% |
| RESERVE FOR LOANS & RED LOSSES | -0.054% | -0.055% | -0.053% | -0.052% | -0.054% |
| GAIN (LOSS) ON INVESTMENT | 0.024% | 0.024% | 0.023% | 0.023% | 0.023% |
| GAIN (LOSS) ON LOAN SALES | 0.179% | 0.177% | 0.166% | 0.185% | 0.178% |
| OTHER INCOME (EXPENSE) | 0.096% | 0.096% | 0.093% | 0.092% | 0.095% |
| TOTAL OTHER INCOME | 0.740% | 0.750% | 0.710% | 0.733% | 0.739% |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 0.609% | 0.637% | 0.629% | 0.669% | 0.641% |
| COMMUNICATIONS | 0.077% | 0.079% | 0.077% | 0.075% | 0.078% |
| ADVERTISING | 0.051% | 0.055% | 0.057% | 0.061% | 0.057% |
| TRAVEL & ENTERTAINMENT | 0.033% | 0.027% | 0.022% | 0.018% | 0.025% |
| OFFICE SUPPLIES | 0.060% | 0.061% | 0.059% | 0.059% | 0.060% |
| INSURANCE | 0.183% | 0.189% | 0.186% | 0.188% | 0.188% |
| DATA PROCESSING | 0.165% | 0.165% | 0.156% | 0.153% | 0.161% |
| TAXES AND LICENSES | 0.063% | 0.069% | 0.072% | 0.078% | 0.071% |
| LEGAL & ACCOUNTING | 0.036% | 0.036% | 0.035% | 0.035% | 0.036% |
| OCCUPANCY | 0.144% | 0.146% | 0.142% | 0.142% | 0.145% |
| DEPREC./AMORT. | 0.517% | 0.521% | 0.501% | 0.498% | 0.513% |
| OTHER | 0.085% | 0.084% | 0.090% | 0.078% | 0.082% |
| TOTAL OPERATING EXP. | 2.023% | 2.069% | 2.016% | 2.058% | 2.057% |
| NET INC (LOSS)BEFORE TAX | 0.642% | 0.615% | 0.573% | 0.627% | 0.619% |
| TAX (PROVISION) BENEFIT | -0.238% | -0.228% | -0.213% | -0.233% | -0.230% |
| NET INC (LOSS) | 0.403% | 0.397% | 0.360% | 0.394% | 0.399% |
| PREFERRED DIVIDEND | 0.099% | 0.099% | 0.096% | 0.095% | 0.098% |
| EARNINGS AVAILABLE TO COMMON | 0.305% | 0.288% | 0.265% | 0.299% | 0.291% |

0142208

SG "Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1157

26-J 9
10:2?

| STATISTICS (YR2): CONSOLIDATED | Q1-Y2 | Q2-Y2 | Q3-Y2 | Q4-Y2 | YEAR END |
|---|---|---|---|---|---|
| **BALANCE SHEET:** | | | | | |
| NET WORTH TO TOTAL ASSETS(GAAP) | 2.279% | 2.316% | 2.342% | 2.375% | |
| NET WORTH TO TOTAL ASSETS(RAP) | 4.146% | 4.155% | 4.150% | 4.151% | |
| NON EARNING ASSETS TO TOTAL ASSETS | 8.093% | 7.750% | 7.402% | 6.933% | |
| **PERFORMANCE:** | | | | | |
| EARNINGS PER COMMON SHARE BEFORE PREFERRED | $1.44 | $1.37 | $1.32 | $1.46 | $5.59 |
| EARNINGS PER COMMON SHARE AFTER PREFERRED | $1.09 | $1.02 | $0.97 | $1.11 | $4.19 |
| BOOK VALUE PER COMMON SHARE (GAAP) | $12.05 | $12.05 | $12.05 | $12.05 | $12.05 |
| TOTAL ASSETS PER SHARE (000's) | $1,415.04 | $1,446.18 | $1,471.48 | $1,497.72 | $1,484.60 |
| RETURN ON AVERAGE COMMON EQUITY GAAP (NON-ANNU | 9.023% | 8.446% | 8.071% | 9.195% | 34.736% |
| RETURN ON AVERAGE TOTAL EQUITY RAP (NON-ANNUAL | 2.459% | 2.299% | 2.185% | 2.369% | 9.546% |
| RETURN ON AVERAGE TOTAL ASSETS | 0.102% | 0.095% | 0.091% | 0.098% | 0.389% |
| RETURN NET OF PREFERRED DIVIDEND ON AVG. ASSET | 0.077% | 0.071% | 0.067% | 0.075% | 0.291% |
| **PERCENT OF OPERATING INCOME:** | | | | | |
| TOTAL INTEREST INC. | 92.277% | 92.034% | 91.931% | 91.699% | 91.989% |
| TOTAL INTEREST EXP. | 73.566% | 72.874% | 72.049% | 71.053% | 72.403% |
| LOAN & COMMITMENT FEES | 0.576% | 0.591% | 0.608% | 0.604% | 0.594% |
| OTHER FEES | 1.744% | 1.790% | 1.841% | 1.827% | 1.800% |
| SERVICE INCOME | 0.650% | 0.748% | 0.854% | 0.930% | 0.793% |
| SERVICE CORP | 1.849% | 1.898% | 1.785% | 1.772% | 1.927% |
| RESERVE FOR LOANS & REO LOSSES | -0.528% | -0.542% | -0.558% | -0.554% | -0.545% |
| GAIN (LOSS) ON INVESTMENT | 0.230% | 0.236% | 0.243% | 0.241% | 0.237% |
| GAIN (LOSS) ON LOAN SALES | 1.744% | 1.749% | 1.757% | 1.952% | 1.800% |
| OTHER INCOME (EXPENSE) | 0.930% | 0.954% | 0.982% | 0.975% | 0.960% |
| TOTAL OTHER INCOME | 19.669% | 20.492% | 21.332% | 21.762% | 20.797% |
| PERSONNEL | 5.918% | 6.312% | 6.652% | 7.074% | 6.481% |
| TOTAL OPERATING EXP. | 19.669% | 20.492% | 21.332% | 21.762% | 20.797% |
| NET INC (LOSS)BEFORE TAX | 6.237% | 6.092% | 6.061% | 6.631% | 6.255% |
| TAX (PROVISION) BENEFIT | -2.315% | -2.261% | -2.250% | -2.460% | -2.321% |
| NET INC (LOSS) | 3.923% | 3.831% | 3.811% | 4.171% | 3.934% |
| **SPREAD: (ANNUALIZED)** | | | | | |
| LOAN INTEREST INCOME TO AVG. LOANS | 10.825% | 10.605% | 9.903% | 9.971% | 10.380% |
| MBS INTEREST INCOME TO AVG. MBS | 10.083% | 9.682% | 9.058% | 9.009% | 9.656% |
| INVEST. INT. INCOME TO AVG. INVEST. | 8.551% | 8.320% | 7.721% | 7.647% | 8.149% |
| TTL INT. INCOME TO AVG. EARNING ASSETS | 10.439% | 10.188% | 9.511% | 9.472% | 9.890% |
| DEPOSIT INT EXPENSE TO AVG DEPOSITS | 7.902% | 7.643% | 7.065% | 6.966% | 7.454% |
| BORROWINGS INT EXP TO AVG BORROWINGS | 8.625% | 8.565% | 7.952% | 7.879% | 8.243% |
| SUB DEBT INT EXP TO AVG SUB DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| TTL INT EXP TO AVG PAYING LIAB | 8.050% | 7.829% | 7.241% | 7.144% | 7.613% |
| NET SPREAD TO AVG EARNING ASSETS | 2.117% | 2.121% | 2.057% | 2.133% | 2.106% |
| **PER FTE:** | | | | | |
| TOTAL OPERATING INCOME | 78,855.01 | 76,836.61 | 74,690.89 | 75,242.21 | 74,966.55 |
| DEPOSITS | 2,299,905.20 | 2,343,789.17 | 2,396,068.39 | 2,450,102.98 | 2,423,085.68 |
| LOAN FEES | 454.17 | 454.17 | 454.17 | 454.17 | 454.17 |
| PER BRANCH | 0.08 | 0.08 | 0.08 | 0.08 | 0.08 |
| **CALCULATED BALANCES:** | | | | | |
| GROSS OPERATING INCOME (ANNUALIZED) | 75,083,683 | 74,797,633 | 71,118,721 | 72,430,964 | 73,349,934 |
| GROSS OPERATING INCOME | 18,925,202 | 19,440,786 | 17,925,815 | 18,058,131 | 73,349,934 |
| TOTAL COMMON EQUITY GAAP (EOP) | 6,217,910 | 6,217,810 | 6,217,810 | 6,217,810 | 6,217,810 |
| AVERAGE TOTAL ASSETS | 730,013,813 | 740,549,890 | 752,692,968 | 765,897,447 | 741,440,045 |
| AVERAGE EARNING ASSETS | 663,701,571 | 675,604,389 | 687,445,409 | 701,227,110 | 682,263,998 |
| AVERAGE INVESTMENTS | 59,765,000 | 60,830,750 | 61,929,473 | 63,059,127 | 60,664,670 |
| AVERAGE LOANS | 500,842,773 | 509,670,736 | 517,036,157 | 527,239,507 | 509,160,805 |
| AVERAGE MBS | 86,310,619 | 89,319,725 | 91,697,602 | 94,145,299 | 88,381,900 |
| AVERAGE PAYING LIABILITIES | 686,150,339 | 696,143,325 | 707,682,907 | 720,440,564 | 697,603,563 |
| AVERAGE DEPOSITS | 547,250,339 | 557,243,325 | 568,782,907 | 581,540,564 | 558,503,563 |
| AVERAGE BORROWINGS | 138,900,000 | 138,900,000 | 138,900,000 | 138,900,000 | 139,100,000 |
| AVERAGE SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| AVERAGE TOTAL EQUITY RAP | 30,193,391 | 30,736,482 | 31,249,978 | 31,786,800 | 30,224,710 |
| AVERAGE TOTAL COMMON EQUITY GAAP | 6,217,810 | 6,217,810 | 6,217,810 | 6,217,810 | 6,217,810 |
| PERCENT OF YEAR | 25.205% | 24.658% | 25.205% | 24.932% | 100.000% |
| SHARES OUTSTANDING | 515,895 | 515,895 | 515,895 | 515,895 | 515,895 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| FTE's: | | | | | |
| DEPOSIT | 156.00 | 156.00 | 156.00 | 156.00 | 156.00 |
| LOAN | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| ADMINISTRATION and OTHER | 44.00 | 44.00 | 44.00 | 44.00 | 44.00 |
| TOTAL FTE's | 240.00 | 240.00 | 240.00 | 240.00 | 240.00 |
| # OF BRANCHES | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 |

SG 0142209
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1158

26-Jul
10:25 AM

CONSOLIDATED
BALANCE SHEET
YEAR ENDING 6\30\1991

| ASSETS | PROJECTED 1st QTR | PROJECTED 2nd QTR | PROJECTED 3rd QTR | PROJECTED 4th QTR |
|---|---|---|---|---|
| CASH | $6,990,403 | $6,433,389 | $5,565,685 | $6,065,388 |
| INVESTMENTS | 64,814,593 | 66,031,830 | 67,494,544 | 69,008,453 |
| LOANS RECEIVABLE | 547,252,224 | 561,725,939 | 576,659,434 | 592,068,332 |
| MORTGAGE-BACKED SECURITIES | 97,942,930 | 100,574,128 | 103,292,692 | 106,070,926 |
| INVESTMENT & ADVANCES TO AFFILIATE | 16,783,177 | 16,783,177 | 16,793,177 | 16,783,177 |
| ACCRUED INTEREST RECEIVABLE | 3,525,000 | 3,525,000 | 3,525,000 | 3,525,000 |
| OFFICE PROPERTIES AND EQUIPMENT | 11,089,000 | 11,089,000 | 11,089,000 | 11,089,000 |
| INTANGIBLE ASSETS | 32,150,268 | 31,337,700 | 30,525,132 | 28,352,565 |
| REAL ESTATE OWNED | 3,749,000 | 3,249,000 | 2,749,000 | 2,249,000 |
| PREPAID & OTHER ASSETS | 4,799,000 | 4,798,000 | 4,798,000 | 4,798,000 |
| TOTAL ASSETS | $789,094,594 | $805,547,164 | $822,471,664 | $840,009,841 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| SAVINGS AND CHECKING | 599,592,976 | 611,493,104 | 623,735,016 | 636,328,928 |
| ADVANCES FROM FHLB | 83,559,000 | 85,267,770 | 87,027,803 | 88,840,637 |
| REPO FUNDS PURCHASED | 54,340,000 | 56,241,900 | 58,210,367 | 60,247,729 |
| FED FUNDS PURCHASED | 5,025,000 | 5,050,125 | 5,075,376 | 5,100,753 |
| CASHIER CHECKS ISSUED & OUTSTANDING | 4,070,250 | 4,090,601 | 4,111,054 | 4,131,610 |
| ACCRUED INTEREST PAYABLE | 1,407,000 | 1,414,035 | 1,421,105 | 1,428,211 |
| LOAN PARTICIPATIONS PAYABLE | 723,600 | 727,218 | 730,854 | 734,508 |
| ADVANCE PAYMENTS FOR T&I | 1,708,500 | 1,717,043 | 1,725,628 | 1,734,256 |
| DEFERRED TAXES | 1,478,456 | 1,485,848 | 1,493,277 | 1,500,743 |
| DEFERRED INCOME | 244,198 | 245,419 | 246,646 | 247,879 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 |
| OTHER LIABILITIES & NOTES PAYABLE | 4,091,000 | 4,096,025 | 4,101,075 | 4,106,151 |
| TOTAL LIABILITIES | 756,239,980 | 771,829,087 | 787,878,201 | 804,401,405 |
| **STOCKHOLDERS' EQUITY** GROWTH | 3.93% | 4.22% | 4.18% | 4.22% |
| CAPITAL STOCK | 515,895 | 515,895 | 515,895 | 515,895 |
| PREFERRED STOCK | 290,168 | 290,168 | 290,168 | 290,168 |
| ADDITIONAL PAID IN CAPITAL - COMMON | 5,701,915 | 5,701,915 | 5,701,915 | 5,701,915 |
| ADDITIONAL PAID IN CAPITAL - PREFERRED | 6,850,111 | 6,850,111 | 6,850,111 | 6,850,111 |
| CONTRIBUTED CAPITAL FSLIC | 13,720,002 | 13,720,002 | 13,720,002 | 13,720,002 |
| UNDIVIDED PROFITS - PRIOR | 4,813,247 | 4,631,892 | 4,450,537 | 4,269,182 |
| UNDIVIDED PROFITS - CURRENT | 963,277 | 2,008,094 | 3,064,836 | 4,261,163 |
| TOTAL EQUITY | 32,854,615 | 33,718,077 | 34,593,464 | 35,608,436 |
| TOTAL LIABILITIES AND EQUITY | $789,094,594 | $805,547,164 | $822,471,664 | $840,009,841 |
| RAP LEVERAGE | 4.164% | 4.186% | 4.206% | 4.239% |
| GAAP LEVERAGE | 2.425% | 2.483% | 2.538% | 2.606% |
| INTANGIBLE ASSETS TO TOTAL ASSETS | 4.074% | 3.890% | 3.711% | 3.375% |

SG 0142210
Confidential Material – Subject to Protective Order



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1159

26-Jul-90
10:25 PM

CONSOLIDATED
STATEMENT OF OPERATIONS
(PROJECTED)
YEAR ENDING 6\30\1991

| | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | |
| LOANS | $13,301,397 | $13,692,781 | $13,677,268 | $14,194,881 | $54,866,327 |
| MBS | 2,193,682 | 2,268,437 | 2,272,229 | 2,356,395 | 9,090,743 |
| INVESTMENTS | 1,222,362 | 1,250,125 | 1,240,720 | 1,283,523 | 4,996,730 |
| INVESTMENT IN AFFILIATE | 207,834 | 211,021 | 204,364 | 206,635 | 829,853 |
| LOAN DISCOUNT | 57,000 | 57,000 | 57,000 | 57,000 | 228,000 |
| TOTAL INTEREST INC. | 16,982,275 | 17,479,364 | 17,451,581 | 18,098,434 | 70,011,654 |
| **INTEREST EXPENSE** | | | | | |
| DEPOSITS | 10,268,150 | 10,504,451 | 10,399,269 | 10,720,573 | 41,892,444 |
| BORROWINGS | 2,762,239 | 2,859,449 | 2,850,066 | 2,955,452 | 11,427,206 |
| SUBORDINATED DEBT | 0 | 0 | 0 | 0 | 0 |
| OTHER | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| TOTAL INTEREST EXP. | 13,033,389 | 13,366,900 | 13,252,335 | 13,679,025 | 53,331,649 |
| NET INT. SPREAD | $3,948,886 | $4,112,464 | $4,199,246 | $4,419,409 | $16,680,004 |
| **OTHER INC. (EXP.)** | | | | | |
| LOAN & COMMITMENT FEES | 109,000 | 109,000 | 109,000 | 109,000 | 436,000 |
| OTHER FEES | 340,000 | 340,000 | 340,000 | 340,000 | 1,360,000 |
| SERVICE INCOME | 183,000 | 198,000 | 213,000 | 228,000 | 822,000 |
| SERVICE CORP | 440,000 | 440,000 | 440,000 | 440,000 | 1,760,000 |
| RESERVE FOR LOANS & REO LOSSES | (100,000) | (100,000) | (100,000) | (100,000) | (400,000) |
| GAIN (LOSS) ON INVESTMENT | 43,500 | 43,500 | 43,500 | 43,500 | 174,000 |
| GAIN (LOSS) ON LOAN SALES | 330,000 | 360,000 | 315,000 | 330,000 | 1,335,000 |
| OTHER INCOME (EXPENSE) | 176,000 | 176,000 | 176,000 | 176,000 | 704,000 |
| TOTAL OTHER INCOME | 1,521,500 | 1,566,500 | 1,536,500 | 1,566,500 | 6,191,000 |
| **OPERATING EXP.** | | | | | |
| PERSONNEL | 1,306,874 | 1,380,325 | 1,412,364 | 1,435,185 | 5,534,748 |
| COMMUNICATIONS | 149,342 | 149,954 | 150,368 | 150,895 | 600,449 |
| ADVERTISING | 116,835 | 117,310 | 117,786 | 119,265 | 470,196 |
| TRAVEL & ENTERTAINMENT | 35,291 | 35,432 | 35,574 | 35,717 | 142,014 |
| OFFICE SUPPLIES | 113,772 | 114,191 | 114,612 | 115,035 | 457,610 |
| INSURANCE | 360,749 | 361,853 | 362,962 | 364,077 | 1,449,642 |
| DATA PROCESSING | 293,994 | 294,949 | 295,909 | 296,873 | 1,181,724 |
| TAXES AND LICENSES | 149,303 | 149,839 | 150,378 | 150,920 | 600,440 |
| LEGAL & ACCOUNTING | 66,326 | 66,453 | 66,590 | 66,708 | 266,067 |
| OCCUPANCY | 271,565 | 272,563 | 273,565 | 274,573 | 1,092,266 |
| DEPREC./AMORT. | 925,004 | 925,004 | 925,004 | 925,004 | 3,700,016 |
| OTHER | 150,309 | 150,785 | 151,264 | 151,746 | 604,105 |
| TOTAL OPERATING EXP. | 3,939,364 | 4,018,557 | 4,056,367 | 4,084,988 | 16,099,277 |
| NET INC (LOSS)BEFORE TAX | $1,531,021 | $1,660,407 | $1,679,378 | $1,900,921 | $6,771,727 |
| TAX (PROVISION) BENEFIT | (567,744) | (615,589) | (622,637) | (704,593) | (2,510,564) |
| NET INC (LOSS) | $963,277 | $1,044,817 | $1,056,742 | $1,196,327 | $4,261,163 |
| PREFERRED DIVIDEND | 181,355 | 181,355 | 181,355 | 181,355 | 725,420 |
| EARNINGS AVAILABLE TO COMMON | $781,922 | $863,462 | $875,387 | $1,014,972 | $3,535,743 |
| YIELD ON EARNING ASSETS | 9.385% | 9.632% | 9.175% | 9.378% | 9.387% |
| COST OF SAVINGS AND BORROWINGS | 7.038% | 7.225% | 6.863% | 7.014% | 7.104% |
| SPREAD DIFFERENCE | 2.347% | 2.407% | 2.311% | 2.364% | 2.294% |
| SPREAD ON AVG EARNING ASSETS | 2.182% | 2.266% | 2.208% | 2.290% | 2.236% |

SG 0142211
"Confidential Material – Subject to Protective Order"



CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029 1160

26-Jul-88
10:25 PM

CONSOLIDATED
INCOME (EXPENSE) AS A PERCENT OF AVERAGE IS
(PROJECTED)
YEAR ENDING 6\30\1991

| INTEREST INCOME | 1st QTR | 2nd QTR | 3rd QTR | 4th QTR | TOTAL |
|---|---|---|---|---|---|
| LOANS | 6.758% | 6.965% | 6.666% | 6.849% | 6.877% |
| MBS | 1.115% | 1.154% | 1.107% | 1.137% | 1.139% |
| INVESTMENTS | 0.621% | 0.636% | 0.605% | 0.619% | 0.626% |
| INVESTMENT IN AFFILIATE | 0.106% | 0.107% | 0.100% | 0.100% | 0.104% |
| LOAN DISCOUNT | 0.029% | 0.029% | 0.028% | 0.028% | 0.029% |
| TOTAL INTEREST INC. | 8.628% | 8.891% | 8.506% | 8.733% | 8.775% |
| INTEREST EXPENSE | | | | | |
| DEPOSITS | 5.217% | 5.343% | 5.068% | 5.173% | 5.251% |
| BORROWINGS | 1.403% | 1.454% | 1.389% | 1.426% | 1.432% |
| SUBORDINATED DEBT | 0.000% | 0.000% | 0.000% | 0.000% | 0.000% |
| OTHER | 0.002% | 0.002% | 0.001% | 0.001% | 0.002% |
| TOTAL INTEREST EXP. | 6.622% | 6.799% | 6.459% | 6.601% | 6.684% |
| NET INT. SPREAD | 2.006% | 2.092% | 2.047% | 2.132% | 2.091% |
| OTHER INC. (EXP.) | | | | | |
| LOAN & COMMITMENT FEES | 0.055% | 0.055% | 0.053% | 0.053% | 0.055% |
| OTHER FEES | 0.173% | 0.173% | 0.166% | 0.164% | 0.170% |
| SERVICE INCOME | 0.093% | 0.101% | 0.104% | 0.110% | 0.103% |
| SERVICE CORP | 0.224% | 0.224% | 0.214% | 0.212% | 0.221% |
| RESERVE FOR LOANS & REO LOSSES | -0.051% | -0.051% | -0.049% | -0.048% | -0.050% |
| GAIN (LOSS) ON INVESTMENT | 0.022% | 0.022% | 0.021% | 0.021% | 0.022% |
| GAIN (LOSS) ON LOAN SALES | 0.168% | 0.183% | 0.154% | 0.159% | 0.167% |
| OTHER INCOME (EXPENSE) | 0.089% | 0.090% | 0.086% | 0.085% | 0.088% |
| TOTAL OTHER INCOME | 0.773% | 0.797% | 0.749% | 0.756% | 0.776% |
| OPERATING EXP. | | | | | |
| PERSONNEL | 0.664% | 0.702% | 0.688% | 0.693% | 0.694% |
| COMMUNICATIONS | 0.076% | 0.076% | 0.073% | 0.073% | 0.075% |
| ADVERTISING | 0.059% | 0.060% | 0.057% | 0.057% | 0.059% |
| TRAVEL & ENTERTAINMENT | 0.018% | 0.018% | 0.017% | 0.017% | 0.018% |
| OFFICE SUPPLIES | 0.058% | 0.058% | 0.056% | 0.056% | 0.057% |
| INSURANCE | 0.183% | 0.184% | 0.177% | 0.176% | 0.182% |
| DATA PROCESSING | 0.149% | 0.150% | 0.144% | 0.143% | 0.148% |
| TAXES AND LICENSES | 0.076% | 0.076% | 0.073% | 0.073% | 0.075% |
| LEGAL & ACCOUNTING | 0.034% | 0.034% | 0.032% | 0.032% | 0.033% |
| OCCUPANCY | 0.138% | 0.139% | 0.133% | 0.132% | 0.137% |
| DEPREC./AMORT. | 0.470% | 0.471% | 0.451% | 0.446% | 0.464% |
| OTHER | 0.076% | 0.077% | 0.074% | 0.073% | 0.076% |
| TOTAL OPERATING EXP. | 2.001% | 2.044% | 1.977% | 1.971% | 2.018% |
| NET INC (LOSS)BEFORE TAX | 0.778% | 0.845% | 0.819% | 0.917% | 0.849% |
| TAX (PROVISION) BENEFIT | -0.288% | -0.313% | -0.303% | -0.340% | -0.315% |
| NET INC (LOSS) | 0.489% | 0.531% | 0.515% | 0.577% | 0.534% |
| PREFERRED DIVIDEND | 0.092% | 0.092% | 0.088% | 0.089% | 0.091% |
| EARNINGS AVAILABLE TO COMMON | 0.397% | 0.439% | 0.427% | 0.490% | 0.443% |

APP. 1349

SG 0142212 -

"Confidential Material – Subject to Protective Order"

CONFIDENTIAL MATERIAL-SUBJECT TO PROTECTIVE ORDER FL PSG029.1161

WILLIAM D. SYMMES
LESLIE R. WEATHERHEAD
WITHERSPOON, KELLEY, DAVENPORT
& TOOLE, P.S.
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state-chartered savings association,<br><br>Plaintiff,<br><br>vs.<br><br>T. TIMOTHY RYAN, Director, Office of Thrift Supervision, in his own official capacity and as successor in interest to the Federal Home Loan Bank Board; FEDERAL HOME LOAN BANK OF SEATTLE, and THE FEDERAL DEPOSIT INSURANCE CORPORATION, in its own capacity and as successor in interest to the Federal Savings and Loan Insurance Corporation,<br><br>Defendants. | No. CS-90-0175-JLQ<br><br>AFFIDAVIT OF WILLIAM W. ZUPPE |

STATE OF WASHINGTON )
) ss.
County of Spokane )

WILLIAM W. ZUPPE, being first duly sworn upon oath, deposes and says:

1. I make this affidavit of my own personal knowledge.

2. I am President, Chief Operating Officer, and a director of Sterling Savings Association (hereinafter



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

book value per common share of stock, like after-tax earnings, has steadily increased each year since inception.

9. Attached hereto as Exhibit "1" is the 1989 Report to Shareholders containing, among other things, the audited financial statements prepared on a comparative basis for the years 1989, 1988, and 1987. Also attached as Exhibit "2" is 1986 Annual Report containing the audited financial statements from 1986 back to 1984, the first full year of operation.

10. Sterling has earned a profit for the ten-month period ending April 30, 1990.

11. At the present time, Sterling management is in the process of budgeting income and expenses for the fiscal year end June 30, 1991. Based on preliminary budget projections, not yet refined, it appears that Sterling will earn approximately $1 million after tax for the year ending June 30, 1991.

12. As of December 31, 1989, Sterling's net worth under Generally Accepted Accounting Principles amounted to $10.9 million. Sterling has over 900 shareholders.

13. Sterling's Board of Directors consists of 12 members of the business community throughout the State of Washington. Harold B. Gilkey is Chairman of the Board and Chief Executive Officer. Mr. Gilkey has been in the banking or mortgage banking business for the past 28 years.

14. Sterling is a conservative, well managed, "no frills" institution. Unlike some savings institutions discussed in the media, Sterling has no corporate jets, art



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

work collections, or lavish headquarter buildings. It has not made nonconforming insider loans or speculative investments such as in high yield junk bonds or land acquisition and development schemes.

15. During the early to mid-1980's, a number of thrift institutions experienced financial losses due to volatile interest rates and inflation, among other reasons. The Federal Savings and Loan Insurance Corporation ("FSLIC"), which provided deposit insurance to thrifts, eventually was unable to recapitalize or liquidate the increasing number of troubled thrifts. Beginning in the early 1980's, the Federal Home Loan Bank Board ("FHLBB"), which regulated thrifts; asked certain healthy thrifts to take over or merge with ailing thrifts, thereby reducing pressure on the FSLIC Insurance Fund and relieving regulators of a burden. To induce healthy thrifts to take over ailing thrifts, the regulators offered various financial and accounting inducements and capital forbearances.

16. As a solvent and healthy thrift, Sterling was asked, commencing in 1985, by the FSLIC and the FHLBB, its regulators, to acquire certain troubled thrifts, and was promised specific capital forbearances and accounting treatment whereby Sterling could acquire the troubled thrifts and thus save the FSLIC and the FHLBB literally millions of dollars. The inducements consisted, in part, of (a) permitting the acquiring institution to record regulatory cash assistance as a part of their permanent regulatory capital, (b) allowing acquiring



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

thrifts to extend goodwill amortization periods beyond those allowed under Generally Accepted Accounting Principles thereby increasing their capital, and (c) granting forbearances such as agreeing not to enforce capital requirements if the breach of such requirements was caused by the acquisition of the troubled thrifts by the healthy thrift. Over time, Sterling agreed to bail out three troubled thrifts, thereby saving the FSLIC millions of dollars, and in the process received each of the foregoing types of contractual inducements. In short, Sterling agreed to be part of the solution to the problem of troubled thrifts.

17. In early 1985, the FHLBB declared Lewis Federal Savings and Loan Association ("Lewis Federal") of Chehalis, Washington, to be insolvent. Pursuant to its announced policy of finding a well managed, solvent thrift to acquire an insolvent thrift so as to preserve the Insurance Fund, the FHLBB asked Sterling to submit a takeover bid recognizing that, as the acquiring institution, Sterling would be given time to earn its way out of the absorption of Lewis Federal's negative net worth. Specifically, the FHLBB offered all bidders (a) forbearances from enforcement of certain regulatory capital requirements, and (b) special treatment of supervisory goodwill to meet capital requirements.

18. In June, 1985, responding to the FHLBB's request for bid, Sterling offered to acquire Lewis Federal.

19. On November 4, 1985, the FHLBB adopted a resolution containing formal findings of fact that Lewis Federal was



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

insolvent, that Sterling was competent and safe to acquire Lewis Federal, that the Sterling acquisition would reduce risk to the Insurance Fund, that Sterling would continue to be a viable entity after the acquisition, and that to induce Sterling to acquire Lewis Federal, the FHLBB would grant capital forbearances and purchase accounting treatment of goodwill. Attached hereto as Exhibit "3" is the Resolution.

20. On November 5, 1985, Sterling entered into a written contract with the FSLIC as receiver for Lewis Federal to take over the insolvent thrift subject to the FHLBB's approval of the conditions set forth below. Attached as Exhibit "4" is the contract.

21. On November 12, 1985, the FHLBB entered an Order formally granting to Sterling the capital forbearances and supervisory goodwill accounting treatment, as follows:

(a) Permitting Sterling to exclude certain Lewis Federal liabilities in calculating compliance with certain regulations;

(b) Waiving enforcement of any regulatory capital regulations for five years, or until November, 1990, if Sterling's failure to comply was caused by the increase in liabilities and/or the assumption of negative net worth from the Lewis Federal acquisition;

(c) Agreeing that Sterling carry $1.8 million in cash assistance on its books as a credit to net worth for regulatory accounting purposes;



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

(d) Agreeing that the $1.8 million in supervisory goodwill created by the acquisition would be capitalized and amortized over 40 years;

(e) Agreeing that the difference between the book and fair market values of Lewis Federal's loan portfolio would be capitalized and amortized over 15 years.

Attached hereto as Exhibit "5" is a copy of the Order.

22. Pursuant to the foregoing agreement and Order, Sterling entered $1.8 million in permanent capital on its books.

23. In acquiring Lewis Federal, Sterling and its share-holders saved the FSLIC approximately $5.2 million to liquidate Lewis Federal.

24. In the summer of 1987, the FHLBB adjudged the Tri-Cities Savings and Loan Association ("Tri-Cities") to be insolvent.

25. To preserve the Insurance Fund, the FHLBB asked for bids from selected thrift institutions to acquire Tri-Cities. Sterling was one of the thrifts asked. Selection criteria included (a) low cost to the FSLIC and (b) high probability that the acquiring institution would be able to "earn its way out" of Tri-Cities' negative net worth.

26. Sterling submitted a bid in November, 1987, to acquire Tri-Cities subject to essentially the same conditions as with the Lewis Federal bid: (a) forbearance from regulatory capital requirements and (b) acceptance by the FHLBB of the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

purchase accounting treatment of the resulting supervisory goodwill.

27. On April 7, 1988, the FHLBB adopted a resolution to the effect that Tri-Cities was insolvent, that Sterling was a well qualified, competent, and healthy thrift to acquire and manage Tri-Cities, that the FSLIC Insurance Fund would be preserved by the acquisition, and that Sterling would be granted certain regulatory forbearances and other conditions of purchase to induce it to buy the troubled Tri-Cities thrift. Attached hereto as Exhibit "6" is a copy of the Resolution.

28. On April 6, 1988, the FHLBB entered an Order formally granting the conditions, including, among others:

(a) Agreeing not to enforce any regulatory capital rules for five years, or until April, 1993, if Sterling's failure to comply was caused by the acquisition of Tri-Cities;

(b) Agreeing that the $11.7 million in cash assistance could be credited to net worth and treated as supervisory goodwill amortized over 15 years; and

(c) Agreeing that the difference between the book and fair market values of Tri-Cities' loan portfolio could be amortized over 8 years.

Attached hereto as Exhibit "7" is a copy of the Order.

29. On April 8, 1988, Sterling entered into a written contract with the FSLIC as Tri-Cities' receiver subject to the foregoing forbearance and purchase accounting treatment of the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

supervisory goodwill. Attached hereto as Exhibit "8" is a copy of the contract.

30. Pursuant to its agreement with the FSLIC and in conformity with the FHLBB Order, Sterling booked $11.7 million in permanent regulatory capital.

31. As of April, 1988, the FHLBB contractually agreed and then ordered that Sterling be permitted to count an additional $13.5 million ($1.8 from Lewis Federal and $11.7 from Tri-Cities) in supervisory goodwill toward its regulators' capital requirement.

32. But for Sterling's acquisition of the insolvent Tri-Cities, the FSLIC would have had to spend approximately $13.7 million additionally to liquidate Tri-Cities.

33. In the summer of 1987, the FHLBB asked Sterling to acquire Central Evergreen Federal Savings and Loan Association ("Central Evergreen"), an insolvent thrift located in Chehalis, Washington. Sterling stated it did not have enough capital to acquire a $250 million deposit thrift. The FHLBB persisted, asking Sterling to at least look at Central Evergreen. Sterling did, but still turned down the request because it did not have sufficient capital on its own to acquire a large insolvent thrift. The supervisory agent, Hilton Hewitt of the Seattle Office of FHLBB, reiterated that if Sterling acquired Tri-Cities, the permanent regulatory capital thereby created could be used to acquire Central Evergreen and remain in capital compliance.



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

34. Based on the FHLBB's further assurances that Sterling would be in compliance with capital standards if it took Central Evergreen off of the FSLIC's hands, Sterling reevaluated Central Evergreen and concluded an acquisition could be done to help the FSLIC and FHLBB on the express condition that Sterling be permitted to raise $4 to $6 million in additional equity capital soon after the acquisition. Sterling then contracted to acquire Central Evergreen contingent upon capital forbearance and other commitments from the FHLBB.

35. Under the "purchase method of accounting" for mergers, GAAP permits adjusting assets and liabilities to fair market value, then the excess over the fair market value of the acquired liabilities over assets is entered on Sterling's books as goodwill.

36. On December 8, 1988, the FHLBB adopted a resolution approving the acquisition and, as before, found that Central Evergreen was insolvent, that the acquisition would preserve the Insurance Fund, that Sterling was a viable entity and would be so after the acquisition, that "the purchase method accounting treatment of goodwill" should be used, and that Sterling should be permitted to raise equity capital after the acquisition pursuant to a new business plan with the FSLIC. Attached as Exhibit "9" is a copy of the Resolution.

37. On December 28, 1988, Sterling contracted with the FSLIC to implement a new business plan including the addition



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

of $4 to $6 million in new equity by December 31, 1990. Attached as Exhibit "10" is a copy of the contract.

38. As part of the foregoing agreement, the FSLIC agreed to permit Sterling to revise its business plan "should events beyond Sterling's control" prevent the contemplated offering.

39. By acquiring Central Evergreen, Sterling saved the FSLIC approximately <u>$30.1 million</u> in liquidation costs. As a result of the three acquisitions described above, Sterling and its shareholders saved the FSLIC and the American tax-payers over <u>$51 million</u>.

40. In summary, if the regulators were required to adhere to their written contractual commitments, Sterling would be entitled to:

(a) forbearance from regulatory capital standards until <u>November 5, 1990</u> if Sterling's failure to comply was caused by an increase in liabilities from the acquisition of Lewis Federal;

(b) forbearance from regulatory capital standards until <u>April 8, 1993</u> if Sterling's failure to comply therewith was caused by an increase in liabilities form the acquisition of Tri-Cities;

(c) forbearance from regulatory capital standards until <u>December 31, 1990</u> if Sterling's failure to comply with the standards was caused by inability to raise capital following the Central Evergreen acquisition;



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

(d) raise equity capital through a public offering and pay dividends on the preferred stock issued, all as part of the Central Evergreen transaction;

(e) count $13.5 million from the Lewis Federal and Tri-Cities acquisitions as supervisory goodwill toward its regulatory capital requirement.

41. Pursuant to regulatory commitments made to it in the Central Evergreen contracts with the FSLIC in the fall of 1989, Sterling prepared to add approximately $10.5 million in capital through a public offering. By December, 1989, Dain Bosworth, Inc., the underwriter on the proposed stock offering, confirmed that the 603,750 units of noncumulative preferred stock had been subscribed to. Dain Bosworth, Inc. had already completed by this time the necessary due diligence to assure itself that Sterling's earnings would be sufficient to pay dividends.

42. Prior to and during December, 1989, Sterling requested regulatory confirmation of its previous contractual commitment to permit payment of dividends on the new stock to be offered. Without regulatory approval of the payment of dividends, the new stock offering was futile. Without the stock offering promised by the FHLBB and FSLIC, Sterling would never have acquired Central Evergreen no matter how many pleas it received from the regulators.

43. By this time, the fall of 1989, the FHLBB had been replaced by the Office of Thrift Supervision (the "OTS"). The OTS initially responded that the proposed public offering was



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

in the mutual interest of Sterling and the OTS. By late December, 1989, the OTS changed its mind, refused to honor the contract of its predecessor in interest, and refused payment of dividends on the new offering, thereby aborting the offering.

44. As a result, Sterling incurred nearly $1 million in underwriting fees, as well as accounting and attorney fees, in preparation for the equity offering.

45. By not later than December, 1989, it became evident that the OTS was intending to disregard the capital forbearance commitments made by its predecessor, the FHLBB, and the supervisory goodwill acquired by Sterling as a result of the Lewis Federal, Tri-Cities and Central Evergreen bail out acquisitions.

46. Although Sterling had assisted the regulators in the three thrift bailouts described above and had negotiated contracts covering each of the conditions, promises, and covenants of the acquisitions, the OTS abrogated the written contracts and began to treat Sterling as if it were a troubled thrift. After unilaterally cancelling the (a) capital forbearance, (b) supervisory goodwill, and (c) permanent capital ($13.5 million) provisions of Lewis Federal, Tri-Cities and Central Evergreen acquisition agreements and orders, the OTS took the position that Sterling is technically capital deficient under Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

47. As part of the OTS' wrongful and wholly unjustified treatment of Sterling as a troubled thrift, in late December, 1989 the OTS directed Sterling to file a plan for resolving the perceived capital deficiency. If OTS had honored its contracts and orders to begin with, Sterling would not have had to incur the time and considerable expense in preparing the capital plan.

48. Were it not for the breach by the OTS of the supervisory acquisition agreements, the OTS could not maintain that Sterling was in violation of the post-FIRREA capital standards.

49. Again in violation of its contractual commitment, the OTS began in 1990, and is now, imposing a series of operating restrictions on Sterling which collectively hampers Sterling's ability to generate a profit, though it has still continued to do so.

50. Without conceding that the OTS was entitled to treat Sterling as a troubled thrift and having made it clear to the regulators that Sterling had contractual forbearances, Sterling was required by an OTS policy directive to submit a capital plan in January, 1990 demonstrating the long term viability of Sterling as a thrift institution.

51. By early April, 1990, despite the fact that Sterling had made a profit each and every year of its operations and also for the six months ending December 31, 1989, the OTS insisted that Sterling sign an Operating Agreement giving the OTS the right to appoint a conservator or receiver. The OTS premised its insistence on the basis that it had cancelled the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

capital forbearance, the supervisory goodwill, and the permanent capital provisions of the supervisory acquisitions.

52. The Operating Agreement proposed by the OTS made Sterling concede (a) that the three supervisory acquisition agreements were of no force or effect, (b) that Sterling was therefore subject to FIRREA, (c) that Sterling had insufficient capital now that the forbearances, supervisory goodwill, and permanent capital were cancelled, and (d) that the OTS could appoint a conservator or force the sale of the Association.

53. The proposed Operating Agreement, if signed, could require Sterling's Board to resign at any time without cause and to recommend to the shareholders that they abandon their investment in the Association, despite the fact that Sterling was and is profitable. The Board declined to execute the Operating Agreement because of its duties to the depositors and shareholders. Attached hereto as Exhibit "11" is a copy of the proposed "Operating Agreement with Conditional Consent to the Appointment of Conservator or Receiver."

54. On May 10, 1990, Sterling, having tried to convince the OTS to comply with its contractual commitments, hand delivered the Seattle Office of the OTS a letter, attached hereto as Exhibit "12", which explained to the OTS the reasons why the Sterling Board did not sign the proposed Operating Agreement. The OTS has not responded to this letter directly, except to repeat its position that the agreements were abrogated.

...



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

55. Affiant attended the May 10 meeting of the Seattle Office of the OTS. Present for the OTS were William J. Durbin, District Director of Seattle District, Ed Hedlund, and Carol Friend. Present for Sterling were Harold Gilkey, Dan Byrne, Chief Financial Officer, and affiant. At this meeting, William Durbin admitted to Sterling that it was "being stiffed, but the government can do that. It comes from the right of kings." On that occasion, William Durbin confirmed that "OTS has no problem whatsoever" with Sterling management and asked Ed Hedlund to concur in this opinion, which he did. On one previous occasion, Carol Friend told affiant that "you are ... good managers."

56. Sterling has built a reputation of being "turn around specialists." That is why FHLBB and FSLIC came to Sterling in the first place to take over Lewis Federal, Tri-Cities, and Central Evergreen, because Sterling knows how to efficiently run a thrift bank, manage troubled loans or accounts, build capital, protect its depositors, and make a profit. If it were otherwise, FHLBB and FSLIC would not have asked Sterling in the first place to help out the Insurance Fund and acquire the three troubled thrifts. Sterling would be in compliance with current FIRREA tangible and core capital requirements but for the acquisitions of (or backing out the) Tri-Cities and Central Evergreen supervisory acquisitions. Alternatively, Sterling is in compliance with FIRREA capital standards if the forbearance and accounting commitments of the supervisory acquisition agreements are honored. Either way, . . .



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

Sterling is not in violation and needs the protection of this Court.

57. Despite Sterling's repeated explanations and suggested reasonable alternatives as to how to proceed (see Exhibit "12"), the OTS has not responded substantively. Instead, the OTS has proposed a Capital Directive which, if enforced, is tantamount to a shutdown of Sterling.

58. Sterling has thoroughly exhausted its administrative remedies.

59. Sterling is in imminent danger and threat of being shut down by the OTS and having the value of its shareholders' investment wiped out, even though Sterling is a profitable savings institution.

60. Sterling has fully performed or is in compliance with every provision of the three supervisory acquisition agreements. Now that the FHLBB and FSLIC have the benefit of their bargain, the OTS seeks to cancel the agreements before Sterling gets its share of the deal and before Sterling has had the opportunity of "turning around" the assets and liabilities of the three acquired thrifts within the dates described in the supervisory acquisition agreements; namely, November 1990, December 1990, and April 1993. In this regard, OTS wrongfully frustrated Sterling's public offering which was fully subscribed to over $10 million, despite the fact that it



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

agreed to this as a condition of the Central Evergreen acquisition. This arbitrary conduct cost Sterling $1 million in costs which will be charged off by June 30th.

WILLIAM W. ZUPPE

SUBSCRIBED AND SWORN to before me this 28th day of May, 1990, by William W. Zuppe.

NOTARY PUBLIC in and for the State of Washington, residing at Spokane

My appointment expires: 3-3-93



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

WILLIAM D. SYMMES
LESLIE R. WEATHERHEAD
WITHERSPOON, KELLEY, DAVENPORT
& TOOLE
1100 Old National Building
Spokane, WA 99201
(509) 624-5265

RECEIVED
JUN 25 1990
U.S. ATTORNEY
SPOKANE, WA

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
JUN 25 1990
JAMES R. LARSEN, CLERK
DEPUTY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STERLING SAVINGS ASSOCIATION a state-chartered savings association,

Plaintiff,

vs.

T. TIMOTHY RYAN, Director, Office of Thrift Supervision, in his own official capacity and as successor in interest to the Federal Home Loan Bank Board; FEDERAL HOME LOAN BANK OF SEATTLE, and THE FEDERAL DEPOSIT INSURANCE CORPORATION in its own capacity and as successor in interest to the Federal Savings and Loan Insurance Corporation,

Defendants.

No. CS 90-0175-JLQ

SUPPLEMENTAL AFFIDAVIT OF DANIEL G. BYRNE

STATE OF WASHINGTON )
) ss.
County of Spokane )

DANIEL G. BYRNE, being first duly sworn on oath, deposes and says:

1. I am senior Vice-President and Chief Financial Officer of Sterling Savings Association ("Sterling").

2. I have been a certified public accountant licensed to practice in the State of Washington since 1979.

3. I was personally involved in negotiations with the Federal Home Loan Bank Board (the "FHLBB") and the Federal Savings and Loan Insurance Corporation (the "FSLIC"), which negotiations culminated in Sterling's acquisition of three insolvent thrift associations: Lewis Federal Savings and Loan Association ("Lewis Federal"); Tri-Cities Savings and Loan Association ("Tri-Cities"); and Central Evergreen Federal Savings and Loan Association ("Central Evergreen").

4. I have personally reviewed Defendants OTS's and FDIC's Memorandum in Support of Motion to Dismiss and in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Defendant's Memorandum") and the supporting exhibits filed therewith including the Declaration of Carol A. Friend ("Friend Declaration").

5. As pointed out in the defendant's memorandum, in the early to mid-1980s, "FSLIC was faced with hundreds of problem thrifts and its insurance fund was virtually wiped out." (Defendant's Memorandum at p. 3.)

6. With the insurance fund virtually wiped out, everyone connected with the thrift industry recognized that the successful acquisition of an insolvent thrift into a healthy one depended on three essential ingredients: management, money and time. The FHLBB and the FSLIC, recognizing that Sterling was not part of the thrift problem, asked Sterling to become part of the thrift solution by supplying the management expertise and most of the money to resolve three troubled thrift problems. The FHLBB and the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

FSLIC supplied the third essential ingredient, time, in the form of contractual regulatory and accounting forbearances. These forbearances were intended by all parties involved in the acquisitions to allow Sterling time to absorb the insolvent thrift associations while remaining in compliance with the other applicable regulations.

7. The government would now tell Sterling that although Sterling has supplied the management expertise and money necessary to resolve three insolvent thrifts, the contracts by which the government granted Sterling the time necessary to absorb the insolvent thrifts do not bind the government.

8. It is a fact that Sterling bargained for and received contractual regulatory and accounting forbearances in exchange for, and as conditions of, Sterling's acquisitions of Lewis Federal and Tri-Cities.

9. It is also a fact that, to induce Sterling to buy Central Evergreen, the FHLBB and the FSLIC promised Sterling in writing time to absorb Central Evergreen and to meet more stringent capital standards than then existed.

10. If the FHLBB and the FSLIC had not requested and encouraged Sterling to acquire the Tri-Cities, Central Evergreen thrifts (and save the FSLIC $51 million in the process), Sterling would be in full compliance with all post-FIRREA capital requirements today.

11. If the Office of Thrift Supervision ("OTS") had not arbitrarily blocked Sterling's 1989 equity offering and purported to eliminate the contractual regulatory and account-



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

ing forbearances to which Sterling is entitled, Sterling would be in full compliance with all post-FIRREA capital standards today.

A. Lewis Federal and Tri-Cities Acquisitions.

12. As an integral part of the negotiations and contracts relating to Sterling's acquisition of Lewis Federal and Tri-Cities, the FSLIC and the FHLBB granted contractual regulatory provision and accounting forbearances as part of the consideration for Sterling's acquisitions. But for such consideration, Sterling would never have contemplated, let alone consummated, the acquisition of sick thrifts like Lewis Federal and Tri-Cities.

(a) Prior to its acquisition of Lewis Federal and Tri-Cities, Sterling received packages of information and instructions relating to the preparation and submission of bids (the "Lewis Federal Bid Package" which is attached hereto as Exhibit "A" and the "Tri-Cities Bid Package" which is attached hereto as Exhibit "B", both of which may be collectively referred to as the "Bid Packages"). The Lewis Federal and Tri-Cities Bid Packages described the types of financial assistance, accounting forbearances, and regulatory forbearances which would be provided by the FHLBB and the FSLIC as part of the acquisitions of Lewis Federal and Tri-Cities.

(b) The Bid Packages did not state or imply in any way that regulatory and accounting forbearances would be less than contractual in nature. To the contrary, the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

Bid Packages, particularly Attachment 2 thereof, made it clear that requests for forbearances had to be "convincingly justified" and that "blanket requests for forbearances" would not be acceptable. (Attachments 2, "Requests for Forbearances and Exceptions to Filing Requirements Regarding Supervisory Institutions" are dated April 24, 1984 and March 7, 1986, respectively, and will be referred to herein as "SP-37" and "SP 37a", respectively.) SP-37 and SP 37a both provide:

> The basic purpose in granting forbearances is to give realistic incentives to potential aquirors of the problem institutions. The incentives, however, must be limited to those actually necessary for an acquiror to complete a supervisory merger or acquisition. (SP 37, p. 2.)

The quoted language accurately summarizes the understanding and intent of the parties at the time of the Lewis Federal and Tri-Cities acquisitions: the regulatory provisions and accounting forbearances were the necessary conditions of each acquisition. Without the forbearances and the acquisitions of $13.5 million in permanent capital, the deals wouldn't work and the acquisitions wouldn't be consummated. For the government to suggest that the forbearances were anything less than part of the acquisition contracts is difficult to comprehend. The granting of forbearances would not have been so carefully limited by the FHLBB if the forbearances had never been intended to bind the FHLBB and the FSLIC.



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

(c) The Bid Packages also made it clear that the FHLBB and the FSLIC would agree to forebear from enforcing certain regulations and accounting principles only for a very limited period of time. For example, the forbearance from enforcement of any reserve or net worth requirement was to last only "for a period of five years following the [acquisitions]." (SP 37 and SP 37a, both at p. 3.) The forbearances would not have been so carefully limited in time if they had never been intended to bind the government during that period of time.

(d) During both the Lewis Federal and Tri-Cities negotiations, each of the regulatory and accounting forbearances ultimately contained in the acquisition contracts was specifically negotiated by Sterling, on one hand, and the FHLBB and the FSLIC on the other. Again, the forbearances would never have been so carefully negotiated by the FHLBB and the FSLIC if they had not been intended to bind the government.

(e) Ultimately, as part of both the Lewis Federal and Tri-Cities closing processes, the FHLBB and the FSLIC delivered Forbearance Letters to Sterling together with the FHLBB Resolutions specifically authorizing the financial assistance, accounting forbearances and regulatory forbearances granted as consideration for Sterling's acquisition of Lewis Federal and Tri-Cities. (The Lewis Federal Forbearance Letter and Resolution No. 85-985 are attached hereto as Exhibits "C" and "D" respectively, and



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

the Tri-Cities Forbearance Letter and Resolution 88-250P are attached hereto as Exhibits "E" and "F" respectively.)

(f) In the Lewis Federal Forbearance Letter the FHLBB:

(1) Permitted Sterling to exclude certain of Lewis Federal's liabilities in determining compliance with certain requirements;

(2) Agreed not to enforce any regulation related to regulatory capital requirements for five years (until November of 1990) if Sterling's failure to comply therewith was caused by an increase in liabilities from the acquisition of the failing Lewis Federal, or by Sterling's assumption of Lewis Federal's negative net worth;

(3) Ordered that Sterling could carry $1.8 million in FSLIC cash assistance on its books as a credit to its net worth, for permanent regulatory capital purposes;

(4) Ordered that for regulatory accounting purposes supervisory goodwill created by the transaction would be booked pursuant to the purchase method of accounting and could be amortized over 40 years; and

(5) Ordered that the difference between the book value and the fair market value of Lewis Federal's loan portfolio could be amortized to income over a 15-year period.

(g) In the Tri-Cities Forbearance Letter the FHLBB:



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

(1) Agreed to waive the assessment, for one year, of penalties occasioned by Sterling's inability to satisfy liquidity requirements;

(2) Agreed not to enforce any regulation related to regulatory capital requirements for five years (until April of 1993) if Sterling's failure to comply therewith was caused by an increase in liabilities from the acquisition of the failing Tri-Cities, or by Sterling's assumption of Tri-Cities' negative net worth;

(3) Agreed that Sterling could carry $11.7 million in FSLIC cash assistance on its books as a credit to its net worth, for regulatory capital purposes;

(4) Agreed that for regulatory accounting purposes, supervisory goodwill created by the transaction would be booked pursuant to the purchase method of accounting and could be amortized over 15 years; and

(5) Agreed that the difference between the book and fair market values of Tri-Cities' loan portfolio could be amortized to income over eight years.

(h) Resolutions 85-985 and 88-250P both "authorized and directed" the FHLBB Secretary to send the applicable Forbearance Letters "provided that the final form of such letter[s] ... be approved by the Office of the General Counsel." It is incredible to suggest that the FHLBB and the FSLIC engaged in such a deliberative process leading to the granting of forbearances, even including the adoption of formal Resolutions by the Bank



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

Board itself authorizing and directing the issuance of the Forbearance Letters, but first requiring the Letters to be approved by the General Counsel, if the forbearances were never intended to bind the FHLBB and the FSLIC.

(i) The Lewis Federal and Tri-Cities Acquisition Agreements between the FSLIC, as receiver, and Sterling (which Agreements are attached hereto as Exhibits "G" and "H" respectively) stated, on pages 10 and 11 thereof respectively:

> This Agreement, together with any interpretation of it or any understanding agreed to in writing by the parties, constitutes the entire agreement between [Sterling] and the [FSLIC] as receiver ... and supersedes all prior agreements and understandings of the parties, excepting only any resolutions or letters approved or adopted contemporaneously with this Agreement by the [FHLBB] or the [FSLIC].

The quoted language should resolve any doubt as to whether the regulatory and accounting forbearances and specifically the Forbearance Letters themselves were contractual in nature. If nothing else it gave Sterling a right to rely on the government's promises to give Sterling time to absorb Lewis Federal and Tri-Cities, it was the fact that Resolution 85-985 and the Lewis Federal Forbearance Letter were specifically incorporated into the Lewis Federal Contract, and Resolution 88-250P and the Tri-Cities Forbearance Letter were specifically incorporated into the Tri-Cities Contract. Were it otherwise, it would have been completely illogical for the FSLIC and the FHLBB to carefully negotiate the for-



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

bearances, to refrain from granting them unless the acquisitions depended upon them, to limit the forbearances in terms of time, and to grant them only as a result of deliberations and approvals at so many consecutive levels of government, right up to and including the Chairman of the FHLBB and the members of the Board of Directors of the FHLBB.

(j) Finally, the Lewis Federal and Tri-Cities Assistance Agreements between the FSLIC and Sterling (which are attached hereto as Exhibits "I" and "J" respectively) contained, at pages 27 and 72, respectively, language identical to that quoted in the previous subparagraph. The Agreements provided, at pages 28 and 74, respectively, that the Assistance Agreements would "be binding upon and inure to the benefit of the parties and their respective transferees, successors and assigns." This language was understood by all parties to the Lewis Federal and Tri-Cities transactions to mean that the contractual obligations of the FSLIC and the FHLBB, including specifically the obligation to honor the forbearances, would be binding not only on the FHLBB and the FSLIC, but on all successor regulators such as the OTS.

B. <u>As Consideration for Sterling's Acquisition of Central Evergreen, the Government Agreed to Give Sterling Time and a Fair Opportunity to Absorb Central Evergreen and Meet All Future Capital Standards</u>.

10. To be understood, the Central Evergreen transaction must be examined in the context of the previous acquisitions.



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

It is important to note that it was in the summer of 1987, prior to the time Sterling's bid on Tri-Cities had been accepted, that the FHLBB requested that Sterling consider acquiring Central Evergreen. Sterling demurred, pointing out that such an acquisition might create a regulatory capital deficiency in the future. The FHLBB and the FSLIC had discussed with Sterling the possibility that existing regulatory capital standards would be increased, and Sterling had otherwise learned as much through industry sources. The FHLBB and the FSLIC asked that Sterling consider the acquisition anyway, pointing out that the "permanent" regulatory capital created by the Lewis Federal and Tri-Cities acquisitions could be used to "leverage" Sterling into technical compliance with the regulations.

11. Sterling studied Central Evergreen, and concluded that, even though Sterling would still be in compliance following the acquisition with existing regulatory capital requirements, Sterling would not complete the acquisition unless it would be allowed to raise between $4 and $6 million in new capital to offset the financial impact of the acquisition. Sterling discussed this concern at length with the regulators, and, as part of the negotiations leading up to the Central Evergreen agreement (the "Central Evergreen Agreement" which is attached hereto as Exhibit "K"), Sterling insisted that a clause be inserted to mitigate Sterling's regulatory risk that the existing regulatory capital standards might be increased. In response, the FHLBB and the FSLIC amended the



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

draft Central Evergreen Agreement to provide that Sterling would be allowed to amend its business plan (to, for example, raise additional capital) if such amendment became necessary due to "actions taken by any governmental body having jurisdiction that caused [Sterling] to materially deviate from its business plan." (Central Evergreen Agreement at p. 3.)

12. On December 8, 1988, the FHLBB adopted a Resolution of approving the acquisition. (The Resolution, No. 88-1273, is attached hereto as Exhibit "L".) The Resolution was based on formal findings of fact that, among other things, Sterling "would be a viable entity" following the acquisition. The FHLBB Resolution directed that the FSLIC should enter into an agreement pursuant to Sterling's proposal calling for an infusion of capital after the acquisition.

13. On December 28, 1988, Sterling contracted with the FSLIC to carry out a specific business plan. The plan contemplated the addition of between $4 and $6 million in new equity capital within two years.

14. Once again, in exchange for Sterling's agreement to provide the management expertise and money necessary to resolve the Central Evergreen problem, the FHLBB and the FSLIC agreed to provide Sterling with the time and a reasonable opportunity to absorb Central Evergreen. By entering into this agreement, the FHLBB and the FSLIC agreed to cooperate with Sterling in Sterling's efforts to raise additional equity capital.



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

15. Unfortunately, the OTS and FDIC chose to violate the Central Evergreen Agreement by blocking Sterling's 1989 equity offering. As discussed elsewhere in this case (see, e.g., Affidavit of A. Adjate Duer, and Plaintiff's Verified Complaint), Sterling's 1989 equity offering was so well received by the marketplace that Sterling would have raised approximately $10.8 million in new, qualifying regulatory capital had the OTS not arbitrarily blocked the offering by refusing to approve of Sterling's payment of the proposed dividends.

C. <u>If Tri-Cities and Central Evergreen Acquisitions are Backed Out, Sterling Complies with FIRREA Capital Standards.</u>

16. Sterling has substantially absorbed Lewis Federal as it promised to do, prior to the end of the agreed time frame (November of 1990). For that reason, the Lewis Federal transaction is a good example of how Sterling planned to and did absorb the assets and liabilities of an insolvent thrift association. This was not the first time Sterling had assisted regulators by acquiring an insolvent thrift association. On June 30, 1983, Sterling had acquired Lewis and Clark Savings & Loan Association ("Lewis and Clark"). The Lewis and Clark acquisition increased Sterling's assets by approximately 600 percent (from $7.4 million to $51.6 million). Similarly, the Lewis Federal acquisition increased Sterling's assets by approximately 42.5 percent (from $125.9 million to $179.4 million). That these acquisitions were successfully completed and the insolvent thrifts were absorbed



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

in spite of the tremendous increases in Sterling's balance sheet, is a testament to Sterling's financial and management strength.

17. In a similar manner, Sterling has been absorbing Tri-Cities and Central Evergreen as it promised to do prior to the end of the agreed time frames (April of 1993 and December of 1990, respectively).

18. The sole reason that Sterling is alleged not to be in compliance with present capital standards is because it acquired Tri-Cities and Central Evergreen. Any potential noncompliance was contemplated before and addressed in the Tri-Cities and Central Evergreen acquisition agreements. I have prepared the attached Exhibit "M" to demonstrate that the Tri-Cities and Central Evergreen acquisitions are the sole reason for Sterling's alleged noncompliance with present capital standards.

19. Exhibit "M" is a report of Sterling's capital position as of May 31, 1990, without including Tri-Cities or Central Evergreen. As is apparent, Sterling would exceed its tangible capital requirement of 1.5 percent by 78 basis points, or 52 percent. Sterling would exceed its core capital requirement by 28 basis points, or 9 percent. Finally, Sterling would exceed its risk-based capital requirement of 6.4 percent by 3.5 basis points, or .05 percent.

20. In contrast with the information contained in the Friend Declaration, Sterling is in compliance with all post-FIRREA standards today if the Tri-Cities and Central



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0390
(509) 624-5265

Evergreen transactions are backed out of Sterling's capital calculation. The following summary of Exhibit "M" shows Sterling's actual capital position on May 31, 1990, on this basis:

| | Tangible | Core | Risk-based |
|---|---|---|---|
| Required | $5,400,000 | $10,799,000 | $15,484,000 |
| Actual | 8,213,000 | 11,797,000 | 15,568,000 |
| Excess Capital | $2,813,000 | $ 998,000 | $ 84,000 |

21. In reviewing Carol Friend's Declaration, I observed that she apparently omitted the $13.5 million in permanent (regulatory) capital that Sterling acquired in the Lewis Federal and Tri-Cities transactions, and other intangibles qualifying under FIRREA.

22. In summary, if the Tri-Cities and Central Evergreen acquisitions are backed out (for which the capital forbearances and the time to absorb them were obtained by Sterling), Sterling is in compliance with all three FIRREA capital standards as of the most recent month end prior to the court hearing.

D. <u>If Sterling had been Permitted to Conduct Public Offering, Sterling Would Comply With All Existing Capital Standards</u>.

23. If the OTS had not arbitrarily blocked Sterling's 1989 equity offering and purported to eliminate the contractual regulatory capital and accounting forbearances to which



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265

Sterling is entitled, Sterling would be in full compliance with all post-FIRREA capital standards today.

24. I have prepared Exhibit "N" to illustrate that Sterling would be in full compliance with each of the post-FIRREA capital standards today if OTS had complied with its existing contracts with Sterling. On this assumption, Sterling would exceed its tangible capital requirement by 72 basis points, or 48 percent. Sterling would exceed its core capital requirement by 151 basis points, or 50 percent. Finally, Sterling would exceed its risk-based capital requirement by 126 basis points, or 20 percent.

Daniel G. Byrne

DANIEL G. BYRNE
Senior Vice President and
Chief Financial Officer of
Sterling Savings Association

SUBSCRIBED AND SWORN to before me this 25th day of June, 1990.

[signature]

NOTARY PUBLIC in and for the State of Washington, residing at Spokane

My appointment expires: 2.2.93



WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
ATTORNEYS & COUNSELORS
1100 Old National Building
Spokane, Washington 99201-0300
(509) 624-5265