**IN THE U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STERLING SAVINGS ASS'N, a state chartered savings Ass'n, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**REPLY TO THE GOVERNMENT'S OPPOSITION TO STERLING'S MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES**

## I. ISSUES PRESENTED AND RELIEF SOUGHT

The Government seeks to impermissibly take advantage of this Court's ruling that requires damages based on the Central Evergreen acquisition to be excised from Plaintiff's expert reports. Based on this very limited order to modify existing reports, the government seeks to roll a Trojan horse into the trial. The Government admits that, after 17 years of litigation and five years after the close of discovery, it seeks to put into evidence: (1) one newly identified and designated expert witness (Bankhead); (2) two newly re-designated experts to opine as to matters for which they were never previously designated (Hargett and Hamm); and (3) two new fact witnesses to support the newly designated theories (Kroeger and Stone). The Government's desperate and impermissible attempt to reopen fact and expert discovery is five years late and should be denied.

The Government's sole factual justification for reopening both expert and fact discovery, without leave of the Court and in derogation of the Court's orders, is the deletion of the Central Evergreen damages from Sterling's experts' reports. No new damages or theories are contained in the very modest changes to Sterling's expert reports. The Government's sole legal justification set

forth in its response brief is Appendix A to the Rules of the Court of Federal Claims ("RCFC"), which allows witnesses to be identified up to 63 days before trial. Absent the numerous scheduling Orders, requested and strictly enforced by the Government's counsel, the Government may be right. However, where there is a conflict between the Court's Orders and the RCFC, the RCFC are supplanted. Sterling's right to a fair trial would be denied if the Court were to allow the Trojan horse and permit the Government to add these new witnesses and reports, where Sterling has strictly complied with the Court's proscribed limitations. The Government disregards the very *Winstar* discovery orders entered by this Court, at the Government's insistence, to ensure a fair trial with no late ambushes. Messrs. Bankhead, Kroeger and Stone should be struck as well as the newly designated opinions of Hargett and Hamm.

## II. STATEMENT OF FACTS

In an effort to efficiently and uniformly manage discovery for the more than 120 pending *Winstar* suits, then Chief Judge Smith issued three orders to govern all *Winstar* cases: (1) Omnibus Case Management Order ("CMO"); (2) Procedural Order No. 1, Master Litigation Plan (the "Master Litigation Plan"); and (3) Procedural Order No. 2 (collectively, "Orders"). Pl's App. 184-193; 194-202 and 1-10.[1] Combined, the Orders established a comprehensive scheme for the parties to conduct discovery and disclose witnesses in phases (Fact and Expert Discovery). In particular, these Orders set specific timelines for the disclosure of fact witnesses and the designation of experts. Contrary to the Government's arguments, the Orders expressly govern over the RCFC. Pl's App. 184, 194-95 and 1-2. Unless upon leave of Court, the parties were to adhere to the discovery deadlines set forth in the Orders. *Id.*

---

[1] The Appendix attached to Sterling's Reply to the Government's Opposition to Sterling's Motion to Strike the Government's Undisclosed Witnesses is a continuation of the Appendix Sterling filed with its original Motion to Strike the Government's Undisclosed Witnesses. As such, the page numbers cited within this brief will refer to the original Appendix and any other pages attached hereto.

Pursuant to Procedural Order No. 2, fact discovery was to be completed by August, 2000. The Court extended this date to July 22, 2002. Pl's App. 24. Fact discovery has been closed since that date. Likewise, designation and disclosure of experts was originally to terminate on July 22, 2002, but, pursuant to series of Court-sanctioned extensions, instead closed on November 8, 2002. Pl's App. 26. Indeed, after conducting significant expert discovery, the parties stipulated in a Joint Status Report to the Court that expert discovery had finally closed. Pl's App. 218. Since that date, expert discovery was not to be permitted absent leave of court.

In 2003, the Court required Sterling to update its expert reports to reflect the reduction to Sterling's damages claims because of the decision rendered in *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035 (Fed. Cir. 2003), which required Sterling's experts to amortize the RAP goodwill created by virtue of the Lewis Federal and Tri-Cities agreements. Pl's App. 203-217. The Court also permitted Sterling to amend the Report of Christopher James to opine as to the actual cost of the capital it raised in 1991. *Id.* The Court then permitted the Government to respond to these updated reports and disclose any rebuttal experts by February 9, 2004. Pl's App. 27. In response, the Government listed Dr. Mukesh Bajaj, a previously disclosed expert, as its rebuttal expert. Pl's App. 29-30. Depositions were limited to these two issues. No expert discovery has been permitted since that time.

Most recently, this Court's reconsideration of liability in the Central Evergreen acquisition [Doc. 204] necessitated Sterling's experts to adjust their damage calculations to reflect the Court's decision. Pl's App. 31-32. The Government likewise was permitted to adjust their expert reports. *Id.* Though the parties and the Court questioned the need for additional depositions, the Court permitted depositions, but only over "material not addressed in prior depositions." *Id.* The Court's Order did not permit the Government to designate new expert witnesses; the deadline for doing so

had expired by November 8, 2002 pursuant to Procedural Order 2 and the Court's October 1, 2002 Order and has never been re-opened since that date. Pl's App. 26.

Despite the prescribed limitations on expert discovery, the Government has designated Mr. Bankhead as a new expert, and re-designated Messrs. Hamm and Hargett to opine on matters over which they were not previously designated. Pl's App. 57-155.

## III. ARGUMENT

### A. THE GOVERNMENT CANNOT DESIGNATE WHOLLY NEW EXPERTS OR RE-DESIGNATE PREVIOUSLY DISCLOSED EXPERTS.

#### *1. W. Barefoot Bankhead Was Not Timely Disclosed To Sterling.*

As noted by the Government, "The Discovery Plan set forth in Procedural Order No. 2 provides for a single round of expert discovery. There is no opportunity under these rules to submit new theories or damages after the cut-off dates." Pl's App. 243. More recently, the Government stated that "the only thing that's left to do is to make the changes to the numbers to reflect the fact that the goodwill associated with Central Evergreen was not the subject of a breach of contract." Pl's App. 42-43. The Court's September 27, 2006 Scheduling Order contemplated Sterling's experts updating their reports and the Government's experts responding to Sterling's new damage calculations. The Order did not contemplate an entirely new expert being added who was not disclosed before the close of expert discovery in November, 2002 or in the initial supplemental responses in February, 2004.

Without leave of the Court, the Government was not permitted to designate a wholly new expert in derogation of the previous scheduling orders. The September 27, 2006 Order states that "the scope of the depositions [following receipt of the updated reports] shall be limited to any new material not addressed in prior depositions," the clear implication being that these experts had already filed reports and had already been deposed. Pl's App. 31 (emphasis added). W. Barefoot Bankhead had never been disclosed, deposed or filed an expert report prior to February 17, 2007.

Disclosure of W. Barefoot Bankhead and his opinions just four months prior to trial was in clear violation of the spirit of this Court's Scheduling Order and his opinions should be stricken.

***2. Joe Hargett and William Hamm's Expert Reports Cortain Opinions Over That For Which They Were Never Designated.***

In its July, 2003 response to Sterling's suggestion that expert reports be updated to reflect changes in governing Federal Circuit law, the Government vehemently argued this point:

> [Sterling's] proposal is unacceptable because the deadline for filing of expert reports by Sterling in this case occurred in 2001, and the Government has expended considerable time, expense and resources in formulating comprehensive responses to Sterling's damage theories. To date, all expert reports have been filed by both parties, and each expert has been deposed. Further, the Government would be prejudiced if Sterling, upon reviewing the Government's comprehensive responses to its damages claims and deposing our experts, is permitted "another bite of the apple" to cure any deficiencies in its approach. Sterling first filed a complaint in this case in 1990, and has had ample time, nearly 10 years, to develop its damage theories. Consequently, Sterling's proposal to amend its expert reports, apparently without limit, is inappropriate.

Pl's App. 224.

The same position the Government so strongly opposed in 2003 is the exact same one it advocates for today: it wants a 'second bite of the apple' to cure deficiencies in its initial reports. But the Government's attempt comes without leave of court and only 127 days before a trial that Sterling has waited 17 years to commence.

Following this Court's decision on August 31, 2006, with respect to the Government's liability on the Central Evergreen acquisition, both parties' properly disclosed witnesses were allowed to update their already existing reports to reflect their damage calculations with the Central Evergreen damages withdrawn. Pl's App. 31. The parties were not permitted to generate entirely new reports, disclose brand new experts, or re-designate other experts to render new opinions. *Id.* Sterling's experts scrupulously complied with this Court's September 27, 2006 Order: Dr. Paul Horvitz submitted a six page update and Professor Chris James filed a ten page update. Pl's App. 245-250 and 251-261. In derogation of this Court's order and under the guise of "responding" to

Sterling's genuine updates, the Government attempted to disclose a wholly new expert and proffered a 57-page "supplement" to Dr. Paul Hamm's initial expert report. Pl's App. 57-74 and 88-155. These actions cannot be reconciled with this Court's mandate that the expert reports were to do no more than "respond" to Sterling's timely updates.

*a. Dr. Horvitz's Damages Methodology Was Disclosed Prior To 2006.*

The contention that Mr. Hargett and Dr. Hamm are responding to a new methodology disclosed for the first time in Dr. Horvitz's December, 2006 report is facially incorrect (*Def's Opp.*, p. 8). Dr. Horvitz simply extricated the effect of the Central Evergreen acquisition from his damage calculation. Pl's App. 245-250. Dr. Horvitz's methodology was originally elucidated in his initial report in 2001, reaffirmed in his supplemental report of 2004, and utilized again in 2006. Although the Government challenges the application of Dr. Horvitz's methodology to Sterling's damages in this case, the method by which he arrived at his conclusions is no surprise. Therefore, Dr. Hamm's 57-page response cannot reasonably be considered a mere "response" to Dr. Horvitz's 2006 update. Consequently, the Court should strike the expert reports of Mr. Hargett and Dr. Hamm to the extent they exceed the scope of Professor James and Dr. Horvitz's 2006 supplements.

*b. The Government's Position Would Open An Untenable Pandora's Box Of Discovery And Would Impermissibly Delay The Trial.*

If the Government's position is allowed to stand, fact and expert discovery will be re-opened beyond the scope and control of the Court. Both parties would have the opportunity to offer brand new witnesses, in unlimited number and scope, at a date not more than 63 days before trial, without prejudice because they would be able to depose these new witnesses (*Def's Opp.*, p. 5). That cannot possibly be the conclusion of the Court, as it renders almost ten years of procedural orders completely moot. With trial set in less than three months, allowing discovery to remain open until some 63 days before trial would be incredibly prejudicial to both parties. This is not a reasonable interpretation of the history of the case, and the argument cannot be made in good faith today.

### *3. W. Barefoot Bankhead and Joe Hargett's Reports Contain Inadmissible Legal Conclusions And Statements Contrary To Sterling's Established Contracts.*

The supplemental reports of W. Barefoot Bankhead and Joe Hargett are inadmissible in any event because they contain legal opinions concerning the meaning and application of FIRREA and are contrary to the express terms of Sterling's recognized contracts.[2] Mr. Bankhead offers his legal conclusion as to how, in the but for world, FIRREA would apply to Sterling's contracts with the Government; in particular he opines as to how FIRREA supposedly required Sterling's RAP capital, or, as what he refers to as contractual capital, to be re-categorized (and given lesser weight) as "qualifying supervisory goodwill" under 12 CFR 567.1(w), an inferior classification of regulatory capital that did not exist at the time Sterling contracted with the Government. Pl's App. 237. In addition, Mr. Bankhead offers opinions that directly contradict the terms of the Lewis Federal and Tri-Cities Acquisition Agreements with regards to treatment of the Government's agreed upon cash-assistance (Lewis Federal) and amortization of RAP goodwill (Tri-Cities). These are legal conclusions which could have been made years ago. As Chief Judge Damich previously held, Sterling's contracts with the Government gave it the express right to count the capital credits towards the regulatory capital requirement as it then existed, not as later restricted by FIRREA and 12 CFR 567.1(w). *Sterling Sav. v. United States*, 53 Fed. Cl. 599, 610-11 (2002), *vac., in part, on other grounds*, 72 Fed. Cl. 404 (2006). Pl's App. 239-240. These opinions are inadmissible legal conclusions and run contrary to Sterling's established contracts. To the extent Mr. Hargett's report relies upon Mr. Bankhead's assertions (Pl's App. 78, ¶ 10), it must be struck as well.

[2] On March 29, 2007, Sterling filed Plaintiff's Brief re: Plaintiff's Motion to Strike the Expert Report of W. Barefoot Bankhead, which Sterling incorporates herein by reference. Pl's App. 235-241. For the reasons stated in the brief in support of the motion, the Court should strike both Mr.. Bankhead's and Mr. Hargett's opinions because they comprise legal conclusions that are in contravention of Sterling's contracts and *Winstar* precedent.

**B. DAVID KROEGER AND JOHN STONE WERE UNTIMELY DISCLOSED AND SHOULD BE STRICKEN.**

***1. Procedural Order No. 2 Governs over The Appendix To The Rules of the Court.***

The Court's Orders expressly govern discovery and trial procedure in *Winstar* cases where they are inconsistent with the RCFC. In the present case, conflict exists between the discovery deadlines created by the Court's scheduling orders and the RCFC: the Orders established a cut-off for fact discovery in July, 2002, almost five years ago, whereas Appendix A to the RCFC would allow additional witness disclosures, both fact and expert, to occur no less than 63 days before trial. The CMO, Master Litigation Plan and Procedural Order No. 2 all make clear that to the extent the RCFC conflict with the Court's Orders, the Orders supersede the RCFC. Therefore, the parties must follow the deadlines established by the Orders and disregard Appendix A to the Rules.

***2. The Government Acknowledged That Case-Specific Fact Discovery Closed In 2002.***

The Court's February 26, 2002, Order stated that "all outstanding fact and expert discovery shall be concluded no later than July 22, 2002." Pl's App. 24. Upon direct questioning from the Court, counsel for the Government agreed that fact discovery was closed:

| | |
|---|---|
| The Court: | All right. And then fact discovery, of course, is closed. Is that correct? |
| Government Counsel: | That's correct, except for those outstanding depositions that we spoke about earlier that will go to the capital credit issue, which we've agreed to defer until damages. |

* * *

| | |
|---|---|
| The Court: | What in effect is happening is fact discovery is being extended and presumably we can make it contemporaneous with the close of expert discovery on July 22, 2002. Does that meet with your agreement? |
| Government Counsel: | That sounds reasonable, Your Honor. |

Pl's App. 229. Some four years later, in a June 21, 2006 status conference, Government's counsel strongly reiterated her position on discovery being closed:

| | |
|---|---|
| The Court: | What is the status of discovery in this case? |
| Government Counsel: | Discovery has been concluded since, I believe, early 2004 with respect to damages. As I mentioned before, Your Honor, when I filed my motion for summary judgment, Plaintiffs indicated that they might want to put in more evidence from their experts and fact witnesses, which I indicated at the time in an opposition to a motion for enlargement of time, would spur additional discovery, but so far since they haven't responded, I don't know whether they're going to do that. But as far as I'm concerned, discovery is closed. |

Pl's App. 232-233, emphasis added.

Therefore, discovery is closed and without a showing of significant prejudice and obtaining leave of court, the Government should be precluded from identifying witnesses who were never disclosed throughout this protracted litigation.

***3. David Kroeger and John W. Stone Were Not Disclosed Within The Timeline Established By The Orders And They Must Be Struck.***

It is undisputed that neither David Kroeger nor John W. Stone were disclosed before the Court's July 22, 2002 deadline. They were disclosed for the first time on December 5, 2006, by which time Sterling's right to take discovery depositions was long past. *Def's Opp.* p. 4. Because Appendix A of the RCFC conflicts with this Court's Orders, the Orders must control. Their testimony, by the Government's own admission, concerns events that took place, and were known to all parties, nearly 17 years ago and which has been the subject to two motions for summary judgment and one order of the court. (*Def's Opp.*, p. 4) Therefore, Mr. Kroeger and Mr. Stone were untimely disclosed and they should be stricken from the witness list.

## IV. CONCLUSION

For these reasons, the Court should strike Joe A. Hargett and William G. Hamm's Supplemental Expert Reports, and prohibit in the entirety any testimony by Mr. W. Barefoot Bankhead, Mr. David Kroeger and Mr. John W. Stone.

DATED this 2nd day of April, 2007.

WITHERSPOON, KELLEY, DAVENPORT
& TOOLE, P.S.

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member of the Bar of the U.S.
Court of Federal Claims

1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on April 2, 2007, a copy of the foregoing **REPLY TO THE GOVERNMENT'S OPPOSITION TO STERLING'S MOTION TO STRIKE THE GOVERNMENT'S UNDISCLOSED WITNESSES** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff