IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**PLAINTIFFS' REPLY BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD**

## I. SUMMARY OF ARGUMENT

In opposition to Sterling's motion to strike the expert report of W. Barefoot Bankhead, the Government states that Sterling misunderstands RCFC 56's requirements and argues that this Court may consider on summary judgment that which would not otherwise be admissible at trial. In particular, the Government claims that the Court may consider the inadmissable expert report of Mr. Bankhead to establish undisputed, material facts negating Sterling's claims for damages. These arguments fail. Under well-established summary judgment jurisprudence, a court may not rely upon inadmissible evidence provided either in support of or in opposition to a motion for summary judgment. Bankhead's report is inadmissible because it is an unsworn, out-of-court declaration, - hence, hearsay - and because it comprises legal conclusions as to meaning and application of Sterling's contracts and FIRREA. The report should be stricken.

## II. ARGUMENT

### A. A Court May Only Consider Admissible Evidence on Summary Judgment.

Contrary to what the Government asserts, it is axiomatic that only admissible evidence may be considered on summary judgment:

> The stringent standard which courts apply to Rule 56 motions includes the requirement that documents filed in support of the motion, seeking to establish material facts as to which there is no genuine issue, must be of such quality as to be admissible at trial.

*Kohr v. Johns-Manville Corp.*, 534 F. Supp. 256, 257-58 (D. Pa. 1982) (citing cases). This is because the issue on summary judgment is whether the genuine issues of fact exists warranting a trial. A court can only determine whether such genuine issues exist by previewing the evidence that will be admitted at trial and ascertaining whether such evidence presents a material factual dispute between the parties:

> It is well settled law that documents submitted in support or in opposition to a motion for summary judgment must contain admissible information. *See* Wright, Miller & Kane, Vol. 10A § 2738 p. 470-474. 'Because the policy of Rule 56(e) is that a *judge should consider any material that would be admissible at trial,* the rules of evidence and exceptions thereto determine what averments the affidavit [or documents] may contain.'

*Collazo v. Condado Plaza Hotel*, 941 F. Supp. 16, 19 (D. P.R. 1996) (emphasis theirs). Put differently, the issue on summary judgment is no different than on a motion for a directed verdict:

> whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986). By definition, reviewing that which is inadmissible (and thus cannot be presented to the jury) will not assist a court in making such a determination.

The following are just some of the well-established legal principles of summary judgment jurisprudence that the Government asks the Court to ignore:

- Hearsay and other forms of inadmissible statements, such as unsworn statements and expert reports, are not to be considered when submitted in support of a motion for summary judgment.
- Expert opinions comprising legal conclusions are not considered when submitted in support of a motion for summary judgment.
- Any document not otherwise admissible at trial may not be considered when submitted in support of a motion for summary judgment.

*Adarbe v. United States*, 58 Fed. Cl. 707, 711 n.1 (2003) (statements in affidavits that comprise legal conclusions or otherwise inadmissible stricken by the Court under RCFC 56(e) on summary judgment).

## B. THE UNSWORN EXPERT REPORT OF MR. BANKHEAD WILL BE INADMISSIBLE AT TRIAL AND THUS IS INADMISSIBLE ON SUMMARY JUDGMENT.

The Government claims that Sterling's contention that the Government must have submitted a sworn statement to establish facts is "without foundation." *Def's Resp.*, p. 2. As stated above, however, it is clear that, since unsworn statements are inadmissible at trial, they are likewise inadmissible on summary judgment. *See, e.g., Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.16, 90 S.Ct. 1598, 1609 n.16 (1970). Under *Westfed Holdings,* unsworn, expert reports are hearsay and not admissible at trial. *Westfed Holdings, Inc. v. United States*, 55 Fed.Cl. 544, 569 (2003), *aff'd in part, rev'd in part*, 407 F.3d 1352 (2005). Accordingly, the same expert report is likewise inadmissible on summary judgment for the purpose of establishing facts as to which the Government asserts there is no genuine issue. *E.g., Kohr*, 534 F. Supp. at 257-58; *Blum v. Campbell*, 355 F. Supp. 1220, 1227 (D. Md. 1972) (unsworn

letter not admissible on summary judgment).[1]

The Government also argues that since a party may move for summary judgment with or without affidavits under RCFC 56(b), it may submit otherwise inadmissible evidence on summary judgment "to establish certain facts." *Def's Resp.*, p. 2. The Government justifies its position by arguing that it may meet its burden under RCFC 56 by pointing out to the Court that there is an absence of evidence to support Sterling's case. *Def's Resp.*, p.3. This argument reveals the Government's misapprehension of RCFC 56.

A moving party may move for summary judgment in one of two ways. First, the moving party may submit affirmative evidence that negates an essential element of a nonmoving party's claim (which is what the Government purportedly has done with Mr. Bankhead's report). *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557 (1986) (White concurring). Second, the moving party may point out that there is a lack of evidence supporting the nonmoving party's claims. *Id.* What the Government misapprehends is that, under either scenario, the Court is restricted in its analysis to considering only admissible evidence. Under neither scenario may a moving party rely upon inadmissible evidence to establish facts over which the nonmoving party claims there is no dispute.

RCFC 56(c) states that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no triable issue of fact. RCFC 56(c). Again, the issue is whether there is any admissible evidence, either in pleadings, affidavits, or some other form of discovery rendered under oath, that demonstrate there

---

[1] It is clear that affidavits filed in support of a motion for summary judgment must be in a form that would render the information contained therein admissible at trial (*i.e.,* under oath), and Mr. Bankhead's expert report is not even in affidavit form. *Rogers v. Ford Motor* Co., 952 F. Supp. 606, 611 (D. Ind. 1997) (unverified documents inadmissible on summary judgment); *Sims v. Mack Truck Corp*, 488 F. Supp. 592, 577 (D. Pa. 1980) (statements not in proper affidavit form are not admissible on summary judgment).

is or is not a genuine issue for trial. In any event, the Government does not rely on any of the items enumerated in RCFC 56(c). Instead, the Government's motion is based upon an out-of-court declaration in the form of an unverified expert report, which is not admissible at trial and thus, not admissible on summary judgment. The Government cites no authority, and Sterling's research discloses none, supporting the proposition that the Court can grant summary judgment based on inadmissable evidence. To the contrary, the long-established standards of Rule 56 require otherwise.

### C. Experts May Not Opine As to Legal Conclusions.

As stated in Sterling's opening brief, even assuming for the sake of the argument that the expert report was a sworn affidavit or declaration, it should be stricken regardless because it consists of legal conclusions over both the meaning of FIRREA and the implementing regulations and their application to Sterling's contracts in the but-for world. The Government argues that experts may offer legal opinion, but simultaneously claims that Mr. Bankhead's opinions do not constitute legal conclusions. Both arguments lack merit.

Experts, whether at either trial or on summary judgment, may not offer legal opinions. *Principal Mut. Life Ins. Co. v. United States*, 26 Cl.Ct. 616, 624-25 (1992). As one court held:

> As Professor Wigmore has observed, expert testimony on law is excluded because 'the tribunal does not need the witness' judgment . . . .' The special legal knowledge of the judge makes the witness' testimony superfluous.' . . . . 'The question of interpretation of the contract is for the [judge] and the question of legal effect is for the judge. In neither case do we permit expert testimony.'

*Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) (internal citations omitted); *see also Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (an expert may not opine as the legal implications of conduct); *Krear & Co. v. Nineteen Named Trustees*, 810 F.2d

1250, 1258 (2d Cir. 1987)(admission of expert testimony as to a party's contractual obligations constituted error); *Dana Corp. v. American Standard, Inc.*, 866 F. Supp. 1481, 1498-1500 (N.D. Ind. 1994)( court may not consider affiant's statements as to the law or legal conclusions).

Here, Mr. Bankhead offers opinion testimony as to how FIRREA and the implementing regulations would apply to the regulatory capital acquired by Sterling as a result of the Lewis Federal and Tri-Cities contracts. *Def's App.* Vol. II, pp. 805-15 [Doc. 222]. In particular, Mr. Bankhead opines how FIRREA and the associated regulations would require the reclassification the regulatory capital acquired as part of the Tri-Cities and Lewis Federal acquisitions to what FIRREA and the regulations delineate as "qualifying supervisory goodwill". *Def's App.* pp. 809-12 [Doc. 222].[2] Mr. Bankhead then goes on to speculate that it would be implausible to assume that but-for Sterling would have been permitted by the regulators to include both the contractual capital from Lewis Federal and Tri-Cities and the qualifying supervisory goodwill from Central Evergreen. *Def's App.*, pp. 811-12. It is clear that Mr. Bankhead's opinions are based upon his own conclusion as to how FIRREA and the regulations would apply in the but-for world to Sterling's regulatory capital acquired from the Tri-Cities and Lewis Federal acquisitions, something he may not do as a matter of law. Such conclusions may only be made by the Court, and, here, have already been decided. *See D., infra; Sterling Savings v. United States*, 53 Fed.Cl. 599, 610-12 (2002); 72 Fed.Cl. 404, 410-11 (2006).

In sum, an expert may not offer opinions on summary judgment concerning the meaning or effect of contracts or statutes, and that is precisely what Mr. Bankhead does when he opines how

---

2 Mr. Bankhead claims, in part, that his opinion is based upon the putative fact that Dr. Horvitz included Sterling's contractual capital in his calculation of qualifying supervisory goodwill. *Def's App.*, p. 810. This is incorrect. Dr. Horvitz did no such thing. Mr. Bankhead confuses the difference between the actual and but-for bank. *See Declaration of Paul M. Horvitz*, ¶ 87 (contained at page 35in Sterling's appendix in opposition to the Government's motion for summary judgment [Doc. 233-2]).

FIRREA's definition of "qualifying supervisory goodwill" would purportedly apply not only to the goodwill acquired through the acquisition of Central Evergreen, but also to regulatory capital acquired through the contracted acquisitions of Lewis Federal and Tri-Cities.

## D. MR. BANKHEAD'S OPINIONS CONTRAVENE THE PRECEDENT OF THIS CASE AND OF *WINSTAR*.

Finally, the Government argues that there is no such rule that requires opinions to be struck if the opinions are contrary to the express terms of a contract. *Def's Resp.*, p. 6. Again, the Government misapprehends Sterling's argument. As stated above, Sterling argument is that the report should be struck because it not only contains legal opinions as to the meaning and application of FIRREA and Sterling's contract rights in the but-for world, but that those opinions also contravene *Winstar* precedence and Sterling's contract rights as held by Chief Judge Damich. *Sterling's Opening Brief*, pp. 3-6 [Doc. 231]. As stated previously, Mr. Bankhead's opinions as to how FIRREA would apply in the but-for world to Sterling's capital acquired as a result of the Tri-Cities and Lewis Federal transactions posit merely a different sort of breach of contract. *Sterling's Opening Brief*, p. 4 [Doc. 231].

For example, *Winstar* precedent holds that FIRREA and the implementing regulations breached the agreements when it reclassified the contractual capital to "qualifying supervisory goodwill." *Id.*, pp. *3-4*. Nonetheless, Mr. Bankhead's opinions are based upon the premise that the Government in the but-for world would nonetheless do that very thing and reclassify the regulatory capital from Lewis Federal and Tri-Cities as qualifying supervisory goodwill under FIRREA, effectively eliminating Sterling's right to include the non-contractual goodwill from the Central Evergreen acquisition as qualifying supervisory goodwill for regulatory capital purposes. *Def's App.* pp. 811-13 [Doc. 222].

Applying FIRREA's definition of qualifying supervisory goodwill to Sterling's contractual capital, however, is what the Court and *Winstar* precedent has held to be a breach of contract as a matter of law. 53 Fed.Cl. at 610-12 *; see Sterling's Opening Brief* [Doc. 231], pp. 3-6.[3] Moreover, by applying FIRREA's definition of capital to the contractual capital acquired from Lewis Federal and Tri-Cities, as opposed to treating the capital as equal to that of tangible capital such as cash or common stock, Mr. Bankhead further disregards Chief Judge Damich's holding that the Government agreed to forbear for five years from exercising any regulatory authority against Sterling for failing to meet its regulatory ratio requirements as a result of the Tri-Cities acquisition. *See Sterling*, 53 Fed. Cl. at 615. In the but-for world, this forbearance remained in effect until 1993, at which time there is no dispute over Sterling's capital compliance. *Id.* Thus, not only are Mr. Bankhead's opinions inadmissible legal conclusions, but irrelevant as being contrary to the precedent of this case and *Winstar*.

## III. CONCLUSION

Based upon the foregoing, Sterling requests that the Court strike Mr. Bankhead's expert report in its entirety.

//

//

//

//

---

3 Thrift Bulletin ("TB") 38-2 provides that "any FSLIC capital contribution that resulted in the creation of goodwill will be subject to the requirements for goodwill established in the capital regulation" (*i.e.,* reclassified as supervisory goodwill subject to the cap). *See Appendix attached hereto. Winstar* precedent holds that FIRREA and the application of TB 38-2 constituted a breach of contract. *See Bank United of Texas F.S.B. v. United States*, 50 Fed.Cl. 645, 650 (2001); *LaSalle Talman Bank, F.S.B. v. United States*, 45 Fed.Cl. 64, 85 (1999). Mr. Bankhead applies TB 38-2 in the but for world to Sterling's contracts and thus, effects a different sort of breach than what occurred in the actual world. *See Fifth Third Bank v. United States*, 71 Fed. Cl. 56, 70 (2006).

Respectfully submitted this 30th day of April, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on April 30, 2007, a copy of the foregoing **PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff

# APPENDIX

Office of Thrift Supervision (O.T.S.)

Thrift Bulletin

*1 CAPITAL ADEQUACY: GUIDANCE ON THE STATUS OF CAPITAL AND ACCOUNTING FORBEARANCES AND CAPITAL INSTRUMENTS HELD BY A DEPOSIT INSURANCE FUND

January 9, 1990

Handbook: Thrift Activities

Subject: Capital Adequacy

Section: 320

Summary: This Bulletin informs all savings associations that have been operating under capital or accounting forbearances that Section 5(t) of the Home Owners' Loan Act ("HOLA") eliminates such forbearances. Accordingly, these forbearances should be eliminated in determining whether or not an association complies with the new capital regulation. All associations that do not comply with the new capital regulation must submit a capital plan. This Bulletin also clarifies the treatment of capital instruments held by a deposit insurance fund.

For Further Information Contact:

The District Office in which you are located or the Supervision Policy Division of OTS, Washington, D.C.

Thrift Bulletin 38-2

Introduction

Questions have been raised regarding the status of previously granted forbearances and waivers as well as the treatment of FSLIC-owned warrants and other capital instruments. This Bulletin provides guidance to savings associations on these matters.

Capital Compliance

The Office of Thrift Supervision is applying the new capital standards to all savings associations, including those associations that have been operating under previously granted capital and accounting forbearances. Section 5(t) of HOLA as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(FIRREA) eliminates these forbearances. All savings associations presently operating with these forbearances, therefore, should eliminate them in determining whether or not they comply with the new minimum regulatory capital standards. (Any FSLIC capital contribution that resulted in the creation of goodwill will be subject to the requirements for goodwill established in the capital regulation).

If the association determines that it will fail its minimum regulatory capital requirements upon the elimination of capital and accounting forbearances, it must submit a capital plan to its District Director in accordance with the regulatory capital regulation and Thrift Bulletin 36.

A capital plan will not be acceptable if it includes the continuation of previously granted capital and accounting forbearances. Capital plans already submitted that propose to continue previous capital and accounting forbearances will be either disapproved, returned for revision and resubmittal or conditionally approved with the requested forbearance denied.

Capital Instruments Held by a Deposit Insurance Fund

Capital instruments owned by a party with a financial obligation to a savings association will be treated in accordance with Generally Accepted Accounting Principles (GAAP). For example, under 12 CFR 567, for the purpose of the inclusion in capital of instruments owned by the FSLIC or the FDIC, the Office will rely on the presentation standards established under GAAP. FSLIC or FDIC holdings of capital instruments (including, but not limited to, warrants, preferred stock and subordinated debentures) will be required to be offset by any receivables (on the asset side of the balance sheet) from FSLIC or the FDIC for the purpose of calculating the amount of such holdings to be included in capital. The amount of the offset is limited to the amount of the FSLIC or FDIC capital instrument.

***2** When there is no offsetting obligation, the value of warrants and other qualifying core capital instruments may be counted as core capital unless the holder of the warrants and other instruments is a federal deposit insurance fund. If the holder of the capital instruments is a federal deposit insurance fund, then they must be classified as supplementary capital.

Jonathan L. Fiechter

Senior Deputy Director, Supervision Policy

OTS TB 38-2, 1990 WL 309397 (O.T.S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.