**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STERLING SAVINGS ASSOCIATION, a state-chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation,** | ) | **NO. 95-829 C** |
| **Plaintiffs,** | ) | **(Judge Wheeler)** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MOTION TO STRIKE**
**THE EXPERT REPORTS OF JOE A. HARGETT AND MUKESH BAJAJ**

COME NOW, the Plaintiffs and, pursuant to RCFC 7(b)(1) and 56(e), and move to Strike the expert reports of Joe A. Hargett and Mukesh Bajaj, filed in support of the Government's Revised Motion for Summary Judgment Regarding Damages and in opposition to Plaintiffs' Motion for Summary Judgment Regarding Damage at Defendant's Appendix pp. 4 and 44 [Doc. 244-2]. This Motion is based upon the same grounds raised by Sterling in opposition to Defendant's submission of the Expert Report of W. Barefoot Bankhead and Sterling incorporates by reference its Brief Re: Motion to Strike the Expert Report of W. Barefoot Bankhead [Doc. 231] and the Plaintiffs' Reply Brief Re: Plaintiffs' Motion to Strike the Expert Report of W. Barefoot Bankhead [Doc. 246] (appended hereto). This Motion is also based on the files and records maintained herein.

Respectfully submitted this 17th day of May, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: _/s/ William D. Symmes____________________
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on May 17, 2007, a copy of the foregoing **PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORTS OF JOE A. HARGETT AND MUKESH BAJAJ** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff

# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD**

## I. RELIEF SOUGHT/SUMMARY OF ARGUMENT

Pursuant to RCFC 56(e), Plaintiff Sterling moves for an order striking the Expert Report of W. Barefoot Bankhead (the "Report"). The Government submitted the Report as evidentiary support for its Revised Motion for Summary Judgment Regarding Damages. *See Def's Rev. Brief*, p. 15-16 [and *Def's App*. Vol. II, pp. 805-15 [Doc. 222]. The Report does not comply with RCFC 56(e) and should be stricken because: (1) the Report is an unsworn statement, rendering it inadmissible hearsay; (2) the opinions within the Report consist of legal conclusions as to the meaning and application of FIRREA and regulations passed thereunder; and (3) the Report consists of opinions that contradict the express terms of Sterling's contracts with the Government.[1]

[1] As also set forth in Sterling's Motion to Strike the Government's Undisclosed Witnesses, the Report also should be stricken also because the Government did not timely designate Mr. Bankhead as an expert witness. Likewise, though not submitted in support of the Government's motion for summary judgment, the Updated Report of Mr. Hargett and his opinions should be excluded from trial upon the same grounds set forth herein.

## II. ARGUMENT

### A. THE REPORT IS AN INADMISSIBLE UNSWORN STATEMENT.

To establish facts in support of summary judgment, a party must submit evidence that would be admissible at trial. RCFC 56(e). Unsworn statements are inadmissible on summary judgment and cannot establish either undisputed facts for the moving party or a triable issue for the non-moving party. *See* RCFC 56(e); *Adarbe v. United States*, 58 Fed. Cl. 707, 711 n.1 (2003); *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *United States v. Dibble*, 429 F.2d 598, 601-02 (9th Cir. 1970). The requirements of RCFC 56(e) therefore apply to exclude on summary judgment any unsworn statements in expert reports. *See Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 569 (2003), *affirmed in part, rev'd in part*, 407 F.3d 1352 (2005) (FRE 703 does not permit expert reports to be considered as evidence). Because the Report is nothing more than an unsworn statement, it may not be considered under RCFC 56(e) and should be stricken.

### B. THE REPORT COMPRISES INADMISSIBLE LEGAL CONCLUSIONS.

Assuming for the sake of the argument that the Report was a sworn affidavit or declaration, it should be stricken regardless because it consists of legal conclusions over the meaning of FIRREA and its application to Sterling's contracts in the but for world. Such legal conclusions may not be considered on summary judgment. *Adarbe*, 58 Fed. Cl. at 711 n.1; *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1540-41 (11th Cir. 1990); *Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1258-59 (2nd Cir. 1987); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2nd Cir.), *cert denied*, 434 U.S. 861, 98 S.Ct. 188 (1977) (the meaning and application of contract terms are questions of law for the court about which an expert may not opine); *CFM Comm., LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233-34 (E.D. Cal. 2005) (the meaning and application of federal statutes and regulations are questions of law for the court).

In the Report, Mr. Bankhead opines how, in the but for world, FIRREA would apply to Sterling's contracts with the Government; in particular he opines as to how FIRREA supposedly required Sterling's RAP capital, or, as what he refers to as contractual capital, to be re-categorized as "qualifying supervisory goodwill" under 12 CFR 567.1(w), a classification of regulatory capital that did not exist at the time Sterling contracted with the Government. These opinions constitute inadmissible legal conclusions over the meaning of FIRREA and its application to Sterling's contracts and should be stricken.

Moreover, Mr. Bankhead's opinions should be stricken not only because they comprise legal conclusions, but because they are contrary to *Winstar* precedent. This Court, as well the United States Supreme Court and Federal Circuit, has held that the passage of FIRREA breached the agreements because, through the statute, Congress eliminated the right to count intangible assets toward what FIRREA refers to as "core" and "tangible" capital. *United States v. Winstar Corp.*, 518 U.S. 839, 870, 116 S.Ct. 2432, 2452-53 (1996); *Winstar Corp. v. United States*, 64 F.3d 1531, 1538, 1544-45 (Fed. Cir. 1995); *Coast Fed. Bank FSB v. United States*, 48 Fed. Cl. 402, 427-29 (2000); *Statesman v. United States*, 26 Cl. Ct. 904, 913 (1992); *Winstar Corp. v. United States*, 25 Cl. Ct. 541, 549 -50 (1992). The courts have additionally held that the FIRREA regulations relied upon by Mr. Bankhead furthered the breach by interpreting FIRREA's restrictions on the regulatory use of intangible assets as applying both to contractual and non-contractual capital, requiring them to be classified as "qualifying supervisory goodwill" subject to the FIRREA cap and phase-out.[2] *See Winstar*, 64 F.3d at 1545 ("The OTS by regulation treated capital credits in the same manner as supervisory goodwill, *see* 12 CFR 567.1(w), thereby restricting the use of such credits for regulatory capital purposes."). Accordingly, when

---

2 Prior to FIRREA, the Savings and Loan Industry did not classify regulatory capital into different categories of core, tangible, or risk based capital. 12 CFR 561.13 (1985) (App. 1298-99); 12 CFR 561.13 (1987) (App. 1307-09); Instructions to the Thrift Financial Reports ("TFRs") of 1987 (App. 1303-06). RAP capital stood on equal footing with stock or cash. *Winstar*, 518 U.S. at 849-50, 116 S.Ct. at 2443.

Mr. Bankhead, in his report, applies FIRREA's definition of qualifying supervisory goodwill under 12 CFR 567.1(w) to Sterling's capital credits in the but-for world, he did that which the various *Winstar* courts have held to constitute a breach.[3]

Stated differently, Mr. Bankhead's opinions contravene the courts' holdings that, as a matter of law, Sterling's so-called contractual capital in the but for world would have counted fully towards its regulatory capital requirement without restriction and on par with other recognized tangible and core assets, such as cash:

> Because the FSLIC had insufficient funds to make up the difference between a failed thrift's liabilities and assets, the Bank Board had to offer a 'cash substitute' to induce a healthy thrift to assume a failed thrift's obligations.

*Winstar*, 518 U.S. at 849-50, 116 S.Ct. at 2443 (emphasis added). Therefore, in the but for world, Sterling is entitled to count as regulatory capital both the capital credits from its contracts with the Government and the so-called lessor class of non-contractual, supervisory goodwill from the Central Evergreen acquisition, though the Central Evergreen capital would be subject to the cap and phase-out requirements of FIRREA.

In sum, Mr. Bankhead's opinions in the Report not only should be stricken as legal conclusions, but as conclusions that would lead to a different sort of breach under well-established *Winstar* case law.[4]

---

[3] Mr. Bankhead's Report suggests that he is not applying FIRREA to the capital credits insofar as he credits Sterling for the full amount of regulatory capital required by the contracts. This suggestion is disingenuous. Though Mr. Bankhead gives full credit to Sterling's contractual capital in the but for world, he still nonetheless classifies the capital as the more restricted form of qualifying supervisory goodwill under 12 CFR 567.1(w). As discussed in Section C, this classification of Sterling's RAP capital under the contracts is in violation of the express terms of Sterling's contracts that causes harm by restricting the amount of capital to which Sterling would be entitled in the but for world under both the contracts and FIRREA.

[4] Sterling notes that the Government's arguments concerning Mr. Bankhead mirror those presented by the Government and rejected by the Court in *Fifth Third Bank v. United States*, 71 Fed. Cl. 56, 70 (2006).

## C. MR. BANKHEAD'S OPINIONS CONTRADICT THE EXPRESS TERMS OF STERLING'S CONTRACTS WITH THE GOVERNMENT.

Mr. Bankhead's opinions concerning the meaning and application of Sterling's contracts in the but for world also should be stricken because they are contrary to the contracts' express terms. The Lewis Federal Assistance Agreement expressly stated that the cash assistance shall constitute regulatory net worth as then defined, not as later defined by FIRREA. The Assistance Agreement and the Forbearance Letter made this clear by stating that, for regulatory accounting purposes, the cash assistance was to be credited directly to Sterling's net worth account. (App. 566, 592) The terms "net worth" and "net worth account" referred to "Regulatory Net Worth" as then defined in 12 CFR § 561.13 (1985) (App. 1298-99) and the TFRs. (App. 1301) The November 4, 1985 FHLBB Resolution consummating the transaction reiterated that the capital to be acquired was regulatory capital as then defined by 12 CFR § 561.13 (1985):

> RESOLVED FURTHER, That the FSLIC hereby approves, pursuant to § 561.13 of the Insurance Regulations, Sterling's inclusion of the FSLIC's $1,750,000 cash contribution to Sterling, pursuant to the terms of the Assistance Agreement, as net worth, . . .

(App. 519) (emphasis added). Indeed, contrary to what Mr. Bankhead suggests, Sterling and the Government could not have agreed to a classification of regulatory capital that did not exist at the time of the agreements.

The same holds true for the RAP capital acquired as part of the Tri-Cities acquisition. The Assistance Agreement in that transaction expressly stated:

> "the cash contribution . . . shall be credited to [Sterling's] regulatory capital account and shall constitute regulatory capital as defined in § 561.13 of the Insurance Regulations, 12 CFR § 561.13 (1987)."

(App. 683).[5] Thus, as with Lewis Federal, Sterling's contract for Tri-Cities made clear that the

---

[5] By 1987, 12 CFR 561.13 no longer referred to "Regulatory Net Worth", but to "Regulatory Capital." *See* 12 CFR § 561.13 (1987) (App.1307-09).

Case 1:95-cv-00829-TCW Document 223-1 Filed 03/29/2007 Page 6 of 8

regulatory capital obtained by Sterling was regulatory capital as contemporaneously defined and not as defined later by the regulators. As Chief Judge Damich previously held, Sterling's contracts with the Government gave it the express right to count the capital credits towards the regulatory capital requirement as it then existed, not as later restricted by FIRREA and 12 CFR 567.1(w). *Sterling Sav. v. United States*, 53 Fed. Cl. 599, 610-11 (2002), *vac., in part, on other grounds*, 72 Fed. Cl. 404 (2006).

In short, Mr. Bankhead's application of FIRREA's restricted definition of regulatory capital to Sterling's capital in the but for world violates its bargained-for rights and, consequently, would be a breach in the but for world. In the but for world, Sterling is entitled under the contracts to count its RAP capital as equivalent to, for example, common stock capital of equal dollar value or any other recognized tangible or core capital and, under FIRREA, to count the supervisory goodwill from Central Evergreen as qualifying supervisory goodwill under FIRREA subject to FIRREA's cap and phase-out rules. Mr. Bankhead's Report should be stricken on these grounds alone.

## III. CONCLUSION

Based upon the foregoing, Sterling requests that the Court strike the Report in its entirety.

Respectfully submitted this 29th day of March, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on March 29, 2007, a copy of the foregoing **PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state chartered savings association, STERLING FINANCIAL CORPORATION, a Washington corporation.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**PLAINTIFFS' REPLY BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD**

## I. SUMMARY OF ARGUMENT

In opposition to Sterling's motion to strike the expert report of W. Barefoot Bankhead, the Government states that Sterling misunderstands RCFC 56's requirements and argues that this Court may consider on summary judgment that which would not otherwise be admissible at trial. In particular, the Government claims that the Court may consider the inadmissable expert report of Mr. Bankhead to establish undisputed, material facts negating Sterling's claims for damages. These arguments fail. Under well-established summary judgment jurisprudence, a court may not rely upon inadmissible evidence provided either in support of or in opposition to a motion for summary judgment. Bankhead's report is inadmissible because it is an unsworn, out-of-court declaration, - hence, hearsay - and because it comprises legal conclusions as to meaning and application of Sterling's contracts and FIRREA. The report should be stricken.

## II. ARGUMENT

### A. A Court May Only Consider Admissible Evidence on Summary Judgment.

Contrary to what the Government asserts, it is axiomatic that only admissible evidence may be considered on summary judgment:

> The stringent standard which courts apply to Rule 56 motions includes the requirement that documents filed in support of the motion, seeking to establish material facts as to which there is no genuine issue, must be of such quality as to be admissible at trial.

*Kohr v. Johns-Manville Corp.*, 534 F. Supp. 256, 257-58 (D. Pa. 1982) (citing cases). This is because the issue on summary judgment is whether the genuine issues of fact exists warranting a trial. A court can only determine whether such genuine issues exist by previewing the evidence that will be admitted at trial and ascertaining whether such evidence presents a material factual dispute between the parties:

> It is well settled law that documents submitted in support or in opposition to a motion for summary judgment must contain admissible information. *See* Wright, Miller & Kane, Vol. 10A § 2738 p. 470-474. 'Because the policy of Rule 56(e) is that a *judge should consider any material that would be admissible at trial,* the rules of evidence and exceptions thereto determine what averments the affidavit [or documents] may contain.'

*Collazo v. Condado Plaza Hotel*, 941 F. Supp. 16, 19 (D. P.R. 1996) (emphasis theirs). Put differently, the issue on summary judgment is no different than on a motion for a directed verdict:

> whether <u>the evidence</u> presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986). By definition, reviewing that which is inadmissible (and thus cannot be presented to the jury) will not assist a court in making such a determination.

The following are just some of the well-established legal principles of summary judgment jurisprudence that the Government asks the Court to ignore:

- Hearsay and other forms of inadmissible statements, such as unsworn statements and expert reports, are not to be considered when submitted in support of a motion for summary judgment.

- Expert opinions comprising legal conclusions are not considered when submitted in support of a motion for summary judgment.

- Any document not otherwise admissible at trial may not be considered when submitted in support of a motion for summary judgment.

*Adarbe v. United States*, 58 Fed. Cl. 707, 711 n.1 (2003) (statements in affidavits that comprise legal conclusions or otherwise inadmissible stricken by the Court under RCFC 56(e) on summary judgment).

## B. THE UNSWORN EXPERT REPORT OF MR. BANKHEAD WILL BE INADMISSIBLE AT TRIAL AND THUS IS INADMISSIBLE ON SUMMARY JUDGMENT.

The Government claims that Sterling's contention that the Government must have submitted a sworn statement to establish facts is "without foundation." *Def's Resp.*, p. 2. As stated above, however, it is clear that, since unsworn statements are inadmissible at trial, they are likewise inadmissible on summary judgment. *See, e.g., Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.16, 90 S.Ct. 1598, 1609 n.16 (1970). Under *Westfed Holdings,* unsworn, expert reports are hearsay and not admissible at trial. *Westfed Holdings, Inc. v. United States*, 55 Fed.Cl. 544, 569 (2003), *aff'd in part, rev'd in part*, 407 F.3d 1352 (2005). Accordingly, the same expert report is likewise inadmissible on summary judgment for the purpose of establishing facts as to which the Government asserts there is no genuine issue. *E.g., Kohr*, 534 F. Supp. at 257-58; *Blum v. Campbell*, 355 F. Supp. 1220, 1227 (D. Md. 1972) (unsworn

letter not admissible on summary judgment).[1]

The Government also argues that since a party may move for summary judgment with or without affidavits under RCFC 56(b), it may submit otherwise inadmissible evidence on summary judgment "to establish certain facts." *Def's Resp.*, p. 2. The Government justifies its position by arguing that it may meet its burden under RCFC 56 by pointing out to the Court that there is an absence of evidence to support Sterling's case. *Def's Resp.*, p.3. This argument reveals the Government's misapprehension of RCFC 56.

A moving party may move for summary judgment in one of two ways. First, the moving party may submit affirmative evidence that negates an essential element of a nonmoving party's claim (which is what the Government purportedly has done with Mr. Bankhead's report). *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557 (1986) (White concurring). Second, the moving party may point out that there is a lack of evidence supporting the nonmoving party's claims. *Id.* What the Government misapprehends is that, under either scenario, the Court is restricted in its analysis to considering only <u>admissible evidence</u>. Under neither scenario may a moving party rely upon inadmissible evidence to establish facts over which the nonmoving party claims there is no dispute.

RCFC 56(c) states that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no triable issue of fact. RCFC 56(c). Again, the issue is whether there is any <u>admissible</u> evidence, either in pleadings, affidavits, or some other form of discovery rendered under oath, that demonstrate there

---

[1] It is clear that affidavits filed in support of a motion for summary judgment must be in a form that would render the information contained therein admissible at trial (*i.e.,* under oath), and Mr. Bankhead's expert report is not even in affidavit form. *Rogers v. Ford Motor* Co., 952 F. Supp. 606, 611 (D. Ind. 1997) (unverified documents inadmissible on summary judgment); *Sims v. Mack Truck Corp*, 488 F. Supp. 592, 577 (D. Pa. 1980) (statements not in proper affidavit form are not admissible on summary judgment).

is or is not a genuine issue for trial. In any event, the Government does not rely on any of the items enumerated in RCFC 56(c). Instead, the Government's motion is based upon an out-of-court declaration in the form of an unverified expert report, which is not admissible at trial and thus, not admissible on summary judgment. The Government cites no authority, and Sterling's research discloses none, supporting the proposition that the Court can grant summary judgment based on inadmissable evidence. To the contrary, the long-established standards of Rule 56 require otherwise.

**C. EXPERTS MAY NOT OPINE AS TO LEGAL CONCLUSIONS.**

As stated in Sterling's opening brief, even assuming for the sake of the argument that the expert report was a sworn affidavit or declaration, it should be stricken regardless because it consists of legal conclusions over both the meaning of FIRREA and the implementing regulations and their application to Sterling's contracts in the but-for world. The Government argues that experts may offer legal opinion, but simultaneously claims that Mr. Bankhead's opinions do not constitute legal conclusions. Both arguments lack merit.

Experts, whether at either trial or on summary judgment, may not offer legal opinions. *Principal Mut. Life Ins. Co. v. United States*, 26 Cl.Ct. 616, 624-25 (1992). As one court held:

> As Professor Wigmore has observed, expert testimony on law is excluded because 'the tribunal does not need the witness' judgment . . . .' The special legal knowledge of the judge makes the witness' testimony superfluous.' . . . . 'The question of interpretation of the contract is for the [judge] and the question of legal effect is for the judge. In neither case do we permit expert testimony.'

*Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) (internal citations omitted); *see also Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (an expert may not opine as the legal implications of conduct); *Krear & Co. v. Nineteen Named Trustees*, 810 F.2d

1250, 1258 (2d Cir. 1987)(admission of expert testimony as to a party's contractual obligations constituted error); *Dana Corp. v. American Standard, Inc.*, 866 F. Supp. 1481, 1498-1500 (N.D. Ind. 1994)( court may not consider affiant's statements as to the law or legal conclusions).

Here, Mr. Bankhead offers opinion testimony as to how FIRREA and the implementing regulations would apply to the regulatory capital acquired by Sterling as a result of the Lewis Federal and Tri-Cities contracts. *Def's App.* Vol. II, pp. 805-15 [Doc. 222]. In particular, Mr. Bankhead opines how FIRREA and the associated regulations would require the reclassification the regulatory capital acquired as part of the Tri-Cities and Lewis Federal acquisitions to what FIRREA and the regulations delineate as "qualifying supervisory goodwill". *Def's App.* pp. 809-12 [Doc. 222].[2] Mr. Bankhead then goes on to speculate that it would be implausible to assume that but-for Sterling would have been permitted by the regulators to include both the contractual capital from Lewis Federal and Tri-Cities and the qualifying supervisory goodwill from Central Evergreen. *Def's App.*, pp. 811-12. It is clear that Mr. Bankhead's opinions are based upon his own conclusion as to how FIRREA and the regulations would apply in the but-for world to Sterling's regulatory capital acquired from the Tri-Cities and Lewis Federal acquisitions, something he may not do as a matter of law. Such conclusions may only be made by the Court, and, here, have already been decided. *See D., infra; Sterling Savings v. United States*, 53 Fed.Cl. 599, 610-12 (2002); 72 Fed.Cl. 404, 410-11 (2006).

In sum, an expert may not offer opinions on summary judgment concerning the meaning or effect of contracts or statutes, and that is precisely what Mr. Bankhead does when he opines how

---

2 Mr. Bankhead claims, in part, that his opinion is based upon the putative fact that Dr. Horvitz included Sterling's contractual capital in his calculation of qualifying supervisory goodwill. *Def's App.*, p. 810. This is incorrect. Dr. Horvitz did no such thing. Mr. Bankhead confuses the difference between the actual and but-for bank. *See Declaration of Paul M. Horvitz*, ¶ 87 (contained at page 35in Sterling's appendix in opposition to the Government's motion for summary judgment [Doc. 233-2]).

FIRREA's definition of "qualifying supervisory goodwill" would purportedly apply not only to the goodwill acquired through the acquisition of Central Evergreen, but also to regulatory capital acquired through the contracted acquisitions of Lewis Federal and Tri-Cities.

## D. Mr. Bankhead's Opinions Contravene The Precedent Of This Case And Of *Winstar*.

Finally, the Government argues that there is no such rule that requires opinions to be struck if the opinions are contrary to the express terms of a contract. *Def's Resp.*, p. 6. Again, the Government misapprehends Sterling's argument. As stated above, Sterling argument is that the report should be struck because it not only contains legal opinions as to the meaning and application of FIRREA and Sterling's contract rights in the but-for world, but that those opinions also contravene *Winstar* precedence and Sterling's contract rights as held by Chief Judge Damich. *Sterling's Opening Brief*, pp. 3-6 [Doc. 231]. As stated previously, Mr. Bankhead's opinions as to how FIRREA would apply in the but-for world to Sterling's capital acquired as a result of the Tri-Cities and Lewis Federal transactions posit merely a different sort of breach of contract. *Sterling's Opening Brief*, p. 4 [Doc. 231].

For example, *Winstar* precedent holds that FIRREA and the implementing regulations breached the agreements when it reclassified the contractual capital to "qualifying supervisory goodwill." *Id.*, pp. *3-4*. Nonetheless, Mr. Bankhead's opinions are based upon the premise that the Government in the but-for world would nonetheless do that very thing and reclassify the regulatory capital from Lewis Federal and Tri-Cities as qualifying supervisory goodwill under FIRREA, effectively eliminating Sterling's right to include the non-contractual goodwill from the Central Evergreen acquisition as qualifying supervisory goodwill for regulatory capital purposes. *Def's App.* pp. 811-13 [Doc. 222].

Applying FIRREA's definition of qualifying supervisory goodwill to Sterling's contractual capital, however, is what the Court and *Winstar* precedent has held to be a breach of contract as a matter of law. 53 Fed.Cl. at 610-12 *; see Sterling's Opening Brief* [Doc. 231], pp. 3-6.[3] Moreover, by applying FIRREA's definition of capital to the contractual capital acquired from Lewis Federal and Tri-Cities, as opposed to treating the capital as equal to that of tangible capital such as cash or common stock, Mr. Bankhead further disregards Chief Judge Damich's holding that the Government agreed to forbear for five years from exercising any regulatory authority against Sterling for failing to meet its regulatory ratio requirements as a result of the Tri-Cities acquisition. *See Sterling*, 53 Fed. Cl. at 615. In the but-for world, this forbearance remained in effect until 1993, at which time there is no dispute over Sterling's capital compliance. *Id.* Thus, not only are Mr. Bankhead's opinions inadmissible legal conclusions, but irrelevant as being contrary to the precedent of this case and *Winstar*.

## III. CONCLUSION

Based upon the foregoing, Sterling requests that the Court strike Mr. Bankhead's expert report in its entirety.

//

//

//

//

---

3 Thrift Bulletin ("TB") 38-2 provides that "any FSLIC capital contribution that resulted in the creation of goodwill will be subject to the requirements for goodwill established in the capital regulation" (*i.e.,* reclassified as supervisory goodwill subject to the cap). *See Appendix attached hereto. Winstar* precedent holds that FIRREA and the application of TB 38-2 constituted a breach of contract. *See Bank United of Texas F.S.B. v. United States*, 50 Fed.Cl. 645, 650 (2001); *LaSalle Talman Bank, F.S.B. v. United States*, 45 Fed.Cl. 64, 85 (1999). Mr. Bankhead applies TB 38-2 in the but for world to Sterling's contracts and thus, effects a different sort of breach than what occurred in the actual world. *See Fifth Third Bank v. United States*, 71 Fed. Cl. 56, 70 (2006).

Respectfully submitted this 30th day of April, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims
1100 U.S. Bank Building
422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on April 30, 2007, a copy of the foregoing **PLAINTIFFS' BRIEF RE: PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF W. BAREFOOT BANKHEAD** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff