IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STERLING SAVINGS ASSOCIATION, a state-chartered Savings association, STERLING FINANCIAL CORPORATION, a Washington Corporation,<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 95-829-C<br><br>(Judge Wheeler) |

**STERLING SAVINGS ASSOCIATION'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BREACH OF CONTRACT OR DAMAGE WITH RESPECT TO CENTRAL EVERGREEN**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Government has moved to exclude evidence of breach of contract or damage with respect to Sterling Savings Association's ("Sterling's") acquisition of Central Evergreen Federal Savings and Loan ("Central Evergreen"), the last of the three acquisitions made by Sterling of failing thrifts at the Government's request. The Motion should be denied because the Central Evergreen transaction was inextricably intertwined with the acquisition of Tri-Cities Savings and Loan ("Tri-Cities"). This trial will determine the amount of damages owed to Sterling as a result of the Government's breach of Sterling's contract related to Tri-Cities, and the facts surrounding the Central Evergreen transaction provide necessary context to the Tri-Cities deal. The Tri-Cities transaction cannot be explained without considering Central Evergreen; both parties, in undertaking the Tri-Cities transaction, did so with the Central Evergreen transaction in mind.

Sterling will be prejudiced if evidence of the Central Evergreen transaction is excluded, and the Motion should be denied.

Sterling does, however, recognize that this Court held that enactment of the Financial Institutions Recovery and Reform Enforcement Act ("FIRREA") did not breach Sterling's contract to acquire Central Evergreen. Sterling herein submits, to preserve its record, an offer of proof of the undisputed facts demonstrating that the Government did breach the Central Evergreen contract. Sterling does not intend to offer proof at trial related to any claim of breach, or damages, in regards to the Central Evergreen contract, or any fact about Central Evergreen not connected to its claim for damages from the two contracts the Court has ruled were breached.

## ARGUMENT

### A. THE MOTION SHOULD BE DENIED BECAUSE STERLING'S ACQUISITION OF TRI-CITIES IS INEXTRICABLY LINKED TO STERLING'S ACQUISITION OF CENTRAL EVERGREEN.

#### 1. *During The Course Of Negotiations For Tri-Cities, The Government Aggressively Pursued Sterling's Acquisition Of Central Evergreen*

The Federal Home Loan Bank Board ("FHLBB") first approached Sterling regarding a potential acquisition of Central Evergreen in the summer of 1987, at the same time Sterling's acquisition of Tri-Cities was under discussion. App. 13-14; App. 33. Despite repeated overtures from the Government, Sterling stated that it did not have enough capital to acquire a $250 million thrift. *Id.* Sterling's Chief Executive Officer, Harold Gilkey, informed Hilton Hewitt, Sterling's Supervisory Agent at the time, that Sterling would not be able to acquire Central Evergreen without substantial FSLIC assistance and that he had no interest in pursuing that track at this juncture. App. 86:5-9.

Again in early 1988, Hilton Hewitt contacted Harold Gilkey and renewed his request that Sterling consider an acquisition of Central Evergreen. App. 22-23. Mr. Gilkey expressed his

concerns that Sterling would be able to acquire and absorb two insolvent thrifts within eight months (Tri-Cities Savings and Loan Institution ("Tri-Cities") in April, 1988 and Central Evergreen in December, 1988). *Id.* Sterling did not have the capital to take control of Central Evergreen. Because of this fact, when the Government attempted to convince Sterling to acquire the failing Central Evergreen thrift, the key factor for Sterling was its abilities to leverage as capital the cash assistance received in the Tri-Cities acquisition. App. 180.

2. *Sterling's Acquisition of Tri-Cities Savings & Loan Would Not Have Occurred Unless Sterling Had An Agreement In Place To Pursue Acquisition of Central Evergreen*

Sterling's acquisition of Central Evergreen would not have occurred but for its acquisition of Tri-Cities, and vice versa. The evidence in the record is undisputed that Sterling's agreement to acquire Central Evergreen was subject to Sterling acquiring Tri-Cities and that the Government facilitated the Tri-Cities deal so that Sterling would take Central Evergreen. App. 179; App. 180. Hilton Hewitt affirmed to Sterling that it would have the requisite capital necessary for the acquisition of Central Evergreen based upon leveraging the permanent regulatory capital infusions and supervisory goodwill from both the Lewis Federal Savings and Loan Institution ("Lewis Federal") ($1.8 million) and Tri-Cities ($11.7 million) acquisitions. App. 14; App. 22; App. 33; App. 86:19-24.

The Government intended to induce Sterling to enter into an agreement to acquire Central Evergreen by promising a successful bid as to Tri-Cities. Although bidding had not yet closed on the Tri-Cities acquisition, Hilton Hewitt informed Harold Gilkey that he could arrange for Sterling to be the selected bidder as long as Sterling's bid was competitive. App. 87:1-5, 89:4-17. Mr. Gilkey and Mr. Hewitt entered into a quid pro quo agreement, memorialized not by a document but by a handshake, whereby Sterling agreed to acquire Central Evergreen if it was

selected as the low bidder on the Tri-Cities acquisition. App. 92:22-93:15. Harold Gilkey understood this agreement as creating mutual obligations: the Government ensured that Sterling would be the selected bidder on the Tri-Cities acquisition, and, in turn, Sterling committed to bid on the Central Evergreen acquisition without Financial Savings and Loan Insurance Corporation ("FSLIC") assistance. App. 95:12-15. Although there was no written document that codified their agreement, Mr. Gilkey felt obligated, by virtue of his word, to move forward with the Central Evergreen merger. App. 95:20-24. True to Mr. Gilkey's word, Sterling did undertake to merge with Central Evergreen.

During the Tri-Cities bid review process, Sterling learned that it was not the selected low bidder. Based upon this information, Sterling concluded the deal to acquire Tri-Cities was off. App. 90:23-91:5. Within a day or two of learning that Sterling had not been selected as the low bidder on the Tri-Cities acquisition, however, Hilton Hewitt called Harold Gilkey and told him that he would "take care of [his] end." App. 90-91. Shortly after this conversation, Sterling was informed that it was the selected bidder for Tri-Cities and that the previous low bidder, Old Stone Savings Bank, had withdrawn its application. App. 91:6-12; App. 22-23. When asked how Sterling had succeeded over the previous low bidder, Mr. Hewitt informed Mr. Gilkey that "these things have a way of working themselves out." App. 99:10-15; App. 55:22-25.

Later, Ed Hedlund, FHLB-Seattle's Supervisory Agent for both Sterling and Central Evergreen, summarized the results of an internal conversation with other members of the FHLB-Seattle leadership on June 30, 1988, and specifically mentioned Sterling's ability to leverage the capital it received as a result of the Tri-Cities acquisition, thus further emphasizing the Government's understanding of the interrelatedness of the two transactions. App. 180. Without counting the supervisory goodwill from the Tri-Cities acquisition as an asset, Sterling would,

following its acquisition of Central Evergreen, have had negative net worth, a situation it would have been "madness" to get into without the clear understandings it had reached with the FHLBB/FSLIC concerning future regulatory compliance. *United States v. Winstar Corp.*, 518 U.S. 839, 910 (1996). The unrebutted testimony of Sterling's officers and the Government officials charged with the task of negotiating the Tri-Cities and Central Evergreen acquisitions that the two institutions were part and parcel of the same greater transaction. The Tri-Cities contract and damages cannot be properly interpreted in the pending damage action without consideration of evidence pertaining to the subsequent Central Evergreen acquisition. Without Central Evergreen on the horizon, Sterling would never have been selected as the low bidder on the Tri-Cities acquisition. The mutual purpose of the parties to the Tri-Cities contract <u>was</u> the Central Evergreen merger. The two transactions are intimately connected and Sterling cannot present its case as to Tri-Cities absent reference to the Central Evergreen transaction.

*3. Sterling Had The Requisite Capital Level To Acquire Central Evergreen Only As A Result Of The Recently Closed Tri-Cities Acquisition*

The FHLBB and FSLIC "shopped" Central Evergreen to several possible acquirers, and the Government would have spent approximately $8 to $10 million to liquidate and dissolve Central Evergreen had Sterling not undertaken the acquisition. App. 80:8-81:16; App. 114:25-115:3. Sterling's acquisition of Tri-Cities closed on April 8, 1988. On July 20, 1988, Sterling and Central Evergreen entered into an Acquisition Agreement that governed the rights between the two institutions, independent of the Government. Acquisition Agreement between Sterling Savings Association and Central Evergreen Federal Savings and Loan Association, dated July 20, 1988. This initial agreement came barely three months after Sterling had closed the Tri-Cities acquisition. Prior to the close of the Tri-Cities acquisition, Sterling lacked the requisite

amount of capital to present a bid for Central Evergreen's acquisition; after the acquisition, it was allowed to acquire Central Evergreen by the Government. Both parties knew and intended that Sterling's acquisition of Tri-Cities was a necessary condition to its acquisition of Central Evergreen. Indeed, Supervisory Agent Hilton Hewitt asked Sterling to consider acquiring Central Evergreen and, when Sterling replied that it lacked sufficient capital to consider the acquisition, reiterated that if Sterling acquired Tri-Cities, the regulatory capital thereby created could be used to acquire Central Evergreen. App. 14; App. 22; App. 33; App. 86:19-24. Sterling relied to its detriment on the Lewis and Tri-Cities contracts (and FSLIC/FLHBB's undisputed characterization of those contracts as creating permanent capital) in agreeing to take over Central Evergreen.

The instant Motion attempts to exclude relevant evidence to the Tri-Cities transaction. The evidence is undisputed that the Central Evergreen acquisition and the context of that transaction are linked directly to the Tri-Cities contract, no matter that this Court has determined that the Central Evergreen transaction itself was not breached. Indeed, the record demonstrates that each of Sterling's three acquisitions of troubled thrifts (at the Government's request and with the Government's assistance) was built upon, and used leverage acquired through, previous agreements. The full intent of the parties and scope of the damage cannot be evaluated in a vacuum; the contracts must be compared and the circumstances around their formation must be explained. The Motion should be denied, and Sterling should be permitted to introduce evidence related to the Central Evergreen transaction.

**B. STERLING'S OFFER OF PROOF DEMONSTRATES THAT THE GOVERNMENT BREACHED THE CENTRAL EVERGREEN CONTRACT.**

*1. An Offer Of Proof Is Appropriate To Preserve The Record For Appeal Upon A Court's Exclusion Of Evidence*

Federal Rule of Evidence 103, in relevant part, provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and … [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

F.R.E. 103(a)(2). The Court has granted the Government's motion to reconsider and has ruled the contract for the Central Evergreen transaction was not breached. Sterling does not intend to offer evidence on that issue, but respectfully makes an offer of proof regarding the acquisition of Central Evergreen, the Government's breach of that contract, and the damages Sterling incurred as a result, for purposes of preserving the record.

*2. The Central Evergreen Contract Included The Negotiated-For Business Plan That Controlled The Level Of Capital To Which Sterling Agreed To Adhere.*

1. On July 20, 1988, Sterling and Central Evergreen entered into an Acquisition Agreement that governed the rights between the two institutions, independent of the Government. *See* App. 125 *et. seq.*

2. The Government had estimated that it would take cash assistance of $8 to 12 million to induce a buyer to take on Central Evergreen, and there were few eligible buyers. App. 80:8-81:16; App. 114:25-115:3.

3. Sterling was able to take on Central Evergreen only because it was able to us the supervisory goodwill acquired through the Tri-Cities transaction as regulatory capital.

4. Pursuant to the Agreement, Sterling agreed to certain obligations: primarily, (1) maintaining its regulatory capital at or above the minimum capital requirement; and (2) raising

additional capital whenever its regulatory capital would fall below either the lesser of the minimum capital requirement or the capital projected in the Business Plan.

5. Sterling and the Government negotiated the resolutions which established that Sterling could use supervisory goodwill as an asset.

6. The FHLBB Resolution executed as part of the agreement for Sterling's acquisition of Central Evergreen mandates the creation of a mutually acceptable Business Plan which would govern the operation of the merged Sterling/Central Evergreen institution for the subsequent five years and require Sterling's infusion of capital, as contemplated by the same Business Plan.

7. Through its own Board resolution, Sterling assented to the terms of the FHLBB resolution.

8. It is undisputed that Sterling and the Government negotiated the Business Plan in which the parties' specific agreement as to how Sterling's regulatory capital would be maintained (including supervisory goodwill) was detailed.

9. The Business Plan was negotiated prior to the completion of the Agreement and was the most important aspect of the deal to Sterling.

10. Sterling and the Government further negotiated for a provision in the agreement that would allow Sterling to amend its agreed-to Business Plan if necessary due to "actions taken by any governmental body having jurisdiction that caused [Sterling] to materially deviate from its business plan."

11. Sterling further bargained for and obtained some leeway in its obligation to maintain regulatory capital in the Business Plan should circumstances change.

12. Sterling was aware of pending regulatory changes being proposed by FSLIC and

debated in Congress, and negotiated for specific protections within the Agreement for its rights under the Business Plan.

13. Because Sterling was aware of the potential for regulatory change, Sterling bargained for the right to count supervisory goodwill as regulatory capital.

14. Because the agreement, including the Business Plan, preserved Sterling's right to count supervisory goodwill as regulatory capital regardless of any future regulatory changes as well as Sterling's right to comply with the lesser of capital levels set by such regulations or the Business Plan, the Government breached the agreement.

**CONCLUSION**

For these reasons, the Government's Motion in Limine to Exclude Evidence of Breach of Contract or Damage with Respect to Central Evergreen should be denied. In the alternative, Sterling hereby provides its Offer of Proof regarding the formation, breach and damages incurred from Sterling's acquisition of Central Evergreen.

Respectfully submitted this 15th day of June, 2007.

**WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.**

By: /s/ William D. Symmes
William D. Symmes, Counsel of Record
And Member Of the Bar of the United States Court of Federal Claims

1100 U.S. Bank Building, 422 West Riverside Avenue
Spokane, WA 99201-0300
Telephone No. (509) 624-5265
Facsimile No. (509) 458-2717

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on June 15, 2007, a copy of the foregoing **STERLING SAVINGS ASSOCIATION'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BREACH OF CONTRACT OR DAMAGE WITH RESPECT TO CENTRAL EVERGREEN** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William D. Symmes
William D. Symmes
Attorney for Plaintiff