# In the United States Court of Federal Claims

No. 95-829C

(Filed: December 5, 2007)

*************************************** *
*
STERLING SAVINGS ASSOCIATION, *
*
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
*
*************************************** *

ORDER

As mutually agreed with counsel for the parties, the Court will hear closing arguments on Wednesday, January 9, 2008 at 9:30 AM at the National Courts Building, 717 Madison Place, N.W., Washington, D.C. Each party shall be permitted 90 minutes for argument. Counsel may organize their presentations as they wish, and may utilize more than one attorney to address different aspects or issues if desired. No further evidence may be offered during argument, but counsel may employ demonstrative graphics or summaries if deemed helpful. In addition, counsel are invited to address the following issues during the argument:[1]

1. Of the damages theories offered in Winstar cases, which theories have been the most widely approved, and which have been the most widely criticized, in decisions from the Federal Circuit? If you were to identify two or three precedents that best support your position in this case, which would they be, and why? What precedents are the closest factually to this case?

2. What has been the "track record" in other Winstar cases of the expert witnesses who testified in this case? Have the specific expert theories advanced in this case been accepted or rejected in other cases?

[1] If a party's response is addressed adequately in one of the post-trial briefs, it is sufficient simply to cite to the Court the portion of the brief relied upon.

3. Under the Court's liability rulings in this case, Defendant is liable for breach of the Lewis Federal and Tri-Cities supervisory agreements, but not for the Central Evergreen supervisory agreement. Please summarize the evidence on whether Sterling would have been capital deficient after the passage of FIRREA even if Defendant had not breached the Lewis Federal and Tri-Cities agreements. Is Sterling entitled to any damages if it would have been capital deficient without regard to Defendant's breaches? Does Sterling's ability to recover damages depend upon the answer to this question?

4. At trial, the expert witnesses disagreed on the proper accounting treatment of Central Evergreen's supervisory goodwill. Even though the Court has held that Defendant did not breach the Central Evergreen supervisory agreement, should Sterling nevertheless be permitted to phase out the Central Evergreen supervisory goodwill in accordance with FIRREA's procedures?

5. Sterling obtained injunctive relief in 1990 restricting the Office of Thrift Supervision ("OTS") and the Federal Deposit Insurance Corporation ("FDIC") from regulating Sterling in accordance with FIRREA's new restrictions. Sterling Sav. Ass'n v. Ryan, 751 F. Supp. 871 (E.D. Wash. 1990), rev'd 959 F.2d 241 (9th Cir. 1992). Evidence at trial suggests that OTS and FDIC nevertheless exercised close oversight and supervision of Sterling while the injunction was in effect. How should the Court evaluate this evidence as it may relate to Sterling's recovery of damages?

6. Under applicable law and regulations after the passage of FIRREA, did OTS and FDIC representatives have the discretion to leave well-managed institutions alone, and not to treat them as "troubled thrifts?" Was it unreasonable for the OTS and FDIC to treat Sterling as a "troubled thrift?" Please explain.

7. Based upon the evidence at trial (and without prejudice to the position of either party), please provide a recap of the damages that would be owing to Sterling if the Court were to find that Sterling fully replaced all of its lost capital in November 1991 through a public offering of common stock, and was not further damaged thereafter.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge